IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:   ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

---

| | |
|---|---|
| SEA-PAC SALES COMPANY, ) | |
| ) | |
| Appellant ) | Civil Action No. 07-4 |
| ) | |
| v. ) | |
| ) | |
| ARMSTRONG WORLD ) | Bankruptcy Case No. 00-04471 |
| INDUSTRIES, INC., ) | Appeal No. 06-77 |
| ) | |
| Appellee ) | |

## APPELLANT'S OPENING BRIEF

ECKERT SEAMANS CHERIN & MELLOTT LLC
Karen Lee Turner (No. 4332)
Michael G. Busenkell (No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

-and-

KARR TUTTLE CAMPBELL
Michael M. Feinberg
Diana K. Carey
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

-and-

ROHDE & VAN KAMPEN PLLC
Al  Van Kampen
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

ATTORNEYS FOR SEA-PAC SALES
COMPANY

## TABLE OF CONTENTS

STATEMENT OF BASIS OF APPELLATE JURISDICTION...................................................1

STATEMENT OF ISSUES ...................................................................................................1

STATEMENT OF CASE .....................................................................................................1

PROCEDURAL HISTORY...................................................................................................2

FACTUAL BACKGROUND .................................................................................................5

      A.     The Sea-Pac Agreements. ...............................................................................5

      B.     Arbitration Provisions of Residential Agreement and Commercial
             Agreement....................................................................................................7

      C.     The Executory Contracts Claims Bar Date And The Sea-Pac
             Claim...........................................................................................................7

ARGUMENT .......................................................................................................................9

I.     The Federal Arbitration Act Represents A Strong Federal Policy Favoring
      Arbitration. .......................................................................................................9

II.    The Bankruptcy Court Erred By Not Allowing The Arbitrator To Decide
      Whether Conditions To Arbitration Have Been Met.............................................10

III.   Green Tree — Relied Upon By AWI — Also Holds That The Arbitrators
      Are to Interpret The Contract............................................................................11

IV.   The Bankruptcy Court Erred In Denying The Stay Motion And Refusing
      To Enforce The Arbitration Agreements. ............................................................12

      A.     Sea-Pac Timely Initiated Arbitration. ..............................................................12

      B.     The Time To Initiate Arbitration Was Suspended By 11 U.S.C. §
             108(c). .....................................................................................................14

      C.     The Failure to Initiate Arbitration within the Time Set Forth in the
             Agreements does not Amount to a Waiver of Arbitration Rights. .......................17

      D.     There is Not Conflict Between the Arbitration Clause and the
             Policies of the Bankruptcy Code and the Bankruptcy Court Should
             Have Enforced the Arbitration Clause. .............................................................21

CONCLUSION....................................................................................................................26

## TABLE OF AUTHORITIES

**CASES**

Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294 (5th Cir. 2004)
(citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)) ................... 9, 17

CGE Ford Heights, LLLC v. Browning-Ferris Indus. Of Illinois, Inc., 208 B.R.
825, 827 (Bankr. D. Del. 1997) ............................................................................... 21

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) ........................................ 17

Green Tree Financial Corp., nka Conseco Finance Corp. v. Bazzle, 539 U.S.
444 (2003)............................................................................................................ 11, 12

Halper v. Halper, 164 F.3d 830 (3d Cir. 1999)................................................................. 1

Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc., 885 F.2d 1149,
1156-57 (3d Cir. 1989)) ........................................................................... 20, 21, 22, 24

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002).................................... 10, 11

Hylland v. Northwestern Corp. (In re Northwestern Corp.), 319 B.R. 68, 75 (D.
Del. 2005) ............................................................................................................... 21

In re Erie Power Technologies, Inc., 315 B.R. 41 (Bankr. E.D. Pa. 2004) ..................... 21

In re Fleming Co., Inc., 325 B.R. 687, 691 (Bankr. D. Del. 2005) (quoting
Hexworth v. Binder, Robinson and Co., 980 F.2d 912, 925 (3rd Cir. 1992)) ............. 19

In re Glen Eagle Square, Inc., Bankr. No. 91-10796, 1991 WL 71782, at *1
(Bankr. E.D. Pa. May 1, 1991) ................................................................................. 23

In re Hoffinger Industries, Inc., 329 F.3d 948 (8th Cir. 2003) ........................................ 16

In re Kaiser Aluminum Corp., 303 B.R. 299 (D. Del. 2003)........................................... 15

In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006) (citing Shearson/Am. Exp., Inc.
v. McMahon, 482 U.S. 220 (1987))............................................................... 20, 21, 22

In re Morton, 866 F.2d 561 (2d Cir. 1989) (citing S. Rep. No. 989, 95th Cong.,
2d Sess. 30 (1978), H.R. Rep. No. 595, 95th Cong., 2d Sess. 318 (1978) ................... 15

In re Oakwood Homes Corp., 449 F.3d 588 (3d Cir. 2006) ............................................ 13

Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-
25 (1983)...................................................................................................... 10, 11, 17

New Pentax Film, Inc., 936 F.Supp 142 (S.D.N.Y. 1996) ................................................. 16

Pardo v. Pacificare of Texas, Inc. (In re APF Co.), 264 B.R. 344 (Bankr. D.
Del. 2001) ............................................................................................................... 23

Shubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.), 335
B.R. 556 (Bankr. D. Del. 2005)..................................................... 19, 20, 21, 22, 23, 24

Welborn Clinic v. Med Quist, Inc., 301 F.3d 634 (7th Cir. 2002)................................... 19

**STATUTES**

11 U.S.C. § 101 *et. seq*..................................................................................... 14

11 U.S.C. § 108 ..................................................................................... 15, 16, 17

11 U.S.C. § 108(c) ............................................................................ 14, 15, 16, 18

11 U.S.C. § 1129 ........................................................................................... 3

11 U.S.C. § 362 ................................................................................... 14, 15, 16

11 U.S.C. § 502(a) ..................................................................................... 16

28 U.S.C. §159(a) ......................................................................................... 1

9 U.S.C. § 2 ............................................................................................... 9

9 U.S.C. § 3 .............................................................................................. 10

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

The Court has jurisdiction to hear an appeal from a ruling of the Bankruptcy Court pursuant to 28 U.S.C. §159(a) and 9 U.S.C. §16(a)(1)(B).

## STATEMENT OF ISSUES

1.      Whether the Bankruptcy Court erred in concluding that Sea-Pac had waived arbitration by delaying its initiation of arbitration, rather than permitting the arbitrator to properly determine such issue.  The Bankruptcy Court's findings of fact are reviewed by the Court under a clearly erroneous standard and conclusions of law are reviewed under a de novo standard.  *See In re Mintze*, 434 F.3d 222, 227-28 (3d Cir. 2006); *Halper v. Halper*, 164 F.3d 830, 835 (3d Cir. 1999).  The Bankruptcy Court's determination that Sea-Pac waived its right to arbitration represents a conclusion of law and is reviewed under a de novo standard.

2.      Whether the Bankruptcy Court erred in denying Sea-Pac's Motion to stay AWI's claims objection and enforce arbitration as the parties' bargained-for dispute resolution mechanism.  The Bankruptcy Court's findings of fact are reviewed by the Court under a clearly erroneous standard and conclusions of law are reviewed under a de novo standard.  *See In re Mintze*, 434 F.3d 222, 227-28 (3d Cir. 2006); *Halper v. Halper*, 164 F.3d 830, 835 (3d Cir. 1999).  The Bankruptcy Court's denial of the Stay Motion and refusal to enforce the parties' arbitration agreements represents a conclusion of law and is reviewed under a de novo standard.

## STATEMENT OF CASE

This is an appeal from an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), denying Sea-Pac Sales Company's

Motion (I) To Stay Objection By Armstrong World Industries, Inc. to Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, and (II) For Relief from the Automatic Stay or, in the alternative, for Relief from the Discharge Injunction.

Sea-Pac Sales Company ("Sea-Pac") and Armstrong World Industries, Inc. ("AWI," and, together with its affiliated debtors, the "Debtors") were parties to certain agreements under which Sea-Pac served as a regional distribution center to AWI's customers and received distribution rights for AWI's products within the northwestern United States. As a result of AWI's breaches of these agreements, Sea-Pac filed a proof of claim in AWI's bankruptcy case asserting damages for AWI's breaches. Upon AWI's objection to Sea-Pac's proof of claim, Sea-Pac was entitled to enforce its right to arbitrate disputes under the agreements and, in fact, asserted such rights. Because (i) the issue of arbitrability should have been decided by the arbitrator as a threshold matter; and (ii) the Bankruptcy Court should enforce the arbitration agreement (as there is no conflict between enforcement of the arbitration provisions and the Bankruptcy Code), the Bankruptcy Court erred in denying Sea-Pac's motion to stay the claims objection and enforce the arbitration provisions of the parties' agreements.

