# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

*In re* **ARMSTRONG WORLD INDUSTRIES, INC.,** *et al.*

-------------------------------------------------------------x

| | | |
|---|---|---|
| **SEA-PAC SALES COMPANY,** | : | |
| | : | **Civil Action No. 07-4** |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| **ARMSTRONG WORLD INDUSTRIES, INC.,** | : | **Bankr. Case No. 00-04471** |
| | : | **Appeal No. 06-77** |
| Appellee. | : | |
| | : | |

-------------------------------------------------------------x

## APPELLEE'S ANSWERING BRIEF

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR APPELLEE
ARMSTRONG WORLD INDUSTRIES, INC.

Dated: February 26, 2007
        Wilmington, Delaware

RLF1-3119812-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF CASE ............................................................................................ 2

PROCEDURAL HISTORY ......................................................................................... 4

FACTUAL BACKGROUND ...................................................................................... 9

    A. The Sea-Pac Agreements ..................................................................... 9

    B. The Second Sea-Pac Claim ................................................................. 11

    C. Alternative Dispute Resolution Provisions
       of the Sea-Pac Agreements ................................................................. 12

ARGUMENT ............................................................................................................ 13

    A. In Denying the Stay Motion Itself, the
       Bankruptcy Court Acted Entirely Within Its Authority ...................... 14

    B. The Stay Motion Should Be Denied .................................................... 17

        i. AWI Has a Contractual Right to Litigate, and
          Sea-Pac Has No Right to Arbitrate, Under the
          Terms of the Sea-Pac Agreements ............................................. 18

        ii. Arbitration is Not an Appropriate Forum
          for Resolution of the Second Sea-Pac Claim .............................. 25

           ➢ The Court Has Discretion to Deny
              Enforcement of Arbitration Provisions .............................. 26

           ➢ The Bankruptcy Court May (and Should)
              Exercise Its Discretion to Deny the Stay Motion
              Because the Facts Here Mitigate Against Arbitration ......... 27

              ▪ Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim
                 with Prejudice ................................................................... 28

              ▪ Priority of Sea-Pac's Claims Relative to Other Creditors ............ 28

              ▪ Applicability of the Administrative Expense Bar Date ................. 30

              ▪ Valuing Administrative Expense Claims ...................................... 31

              ▪ Sea-Pac's Entitlement to Attorneys' Fees .................................... 32

CONCLUSION .......................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Cirillo v. Tice Entertainment Inc.*, No. 89-3422XX, 1989 WL 144938,
(D.N.J. Nov. 20, 1989) ............................................................................................23

*Dougherty v. IRS (In re Dougherty)*, 187 B.R. 883 (Bankr. E.D. Pa. 1995) ...............23

*Fricker v. Corestates Bank, N.A. (In re Fricker)*, 192 B.R. 388
(Bankr. E.D. Pa. 1996) ...........................................................................................23

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ......................14,15,16,17

*Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*,
885 F.2d 1149 (3d Cir. 1989) .................................................................................26

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....................14,15,16,17

*Independent Fire Insurance Co. v. Pender (In re Phillip)*, 948 F.2d 985
(5th Cir. 1991)........................................................................................................23

*In re Adelphia Business Solutions, Inc.*, 296 B.R. 656 (Bankr. S.D.N.Y. 2003)............31

*In re Anderson*, 23 B.R. 174, 175 (Bankr. N.D. Ill. 1982) .........................................23

*In re APF Co.*, 264 B.R. 344 (Bankr. D. Del. 2001) ..............................................28,29

*In re Barclay Bros., Inc.*, No. 82-03920G, 1986 Bankr. LEXIS 6995,
(Bankr. E.D. Pa. Feb. 6, 1986)................................................................................21

*In re Cardinal Industries, Inc.*, 142 B.R. 801 (Bankr. S.D. Ohio 1992) .....................31

*In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999),
*aff'd*, 279 F.3d 226 (3d Cir. 2002) ......................................................................30,31

*In re FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 2003) .........................................31

*In re Oakwood Homes Corp.*, No. 02-13396PJW, 2005 WL 670310,
(Bankr. D. Del. Mar. 18, 2005)...............................................................................32

*In re Slipped Disc*, 245 B.R. 342 (Bankr. N.D. Iowa 2000)....................................27,28

*In re Startec Global Communications Corp.*, 300 B.R. 244 (D. Md. 2003) ..................25

*In re Tyler*, 166 B.R. 21 (Bankr. W.D.N.Y. 1994) ........................................................................23

*Insurance Co. of North America v. NGC Settlement Trust*
*(In re National Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997) ..................................................26,29

*J.E. Adams Industries, Ltd. v. Aurora National Life Assurance Co.*
*(In re J.E. Adams Industries, Ltd.)*, 269 B.R. 808 (N.D. Iowa 2001) .......................................23,24

*Mintze v. American General Financial Services Inc. (In re Mintze)*,
434 F.3d 222 (3d Cir. 2006) ................................................................................................4,17,18,26

*Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir. 1962) .................................................21

*Northern Specialty Sales, Inc. v. INTV Corp. (In re Northern Specialty*
*Sales, Inc.)*, 57 B.R. 557 (Bankr. D. Or. 1986)............................................................................24

*Schubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.)*,
335 B.R. 556 (Bankr. D. Del. 2005) .........................................................................................25,28

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 200 (1987) ..........................................26

*Smith v. Dowden*, 47 F.3d 940 (8th Cir. 1995) .............................................................................21

## Statutes

9 U.S.C. § 1 *et. seq.* .....................................................................................................................18

11 U.S.C. § 108(a) ......................................................................................................................23,24

11 U.S.C. § 108(b) ..........................................................................................................................23

11 U.S.C. § 108(c) ...........................................................................................................21,22,23,24

11 U.S.C. § 362(a)(1) ......................................................................................................................22

11 U.S.C. § 362(f) ...........................................................................................................................24

11 U.S.C. § 502(a) ......................................................................................................................20,21

28 U.S.C. § 157(b)(2)(B) .................................................................................................................28

## PRELIMINARY STATEMENT

Having never before demanded arbitration at any time during the years since the parties' dispute first arose and became a continual issue of contention between them, Sea-Pac Sales Company ("**Sea-Pac**") seeks now to deprive Armstrong World Industries, Inc. ("**AWI**") of its contractual right to litigate that dispute, even though that dispute underlies the claims that Sea-Pac itself has asserted against AWI in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). In its claims, Sea-Pac asserts that it is entitled to payment of its asserted claims as "administrative expenses" in AWI's chapter 11 case with priority over the claims of other creditors. AWI has objected to the allowance and priority of such claims.

AWI's right to litigate (and not arbitrate) its disputes with Sea-Pac is a contractual right, bargained-for and expressly provided in the Sea-Pac Agreements (as defined hereinafter). Moreover, by asserting administrative expense priority for its claims, Sea-Pac itself has raised bankruptcy issues that it concedes must be determined by the Bankruptcy Court. Nevertheless, based upon a factually and legally untenable conception of when the parties' dispute arose and its erroneous conclusions about its ability to delay requesting arbitration, Sea-Pac seeks to avoid Bankruptcy Court scrutiny of its claims and, instead, to compel arbitration.

After hearing the parties, the Bankruptcy Court rejected Sea-Pac's arguments and denied its *Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from*

1

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I.
9830] [A-3][1] (the "***Stay Motion***").  Sea-Pac now appeals.