## PROCEDURAL HISTORY

On December 6, 2000, AWI and certain of its affiliated companies filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Bankruptcy Court.

On November 8, 2005, Sea-Pac filed an administrative priority claim against the Debtors' estates (the "Administrative Expense Claim"). *See* Appendix 1. Through its Administrative Expense Claim, Sea-Pac seeks payment for damages of

2

$4,500,000, plus interest and attorneys' fees, for breach of a Commercial Flooring Products Distributorship Agreement and a Residential Flooring Products Distributorship and Sales/Service Agreement. *See* Appendix 1. The Administrative Expense Claim has been designated as Claim 4854 by the Debtors' claims agent.

On July 20, 2006, the Debtors filed an objection to Sea-Pac's Proof of Claim (the "Objection"). *See* Appendix 2. By the Objection, the Debtors sought to disallow the Administrative Expense Claim or, in the alternative, reclassify the Administrative Expense Claim as a general unsecured claim. *See* Appendix 2, Objection ¶ 17.

On or about August 18, 2006, the Court entered the Findings of Facts, Conclusions of Law and Order Pursuant to 11 U.S.C. § 1129 and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming the Fourth Amended Plan of Reorganization of AWI (the "Confirmation Order"). By the Confirmation Order, the Bankruptcy Court confirmed the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as modified. *Id.*

On September 15, 2006, Sea-Pac filed its Answer To Objection Of Armstrong To The Proof Of Claim Of Sea-Pac Sales Company (the "Response") and Sea-Pac Company's Memorandum In Support Of Answer To The Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 responding to the Objection. *See* Appendix 5 and 6. On the same date Sea-Pac filed Sea-Pac Sales Company's Motion (I) To Stay Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, And (II) For Relief From The Automatic Stay Or, In The Alternative, For Relief From The Discharge Injunction (the

"Stay Motion") seeking to stay the Objection and lift the automatic stay to initiate arbitration. *See* Appendix 3. On October 6, 2006, AWI filed its objection to the Stay Motion (the "Stay Motion Objection"). *See* Appendix 4. On October 16, 2006, Sea-Pac filed its reply to the Stay Motion Objection (the "Reply"). *See* Appendix 7. By the Reply, Sea-Pac responded to the Stay Motion Objection and stated that (i) the issue of whether Sea-Pac waived its right to arbitration should be decided by the arbitrator; (ii) Sea-Pac had timely initiated arbitration and had not waived its rights to arbitration under the Agreements; and (iii) enforcement of the arbitration agreements was warranted. *Id.*

After considering argument on the Stay Motion at a hearing on October 23, 2006 (the "Stay Motion Hearing"), the Bankruptcy Court denied the Stay Motion, ruling that Sea-Pac was obligated to demand arbitration as soon as it was aware that a dispute arose and that its failure to do precluded it from invoking the arbitration clause.

> It seems to that the dispute arises as soon as Sea-Pac decides it has a claim and thinks Armstrong is in breach. . . [Y]our dispute [is] because you think that Armstrong has breached the contract because its appointed a second distributor is the date by which that 40-day period begins. Now, you may be able to extend that period by filing an appropriate motion with the Bankruptcy Court because you can't invoke that c[l]ause if the stay's in place, but your remedy then is to get relief from stay, state that you want to invoke the c[l]ause, and you've protected your time frame. Sea-Pac didn't do that. I really don't think Sea-Pac has preserved the right to arbitrate. I think you had one at the outset. I mean, the contract clearly provides the parties with that 40-day window, but I don't think it was timely invoked in this instance.

*See* Appendix 10, Transcript of Stay Motion Hearing at 18-19.

> I don't think the fact that the debtor had yet a period of time within which to assume a contract stops the 40-day arbitration statute of limitations that the parties agreed to because all of those pieces could have fallen into place at any point in that time line had Sea-Pac invoked arbitration and the debtor wanted to assume the contract … So the fact that Sea-Pac didn't invoke the arbitration

4

> simply let the dispute abide but it let it abide in litigation mode as opposed to arbitration mode. I think Sea-Pac has not properly invoked the right to arbitration under the contract. I should say, has untimely invoked the right to arbitration under the contract, and as a result, I don't think that there is any longer a viable arbitrable issue. So I don't need to get into where the initial dispute should be heard in the first instance because I think the untimeliness of the invocation of the right means you're here. So, I am going to deny the request for relief from stay or from the discharge injunction to let Sea-Pac arbitrate, because I think that the invocation has been untimely.

*See* Appendix 10, Transcript of Stay Motion Hearing at 20-22.

On November 20, 2006, the Bankruptcy Court entered its Order Denying Sea-Pac Sales Company's Motion To Stay Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, And (II) For Relief From The Automatic Stay Or, In The Alternative, For Relief From The Discharge Injunction. *See* Appendix 8.

On November 30, 2006, Sea-Pac timely filed its Notice of Appeal. *See* Appendix 9.

This is Sea-Pac's opening brief in support of its appeal.

## FACTUAL BACKGROUND

### A.    The Sea-Pac Agreements.

On or about February 15, 1999, AWI and Sea-Pac, a wholesale distributor based in Washington state, entered into (i) a Commercial Flooring Products Distributorship Agreement (the "Commercial Agreement") and (ii) a Residential Flooring Products and Distributorship Agreement and Sales/Service Center Agreement (the "Residential Agreement," and, together with the Commercial Agreement, the "Agreements"). *See* Appendix 2, Objection ¶ 2. Pursuant to the Agreements, AWI

5

appointed Sea-Pac to be a wholesale distributor of AWI's commercial vinyl floor covering products and residential flooring products, respectively, in the northwestern United States (with certain exceptions) (the "Territory"). *See Id.* AWI also appointed Sea-Pac to be a Regional Distribution Center ("RDC") at its Kent, Washington location to deliver products to certain designated customers located in the Territory. *See* Appendix 2, Objection ¶ 3. The Commercial Agreement granted Sea-Pac exclusive distribution rights within the Territory. *See* Appendix 2, Objection ¶ 4. The Commercial Agreement further provides that AWI could appoint additional distributors within the Territory if Sea-Pac failed to meet "annual mill shipment requirements" that had been set and timely disseminated as required by the Commercial Agreement. *See* Appendix 2, Objection ¶ 4

Sea-Pac received a letter dated February 28, 2003 from AWI advising Sea-Pac that AWI would appoint a second distributor within the Territory. *See* Appendix 2, Objection ¶ 6. Pacific Mat was thereafter appointed as a second distributor. *See* Appendix 2, Objection ¶ 6. Sea-Pac objected on numerous occasions to the appointment of a second distributor within the Territory. *See* Appendix 5, Response ¶ 6.

Both of the Agreements were to expire by their terms on February 15, 2004. *See* Appendix 2, Objection ¶ 7. Subsequently, by two letter agreements dated January 29, 2004 and February 9, 2004, the Agreements were further extended until March 31, 2004. *See* Appendix 5, Response ¶ 6. On or about August 25, 2004, AWI and Sea-Pac entered into interim letter agreements extending the Agreements until December 31, 2004. *See* Appendix 2, Objection ¶ 6.

6

**B.    Arbitration Provisions of Residential Agreement and Commercial Agreement.**

Sea-Pac and AWI agreed to resolve disputes arising under the Commercial Agreement and the Residential Agreement through arbitration.    The Commercial Agreement and the Residential Agreement each provide, in pertinent part:

> Armstrong and [Sea-Pac] agree to attempt to resolve promptly any dispute arising out of this Agreement by negotiation between executives of [Sea-Pac] and Armstrong who have authority to settle the dispute.  If any dispute is not resolved by negotiation within 30 days of its arising, then, at the written request of either party within an additional 10 days, the dispute shall be submitted to mediation with a mediator chosen jointly.

*See* Appendix 1, Attachment to Administrative Expense Claim, Commercial Agreement § 24, Residential Agreement § 29.  The Commercial Agreement and the Residential Agreement each further provide, in pertinent part:

> In the absence of a request for mediation, or if any dispute is not resolved within 90 days following a request for mediation, then, at the option of either party, such dispute shall be submitted to binding arbitration in Philadelphia, Pennsylvania, under the Commercial Arbitration Rules of the American Arbitration Association.

*See* Appendix 1, Attachment to Administrative Expense Claim, Commercial Agreement § 24; Residential Agreement § 29.  The parties were unable to resolve the disputes. Accordingly, the Agreements required arbitration of Sea-Pac's claims.