## STATEMENT OF CASE

The Bankruptcy Court's denial of Sea-Pac's motion to stay the
proceedings on AWI's claim objection must be affirmed.  Under the explicit terms of the
dispute resolution provisions of the Sea-Pac Agreements, AWI has a contractual right to
litigate the dispute underlying Sea-Pac's claims, and Sea-Pac has no right to compel
arbitration under these circumstances.  As Sea-Pac itself concedes,[2] AWI's objection to
Sea-Pac's claims raises bankruptcy issues that the Bankruptcy Court, and not an
arbitration panel, should decide.  These include the following:

> ➢ the effect of Sea-Pac having filed a proof of claim and then
> withdrawing it "with prejudice";
>
> ➢ whether any portion of Sea-Pac's claims are entitled to
> administrative expense priority;
>
> ➢ if so, whether Sea-Pac is barred from asserting administrative
> expenses by virtue of Sea-Pac's failure to comply with the
> administrative expense bar date established in AWI's chapter 11
> case;
>
> ➢ whether the Bankruptcy Court's Executory Contracts Bar Date
> Order (as defined hereinafter) extended Sea-Pac's time to assert
> any alleged administrative expense against AWI;
>
> ➢ if Sea-Pac may assert an administrative expense, how any such
> administrative expense would be valued; and

---

[1] All references to the record, as contained in *Appellant's Appendix to Opening Brief*, shall be
made herein as "A-[tab no.]."  All references to the record, as contained in *Appellee's Appendix
to Answering Brief*, shall be made herein as "B-[tab no.]."

[2] In the Stay Motion, Sea-Pac states that "arbitration of Sea-Pac's claims will not determine the
priority of claims – merely the amount."  Stay Motion, ¶ 16 [A-3].

2

> whether Sea-Pac is entitled to attorneys' fees.

Included in Sea-Pac's claims is a putative administrative expense arising from AWI's alleged breach of an exclusivity provision in the Sea-Pac Agreements during the pendency of AWI's chapter 11 case. Thus, determining Sea-Pac's right to administrative expense priority is inextricably intertwined with the underlying factual issues of whether the alleged breach occurred, when Sea-Pac had notice of the alleged breach, how Sea-Pac was damaged (if at all) by its continued performance under the Sea-Pac Agreements despite full knowledge of the events giving rise to the alleged breach, how AWI's estate benefited (if at all) from the alleged breach, and the effect of Sea-Pac remaining silent for years and never seeking relief from the Bankruptcy Court – or even an arbitration panel – with respect to the alleged postpetition breach. Accordingly, even if the dispute resolution provisions of the Sea-Pac Agreements conferred upon Sea-Pac the ability to compel arbitration now (which they do not), the overwhelming bankruptcy policies implicated in this matter compel the exercise of discretion to deny the Stay Motion.

Without reaching the need to exercise such discretion, the Bankruptcy Court determined – correctly – not to stay the claim objection proceedings or compel arbitration, based upon finding as a factual matter that the dispute between AWI and Sea-Pac arose as early as 2003 and that the condition precedent to AWI's contractual right to litigate (namely, no party initiating arbitration within a specified period of time after the dispute arose) had been satisfied. In making these determinations itself, rather than putting the matter to an arbitration panel, the Bankruptcy Court acted within its inherent authority as a court to determine the litigability of the matters brought before it.

3

The two broad issues raised on this appeal by Sea-Pac are as follows:

i.    Whether a court, rather than a panel of arbitrators, is the proper forum to interpret and apply a contractual provision that expressly permits parties to litigate after they have not sought arbitration of their dispute.

ii.   Whether AWI's contractual right to litigate disputed issues with Sea-Pac should be enforced, where the parties' contracts expressly allow litigation under the circumstances, and the overlay of bankruptcy issues demonstrates that arbitration of the parties' dispute would be inappropriate in any event.

Upon appeal, a bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its conclusions of law are reviewed *de novo*. *See Mintze v. Am. Gen. Fin. Services Inc. (In re Mintze)*, 434 F.3d 222, 227-28 (3d Cir. 2006).

## PROCEDURAL HISTORY

On December 6, 2000, AWI and two of its affiliated debtors (collectively, the "*Debtors*") each commenced in the Bankruptcy Court a case under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"). By order entered on August 18, 2006 [D.I. 9755] (the "*Confirmation Order*"), this Court confirmed AWI's *Fourth Amended Plan of Reorganization, as Modified*, dated February 21, 2006 (the "*Plan*"). On October 2, 2006, the "Effective Date" under the Plan occurred, and AWI emerged from chapter 11 protection.

Sea-Pac filed a proof of claim (Claim No. 3528, the "*Original Sea-Pac Claim*") on or about August 30, 2001, asserting certain liquidated and unliquidated, contingent and non-contingent, prepetition and postpetition obligations of AWI to Sea-Pac, in estimated amounts aggregating in excess of $7 million. On May 29, 2003, Sea-

4

Pac filed its *Withdrawal of Proof of Claim No. 3528* [D.I. 4841] [B-2], voluntarily

withdrawing the Original Sea-Pac Claim "with prejudice."

By order dated March 21, 2003 [D.I. 4301] (the "***Administrative Expense***

***Bar Date Order***"), the Bankruptcy Court set November 24, 2003 (the "***Administrative***

***Expense Bar Date***") as the deadline for filing certain proofs of administrative expense

claims against AWI in the chapter 11 case. Pursuant to the Administrative Expense Bar

Date Order, any creditor asserting a claim for an administrative expense against AWI (of

the type identified in the Administrative Expense Bar Date Order) was required to file a

proof of such administrative expense on or before the Administrative Expense Bar Date.

The Administrative Expense Bar Date Order identified six categories of claims explicitly

subject to the Administrative Expense Bar Date, including the following:

> Any Administrative Expense for breach of an obligation – contractual,
> statutory or otherwise – by AWI, including any environmental liability
> (other than any environmental liability with respect to property that is
> currently owned or operated by AWI).

Sea-Pac did not file a proof of administrative expense for any claims relating to the Sea-

Pac Agreements on or before the Administrative Expense Bar Date.

By Order dated September 29, 2005 [D.I. 8652] (the "***Executory***

***Contracts Bar Date Order***"), the Court set November 8, 2005 (the "***Executory Contracts***

***Bar Date***") as the deadline by which all parties to "Previously Scheduled Contracts"

would be required to file proofs of claim for any and all claims against AWI relating to

such Previously Scheduled Contracts. Each of the Sea-Pac Agreements was identified in

the Executory Contracts Bar Date Order as a "Previously Scheduled Contract," that is, as

a contract that originally was listed by AWI on Schedule G to its Schedules of Assets and

5

Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory. The Sea-Pac Agreements were identified as Previously Scheduled Contracts because they expired according to their terms during the pendency of AWI's chapter 11 case without being either assumed or rejected pursuant to section 365 of the Bankruptcy Code.

On or about November 8, 2005, Sea-Pac filed a second proof of claim against AWI (Claim No. 4854, the "***Second Sea-Pac Claim***") [A-1], in the amount of $4.9 million, plus interest and attorneys' fees. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority.

On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [D.I. 9683] [A-2] (the "***Claim Objection***").[3]

In response to the Claim Objection, on September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [D.I. 9832] [A-5] (the "***Claim Answer***"), together with a supporting memorandum of law [D.I. 9833] [A-6] (the "***Answering***

---

[3] In the Claim Objection, AWI objects to the Second Sea-Pac Claim on a number of grounds, including that (i) AWI has an absolute defense to the Commercial Agreement Breach Claim because Sea-Pac failed to meet the annual mill shipment requirements required to maintain its exclusivity as AWI's distributor within the relevant territory, (ii) Sea-Pac is barred from asserting entitlement to any administrative expense arising prior to November 24, 2003 because Sea-Pac failed to assert such administrative expenses as required by the Administrative Expense Bar Date, and (iii) Sea-Pac's Commercial Agreement Breach Claim is not entitled to administrative expense priority in any event because, among other things, such claim arises from an alleged breach of a prepetition contract for which the proper remedy would have been to seek to compel AWI to assume or reject the Commercial Agreement – instead, Sea-Pac continued performing for years after receiving formal notice of the facts giving rise to the alleged breach – and Sea-Pac has conferred no benefit on AWI's estate. [A-2].