**C.    The Executory Contracts Claims Bar Date And The Sea-Pac Claim.**

By Order dated September 29, 2005 (the "Executory Contracts Bar Date Order"), the Bankruptcy Court set November 8, 2005 (the "Executory Contracts Bar Date") as the deadline by which all parties to "Previously Scheduled Contracts" must file proofs of claim for any and all claims against AWI relating to such Previously Scheduled

7

Contracts. *See* Appendix 5, Response ¶ 7. Each of the Agreements was identified in the Executory Contracts Bar Date Order as a "Previously Scheduled Contract," that is, as a contract that originally was listed by AWI on Schedule G to its Schedule of Assets and Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory. *See* Appendix 5, Response ¶ 7. In response to notice received by Sea-Pac regarding the Executory Contracts Bar Date, on or about November 8, 2005, Sea-Pac filed claim no. 4854 (the "Sea-Pac Claim") in the Debtors' bankruptcy cases. *See* Appendix 2, Objection ¶ 13. The Sea-Pac Claim asserts a claim against AWI in the amount of $4.9 million, plus interest and attorneys' fees. *See* Appendix 2, Objection ¶ 13. Sea-Pac alleges that a portion of the Sea-Pac Claim is entitled to administrative expense priority. *See* Appendix 2, Objection ¶ 13.

Part A of the Sea-Pac Claim seeks damages in an amount not less than $2 million for AWI's breach of the Commercial Agreement by its "appointment and provision of product to a second distributor within [Sea-Pac's] exclusive territory" (the "Commercial Agreement Breach Claim"). *See* Appendix 2, Objection ¶ 14. Sea-Pac asserts that "AWI's breach began in 2003 and such breach continued through the term and the extensions of [the Commercial Agreement] . . ." *See* Appendix 2, Objection ¶ 14. Sea-Pac also asserts that the Commercial Agreement Breach Claim is entitled to administrative expense priority because it is "attributable to [AWI's] post-petition breach of [the Commercial Agreement] which Sea-Pac was induced to perform pending [AWI's] assumption or rejection of it." *See* Appendix 2, Objection ¶ 14.

Part B of the Sea-Pac Claim asserts that AWI breached the Residential Agreement and "was unjustly enriched, by, among other conduct, failing to reimburse

8

Sea-Pac for RDC functions and services." (the "Residential Agreement Breach Claim"). *See* Appendix 2, Objection ¶ 15. Sea-Pac further asserts through the Sea-Pac Claim that "AWI's illegal conduct began in 2000 and continued through the term of and extension of [the Residential Agreement] and resulted in damages and/or restitution owed in or amount no less than $2.9 million." *See* Appendix 2, Objection ¶ 15. Moreover, the Sea-Pac Claim seeks an administrative expense claim of $2.5 million on the basis that $2.5 million of the $2.9 million in RDC functions and services for which AWI failed to reimburse Sea-Pac were provided postpetition and, therefore, constitute an administrative expense claim. *See* Appendix 2, Objection ¶ 15.

## ARGUMENT

I.    **The Federal Arbitration Act Represents A Strong Federal Policy Favoring Arbitration.**

The Federal Arbitration Act ("FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Federal courts have recognized that "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). To this end, "as a matter of federal law, any disputes concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24-25 (1983). In addition, a court has the power to stay a proceeding if the court determines that the arbitration clause applies to the dispute.[1]

## II.    The Bankruptcy Court Erred By Not Allowing The Arbitrator To Decide Whether Conditions To Arbitration Have Been Met.

In denying the Stay Motion, the Bankruptcy Court found that Sea-Pac's right to demand arbitration had been waived and, thus, the Objection was not subject to the parties' agreed upon arbitration process. In so doing, the Bankruptcy Court improperly usurped the role of the arbitrators.

The question of whether Sea-Pac has waived its right to arbitrate is a question to be determined by the arbitrators. The Supreme Court has held that whether conditions precedent to an obligation to arbitrate have been met, specifically including the timing of arbitration requests, are for the arbitrators to decide rather than the court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002); *MosesH. Cone Memorial Hospital*, 460 U.S. at 24-25.

In *Howsam*, a customer had submitted a dispute to arbitration before the National Association of Securities Dealers (the "NASD"). *Howsam*, 537 U.S. at 81-82. After the petitioner had submitted the matter to arbitration, brokerage firm Dean Witter filed suit in federal district court for a declaration that the matter was ineligible for arbitration because it was over six years old. *Id.* at 82. The district court dismissed the action by Dean Witter on the basis that the NASD arbitrator should interpret and apply the NASD arbitration rules. *Id.* The court of appeals reversed holding that a court rather than an arbitrator is the appropriate body to decide a question of arbitrability such as the one presented by Dean Witter. *Id.* The Supreme Court reversed the court of appeals,

---

[1] *See* 9 U.S.C. § 3.

holding that the interpretation of the arbitration agreement was properly a matter for the arbitrator. *Id.* at 85. Specifically, the court found that "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay or like defense to arbitrability." *Id.* at 84, quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25.

AWI has contended that its disputes with Sea-Pac should not be referred to arbitration because Sea-Pac has allegedly waived its rights to arbitrate by delaying its request to arbitrate. AWI's defense to arbitration is a question of arbitrability that falls squarely within the holding of *Howsam* and, thus, is a matter for the arbitrator's determination rather than the court's. Accordingly, the Bankruptcy Court erred in determining the threshold arbitrability issue of whether Sea-Pac had waived its rights to arbitration under the Agreements. Rather, the arbitrator should have decided whether Sea-Pac has waived arbitration as AWI contends.

III.    **Green Tree — Relied Upon By AWI — Also Holds That The Arbitrators Are to Interpret The Contract.**

In its opposition to the Stay Motion, the Debtors relied upon *Green Tree Financial Corp., nka Conseco Finance Corp. v. Bazzle*, 539 U.S. 444 (2003). Citing *Green Tree*, the Debtors argued that "certain gateway matters such as whether there is a binding arbitration clause and whether that applied to a particular dispute are within the province of the Court." *See* Appendix 10, Transcript of Stay Motion Hearing, p. 10. However, AWI's reliance on *Green Tree* in its opposition to arbitration is misplaced.

The issue before the court in *Green Tree* was whether there was an arbitration clause that forbid class arbitration. *Green Tree*, 539 U.S. at 447. In *Green Tree*, the court merely decided the issue of whether as a contractual matter, the arbitration clause at issue was enforceable. *Id.* at 452-53. Unlike *Green Tree*, here there is no issue

11

that the parties' disputes fall within the scope of the arbitration provisions. Indeed, AWI has never disputed the existence or validity of the arbitration provisions in the Agreements. Moreover, AWI has never disputed that the parties' disputes fall within the purview of the arbitration provisions in the Agreements. Rather, the only issue raised before the Bankruptcy Court was whether, as a contractual matter, the arbitration provisions were enforceable as a result of Sea-Pac's alleged waiver. Consequently, there is no question that a valid, binding arbitration agreement covers the parties' disputes and AWI's reliance on *Green Tree* is misplaced.

Not only does *Green Tree* not support AWI's position, the Supreme Court's holding in *Green Tree* actually bolsters Sea-Pac's position that interpretation of an arbitration agreement should be made by the arbitrator in the first instance. While the *Green Tree* decision was a plurality decision, a majority of the court agreed that interpretation of the arbitration agreement at issue should have been made by the arbitrator in the first instance. *Green Tree*, 539 U.S. at 451, 455. Under *Green Tree*, the scope of the arbitration provision is a matter of contract interpretation that is subject to determination by the arbitrator. *Id.* Thus, under the authority of *Green Tree* and contrary to AWI's argument before the Bankruptcy Court, AWI's waiver defense to arbitration should have been determined by the arbitrator.

## IV.    The Bankruptcy Court Erred In Denying The Stay Motion And Refusing To Enforce The Arbitration Agreements.

### A.    Sea-Pac Timely Initiated Arbitration.

Even if the Bankruptcy Court, rather than the arbitrators, properly entertained the issue of whether arbitration had been waived or was somehow untimely, the Bankruptcy Court erred in finding that Sea-Pac's initiation of arbitration under

Agreements was somehow untimely.[2]  Rather, Sea-Pac's request for arbitration was timely under the Agreements.

Pursuant to the Agreements, Sea-Pac was required to negotiate the dispute or request mediation within 40 days of the dispute arising.  *See* Appendix 1, Attachment to Administrative Expense Claim, Commercial Agreement § 24, Residential Agreement § 29.[3]  Once negotiation was unsuccessful and in the absence of a request for mediation, Sea-Pac then had an additional 30 days to initiate arbitration before either of the parties were entitled to litigate the dispute.  *See* Appendix 1, Attachment to Administrative Expense Claim, Commercial Agreement § 25, Residential Agreement § 30.  Thus, Sea-Pac had a total of 70 days from the time the dispute arose to seek arbitration of its claims.