6

*Memorandum*"), and the *Declaration of Jared Williams in Support of Sea-Pac's Answer to Armstrong's Objection* [D.I. 9834] [B-3] (the "***Williams Declaration***").

Also on September 15, 2006, Sea-Pac filed its Stay Motion, which represents the first indication of Sea-Pac's interest in arbitrating the parties' disputes. In substance, the Stay Motion asserted that the Sea-Pac Agreements require arbitration of all disputes arising thereunder, and, therefore, the Bankruptcy Court should stay proceedings on the Claim Objection pending arbitration. *Id.* Additionally, Sea-Pac requested that the Bankruptcy Court grant relief from the automatic stay or the discharge injunction to allow Sea-Pac to proceed with arbitration with respect to the claims asserted in the Second Sea-Pac Claim. *Id.*

In response to the Stay Motion, on October 6, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I. 9914] [A-4] (the "***Stay Objection***").[4]

On October 16, 2006, Sea-Pac filed its *Reply of Sea-Pac Sales Company to Debtors' Objection to Sea-Pac Sales Company's Motion (i) to Stay Objection by*

---

[4] Simultaneously, AWI also filed its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [D.I. 9913] [B-4], which sets forth objections of AWI to any additional administrative expenses asserted by Sea-Pac in any amendment or deemed amendment to the Second Sea-Pac Claim, as well as certain counterclaims of AWI, in each case with respect to activities occurring during the pendency of AWI's chapter 11 case. Because the alleged claims and counterclaims described in such pleading are independent of the Sea-Pac Agreements, they are not subject to the Stay Motion.

7

*Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending*

*Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief*

*from the Discharge Injunction* [D.I. 9951, Exh. A] [A-7].

Arguments of the parties on the Stay Motion and Stay Objection were

heard before the Honorable Judith K. Fitzgerald at a hearing in the Bankruptcy Court on

October 23, 2006 (the "***Hearing***"), at the conclusion of which the court denied the Stay

Motion. In denying the Stay Motion, the Bankruptcy Court found as follows:

> The dispute clearly in Sea-Pac's view has nothing to do with the bar date
> or the debtor's agreement to extend the contract or assume the contract. It
> has to do with the fact that under Sea-Pac's construction of the contract,
> the debtor couldn't appoint a second distributor and under the debtor's
> construction of the contract, the debtor could. That's the dispute. When it
> arose, I think Sea-Pac had 40 days from that date to make a determination
> to invoke arbitration, and whatever bells and whistles you had to get
> through in order to make that invocation are procedural hurdles but they
> were not hurdles that could not have been accomplished in the context of
> the bankruptcy case.

Tr. of Hearing, at 19-20, lines 24-10 [D.I. 10023] [A-10].

> [T]he fact that Sea-Pac didn't invoke the arbitration simply let the dispute
> abide but it let it abide in litigation mode as opposed to arbitration mode. I
> think Sea-Pac has not properly invoked the right to arbitration under the
> contract. I should say, has untimely invoked the right to arbitration under
> the contract, and as a result, I don't think that there is any longer a viable
> arbitrable issue. So I don't need to get into where the initial dispute
> should be heard in the first instance because I think the untimeliness of the
> invocation of the right means you're here.

Tr. of Hearing, at 21, lines 15-25.

On November 20, 2006, the Bankruptcy Court entered its *Order Denying*

*Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries,*

*Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from*

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I.
10117] [A-8].

Sea-Pac filed its *Notice of Appeal* to this Court [D.I. 10134] [A-9] on
November 30, 2006, followed by its *Statement of Issues and Designation of Record on
Appeal* [D.I. 10161] on December 11, 2006. AWI filed its *Counter-Statement of Issues
and Counter-Designation of Record with Respect to Sea-Pac Sales Company's Statement
of Issues and Designation of Record on Appeal* [D.I. 10195] on December 21, 2006.

## FACTUAL BACKGROUND

Except to the extent supplemented by certain relevant facts set forth
herein, the material facts, including the relationship between the parties and the terms of
the Sea-Pac Agreements, are set forth in the Claim Objection.

### A.    *The Sea-Pac Agreements*

For over seven years, Sea-Pac has been a wholesale distributor for AWI's
commercial and residential products. Claim Objection, ¶ 2 [A-2]. The parties' pertinent
contractual relationship began on or about February 15, 1999, prior to the commencement
of AWI's chapter 11 case, when AWI and Sea-Pac entered into (i) a Commercial
Flooring Products Distributorship Agreement (the "***Commercial Agreement***") and (ii) a
Residential Flooring Products Distributorship Agreement and Sales/Service Center
Agreement (the "***Residential Agreement***" and together with the Commercial Agreement,
the "***Sea-Pac Agreements***"). *Id.* Pursuant to the Sea-Pac Agreements, AWI appointed
Sea-Pac to be a wholesale distributor of AWI's commercial resilient floor covering
products and residential resilient flooring products, respectively, in the northwestern

9

United States (with certain exceptions). *Id.* In connection with the Residential

Agreement, AWI also appointed Sea-Pac to be a Regional Distribution Center ("*RDC*")

at its Kent, Washington location to deliver products to certain designated customers

located in the region. Claim Objection, ¶ 3 [A-2].

The Sea-Pac Agreements expired in accordance with their terms on

February 15, 2004. Claim Objection, ¶ 7 [A-2]. By letter agreement between the parties,

the terms of the Sea-Pac Agreements were extended through March 31, 2004. Claim

Answer, ¶ 7 [A-5]. Thereafter, the parties continued to do business and, on or about

August 27, 2004, AWI and Sea-Pac entered into a new interim letter agreement on

similar terms as existed at the expiration of the Sea-Pac Agreements. Claim Objection,

Exh. A. [A-2]. The interim agreement expired on December 31, 2004. Claim Objection,

¶ 7 [A-2].

Sometime after Sea-Pac and AWI entered into the Sea-Pac Agreements,

and continuing throughout the course of their relationship, the parties disagreed about

various provisions in both the Commercial Agreement and the Residential Agreement.

Pursuant to the Commercial Agreement, Sea-Pac's status as an exclusive

distributor was dependent upon Sea-Pac's satisfaction of certain minimum purchase

requirements, called "annual mill shipment requirements," for AWI's commercial

resilient floor covering products. Second Sea-Pac Claim, Exh. A; Commercial

Agreement, ¶ 3 [A-1]. As a result of Sea-Pac's failure to meet its annual mill shipment

requirements in 2002, AWI notified Sea-Pac that it would appoint a second distributor of

commercial flooring products. Claim Objection, ¶¶ 5-6 & Exh. C [A-2]. In 2003, AWI

appointed Pacific Mat & Commercial Flooring PLLC as a second distributor to distribute

AWI's commercial flooring products in the region previously covered exclusively by Sea-Pac. Claim Objection, ¶ 6 [A-2]. Sea-Pac claims that, as early as March 2003, Sea-Pac informed AWI that it believed the appointment of Pacific-Mat to constitute a breach of the Commercial Agreement. Williams Declaration, ¶ 13 [B-3, at 42-43]. Sea-Pac states that it continued to allege such breach on numerous occasions thereafter. *Id.*

Pursuant to the Residential Agreement, AWI agreed to compensate Sea-Pac for its RDC services according to a fee schedule established by AWI. Second Sea-Pac Claim, Exh. B; Residential Agreement, ¶ 12(g) [A-1]. According to Sea-Pac, "[s]oon after the RDC system was implemented, [it] began to realize that AWI was not reimbursing it in full for RDC activities and [it] complained to AWI about this." Williams Declaration, ¶ 7 [B-3, at 40]. After this initial complaint, Sea-Pac consistently alleged, over the course of four years, that it was being under-reimbursed for its RDC services. Williams Declaration, ¶ 8 [B-3, at 40-41] & Exh. 6-7 [B-3, at 58-65].