Sea-Pac raised arbitration at the first opportunity following the Objection. The dispute regarding Sea-Pac's claim first arose on July 23, 2006 – the date Sea-Pac received the Objection.  Prior to July 23, 2006, Sea-Pac's claim was deemed allowed under section 502(a) of the Bankruptcy Code ("A claim . . . , proof of which is filed under section 502 of this title, is deemed allowed, unless a party in interest . . . objects.").  *See In re Oakwood Homes Corp.*, 449 F.3d 588, 603-04 (3d Cir. 2006).  Accordingly, until the Debtors filed the Claims Objection on July 20, 2006, Sea-Pac had an allowed claim and no dispute existed regarding Sea-Pac's claim.

---

[2]  The Bankruptcy Court's decision appears to be based entirely on its interpretation of the Commercial Agreement and AWI's breach of the non-exclusivity provision.  *See* Appendix 10, Transcript of Stay Motion Hearing pp. 19-20.  However, there is no similar provision in the Residential Agreement and it is not clear what, if any, basis the Bankruptcy Court had for not enforcing the arbitration provisions in the Residential Agreement.

[3]  At the Stay Motion Hearing, the Bankruptcy Court stated that Sea-Pac was obligated under the Agreements to demand arbitration as soon as Sea-Pac learned of AWI's breach.  *See* Appendix 10, Transcript of Stay Motion Hearing pp. 19-20.  However, as noted above the Agreements do not so provide.

Once the Objection was received on July 23, 2006, Sea-Pac had 70 days to seek arbitration. Sea-Pac filed its motion seeking arbitration on September 30, 2006 – within the 70-day time period. Requiring Sea-Pac to seek arbitration prior to the Objection would have necessitated Sea-Pac prematurely moving for relief from the automatic stay to request arbitration before it even knew there was a dispute regarding the Claim. Accordingly, Sea-Pac's request for arbitration was timely under the Agreements and the Bankruptcy Court should have compelled arbitration of Sea-Pac's claims.

**B.    The Time To Initiate Arbitration Was Suspended By 11 U.S.C. § 108(c).**

Even assuming that Sea-Pac did not timely initiate arbitration and the Bankruptcy Court properly entertained AWI's waiver defense, the automatic stay of Bankruptcy Code § 362[4] prohibited Sea-Pac from initiating arbitration under the Agreements. Indeed, at the hearing on the Stay Motion, the Bankruptcy Court noted that Sea-Pac was prevented from demanding arbitration by operation of the automatic stay. *See* Appendix 10, Transcript of Stay Motion Hearing, p. 19. Where a creditor is stayed from commencing or continuing an action against a debtor in bankruptcy, Bankruptcy Code § 108(c) extends the time for the creditor to take action during the stay plus an additional 30 days thereafter.[5] The Bankruptcy Court failed to consider § 108 in determining whether Sea-Pac timely asserted its right to arbitration.

---

[4] All statutory section references unless otherwise noted are to the United States Bankruptcy Code, 11 U.S.C. § *101 et. seq.* unless otherwise noted.

[5] Section 108(c) of the Bankruptcy Code provides:

(c) . . . [I]f applicable non bankruptcy law . . . or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a civil action against the debtor . . . and such period has not

Any demand for arbitration by Sea-Pac would be a commencement of a civil proceeding and thus stayed by operation of § 362. *See In re Kaiser Aluminum Corp.*, 303 B.R. 299 (D. Del. 2003). Moving for relief from the automatic stay, as suggested by the Bankruptcy Court, would not necessarily have preserved Sea-Pac's contractual right to arbitrate. First, Sea-Pac may not have been able to obtain relief from the automatic stay in time to timely invoke arbitration. Second, if relief from the automatic stay were denied, under the Bankruptcy Court's analysis Sea-Pac would lose its right to arbitrate.

Sea-Pac's contractual right to demand arbitration should not be affected by whether it could or could not obtain relief from the automatic stay. Indeed, this is precisely the situation that Bankruptcy Code § 108 was intended to address. Congress' purpose in enacting § 108(c) was to prevent prejudice to creditors from their inability to timely commence civil proceedings under applicable nonbankruptcy law because of the pendency of the stay. *In re Morton*, 866 F.2d 561, 566 (2d Cir. 1989) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 30 (1978), H.R. Rep. No. 595, 95th Cong., 2d Sess. 318 (1978), reprinted in 1978 U.S.C.C.A.N. 5787). There is an "obvious fit between the provisions in § 362(a)(1) regarding the application of the automatic stay to a "continuation" of a judicial "proceeding against the debtor" and the language in § 108(c)

---

expired before the date of the filing of the petition, then such period does not expire until the later of – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim.

11 U.S.C. § 108.

regarding the extension of applicable nonbankruptcy deadlines relevant to "continuing a civil action ... against the debtor" until after the stay has expired or is terminated." *In re Hoffinger Industries, Inc.*, 329 F.3d 948, 952 (8th Cir. 2003)(finding under § 108 an appeals deadline that otherwise expired during the bankruptcy was extended until 30 days after the notice of the termination of the automatic stay.) Thus a party that is stayed by § 362(a)(1) from enforcing its applicable non-bankruptcy rights does not lose them but may enforce them to extent permitted by § 108(c).

The effect of § 108(c) was thus to preserve Sea-Pac's ability to demand arbitration for a period up to 30 days following the termination of the automatic stay. When the debtor objected to Sea-Pac's claim, the automatic stay was sill in effect and the Debtor was objecting to a claim, which up until that point, had been deemed allowed under § 502(a). Concurrently, with its response to the Debtors' objection, Sea-Pac moved for relief from the automatic stay to invoke the arbitration clause and request the underlying state court contract issues be resolved in arbitration as the parties had contractually agreed.

There is nothing in §§ 108 or 362 that requires a creditor whose rights have been stay by operation of § 362, to move for relief from stay, as the bankruptcy court opined. To the contrary, the statutes provide, that any applicable time limits are suspended until, relief from stay is actually granted. *See New Pentax Film, Inc.*, 936 F.Supp. 142, 148 (S.D.N.Y. 1996) (holding the thirty period in section 108 runs from the date relief from stay actually begins to run and not from the date the creditor first could have moved for relief from stay). The bankruptcy court's ruling that Sea-Pac lost the right to demand arbitration when it did not move for relief from stay when Sea-Pac first

16

learned of the breach, which gave rise to one of the claims asserted in its proof of claim, is contrary to the express language of § 108 and the cases decided thereunder. Until such time as Sea-Pac is granted relief from stay to invoke the arbitration clause in the two contracts, it may timely invoke its right to demand arbitration as provided for in the contracts. The Bankruptcy Court erred when it ruled that Sea-Pac had to move for relief from stay to invoke the arbitration clause as soon as it learned of a possible breach in order to preserve its contractual right to arbitrate.

C.    **The Failure to Initiate Arbitration within the Time Set Forth in the Agreements does not Amount to a Waiver of Arbitration Rights.**

Even assuming arguendo that Sea-Pac failed to timely demand arbitration, it is well-settled in the Third Circuit that such failure does not amount to waiver of arbitration rights, particularly without a demonstration that the other party has suffered prejudice thereby.

It is well-established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25. Moreover, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The Bankruptcy Court erred in finding that AWI met its burden in opposing arbitration.

AWI's argument before the Bankruptcy Court that Sea-Pac has waived arbitration by not timely requesting arbitration is unsupported by the language of the

17

Agreements. Relying on paragraphs 25 and 30 of the Commercial Agreement and Residential Agreement, respectively, AWI argued that Sea-Pac had waived its arbitration rights because it did not initiate arbitration within 30 days of arbitration becoming an option.[6]

The Debtors, and the Bankruptcy Court, misinterpret the arbitration provisions of the Agreements. The provisions of the Agreements relied upon by the Debtors do not state that arbitration is no longer available after expiration of the 30-day period. Rather, paragraphs 25 and 30 of the Commercial Agreement and Residential Agreement, respectively, indicate that either party may pursue litigation rather than arbitration once the 30 day period expires.[7] They do not, as suggested by the Debtors and implicitly found by the Bankruptcy Court, mean that the parties are precluded from ever seeking arbitration once the 30 day time period expires or, as mistakenly characterized by the Debtors, that such provisions "provide a deadline by which a party must elect arbitration." *See* Appendix 4, Stay Motion Objection ¶ 15. Notably, the provisions relied upon by the Debtors do not state that the parties' right to arbitration is waived or forfeited if not asserted within the 30 days.