## B.    *The Second Sea-Pac Claim*

On or about November 8, 2005, Sea-Pac filed the Second Sea-Pac Claim against AWI in the amount of $4.9 million, plus interest and attorneys' fees. Second Sea-Pac Claim [A-1]. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority. Attachment to Second Sea-Pac Claim, ¶ 3 [A-1].

The Second Sea-Pac Claim arises from alleged breaches by AWI of the Sea-Pac Agreements and is comprised of the following components:

i.    The Commercial Agreement Breach Claim: Sea-Pac alleges that AWI breached the Commercial Agreement by "its appointment and

11

provision of product to a second distributor within [Sea-Pac's] exclusive territory," resulting in damages to Sea-Pac in an amount no less than $2 million. Attachment to Second Sea-Pac Claim, ¶ 2 [A-1]. Sea-Pac asserts that "*AWI's breach began in 2003* and such breach continued through the term and the extensions of [the Commercial Agreement]...." *Id.* (emphasis added). Sea-Pac further contends that the entire Commercial Agreement Breach Claim is entitled to administrative expense priority because it is "attributable to [AWI's] postpetition breach of [the Commercial Agreement] which Sea-Pac was induced to perform pending [AWI's] assumption or rejection of it." *Id.* at ¶ 3.

    *ii.*   The Residential Agreement Breach Claim: Sea-Pac asserts that AWI breached the Residential Agreement and "was unjustly enriched, by, among other conduct, failing to reimburse Sea-Pac for RDC functions and services." Attachment to Second Sea-Pac Claim, ¶ 2 [A-1]. Sea-Pac further alleges that "*AWI's illegal conduct began in 2000* and continued through the term of and extension of [the Residential Agreement] and resulted in damages and/or restitution owed in an amount no less than $2.9 million." *Id.* (emphasis added). Sea-Pac contends that $2.5 million of the $2.9 million in RDC functions and services for which AWI allegedly failed to reimburse Sea-Pac were provided postpetition and, therefore, constitute an administrative expense claim. *Id.* at ¶ 3.

    iii.   Attorneys' Fees: Finally, the Sea-Pac Claim asserts that "[p]ursuant to the provisions of the applicable agreements," Sea-Pac is entitled to attorneys' fees and interest if AWI disputes its claims. Attachment to Second Sea-Pac Claim, ¶ 2 [A-1].

**C.**    **Alternative Dispute Resolution**
       **Provisions of the Sea-Pac Agreements**

        With respect to alternative dispute resolution mechanisms under the Sea-Pac Agreements, the parties agreed as follows:

    [AWI] and [Sea-Pac] agree to attempt to resolve promptly any dispute arising out of this Agreement by negotiation between executives of [Sea-Pac] and [AWI] who have authority to settle the dispute. If any dispute is not resolved by negotiation within 30 days of its arising, then, at the written request of either party within an additional 10 days, the dispute shall be submitted to mediation with a mediator chosen jointly.

Second Sea-Pac Claim, Exh. A-B, Commercial Agreement, ¶ 24; Residential Agreement,

¶ 29 [A-1]. The Sea-Pac Agreements further provide as follows:

> In the absence of a request for mediation, or if any dispute is not resolved within 90 days following a request for mediation, then, at the option of either party, such dispute shall be submitted to binding arbitration in Philadelphia, Pennsylvania, under the Commercial Arbitration Rules of the American Arbitration Association. [...].

*Id.*, Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30. Notably, this paragraph

concludes with the following statement:

> ***If arbitration is not initiated within 30 days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [--].***

*Id.* (emphasis added) (the "***Litigation Clause***"). Tellingly, in its Opening Brief, Sea-Pac

omits any reference to the Litigation Clause in its description of the relevant provisions of

the Sea-Pac Agreements, instead choosing to bury it in a footnote on page 18 of its

Opening Brief. Opening Brief, at 18. Such omission falsely creates the impression that

the requested arbitration is mandated by the Sea-Pac Agreements. *Id.* at 7 & 18.

## ARGUMENT

   The Bankruptcy Court's denial of Sea-Pac's Stay Motion must be affirmed

because (i) it is for a court, and not a panel of arbitrators, to decide whether a contractual

right to litigate may be exercised, where the parties' agreement expressly provides such

right after the failure of the parties to initiate arbitration, (ii) AWI's right to litigate its

dispute with Sea-Pac is currently enforceable in court, based upon the Bankruptcy

Court's unchallenged factual finding that Sea-Pac's arbitration request was untimely, and

(iii) in any event, arbitration is inappropriate in light of the bankruptcy issues that are

inextricably intertwined with resolution of the Second Sea-Pac Claim.

*A.*    *In Denying the Stay Motion Itself, the*
        *Bankruptcy Court Acted Entirely Within Its Authority*

Sea-Pac contends that the Bankruptcy Court improperly usurped the role

of an arbitration panel in deciding whether Sea-Pac had "waived" its right to have

arbitrators decide the merits of the parties' dispute. Such argument is premised on a

fundamental mischaracterization of the nature of the dispute resolution provisions of the

Sea-Pac Agreements and results in a miscasting of the issue before the Bankruptcy Court

below and at issue in this appeal.

The dispositive issue is not, as Sea-Pac contends, whether Sea-Pac

"waived" its arbitration right due to untimely assertion – although the Bankruptcy Court

did indeed find that Sea-Pac had lost its right to compel arbitration due to the lapse of the

period of time agreed to in the Sea-Pac Agreements. The issue here is really whether

AWI's contractual right to litigate has become enforceable as a result of that lapse of

time. As such, the issue is one that is squarely within a court's competence and authority

to determine as a straightforward matter of contract application and does not implicate

the "questions of arbitrability" upon which Sea-Pac focuses.

Sea-Pac would have this Court believe that the dispute resolution

provisions of the Sea-Pac Agreements are just like the provisions at issue in cases such as

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), and *Green Tree Fin'l Corp.*

*v. Bazzle*, 539 U.S. 444 (2003). Unfortunately for Sea-Pac, they are fundamentally

different – the dispute resolution provisions of the Sea-Pac Agreements not only

expressly limit the availability of arbitration as a remedy, but more importantly, the

Litigation Clause in each of the Sea-Pac Agreements expressly permits recourse to

14

litigation.  As a result, Sea-Pac misapplies here the principles set forth in *Howsam* and *Green Tree* for application in different circumstances.

In *Howsam*, the parties' agreement contained a broad, comprehensive arbitration clause that provided for arbitration of all controversies. *Howsam*, 537 U.S. at 81.  In that context, the United States Supreme Court concluded that the question in that case – whether a statute of limitations imposed by the NASD's arbitration rules barred the petitioner's claim – should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator. *Id.* at 85.  Similarly, in *Green Tree*, the parties' agreements contained broad, comprehensive arbitration clauses that provided for arbitration of all controversies. *Green Tree*, 539 U.S. at 448.  Again, in that context, the Court concluded that the question in that case – whether the contract contemplated class arbitration – should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator. *Id.* at 451-52.

Unlike the arbitration clauses in *Howsam* and *Green Tree*, however, the dispute resolution provisions of the Sea-Pac Agreements are not open-ended.  Instead, they provide only finite periods for the exclusive employment of certain alternative dispute resolution mechanisms – first, negotiations during the 30 days after a dispute arises, then mediation if initiated within the next 10 days, then arbitration if initiated within the next 30 days. *See* Second Sea-Pac Claim, Exh. A-B Commercial Agreement, ¶¶ 24 & 25; Residential Agreement, ¶¶ 29 & 30 [A-1].  And then, notably unlike the agreements in *Howsam* and *Green Tree*, which are silent on the question of what happens

15

in the event that arbitration is not initiated, the Sea-Pac Agreements very specifically permit ultimate recourse to litigation. *See* Second Sea-Pac Claim, Exh. A-B Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30 [A-1]. Viewed in this context, it could not be clearer that the provisions at issue in this case were meant only to afford a limited opportunity for alternative dispute resolution rather than to impose a permanent commitment to it, and that, therefore, after completion of a 70-day hiatus without use of arbitration, the ability to litigate is expressly returned to the parties as a matter of contractual right under the terms of their agreements.