Assuming arguendo, as the Bankruptcy Court ruled that Sea-Pac's right to arbitrate was triggered as soon as it was aware of a dispute, in the context of this chapter

---

[6]  *See* Appendix 4, Stay Motion Objection ¶ 15. The Debtors argue that the parties could "submit disputes to arbitration **if and only if** arbitration was sought within the appropriate time frame, after which either party had the express right to initiate litigation." *See* Appendix 4, Stay Motion Objection ¶ 16. The Debtors argument is patently misleading. Nowhere in the Agreements does the Debtors' suggested limitation on seeking arbitration appear. Indeed, the Debtors cite to no provisions in the Agreements expressly providing that the right to arbitration is waived if not asserted within the 30 days. *See id.*

[7]  Paragraphs 25 and 30 of the Commercial Agreement and Residential Agreement, respectively, both provide in pertinent part that: "If arbitration is not initiated within 30 days of its becoming an option, as provided above, either party <u>may</u> resort to litigation . . ." (emphasis added). <u>*See*</u> Appendix 1.

18

11, proceeding, Sea-Pac could not invoke the arbitration provisions in the agreement because of the automatic stay, as the bankruptcy court recognized.   Sea-Pac's only recourse in response to the Executory Claims Bar Date was to file its proof of claim or run the risk of losing its rights.   Sea-Pac at this point did not know whether AWI intended to dispute its claim.   Indeed, AWI at the time Sea-Pac filed its proof of claim had then been reimbursing Sea-Pac for its RDC claims at the same rates upon which the Sea-Pac proof of claim was based.   When AWI objected to the Sea-Pac claim, Sea-Pac  filed its Stay Motion, within the 70 days of AWI objection as required by the arbitration provisions in the two agreements.

This dilemma which Sea Pac finds itself is precisely the situation § 108 was intended to address.   Recognizing that a petition in bankruptcy could sometimes give a debtor an unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimants action expired, congress acted to solidly preserve the rights of a party stayed from commencing an action against the debtor because of the bankruptcy case.   *Morton*, 866 F.2d at 566. As argued above, the court should hold that § 108 suspended the time in which Sea-Pac could seek arbitration.   However, even it is assumed Sea-Pac's time to initiate arbitration under the Agreements was not suspended by operation of § 108(c).   Sea-Pac still had the right to seek arbitration under the Agreements at the time it filed the Stay Motion since AWI neither party had yet resorted to litigation[8] and Sea-Pac under the agreements still had the right to demand arbitration.

---

[8] In absence of a timely demand for arbitration, the arbitration clauses in the two agreements permit either "party to resort to litigation in cases not involving a federal question, solely in the Courts of the

Moreover, the Third Circuit has held that a waiver of arbitration rights is not to be lightly inferred absent a showing of prejudice. *Shubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.)*, 335 B.R. 556, 565 (Bankr. D. Del. 2005). *Winstar*, like the present case, involved a contractual limitation specifying the time in which arbitration had to be invoked. *Id.* When the defendants invoked an arbitration agreement in response to the Trustee's adversary proceeding, the Trustee argued that the demand was untimely. *Id.* at 561. Nonetheless, the court in *Winstar* granted the motion to stay the adversary pending arbitration. *Id.* at 568-69. The court held:

> [T]he Trustee also implies that, since Wellspring did not seek arbitration until after the Trustee commenced this adversary proceeding, Wellspring, in essence, waived the option to have the Matter determined at arbitration. "The Third Circuit has established that prejudice is the touchstone for determining whether the right to arbitrate has been waived. The parties trying to avoid arbitration has the burden of establishing prejudice." .

*Winstar*, 335 B.R. at 567 (quoting *In re Fleming Co., Inc.*, 325 B.R. 687, 691 (Bankr. D. Del. 2005) (quoting *Hexworth v. Binder, Robinson and Co.*, 980 F.2d 912, 925 (3rd Cir. 1992)).

"[A] party cannot avoid arbitration because of the other party's failure to comply with the negotiation steps of a grievance procedure as long as that other party acted in good faith to preserve its right to arbitration." *Winstar*, 335 B.R. at 568 (quoting *Welborn Clinic v. Med Quist, Inc.*, 301 F.3d 634, 638 (7th Cir. 2002)). Sea-Pac has acted in good faith to preserve its right to arbitrate. Consequently, the Bankruptcy Court

---

Commonwealth of Pennsylvania, County of Lancaster. It is undisputed neither party initiated litigation pursuant to the arbitration clauses in the two agreements.

should not have inferred waiver of Sea-Pac's right to arbitrate without a demonstration of prejudice – which AWI plainly failed to do. *See Winstar*, 335 B.R. at 568.

> **D.    There is Not Conflict Between the Arbitration Clause and the Policies of the Bankruptcy Code and the Bankruptcy Court Should Have Enforced the Arbitration Clause.**

The agreements forming the basis of Sea-Pac's claims, the Commercial Agreement and the Residential Agreement, both contain mandatory arbitration provisions as cited above. There is no question that Sea-Pac's claims are subject to these mandatory arbitration provisions.

Due to the strong federal policy in favor of arbitration as reflected in the above FAA provisions, a court has the discretion to refuse to enforce a valid arbitration provision only if "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *See In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006) (citing *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987)). In other words, the court lacks discretion to deny enforcement of a valid arbitration clause unless the party opposing arbitration can establish congressional intent "to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (citing *Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1156-57 (3d Cir. 1989)). Furthermore, the court may determine congressional intent through an analysis of the statutory text, its legislative history or "an inherent conflict between arbitration and the statute's underlying purposes." *Id.*

Although *Hays* involved a non-core proceeding, the Third Circuit held in *Mintze* that the *Hays* standard as set forth above applies with equal force to core proceedings. *Id.* at 230. In applying the *Hays* standard, the *Mintze* court did not find any

evidence of the requisite congressional intent in the text or legislative history of the Bankruptcy Code; therefore, the court had to determine whether there was an inherent conflict between the Bankruptcy Code and arbitration. *Id.* at 231. As there were no claims created by the Bankruptcy Code at issue in *Mintze*, the court found no inherent conflict between the statute and arbitration. *Id.; see also In re Erie Power Technologies, Inc.*, 315 B.R. 41, 45 (Bankr. E.D. Pa. 2004) (the underlying causes of action arose from the parties' contract, and, therefore, the court concluded that there was no conflict between enforcement of the arbitration provision and the purposes of the Bankruptcy Code).

While core claims that arise under the Bankruptcy Code – such as fraudulent transfer claims or preference claims – may not be sent to arbitration, *see OHC Liquidation Trust,* 2005 WL 670310 at *4 (Bankr. D. Del. March 18, 2005)[9], the enforcement of arbitration agreements with respect to other core claims is discretionary. *See Hays,* 885 F.2d at 1155; *Hylland v. Northwestern Corp. (In re Northwestern Corp.),* 319 B.R. 68, 75 (D. Del. 2005); *CGE Ford Heights, LLLC v. Browning-Ferris Indus. Of Illinois, Inc.*, 208 B.R. 825, 827 (Bankr. D. Del. 1997).

With respect to core claims, a court may decline to compel arbitration only if it finds that enforcement of the arbitration clause would conflict with the policies of the Bankruptcy Code, or where the dispute underlying the arbitration is based on rights created by the Bankruptcy Code. *See Shubert v. Wellspring Media, Inc. (In re Winstar Communs., Inc.),* 335 B.R. 556 (Bankr. D. Del. 2005). The burden is on the party

---

[9]    A copy of this opinion is attached hereto as <u>Exhibit A</u>.

opposing arbitration to demonstrate why the court should not enforce an arbitration clause. *See id.* In *Winstar*, the court noted that:

> The Debtors, however, in agreeing to the arbitration clause, determined that arbitration, and not this Court, would be the avenue through which this issue should be addressed. Absent evidence that arbitration would jeopardize the objectives of the Bankruptcy Code, the Court gives deference to the procedures agreed upon by the parties for resolving this dispute. *See Hays*, 885 F.2d at 1162 n.23 (*citing Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974)) ("An agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause. Moreover, based on the recent Supreme Court arbitration cases we have previously reviewed, the national policy favoring enforcement of agreements to arbitrate is at least as strong or stronger than that favoring enforcement of forum selection agreements.").

335 B.R. at 566-67. As noted by the Third Circuit in *Mintze*, absent a demonstration by the party opposing arbitration of an intent by Congress to preclude waiver of judicial rights, the bankruptcy court lacks discretion and must enforce an arbitration provision. *See Mintze,* 434 F.3d at 231.

In this proceeding, as in *Mintze*, the underlying claims did not arise from the Bankruptcy Code; rather, the claims arose from the contracts between the parties. Moreover, enforcement of the arbitration provisions would not conflict with the Bankruptcy Code. Therefore, as no conflict exists between the Bankruptcy Code and enforcement of the arbitration provisions, the Bankruptcy Court was required enforce the arbitration provisions.