Indeed, the Bankruptcy Court implicitly recognized this contractual construction, noting "that Sea-Pac didn't invoke the arbitration simply let the dispute abide . . . in litigation mode as opposed to arbitration mode." Tr. of Hearing, at 21, lines 15-17 [A-10]. This led directly to the Bankruptcy Court's conclusion that "I don't need to get into where the initial dispute should be heard in the first instance because I think the untimeliness of the invocation of the [arbitration] right means you're here." *Id* , lines 22-25.

Even if the rubric in *Howsam* and *Green Tree* for analyzing questions of arbitrability applied, the Court's conclusion must still be that it is for a court rather than an arbitration panel to decide the question of the litigability of the parties' dispute under the Sea-Pac Agreements. As explained above, the Sea-Pac Agreements are not simply "arbitration" agreements to be analyzed in the sense that Sea-Pac proposes, but more accurately they are "litigation" agreements. As such, the contracting parties surely would have expected that, if no party requested arbitration, and the other party had commenced a judicial proceeding to determine a dispute, the judicial decisionmaker would determine

16

the gateway question of whether one party properly invoked its right to hale the other before the court.

It is worth noting, also, that the questions of arbitrability in *Howsam* and *Green Tree* raised issues that the Supreme Court considered to be within the specialized expertise of the arbitrators in those cases. In *Howsam*, the Court presumed that NASD arbitrators would be more expert than a court in interpreting the statute of limitations provided in their own rules. *Howsam*, 537 U.S. at 85. In *Green Tree*, the Court expected that the arbitration panel would be better able to address arbitration procedures implicated by the problems of class arbitration. *Green Tree*, 539 U.S. at 453. Nothing about the preliminary issue in this appeal – when the dispute between Sea-Pac and AWI arose – makes arbitration more appropriate than litigation. To the contrary, in light of the bankruptcy issues implicated by the Second Sea-Pac Claim, it is more appropriate that the Bankruptcy Court rather than an arbitration panel make the determination regarding AWI's right to litigate those issues.

For all of the reasons set forth above, the Bankruptcy Court was right — it is for a court to decide whether to find and enforce AWI's contractual right to litigate its dispute with Sea-Pac.

**B.**    ***The Stay Motion Should Be Denied***

The Bankruptcy Court's decision to deny the Stay Motion must be affirmed because Sea-Pac has failed to establish any basis for the relief it requested. Under the principles enunciated by the Third Circuit in *Mintze*, the Court must consider the following three issues to determine whether or not to compel this matter to be

17

resolved by arbitration: (i) whether the dispute is governed by an enforceable arbitration clause, (ii) whether the court has discretion to deny enforcement of the arbitration clause (*i e*, whether the Bankruptcy Code conflicts with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "*FAA*"), in such a way as to bestow discretion on the Bankruptcy Court to decline to enforce an otherwise applicable arbitration provision), and (iii) if the Bankruptcy Court has such discretion, whether the Bankruptcy Court should exercise its discretion to deny arbitration. *Mintze*, 434 F.3d 222. Application of the *Mintze* analysis to the instant case makes clear that Sea-Pac's Stay Motion must be, and was, correctly denied.

Specifically, the Court should find that (i) the dispute is not governed by an enforceable arbitration clause, and (ii) arbitration is not an appropriate forum for resolution of the issues raised by the Second Sea-Pac Claim.

### i. *AWI Has a Contractual Right to Litigate, and Sea-Pac Has No Right to Arbitrate, Under the Terms of the Sea-Pac Agreements*

As set forth above, it is clear from the face of the Sea-Pac Agreements that they do not mandate arbitration as Sea-Pac suggests. To the contrary, the Sea-Pac Agreements expressly permit AWI to litigate if Sea-Pac has not timely initiated arbitration.

The undisputed facts clearly demonstrate that neither Sea-Pac nor AWI elected to proceed with arbitration within the time period provided in the Sea-Pac Agreements. The Sea-Pac Agreements include the Litigation Clause, which provides a deadline by which a party must elect arbitration: "*If arbitration is not initiated within 30*

*days of its becoming an option, as provided above, either party may resort to litigation*

*pursuant to paragraph [--].*"  Under the terms of the Sea-Pac Agreements, arbitration

became an "option" within 40 days of the dispute arising and, therefore, AWI was

permitted to litigate its dispute with Sea-Pac within 70 days after the dispute arose so

long as neither Sea-Pac nor AWI had requested arbitration prior to such time.[5]

        The Bankruptcy Court found, as a factual matter, that the substance of the

Second Sea-Pac Claim is a dispute that arose years ago.[6]  This finding is based on ample

evidence in the record, not least of which is Sea-Pac's own assertion in the Second Sea-

Pac Claim that the alleged breaches forming the basis of its claims occurred as early as

2000 and 2003.  *See* Attachment to Second Sea-Pac Claim, ¶ 2 [A-1].[7]  Sea-Pac has not

contested this evidence or identified any contrary evidence to the effect that the

Bankruptcy Court's finding of fact regarding the date that the parties' dispute arose is

clearly erroneous.

        Indeed, Sea-Pac does not even challenge in this appeal the Bankruptcy

Court's conclusion that the dispute between the parties arose many years before AWI

---

[5] The dispute resolution provisions provide that, after a dispute arises, the parties have 30-day negotiation period and an additional ten days to request mediation, after which either party could submit the dispute to binding arbitration.

[6] "The dispute . . . has to do with the fact that under Sea-Pac's construction of the contract, the debtor couldn't appoint a second distributor and under the debtor's construction of the contract, the debtor could.  That's the dispute." Tr. of Hearing, at 20, lines 1-5 [A-10].

[7] Other allegations by Sea-Pac include the following: "Sea-Pac further alleges that it objected on numerous occasions to the appointment of a second distributor. . ." Claim Answer, ¶6 [A-5]; "Sea-Pac consistently complained the [*sic*] AWI's RDC fees did not reimburse it for its services." Answering Memorandum, at 3 [A-6] and Williams Declaration, ¶¶ 7-8 [B-3, at 40-41] & Exh. 6-7 [B-3, at 58-65]; "I pointed out to AWI representatives on many occasions that the appointment of a second distributor was not only a poor business decision, but also a breach of AWI's contract with Sea-Pac.  Indeed, I recall specifically stating this to Rik Born, AWI's vice-president in March 2003." Williams Declaration, ¶13 [B-3, at 42].

objected to the Second Sea-Pac Claim — except to contend that the dispute regarding its claims first arose on July 23, 2006, *i e*, only when AWI filed its Claim Objection, arguing that no dispute could exist beforehand because under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest . . . objects." *See* Opening Brief, at 13; 11 U.S.C. § 502(a). Such argument is untenable for at least three reasons: (i) it is unsupported by Sea-Pac's own evidence, which demonstrates years of disagreement between the parties regarding the alleged breaches underlying the Second Sea-Pac Claim, (ii) it misapplies a procedural bankruptcy rule to answer a question of fact, and (iii) it leads to absurd results.

First, it is shocking that Sea-Pac would attempt to gainsay the existence of a dispute with AWI prior to the filing of the Claim Objection, or even of the Second Sea-Pac Claim. As the Bankruptcy Court recognized at the Hearing, the mere allegation of breach of an agreement is indicative of a dispute between the parties.[8] In this case, Sea-Pac states that it made such allegations as early as March 2003, and the dispute has gone unresolved ever since. Instead of representing the beginning, the Second Sea-Pac Claim and the Claim Objection are nothing more than the latest developments in a dispute that stretches back at least three years.