Assuming arguendo that the Bankruptcy Court had discretion in determining whether to enforce the arbitration provisions, in exercising its discretion to enforce the arbitration provisions of the Commercial Agreement and the Residential

23

Agreement the Bankruptcy Court was required to consider: (i) whether a claim is debtor-derivative, *i.e.*, whether the trustee stands in the shoes of the debtor for the purposes of a contract containing an arbitration clause; or (ii) whether referring the core matter to arbitration would conflict with the text, legislative history, or purpose of the Bankruptcy Code. *See Hays*, 885 F.2d at 1155-57. In determining whether arbitration of a claim would conflict with the Bankruptcy Code, courts will consider (i) whether requiring the debtor to pursue arbitration would expend already limited resources in litigating an action in geographically diverse forum, *see Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*, 264 B.R. 344, 361-64 (Bankr. D. Del. 2001); (ii) whether arbitration is the most effective and efficient forum to resolve issues related to a bankruptcy case, as the efficient resolution of claims an conservation of the estate's assets benefits creditors, *id.* (iii) whether resolution of the claim would determine the priorities of claims, *see In re Glen Eagle Square, Inc.*, Bankr. No. 91-10796, 1991 WL 71782, at *1 (Bankr. E.D. Pa. May 1, 1991)[10]; and (iv) whether referring claims to arbitrators who have little experience in bankruptcy matters would lead to inconsistent results. *See OHC*, 2005 WL 670310, at *5. The Bankruptcy Court failed to properly consider these factors.

  Requiring AWI to pursue arbitration in Philadelphia, Pennsylvania, twenty miles away from the Bankruptcy Court, in accordance with the underlying agreements would not expend AWI's resources through litigation in a geographically diverse forum. *See, e.g., Winstar*, 335 B.R. at 567 (finding that costs of arbitration of dispute in New York versus proceeding in Delaware bankruptcy court not significantly greater). With respect to the second factor, arbitration, as the parties' chosen dispute resolution

---

[10]  A copy of this opinion is attached hereto as <u>Exhibit B</u>.

mechanism, is an efficient and economical forum to resolve Sea-Pac's claims.[11] Notably, the Commercial Agreement and the Residential Agreement are AWI's form agreements and, consequently, AWI cannot now complain about the enforcement of arbitration provisions that they insisted upon. Moreover, an effect on the bankruptcy estate and creditors will be negligible here since the Debtor's plan of reorganization has been approved and its reorganization plan consummated and the outcome of this dispute will not impact the amounts that creditors will receive in this bankruptcy. With respect to the third factor, arbitration of Sea-Pac's claims will not determine the priority of the claims – merely the amount. Finally, arbitration will not lead to any inconsistent result with the bankruptcy proceedings. Accordingly, the Bankruptcy Court erred in not staying the Objection pending arbitration.

---

[11]    As noted by the Court in *Winstar*, the Court should give "deference to the procedures agreed upon by the parties for resolving this dispute." *Winstar*, 335 B.R. at 567 (citing *Hays*, 885 F.2d at 1162 n. 23).

## CONCLUSION

The Bankruptcy Court erred in denying the Stay Motion.  First, two recent Supreme Court cases hold that if there is a contract with a valid arbitration clause, that questions of contractual interpretation, including whether a party has timely requested arbitration, is to be determined by the arbitrators and not the court.  Accordingly, the Bankruptcy Court usurped the authority of the arbitrators.  Second, under applicable authority in this District, the Bankruptcy Court erred in not staying the objection and compelling arbitration as the parties' bargained-for dispute resolution mechanism absent proof by AWI that arbitration of this dispute would irreconcilably conflict with the policies of the Bankruptcy Code.  Consequently, the Court should reverse the order, compel arbitration under the Commercial Agreement and the Residential Agreement, and stay the Objection pending completion of arbitration.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware  19801
(302) 425-0430

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

26

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Sea-Pac Sales Company*

Dated: February 5.

# EXHIBIT A

Westlaw.

Not Reported in B.R.                                                                                    Page 1

Not Reported in B.R., 2005 WL 670310 (Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44 Bankr.Ct.Dec. 127
**(Cite as: Not Reported in B.R.)**

**H**
In re Oakwood Homes Corp.Bkrtcy.D.Del.,2005.
United States Bankruptcy Court,D. Delaware.
In re: OAKWOOD HOMES CORPORATION, et
al., Debtors.
OHC Liquidation Trust, by and through Alvarez &
Marshal, LLC, the OHC Liquidation Trustee,
Plaintiff,
v.
AMERICAN BANKERS INSURANCE CO.,
Defendant.
**No. 02-13396PJW, ADV.No. 04-56928PBL.**

March 18, 2005.

Michael G. Busenkell, Wilmington, DE, for Debtor.

*MEMORANDUM OPINION*
LINDSEY, Bankruptcy J.
*\*1 Before the Court is the Motion of American
Bankers Insurance Company (hereafter referred to
as "Defendant") for Dismissal in Favor of
Arbitration. For the reasons stated herein, the
Motion will be denied.

**I. *BACKGROUND***

The Debtors, Oakwood Homes Corporation, and
certain of its affiliates (hereafter referred to as "
Debtors"), filed voluntary petitions for relief under
Chapter 11 of the Bankruptcy Code on November
15, 2002. Debtors' Second Amended Joint
Consolidated Plan of Reorganization was confirmed
on March 31, 2004. The Plan provided for the
creation of a liquidating trust and vested the trust
with the right to pursue and prosecute any and all
avoidance actions on behalf of the beneficial
interests in the trust.

The OHC Liquidation Trust (hereafter referred to as
"Plaintiff"), commenced this adversary proceeding
by filing a complaint on November 12, 2004 against

Defendant. Plaintiff seeks to avoid and recover
certain allegedly preferential transfers pursuant to §
547(b), or alternatively, to avoid and recovery any
fraudulent transfers pursuant to §§ 548 and 544(b);
to preserve any avoidable transfers for the benefit of
Debtors' estates pursuant to § 551; and to disallow
any claims of Defendant until the amount of the
avoidable transfers are repaid to the OHC
Liquidation Trust pursuant to § 502(d).[FN1] The
complaint prayed for recovery of an amount not less
than $9,760,004.62. Defendant responded to the
complaint with this Motion to Dismiss which was
filed on December 20, 2004. Briefing has been
completed and on February 15, 2005, Defendant
appropriately filed a Notice of Completion of
Briefing. The Motion is therefore, ripe for
disposition at this time.

> FN1. Hereinafter, references to statutory
> provisions by section number only will be
> to provisions of the Bankruptcy Code
> unless the contrary is clearly stated.

**II. *JURISDICTION AND VENUE***

This Court has jurisdiction over this adversary
proceeding and the parties thereto, pursuant to 28
U.S.C. §§ 1334 and 157(b)(1), and this is a core
proceeding pursuant to 28 U.S.C. § 157(b)(2), (A),
(B), (F), (H) and (O). Venue is proper in this
jurisdiction pursuant to 28 U.S.C. § 1409.

**III. *DISCUSSION***

Defendant American Bankers Insurance Company
has filed its Motion to Dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6), made applicable
to this adversary proceeding by Federal Rule of
Bankruptcy Procedure 7012(b), seeking an order
dismissing this action in favor of arbitration.
Defendant asserts that it and Oakwood Mobile
Homes, Inc., one of the debtors in this bankruptcy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 2005 WL 670310 (Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44 Bankr.Ct.Dec. 127
**(Cite as: Not Reported in B.R.)**

case, are parties to a certain Insurance Services Agreement (hereafter, the "Agreement"). Section V of the Agreement provides, in material part, that " [i]f any dispute shall arise between the [Debtor] and [Defendant] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, the dispute shall be settled by arbitration in accordance with the rules of the American Arbitration Association." (Exhibit A to American Banker Insurance Co.'s Opening Brief in Support of the Motion to Dismiss in Favor of Arbitration, at 6)

**\*2** Defendant argues that all of the claims made by Plaintiff are covered by § V of the Agreement, and therefore, the complaint fails to state a claim upon which relief can be granted "because all of the claims purportedly asserted in the Complaint are subject to mandatory arbitration and must be referred to arbitration pursuant to 9 U.S.C. §§ 2 and 3." (Defendant's Brief in Support of the Motion to Dismiss, at 2)

Alternatively, Defendant asserts that it is well established in this district, that this Court is permitted to exercise its discretion to dismiss an adversary proceeding in favor of arbitration, notwithstanding the fact that this is a core proceeding.[FN2] (Id. at 5) Defendant has urged this Court therefore, to use that discretion and dismiss in favor of arbitration because it will be more cost effective, more expeditious than litigation, and the panel of arbitrators will presumably be more familiar with the insurance industry and the relationships involved in this dispute.