Second, to determine an underlying issue of fact, Sea-Pac relies upon a procedural rule that merely creates a presumption of claim allowance for bankruptcy purposes. As noted by the Bankruptcy Court, such rules can hardly dictate whether

---

[8] "It seems to me that the dispute arises as soon as Sea-Pac decides that it has a claim that it thinks that Armstrong is in breach." Tr. of Hearing, at 18, lines 20-22 [A-10].

20

and/or when a dispute arises.[9]  Indeed, what if AWI had never commenced a bankruptcy case?  Furthermore, if Sea-Pac's application of section 502(a) were carried through to its logical conclusion, any pre-existing dispute between parties could be made to disappear unilaterally by the magic of filing a proof of claim, only to become a dispute again once the debtor filed an objection.  Such an on-again/off-again theory of disputes is not credible.

Finally, Sea-Pac's idea that the dispute between the parties could not exist until the Claim Objection was filed creates an impossible, Catch-22 situation that makes nonsense of the dispute resolution provisions of the Sea-Pac Agreements.  Because the filing of a proof of claim and a responsive objection are traditionally considered to be acts in the nature of civil litigation, *see, e.g.*, *Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995); *Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962); *In re Barclay Bros., Inc.*, No. 82-03920G, 1986 Bankr. LEXIS 6995, at *3 (Bankr. E.D. Pa. Feb. 6, 1986), Sea-Pac's contention forces an interpretation of the Sea-Pac Agreements that enables AWI and Sea-Pac to initiate litigation only after 70 days have passed since the initiation of litigation.  This cannot be right.

Equally unavailing to Sea-Pac is its argument that the time to initiate arbitration under the Sea-Pac Agreements was tolled by section 108(c) of the Bankruptcy Code.  Section 108(c), however, is neither implicated nor applicable to to aid Sea-Pac in

---

[9] "You know, whether there's been a proof of claim bar date or not at that point in time is a bankruptcy issue, but your dispute because you think that Armstrong breached the contract because it appointed a second distributor is the date by which that 40-day period begins." Tr. of Hearing, at 18-19, lines 22-2 [A-10].

21

these circumstances, and its reliance thereon is entirely misplaced. Section 108(c)

provides in relevant part as follows:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period for commencing or continuing
> a civil action in a court other than a bankruptcy court on a claim against
> the debtor . . . and such period has not expired before the date of the filing
> of the petition, then such period does not expire until the later of —
>
> (1) the end of such period, including any suspension of such period
>     occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under
>     section 362, 922, 1201, or 1301 of this title, as the case may be, with
>     respect to such claim.

11 U.S.C. § 108(c).

Sea-Pac's tolling argument fails first because it begins with a premise that

is not true – that Sea-Pac was prevented from initiating arbitration of its dispute with

AWI by the operation of the automatic stay under section 362 of the Bankruptcy Code.

In truth, to the extent that Sea-Pac asserts, as it does, that AWI breached the Sea-Pac

Agreements after the commencement of AWI's chapter 11 case, Sea-Pac was never

enjoined by the automatic stay from commencing arbitration with respect to such alleged

breach. As applicable to the commencement of arbitration, the automatic stay only

applies to "the commencement or continuation . . . of a judicial, administrative, or other

action or proceeding against the debtor that was or could have been commenced before

the commencement of the [chapter 11 case] . . . or to recover a claim against the debtor

that arose before the commencement of the [chapter 11 case]." 11 U.S.C. § 362(a)(1).

Regardless of whether Sea-Pac's claims are entitled to administrative expense priority – a

different issue from when the claims arose – it is clear that Sea-Pac's claims for

postpetition breach of the Sea-Pac Agreements could not have been commenced

22

prepetition and do not involve claims arising prior to the commencement of AWI's

chapter 11 case. Accordingly, Sea-Pac was not enjoined from seeking arbitration, and

section 108(c) of the Bankruptcy Code is inapplicable. *See Cirillo v. Tice Entm't Inc.*,

No. 89-3422XX, 1989 WL 144938, at *1-2 (D.N.J. Nov. 20, 1989) (creditor not barred

by automatic stay from commencing action against debtor for alleged postpetition breach

of a prepetition contract); *In re Anderson*, 23 B.R. 174, 175 (Bankr. N.D. Ill. 1982)

(creditor not barred by automatic stay from commencing action against debtor for alleged

postpetition fraud under a prepetition contract).

   Consistent with the application of the automatic stay to claims that arise

prepetition, section 108(c) has been interpreted to apply only to those time periods that

commence *before* the filing of a bankruptcy petition, rather than after. *See Fricker v.*

*Corestates Bank, N.A. (In re Fricker)*, 192 B.R. 388, 394 (Bankr. E.D. Pa. 1996)

(recognizing that each of the subsections of section 108 implicitly relates to prepetition

claims); *Dougherty v. IRS (In re Dougherty)*, 187 B.R. 883, 886 (Bankr. E.D. Pa. 1995)

(noting that section 108 extends time for asserting only prepetition, as opposed to

postpetition, claims); *In re Tyler*, 166 B.R. 21, 26 (Bankr. W.D.N.Y. 1994) (section

108(c) inapplicable where creditor's request for entry of deficiency judgment could only

have been made postpetition). The application of sections 108(a) and 108(b) of the

Bankruptcy Code, which extend the time within which the debtor may take certain

actions, also has been limited to time periods that began to run prior to the

commencement of the chapter 11 petition. *See Indep. Fire Ins. Co. v. Pender (In re*

*Phillip)*, 948 F.2d 985, 987 (5th Cir. 1991) (section 108(a) inapplicable where time began

to run after filing of bankruptcy petition); *J.E. Adams Indus., Ltd. v. Aurora Nat'l Life*

23

*Assurance Co. (In re J.E. Adams Indus., Ltd.)*, 269 B.R. 808, 815 (N.D. Iowa 2001) (section 108(b) inapplicable where time did not start to run until after filing of bankruptcy petition); *N. Specialty Sales, Inc. v. INTV Corp. (In re N. Specialty Sales, Inc.)*, 57 B.R. 557, 559 (Bankr. D. Or. 1986) (section 108(a) inapplicable where claim arose postpetition). Indeed, if the Court were to accept Sea-Pac's argument on section 108(c), it would mean that Sea-Pac's right to invoke arbitration never expired while AWI's right expired years ago.

       If Sea-Pac had wanted to initiate arbitration of the dispute underlying its claims, it could have done so and at least should have attempted to do so, notwithstanding the pendency of AWI's chapter 11 case. Even if Sea-Pac believed that the automatic stay might prevent Sea-Pac from initiating arbitration, the Bankruptcy Code certainly provided avenues for relief – as noted by the Bankruptcy Court at the Hearing[10] – that Sea-Pac chose not to employ. Sea-Pac's arguments now – that it might not have been able to obtain timely relief, or that it might not have prevailed in obtaining relief at all – are incredible. For example, section 362(f) of the Bankruptcy Code provides for "such relief from the stay . . . as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing . . ." 11 U.S.C. § 362(f).

       The clear intention of the parties, as evidenced by the plain language of the Sea-Pac Agreements, was to create the ability to submit disputes to arbitration *if and only if* arbitration was sought within the appropriate timeframe, after which either party

---

[10] "[W]hatever bells and whistles you had to get through in order to make that invocation are procedural hurdles but they were not hurdles that could not have been accomplished in the context of the bankruptcy case." Tr. of Hearing, at 20, lines 7-10 [A-10].

had the express right to initiate litigation. Having failed to challenge the Bankruptcy

Court's factual finding that the dispute arose years ago, and having failed to invoke either

mediation or arbitration within the deadlines established under the explicit terms of the

Sea-Pac Agreements, Sea-Pac now is bound by AWI's election to litigate the parties'

disputes. Because Sea-Pac no longer has an enforceable right to compel arbitration, the

Court need not even consider whether it can or should defer resolution of the Claim

Objection to arbitration.