> FN2. *See, SFC New Holdings, Inc. v. Earthgrains Co. (In re GWI, Inc.),* 269 B.R. 114, 117 (Bankr.D.Del.2001) (holding that "where a matter is a core proceeding, it is left to the bankruptcy court's discretion to decide whether to refer the matter to arbitration.")

Conversely, Plaintiff opposes the Motion to Dismiss arguing that a trustee cannot be compelled to arbitrate fraudulent conveyance claims under §§ 544(b) and 548, as well as, any other type of claim

that the trustee brings on behalf of the creditors of the bankruptcy estate, including preference claims. (Plaintiff's Answering Brief in Opposition to Defendant's Motion for Dismissal in Favor of Arbitration, at 2) Plaintiff asserts that a trustee, who stands in the shoes of the creditors, cannot be required to arbitrate disputes pursuant to an agreement that neither the creditors nor the trustee entered into. Plaintiff also contends that " [b]ankruptcy courts enjoy significant discretion to deny arbitration of core bankruptcy-created claims." (Id, at 4) Plaintiff then discusses certain factors that courts have typically looked to when determining whether to exercise their discretion in favor of dismissal. Those factors include: the importance of a centralized resolution of purely bankruptcy issues, the degree to which specialized bankruptcy knowledge is required to resolve the dispute, the need to protect creditors from piecemeal litigation, whether the parties have commenced arbitration outside of bankruptcy, and whether arbitration would cause undue delay in the administration of the case. (Plaintiff's Answering Brief, at 4) (citations omitted)

The leading Third Circuit precedent on the issue of mandatory arbitration in the bankruptcy context is *Hays and Company v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3rd Cir.1989). In that case, the Chapter 11 trustee brought an action against a securities broker-dealer, asserting various claims under federal and state securities laws, as well as common law claims for breach of contract and fiduciary duties, gross negligence and conversion, claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), and equitable claims pursuant to § 544(b) of the Bankruptcy Code under the Uniform Fraudulent Conveyances Act as adopted by New York, New Jersey and Pennsylvania. The broker-dealer/defendant filed a motion to compel arbitration under its pre-petition agreement with the debtor. The District Court denied the motion, holding that it had discretion to nullify a mandatory arbitration clause, and stating that since neither the trustee nor the creditors represented by him signed the arbitration clause, they should not be bound by its terms. *Hays,* 885 F.2d at 1151.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                          Page 3

Not Reported in B.R., 2005 WL 670310 (Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44 Bankr.Ct.Dec. 127
**(Cite as: Not Reported in B.R.)**

*\*3* On appeal, the Third Circuit Court of Appeals held that the District Court was correct denying the motion with respect to the § 544(b) claims, because those claims were not derivative of the debtor and therefore not subject to arbitration. Initially, *Hays* noted that the United States Supreme Court held that an arbitration agreement binds the parties who execute it and it is the parties' intentions that must then be carried out. *Id.,* at 1155 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)). The *Hays* Court therefore held that " there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it." *Id.,* at 1155. The Court noted that its conclusion in this regard was supported by *Allegaert v. Perot,* 548 F.2d 432 (2nd Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977), where the trustee's complaint also contained several causes of action unique to the trustee under the Bankruptcy Act and not derivative of the bankrupt. In its discussion of *Allegaert,* the Court stated:
(With respect to those of the trustee's claims, such as fraudulent and preferential transfers, that arose under the Bankruptcy Act, the court stated that " [t]hese are statutory causes of action belonging to the trustee, not to the bankrupt, and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee enforces."). It follows that the trustee cannot be required to arbitrate its section 544(b) claims and that the district court was not obliged to stay them pending arbitration.

*Hays,* 885 F.2d at 1155 (quoting *Allegaert,* 548 F.2d at 436).

With regard to the remaining issues, i.e., the non-core securities law, common law and RICO claims, *Hays* refers to a number of decisions in which debtors in bankruptcy had been held bound by mandatory arbitration agreements entered into by them pre-petition, and held "that the trustee is bound to arbitrate all of its claims that are derived from the rights of the debtor under section 541." *Id.,* at 1154.

*Hays* next examined the provisions of the Bankruptcy Code and determined that the Code does not conflict with the Arbitration Act or with the enforcement of a valid arbitration clause in a non-core adversary proceeding. *Id.,* at 1156. Therefore, *Hays* found that the District Court lacked discretion to deny enforcement in such a case.

While it is clear that bankruptcy courts do not possess discretion with respect to enforcement of an arbitration clause in a non-core adversary proceeding, it does appear manifest that such discretion exists with respect to core adversary proceedings. *In the Matter of National Gypsum Company,* 118 F.3d 1056 (5th Cir.1997) (core declaratory judgment action by debtor against liability insurer to collect pre-confirmation debts); *In re Mintze,* 288 B.R. 95 (Bankr.E.D.Pa.2003) (core proceeding to determine validity, priority and extent of lien); *In re APF Co.,* 264 B.R. 344 (Bankr.D.Del.2001) (core proceeding to recover capitation payments withheld by HMO); *American Freight Sys. v. Consumer Prods. Assocs. (In re American Freight Sys.),* 164 B.R. 341, 347 (D.Kan., 1994) (core proceeding to collect freight undercharges); *Sacred Heart Hosp. v. Independence Blue Cross (In re Sacred Heart Hosp.),* 181 B.R. 195, 202 (Bankr.D.Pa., 1995) (core proceeding).

*\*4* Although the issues before the *Hays* Court, except for the § 544(b) claims, were clearly non-core, and therefore arbitrable, the Court also made reference to circumstances in which discretion could be exercised on the issue of enforcement of an arbitration agreement. After discussing the Bankruptcy Reform Act of 1978, *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.W. 50, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (generally ruling the jurisdictional provision of the 1978 Act unconstitutional), the 1984 amendments to the 1978 Act, and various Supreme Court cases interpreting the Arbitration Act, the *Hays* Court stated:
[W]e can no longer subscribe to a hierarchy of congressional concerns that places the bankruptcy law in a position of superiority over [the Arbitration] Act. The message we get from these recent cases is that we must carefully determine

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 2005 WL 670310 (Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44 Bankr.Ct.Dec. 127
**(Cite as: Not Reported in B.R.)**

whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code.

*Hays,* 885 F.2d at 1161.

In this adversary proceeding, Plaintiff urges this Court to hold that the § 547 and § 548 claims asserted by it in its complaint are entitled to precisely the same treatment as the § 544(b) claims, on the grounds that they are purely core statutory claims not derivative of the Debtor. Plaintiff contends that the § 547 and § 548 claims are those that belong solely to the trustee, and are asserted for the benefit of the creditors of the debtor. As a result, they are not arbitrable.

In *In re EXDS, Inc.,* 316 B.R. 817, (Bankr.D.Del.2004), Judge Peter J. Walsh of this Court held without discussion that a § 548 frau dulent conveyance claim, like a § 544(b) claim, was created by the Bankruptcy Code, and that therefore, under *Hays,* he could not require such claims to be submitted to arbitration. Although the *Hays* Court referred to the trustee's statutory causes of action in *Allegaert,* collectively as claims "such as fraudulent and preferential transfers," Plaintiff does not cite, and this Court has not found, any decisions holding that § 547 preference actions may be equated with § 544(b) and § 548 actions for purposes of disposition under *Hays.* Nevertheless, this Court agrees with Plaintiff that such equation is entirely appropriate.

A preference action under § 547 is clearly a core proceeding under 28 U.S.C. § 157(b)(2)(F), as are fraudulent conveyance actions under §§ 544(b) and 548, pursuant to 28 U.S.C. § 157(b)(2)(H). Neither of these may be brought by a debtor, and under no interpretation could any such action be described or construed as having been derived from the debtor. They are creatures of statute, available in bankruptcy solely for the benefit of creditors of the debtor, whose rights the trustee enforces. The arbitration agreement was entered into by Debtor, pre-petition, and as the courts have made clear, it is the parties to such an agreement who are bound by

it and whose intentions must be carried out. Thus, it is the view of this Court that, under *Hays,* as extended by *EXDS,* this Court may not require fraudulent conveyance actions, under either §§ 544(b) or 548, or preference actions under § 547, to be submitted to arbitration.