### ii. *Arbitration Is Not an Appropriate Forum for Resolution of the Second Sea-Pac Claim*

Even assuming, *arguendo*, that the arbitration provisions in the Sea-Pac

Agreements were timely invoked by Sea-Pac and enforceable under the terms thereof, the

Court should not enforce such arbitration provisions because strong policy reasons

support having a single forum – the Bankruptcy Court – resolve the disputes between

Sea-Pac and AWI.[11] *Schubert v. Wellspring Media, Inc. (In re Winstar Communications,*

*Inc.)*, 335 B.R. 556, 566 (Bankr. D. Del. 2005) ("a bankruptcy court retains significant

discretion to assess whether arbitration would be consistent with the purposes of the

[Bankruptcy] Code, including the centralized resolution of purely bankruptcy issues, the

need to protect creditors and reorganizing debtors from piecemeal litigation, and the

---

[11] Because the Bankruptcy Court did not need to reach this issue given its conclusion on the timeliness of Sea-Pac's request for arbitration, if the Court were to conclude that Sea-Pac's arbitration request was timely or that an arbitration panel should determine such issue, it nevertheless would have to remand this case for the Bankruptcy Court to determine, in the exercise of its discretion, whether arbitration would be consistent with the purposes of the Bankruptcy Code.

undisputed power of a bankruptcy court to enforce its own orders.") (quoting *In re Startec Global Comm. Corp.*, 300 B.R. 244, 250 (D. Md. 2003)).

> ➤ The Court Has Discretion to Deny
> Enforcement of Arbitration Provisions

In *Mintze*, the Third Circuit reiterated the standard first articulated in *Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*, 885 F.2d 1149 (3d Cir. 1989), for when a bankruptcy court may exercise its discretion to deny a request for arbitration. *Mintze*, 434 F.3d 222; *Hays*, 885 F.2d 1149 (applying to bankruptcy proceedings the analysis set forth in the Supreme Court's decision in *Shearson/Am. Exp. v. McMahon*, 482 U.S. 200 (1987)).[12]  Under *Mintze*, whether the court has discretion to deny enforcement of an otherwise applicable arbitration clause depends on whether the party opposing arbitration has established congressional intent to preclude judicial remedies for the statutory rights at issue by showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration provision. *Mintze*, 434 F.3d at 229.  The fundamental issue under *Mintze* is whether the dispute could arise outside of bankruptcy or whether the "statutory rights" at issue derive exclusively from the provisions of the Bankruptcy Code. *Mintze*, 434 F.3d at 231; *see also Ins. Co. of N. Am. v. NGC Settlement Trust (In re National Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997).

---

[12] In *McMahon*, the Supreme Court interpreted the FAA as establishing a federal policy favoring arbitration and requiring enforcement of arbitration provisions.  The Court noted, however, that the FAA's mandate to allow arbitration may be overridden by a contrary congressional intent to prohibit waiver of a judicial forum for a particular claim, which intent is deducible from the statute's text, legislative history, or underlying objectives. *McMahon*, 482 U.S. at 226-27.

26

In *Mintze*, because the claimant did not raise any statutory claims created by the Bankruptcy Code, the court found no inherent conflict between arbitration and the consumer protection issues involved. Here, however, Sea-Pac has asserted entitlement to an administrative expense – a creature of the Bankruptcy Code – which is afforded priority treatment ahead of other creditors. "Where the issues to be arbitrated involve exclusively bankruptcy matters, *such as the determination of claim priority*, such issues *should not be* submitted to arbitration because they are core bankruptcy matters." *In re Slipped Disc*, 245 B.R. 342, 345 (Bankr. N.D. Iowa 2000) (emphasis added). Because resolution of such issue and the other issues relating to the merits of Sea-Pac's claims are tied inextricably to bankruptcy principles and are dependent upon the interpretation of orders of the Bankruptcy Court during AWI's chapter 11 case relating specifically to administrative expense claims and the filing of claims under contracts, arbitration of the Claim Objection would conflict with the objectives of the Bankruptcy Code. Accordingly, the Bankruptcy Court has the discretion to refuse to refer the Sea-Pac claims to arbitration.

> ➢ The Bankruptcy Court May (and Should)
> Exercise Its Discretion to Deny the Stay Motion
> Because the Facts Here Mitigate Against Arbitration

In determining whether to exercise discretion to deny enforcement of an arbitration provision, courts have considered a number of factors, including the following: (i) the importance of a centralized resolution of purely bankruptcy issues, (ii) whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration process, (iii) the degree to which special bankruptcy

27

expertise is necessary in deciding the issue, (iv) the impact on creditors of the debtor who

were never parties to the agreement containing the arbitration clause, and (v) whether the

parties have commenced arbitration outside of bankruptcy.[13] *See, e.g., Winstar*, 335 B.R.

at 365-366; *Slipped Disc*, 245 B.R. at 346. In this case, resolution of the Claim Objection

requires determinations with respect to a number of bankruptcy-specific issues which,

collectively, demonstrate that arbitration of the Claim Objection would be inconsistent

with the policies and objectives of the Bankruptcy Code, and accordingly, the Bankruptcy

Court may exercise its discretion to retain jurisdiction to resolve the Claim Objection.

■ *Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim with Prejudice*

An initial consideration in determining allowance of the Second Sea-Pac

Claim is whether, or to what extent, Sea-Pac's voluntary withdrawal of the Original Sea-

Pac Claim "with prejudice" precludes Sea-Pac from asserting further claims thereafter.

Determining the effect of a party's filings in a court is generally within the inherent

authority of that court. Such questions are all the more appropriate to be determined by

the Bankruptcy Court where the matter concerns the allowance or disallowance of claims

against a debtor's estate, which is a core proceeding within the jurisdiction of the

Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2)(B).

■ *Priority of Sea-Pac's Claims Relative to Other Creditors*

---

[13] *See In re APF Co.*, 264 B.R. 344, 363 (Bankr. D. Del. 2000) ("...particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve these fundamental Bankruptcy Code issues.").

Liquidating the Second Sea-Pac Claim also requires determining whether any portion thereof is entitled to administrative expense priority. Determining the priority of claims is within the exclusive jurisdiction of the Bankruptcy Court, given the strong policy of the Bankruptcy Code to have a centralized forum for resolving the entire body of claims against a debtor's estate. *See, e.g., APF*, 264 B.R. 344, 364 ("The efficient resolution of claims and the conservation of the bankruptcy estate's assets is an integral purpose of bankruptcy and inures to the benefit of the [d]ebtor's creditors.") (citing *Nat'l Gypsum*, 118 F.3d at 1069, n.21). Because administrative expense claims are afforded priority status under the Bankruptcy Code, the party seeking administrative expense priority has a heavy burden to demonstrate entitlement to such priority, and the Bankruptcy Court is in a unique position to evaluate whether that burden – as a legal, as well as a factual, matter – has been met. In this case, resolving the Second Sea-Pac Claim includes determining whether Sea-Pac's alleged breach of contract claims should be elevated above the claims of other similarly situated creditors of AWI's estate – an estate the Bankruptcy Court has been administering for more than six years.

Moreover, proving entitlement to an administrative expense priority claim requires satisfaction of bankruptcy-specific standards. Indeed, to prove that any damages suffered by Sea-Pac qualify as administrative expenses, Sea-Pac must, as a matter of bankruptcy law, show that its continued performance was induced by AWI notwithstanding that Sea-Pac knew of the alleged breaches that form the basis of its claims beginning in 2000 and 2003 (before the Sea-Pac Agreements expired). Sea-Pac continued to perform in spite of the alleged breaches, and Sea-Pac took no action in AWI's chapter 11 case to protect its rights for any alleged breach of the Sea-Pac

29

Agreements until November of 2005 — after the Sea-Pac Agreements expired. It is AWI's position that, if Sea-Pac had been harmed by AWI's actions, its remedy was to move to compel AWI to assume or reject the Sea-Pac Agreements, which it did not do. By continuing to perform, Sea-Pac deprived AWI of the ability to reject the Sea-Pac Agreements. An arbitration panel lacking experience in the bankruptcy concepts associated with postpetition performance under executory contracts (and rejection of such contracts) would be unable to assess the merits of AWI's Claim Objection.