*5 Moreover, even if the § 547 and § 548 claims set forth in Plaintiff's complaint herein were determined to be derived from Debtor, the interests, policies and objectives of the Bankruptcy Code would be seriously jeopardized by requiring arbitration of such claims. Many, if not most substantial bankruptcy cases involve numerous preference and fraudulent conveyance claims. The law, and the lore surrounding the adjudication of such claims is extensive, and has been developed over significant periods of time. The result is, that certain fact situations may be expected to bring about fairly consistent results, wherever they are tried. To subject these matters to arbitration, before individuals or tribunals with little or no experience in bankruptcy law or practice, and with little or no concern for the rights and interests of the body of creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results. Such a result would be contrary to the primary policy of the Bankruptcy Code, which is that all classes of creditors of a debtor are entitled to be treated as equitably as possible, and that the remaining assets of a liquidating debtor are to be distributed on a pro rata basis to all creditors of a given class. Thus, even if §§ 547 and 548 were found to be claims derivative of the Debtor, this Court would exercise its discretion in favor of declining to enforce the arbitration agreement as contrary to the objectives of the Bankruptcy Code, and would therefore deny the motion to dismiss filed herein by Defendant.

### IV. *CONCLUSION*

For the foregoing reasons, the Motion of American Bankers Insurance Company for Dismissal in Favor of Arbitration is DENIED. An appropriate order follows.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 5

Not Reported in B.R., 2005 WL 670310 (Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44 Bankr.Ct.Dec. 127
**(Cite as: Not Reported in B.R.)**


Bkrtcy.D.Del.,2005.
In re Oakwood Homes Corp.
Not Reported in B.R., 2005 WL 670310
(Bkrtcy.D.Del.), 53 Collier Bankr.Cas.2d 1664, 44
Bankr.Ct.Dec. 127

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in B.R.                                                                    Page 1

Not Reported in B.R., 1991 WL 71782 (Bkrtcy.E.D.Pa.)
(Cite as: Not Reported in B.R.)

**H**
In re Glen Eagle Square, Inc.Bkrtcy.E.D.Pa.,1991.Only the Westlaw citation is currently available.
United States Bankruptcy Court, E.D. Pennsylvania.
In re GLEN EAGLE SQUARE, INC., Debtor.
**Bankruptcy No. 91-10796S.**

May 1, 1991.

Kevin J. Carey, Hepburn Wilcox Hamilton & Putnam, Philadelphia, Pa., for debtor.
Richard L. Berkman, Dechert Price & Rhoads, Philadelphia, Pa., for 1st Union.
Stephen M. Dodd, Hoyle, Morris & Kerr, Philadelphia, Pa., for Madison Concrete.
Anthony Carrozza, III, Media, Pa., for Graveley Roofing, Inc.
James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.
Sam L. Warshawer, Jr., Venzie, Phillips & Warshawer, Philadelphia, Pa., for Meehan-Weinmann, Inc.
Mary Walrath, Clark Ladner Fortenbaugh & Young, Philadelphia, Pa., for American Ceilings, Inc.
John K. Fiorillo, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, Pa., for Liberty Bank.
Jonathan S. Ziss, Philadelphia, Pa., for Precision Piping Co.

*MEMORANDUM*
DAVID A. SCHOLL, Bankruptcy Judge.
**\*1** We recognize the strong federal policy in support of enforcement of contractual arguments to arbitrate disputes between the parties. *See, e.g., Hays & Co. v. Merrill Lynch, etc.,* 885 F.2d 1149, 1155-56 (3d Cir.1989). However, even in light of this policy, deferral to arbitration is within the court's discretion, even as to non-core proceedings, *id.,* at 1156. As to core proceedings, deferral should not be the norm, *id.,* at 1155, and relief to

allow arbitration to go forward should be granted only if the balance of hardships tips in favor of the party seeking arbitration. *See In re FRG, Inc.,* 115 B.R. 72, 74 (E.D.Pa.1990).

The instant matter would be classified as core by the *FRG* court, simply because it involves a matter for relief from the automatic stay. *Id.* at 74 n. 2.
In addition, the dispute is, at least in substance, a claim of MW against the Debtor and for that reason classifiable as core. *See In re Meyertech Corp.,* 831 F.2d 410, 414-18 (3d Cir.1987). Resolving claims is the most fundamental of bankruptcy court processes, and therefore is rarely relegated to arbitration. *See Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 59 (3d Cir.1983), *cert. denied,* 464 U.S. 1038 (1984); *In re F & T Contractors, Inc.,* 649 F.2d 1229, 1232-33 (6th Cir.1981); *In re J.T. Moran Financial Corp.,* 118 B.R., 233, 235-36 (Bankr.S.D.N.Y.1990); *I n re Guild Music Corp.,* 100 B.R. 624, 627-28 (Bankr.D.R.I.1989); *In re T.D.M.A., Inc.,* 66 B.R. 992, 996-97 (Bankr.E.D.Pa.1986); *In re Double TRL, Inc.,* 65 B.R. 993, 998-99 (Bankr.E.D.N.Y.1986); and *In re Brookhaven Textiles, Inc.,* 21 B.R. 204, 207-07 (Bankr.S.D.N.Y.1982).

MW has not demonstrated that the "balance of hardships" tips in favor of granting its motion. There is a considerable question as to whether MW and the subcontractors have waived their right to invoke arbitration. Pending before us is an adversary proceeding (Adv. No. 91-0300S) to determine MW's secured status, which involves many of the same issues as the dispute which MW wishes to relegate to arbitration. It seems foolish to defer to an alternative forum which may decide that its invocation has been waived and would be obliged to return the matter to us in any event. We have little doubt that the proceeding is core and we have jurisdiction to hear it.

Other, more typical considerations weigh against

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                     Page 2

Not Reported in B.R., 1991 WL 71782 (Bkrtcy.E.D.Pa.)
**(Cite as: Not Reported in B.R.)**

our deferral of this matter to arbitration. The issues involved are crucial to the Debtor's reorganization, as they impact upon the Debtor's relationship with its entire body of creditors, including a major secured creditor, First Union National Bank of North Carolina ("1st Union"), as well as with MW and the numerous subcontractor creditors. Resolution of the priorities in the claims of these parties is crucial to the Debtor's reorganization. *See In re Chas. P. Young Co.,* 111 B.R. 410, 417-18 (Bankr.S.D.N.Y.1990); and *In re Flechtner Packing Co.,* 63 B.R. 585, 587 (Bankr.N.D.Ohio 1986).

**\*2** Other considerations in favor of denying MW's motion are present. The issues presented are contract disputes which are not unusually complex. *See In re Wm. S. Newman Brewing Co.,* 87 B.R. 236, 241 (Bankr.N.D.N.Y.1988); and *T.D.M.A., supra,* 66 B.R. at 995-97. *Compare In re Bicoastal Corp.,* 111 B.R. 999, 1002 (Bankr.M.D.Fla.1990) (complex stock dispute); *In re Edgerton,* 98 B.R. 392, 395 (Bankr.N.D.Ill.1989) (same); and *In re R.M. Cordova Int'l, Inc.,* 77 B.R. 441, 449-51 (Bankr.D.N.J.1987) (matter of international commerce). We have little doubt that this court would be more expeditious than the arbitration system, since requests to arbitrate the instant dispute and attached disputes are still pending in various state courts. *See T.D.M.A., supra,* 66 B.R. at 997. We offered MW an opportunity to have the proceeding tried as soon as it was prepared to do so. The bankruptcy process will allow all interested parties, including 1st Union as well as the subcontractors, to participate in trials relevant to the disputes in issue. *Cf. In re Zeits,* 79 B.R. 222, 224, 226 (Bankr.E.D.Pa.1987), *aff'd,* C.A. No. 87-7756 (E.D.Pa. Feb. 29, 1988).

No such panoply of contrary considerations were present in *In re Chorus Data Systems, Inc.,* 122 B.R. 845, 850-54 (Bankr.D.N.H.1990), relied upon heavily by MW, in which the court granted relief to the party seeking arbitration only after a careful weighing process. That process yields a different result here.

For all of these reasons, MW's Motion must be denied.

*ORDER*

AND NOW, this 1st day of May, 1991, after an extensive hearing of April 24, 1991, on the Motion of Meehan-Weinmann, Inc. for Relief from Stay and for Order Compelling Arbitration of Claims (" the MW Motion"), and careful consideration of the submission by the interested parties pursuant thereto and additional argument on May 1, 1991, it is hereby

ORDERED AND DECREED that the MW Motion is DENIED.

Bkrtcy.E.D.Pa.,1991.
In re Glen Eagle Square, Inc.
Not Reported in B.R., 1991 WL 71782 (Bkrtcy.E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

<u>CERTIFICATE OF SERVICE</u>

I, Michael G. Busenkell, certify that on February 5, 2007 I caused a copy

of the foregoing Appellant's Opening Brief to be served as indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC 20005
*By First Class Mail*

Michael G. Busenkell (No. 3933)

U0004984V2