> ▪ *Applicability of the Administrative Expense Bar Date*

The Claim Objection also requires a decision whether Sea-Pac is barred from asserting any administrative expenses arising prior to November 24, 2003 by virtue of Sea-Pac's failure to comply with the Administrative Expense Bar Date established in AWI's chapter 11 case. AWI submits that Sea-Pac is absolutely barred from asserting its administrative expense claims after failing to comply with the Bankruptcy Court's order establishing a bar date for such claims. The Administrative Expense Bar Date Order explicitly required Sea-Pac – as a counterparty to a contract with actual knowledge of the alleged breaches by AWI that form the basis of its claims – to assert such claims (as claims for "breach of an obligation – contractual, statutory, or otherwise – by AWI…") on or before the Administrative Expense Bar Date. Sea-Pac has asserted that the Administrative Expense Bar Date did not apply to its claims and suggests that the Executory Contracts Bar Date entered two years later relieved Sea-Pac of any obligation to comply with the Administrative Expense Bar Date. In short, Sea-Pac's response to this portion of the Claim Objection raises questions about the interpretation of two previous

orders entered by the Bankruptcy Court. It is indisputable that bankruptcy courts have the absolute right to enforce and interpret their own orders. *In re Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders."), *aff'd*, 279 F.3d 226 (3d Cir. 2002). Accordingly, the Bankruptcy Court – and not a panel of arbitrators unfamiliar with the orders in question – is in the best position to determine the applicability of the Administrative Expense Bar Date to Sea-Pac's claims.

■ *Valuing Administrative Expense Claims*

Resolving the Sea-Pac Claim also requires a determination of the value of any administrative expense claims to which Sea-Pac may be entitled. Contrary to Sea-Pac's simplified suggestion, liquidating the Sea-Pac Claim involves more than a simple breach of contract dispute to determine the amount, if any, of damages suffered by Sea-Pac on account of the alleged breaches by AWI. As a matter of bankruptcy law, if any of Sea-Pac's claims are entitled to administrative expense priority, the possible value of that claim is not necessarily based upon the damages that an arbitration panel might otherwise assess, but upon the reasonable value of the services (or benefits) provided by Sea-Pac to AWI's estate. *See In re FBI Distribution Corp.*, 330 F.3d 36, 48 (1st Cir. 2003) (holding that a creditor is entitled to only the reasonable value of the beneficial services rendered during the reorganization); *In re Adelphia Business Solutions, Inc.*, 296 B.R. 656, 664, n.9 (Bankr. S.D.N.Y. 2003) (recognizing that courts should be guided by "the equitable principle of unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him"); *In re Cardinal Indus., Inc.*, 142 B.R. 801, 805 (Bankr. S.D.

31

Ohio 1992) (holding that the measure of expense entitled to an administrative priority is the benefit to the estate, not the damage to the claimant). Again, the remedy, if the other party finds it is being harmed, is for that party to seek to compel assumption or rejection of the contract at issue. Because the analysis involved in valuing administrative expense claims derives from the development of a unique area of bankruptcy law, it requires the expertise of the Bankruptcy Court, and application of breach of contract principles by an arbitration panel may well conflict with the standard imposed by the Bankruptcy Code. In that regard, the Bankruptcy Court's statement in *In re Oakwood Homes Corp.* applies with equal force to the issue of valuing administrative priority claims:

> The law, and the lore surrounding adjudication of such claims is extensive, and has been developed over significant periods of time. The result is, that certain fact situations may be expected to bring about fairly consistent results, wherever they are tried. To subject these matters to arbitration, before individuals or tribunals with little or no experience in bankruptcy law or practice, and with little or no concern for the rights and interests of the body of creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results. Such a result would be contrary to the primary policy of the Bankruptcy Code, which is that all classes of creditors of a debtor are entitled to be treated as equitably as possible…

No. 02-13396PJW, 2005 WL 670310, at *5 (Bankr. D. Del. Mar. 18, 2005) (holding that statutory fraudulent conveyance and preference actions may not be submitted to arbitration and finding that, even if such actions were debtor-derivative, the court would exercise discretion to decline enforcement of arbitration provision as contrary to the objectives of the Bankruptcy Code).

- *Sea-Pac's Entitlement to Attorneys' Fees*

AWI disputes Sea-Pac's entitlement to attorneys' fees not only because the Sea-Pac Agreements fail to contain any language that would entitle Sea-Pac to such

fees, but also because, as a matter of bankruptcy law, an unsecured creditor may not recover postpetition attorneys' fees or other collection costs from an insolvent debtor. Accordingly, whether Sea-Pac is entitled to a claim for attorneys' fees is a question the Bankruptcy Court will ultimately have to resolve as a bankruptcy matter and is not something that can be easily assessed by a panel of arbitrators.

For all of the reasons set forth above, liquidating the Sea-Pac Claim is inherently intertwined with distinctive bankruptcy concepts that require specific expertise — and the Bankruptcy Court ultimately would have to determine the priority of Sea-Pac's claims in any event. Even if the issues could be segregated so as to allow arbitration to determine Sea-Pac's damages and a subsequent determination of priority by the Bankruptcy Court, it would require the Bankruptcy Court to revisit many of the facts reviewed by the arbitrators and would impose additional costs and expenses on AWI, which is directly contrary to the bankruptcy objectives favoring resolution of bankruptcy claims in a single forum and encouraging expeditious administration of the estate for the benefit of all creditors. As a result, the Claim Objection is precisely the situation in which bankruptcy-created rights inherently conflict with the principles of arbitration and warrant the retention of jurisdiction by the Bankruptcy Court in the exercise of its discretion.

## CONCLUSION

For all of the reasons discussed above, the Bankruptcy Court was correct to deny Sea-Pac's Stay Motion, which determination implicated no question of arbitrability that would require referral of the matter to an arbitration panel. Furthermore,

the Bankruptcy Court correctly determined, as a matter of interpretation and application

of the express terms of the Sea-Pac Agreements, that AWI has an enforceable right to

litigate – and Sea-Pac has no enforceable right to arbitrate – the disputes underlying Sea-

Pac's bankruptcy claims.  Even if Sea-Pac were found to have a viable right to arbitrate

pursuant to the Sea-Pac Agreements, the Court should remand this matter for the

Bankruptcy Court to exercise its discretion to determine whether denial of the Stay

Motion is warranted in light of the overwhelming weight of the bankruptcy policies

implicated in the resolution of Sea-Pac's bankruptcy claims.

Accordingly, the Bankruptcy Court's order denying Sea-Pac's Stay

Motion should be affirmed.

Dated: February 26, 2007
     Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR APPELLEE
ARMSTRONG WORLD INDUSTRIES, INC.

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 26th day of February, 2007, I electronically

filed the **Appellee's Answering Brief** with the Clerk of the Court using CM/ECF which will

send notifications of such filing to the following :

Michael Busenkell
mbusenkell@eckertseamans.com

Mark David Collins
Collins@rlf.com

Karen Lee Turner
kturner@eckertseamans.com

I, Jason M. Madron, hereby certify that on the 26th day of February, 2007, I sent via Hand

Delivery Service (Local) or via First Class Mail (Non-Local) the **Appellee's Answering Brief** to

the following participants:

**Via Hand Delivery**
(United States Trustee)
Richard Schepacarter
Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519

**Via First Class Mail**

*(Attorneys for Sea-Pac Sales Company)*
Michael M. Feinberg
Diana K. Carey
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, Washington 98102

**Via First Class Mail**

*(Attorneys for Sea-Pac Sales Company)*
Al Van Kampen
Rohde & Van Kampen PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154

Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Madron@rlf.com