IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:   ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-4 |
| | ) | |
| v. | ) | |
| | ) | |
| ARMSTRONG WORLD | ) | Bankruptcy Case No. 00-04471 |
| INDUSTRIES, INC., | ) | Appeal No. 06-77 |
| | ) | |
| Appellee | ) | |

## APPELLANT'S REPLY BRIEF

ECKERT SEAMANS CHERIN & MELLOTT LLC
Karen Lee Turner (No. 4332)
Michael G. Busenkell (No. 3933)
300 Delaware Avenue, Suite 1210
Wilmington, Delaware 19801
(302) 425-0430

-and-

KARR TUTTLE CAMPBELL
Michael M. Feinberg
Diana K. Carey
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

-and-

ROHDE & VAN KAMPEN PLLC
Al  Van Kampen
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

ATTORNEYS FOR SEA-PAC SALES
COMPANY

## TABLE OF CONTENTS

PAGE

PROCEDURAL BACKGROUND....................................................................................1

REPLY .........................................................................................................................1

I.    Arbitrator Should Decide Whether Sea-Pac Has Waived Arbitration....................2

II.   The Bankruptcy Court Lacked Discretion to Deny Arbitration.............................7

    A.    Discretion Exists Only Where The Dispute Derives Exclusively
        From The Bankruptcy Code And The Arbitration Proceeding
        Would Conflict With The Purposes Of The Bankruptcy Code ..................7

    B.    Sea-Pac's Claims are State Law Contract Claims: And Arbitration
        Would Not Conflict With The Purposes Of The Bankruptcy Code ...........9

III.  Sea-Pac Timely Initiated Arbitration Under The Parties Enforceable
    Arbitration Agreement. ........................................................................................14

    A.    Dispute Over the Sea-Pac Claim First Arose When The Claims
        Objection Was Filed. .................................................................................14

    B.    Sea-Pac Timely Initiated Arbitration of its Claim. ...................................15

    C.    Section 108(c) Suspended the Time For Making an Arbitration
        Demand ......................................................................................................16

    D.    A Waiver Based On An Untimely Arbitration Demand Can Only
        Be Sustain Based On A Showing of Prejudice .........................................17

## <u>TABLE OF AUTHORITIES</u>

PAGE

**CASES**

<u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985) ........................................... 7, 12

<u>Fricker v. Corestates Bank N.A. (In re Fricker)</u>, 192 B.R. 388 (Bankr E.D. Pa 1996) .................................................................................................................... 17

<u>Gill v. Tishman Construction Corp. of Calif. (In re Santa Monica Breach Hotel, Ltd.)</u>, 209 B.R. 772 (9th Cir. BAP 1997) ............................................. 11

<u>Green Tree</u>, 539 U.S. at 422 ................................................................... 3, 4, 5, 6

<u>Hays & Co. v. Merrill Lynch Inc. (In re Monge Oil Corp.)</u>, 885 F.2d 1149 (3d Cir. 1989) ............................................................................................ 7, 8, 12, 13

<u>Hexworth v. Binder, Robinson and Co.</u>, 980 F.2d 912 (3rd Cir. 1992) .......................... 18

<u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79 (2002) ........................... 2, 3, 4, 5, 6

<u>In re Adelphia Business Solutions, Inc.</u>, 296 B.R. 656 (Bankr. S.D.N.Y. 2003) ............. 10

<u>In re Cardinal</u>, 142 B.R. 801 (Bankr S.D. Ohio 1992) ...................................... 11

<u>In re Coastal Carriers, Corp.</u>, 128 B.R. 400 (Bankr. D. Md. 1991) ................................. 11

<u>In re Cowan</u>, 207 B.R. 207 (E. D. Cal. 1997) ................................................... 16

<u>In re Curry Printers, Inc.</u>, 135 B.R. 564 (Bankr. N.D. Ind. 1991) .................................. 11

In re <u>Dant & Russell</u>, Inc, 853 F.2d 700 (9th Cir. 1988) .................................... 10

<u>In re Dougherty</u>, 187 B.R. 883 (Bankr E.D. Pa 1995) ....................................... 17

<u>In re DVI, Inc.</u>, 308 B.R. 703 (Bankr. D. Del. 2004) ........................................ 11

<u>In re FBI Distribution Corp.</u>, 330 F.3d 36 (1st Cir. 2003) ................................. 11

<u>In re Fleming Co., Inc.</u>, 325 B.R. 687 (Bankr. D. Del. 2005) ........................................ 18

<u>In Re Hermansen</u>, 84 B.R. 729 (Bankr. D. Colo. 1988) .................................... 14

<u>In re Jartran, Inc.</u>, 732 F.2d 584 (7th Cir. 1984) ............................................ 10

<u>In re Mintze</u>, 434 F.3d 222 (3d Cir. 2006) ........................................ 1, 2, 7, 8, 13

<u>In re Oakwood Homes, Corp.</u>, 449 F.3d 588 (3d Cir. 2006) ............................. 14

<u>In re Shook</u>, 278 B.R. 815 (8th Cir. B.A.P. 2002) ........................................ 14

<u>In re Springbrook Apartments of Anderson, Ltd.</u>, 135 B.R. 526 (Bankr. S.D. Ohio 1992) ............................................................................................... 14

<u>In re Tyler</u>, 166 B.R. 21 (Bankr. S.D.N.Y. 1994) ........................................... 17

<u>In re ZB Co. Inc.</u>, 302 B.R. 316 (Bankr D. Del. 2003) .................................... 10

Insurance Co. of N. Am. v. NGC Settlement Trust (In re National Gypsum Co.), 118 F.3d 1056 (5th Cir. 1997) ................................................ 8

John Wiley & Sons v. Livingston 376 U.S. 543 (1964) .................................... 3

Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1 (1983) ....... 2, 3, 5, 6, 7, 12

Safety National Casualty Corp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.), 303 B.R. 299 (D. Del 2003) ........................................ 16

Shearson/Am Exp., Inc. v. McMahon, 482 U.S. 220 (1987)............................. 7, 8

Shubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.), 335 B.R. 556 (Bankr. D. Del. 2005) ....................................................... 18

United Trucking Service, Inc v. Trailer Rental Company, Inc (In re United Trucking Service, Inc.), 859 F.2d 159 (6th Cir 1988) ........................... 11

Welborn Clinic v. Med Quist, Inc., 301 F.3d 634 (7th Cir. 2002).................... 18

## STATUTES

11 U.S.C. § 108(a) ....................................................................... 16, 17

11 U.S.C. § 108(b) ....................................................................... 16, 17

11 U.S.C. § 108(c) ....................................................................... 16, 17

11 U.S.C. § 362.............................................................................. 17

11 U.S.C. § 502(a) ....................................................................... 14, 15

11 U.S.C. § 544(b) ............................................................................ 12

9 U.S.C. § 2.................................................................................... 7

## OTHER AUTHORITIES

Revised Uniform Arbitration Act of 2000 § 6, comment 2, 7 U.L.A. at 13 ...... 3

## PROCEDURAL BACKGROUND

This case is before the Court on an appeal by Sea-Pac Sales Company from the Bankruptcy Court's order ("***Order***")[1] denying Sea-Pac Sales Company's Motion (I) To Stay Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, And (II) For Relief From The Automatic Stay Or, In The Alternative, For Relief From The Discharge Injunction.

On February 5, 2007, Sea-Pac filed its Opening Brief.[2]  On February 26, 2007, AWI filed Appellee's Answering Brief.  This is Sea-Pac's Reply Brief.

## REPLY

AWI's contention that the Bankruptcy Court did not err in denying the Motion is plainly wrong.  Preliminarily, under controlling Supreme Court precedent, procedural threshold issues – such as lapse of time in seeking to enforce arbitration as the Bankruptcy Court found are properly for the arbitrator, rather than the court, to decide.  Moreover, under applicable Third Circuit precedent, the Bankruptcy Court should have compelled arbitration.    To determine whether or not to compel arbitration, the Bankruptcy Court should have considered (i) whether the dispute is governed by an enforceable arbitration clause, (ii) whether the Bankruptcy Court has any discretion to deny enforcement of the arbitration clause, and (iii) assuming the Bankruptcy Court had any discretion, whether the Bankruptcy Court should exercise its discretion in favor of arbitration.  See In re Mintze, 434 F.3d 222 (3d Cir. 2006).  In the present case, the parties' disputes are governed by an enforceable arbitration clause, and the Bankruptcy

---

[1]    Order Denying Sea-Pac Sales Company's Motion (I) To Stay Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, And (II) For Relief From The Automatic Stay Or, In The Alternative, For Relief From The Discharge Injunction, entered November 20, 2006.

[2]    Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in Appellant's Opening Brief.

1

Court had no discretion to deny enforcement of the arbitration clause as arbitration would not conflict with any provisions of the Bankruptcy Code. Even assuming the Bankruptcy Court had discretion to deny arbitration, its failure to enforce the parties' bargained-for dispute resolution procedure was an abuse of discretion. Consequently, application of Mintze to the present case mandates that the Order be reversed and that the Court enforce the parties' arbitration agreement.

## I.     Arbitrator Should Decide Whether Sea-Pac Has Waived Arbitration

AWI incorrectly contends that the Bankruptcy Court was acting within its authority in determining whether Sea-Pac timely initiated arbitration. Contrary to AWI's position, the Bankruptcy Court was not acting within its authority and, indeed, was acting contrary to binding precedent in determining whether Sea-Pac properly invoked its right to arbitrate the parties' dispute. The question of whether Sea-Pac has waived arbitration (or, as AWI poses the issue, whether Sea-Pac's time to initiate arbitration lapsed) is a question to be determined by the arbitrator. The Supreme Court has held that whether conditions precedent to an obligation to arbitrate have been met are for the arbitrator to decide rather than the court. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002); Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Accordingly, the arbitrator, not the Court, should decide whether Sea-Pac has waived arbitration as AWI contends.

To circumvent the well-settled principal that an arbitrator, rather than a court should decide threshold issues of procedural arbitrability, AWI first attempts to reframe the issue. AWI contends that it was not an issue of "waiver" of arbitration rights that the Bankruptcy Court determined; rather, AWI argues that the issue determined by the Bankruptcy Court was whether AWI's right to litigate the underlying dispute was

2

triggered by the "lapse of time." <u>See</u> Answering Brief p. 14. In other words, did AWI have the right to litigate, rather than arbitrate, under the Agreements as a result of Sea-Pac's purported failure to timely initiate arbitration.

AWI's attempt to recast the issue is inconsequential and, thus, unavailing. Whether the issue is one of "waiver" or "lapse of time," it is a distinction without any significance. AWI's purported right to litigate under the Agreements is simply the corollary to Sea-Pac's alleged failure to timely initiate arbitration inasmuch as the latter triggers the former. Regardless of how AWI attempts to recast the issue, or the label it attaches to the arbitration clause, the question is whether Sea-Pac timely invoked its right to arbitrate under the Agreements – an issue plainly reserved for the arbitrator's determination.

The Supreme Court has clearly delineated what gateway decisions are for the court and what gateway decisions are for an arbitrator. "[M]atters such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy", are for the court to decide. <u>Green Tree</u>, 539 U.S. at 422. However, "'procedural questions that grow out of the dispute and bear on its final decision' are presumptively" for an arbitrator, not a judge to decide. <u>Howsam,</u> 537 U.S. at 498 (<u>quoting</u> <u>John Wiley & Sons v. Livingston</u> 376 U.S. 543, 557 (1964). Issues of procedural arbitrability, including, "whether prerequisites such as *time limits*, notice, laches and other conditions precedent to an obligation to arbitrate have been met are for the arbitrators to decide." <u>Howsam</u>, 537 U.S. at 498 (<u>quoting</u> Revised Uniform Arbitration Act of 2000 § 6, comment 2, 7 U.L.A. at 13 (emphasis in original)); <u>Moses H. Cone Hospital</u>, 660 U.S. at 24-25 (1983) (There is a

presumption the arbitrator should decide "allegations of waiver delay, or a like defense to arbitrability.").

AWI does not dispute that both Agreements contain valid and enforceable arbitration clauses. AWI does not dispute that the Agreements require that any disputes arising under the Agreements be, in the first instance, submitted to mediation at the request of either party. See Commercial Agreement, ¶ 24; Residential Agreement ¶ 29; Answering Brief pp. 12-13. And, AWI does not dispute that the Agreements further provide that "[i]n the absence of a request for mediation, or if any dispute is not resolved within 90 days following a request for mediation, then, at the option of either party, such dispute shall be submitted to binding arbitration. . . ." See Commercial Agreement, ¶ 25; Residential Agreement ¶ 30; Answering Brief, p. 13. Thus, there is no dispute that claims raised by Sea-Pac in Proof of Claim No. 4854 are subject to alternative dispute mechanisms in the Agreements. The fundamental question is whether Sea-Pac satisfied the procedural prerequisites for arbitration – which the Supreme Court plainly holds is a question for the arbitrator, not the Bankruptcy Court, to determine.

AWI next attempts to justify the Bankruptcy Court's departure from binding Supreme Court precedent by distinguishing Howsam and Green Tree based on the specific arbitration clauses at issue. AWI contends Howsam and Green Tree contained broad, open-ended arbitration clauses and therefore, are factually distinct from the arbitration clause in the instant case. This distinction is untenable. The breadth of the arbitration clause is relevant only with respect to whether the controversy is arbitrable in the first instance. In any event, the arbitration provisions in the Agreements are as broad as the arbitration provisions in Howsam and Green Tree. They provide for the arbitration

4

of "any dispute" arising out of the Agreements. <u>See</u> Commercial Agreement ¶¶ 24, 25; Residential Agreement, ¶¶ 29, 30. Here, as noted, there is no dispute that the issues that Sea-Pac raises in its proof of claim are subject to a valid and enforceable arbitration agreement; thus the breadth or scope of the arbitration clause is irrelevant. The sole issue here is a procedural one: whether Sea-Pac properly invoked the Arbitration provisions in the Agreements.

Resolution of the timeliness issue this does not depend on the breadth or scope of the arbitration agreement. <u>Howsam</u> and <u>Green Tree</u> plainly teach that the "gateway" issues of procedural arbitrability, such as the "lapse of time," are precisely the type of issues to be determined by the arbitrator, rather than the court. Interestingly, AWI goes out of its way to avoid a discussion of <u>Moses H. Cone Memorial Hospital</u>, and for good reason. That case involved an arbitration clause in a construction contract that, as in this case, specified time limits for an arbitration demand. 460 U.S. at 5.[3] The hospital filed a lawsuit in state court claiming the contractor had lost its right of arbitration under the contract due to waiver, laches, estoppel and the failure to make any timely arbitration demand. The contractor filed a motion under the FAA to stay the state court action and to compel arbitration, which the district court denied. <u>Id</u>. at 6. The court of appeals reversed and Supreme Court affirmed the court of appeals' decision directing the district court to order the parties to arbitrate. <u>Id</u>. at 29. It so deciding the Court held "[t]he [Federal] Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

_____

[3]       The contract provided that no arbitration demand could made later than 30 days after the Architect's written final decision. The contract also set a starting time limit for arbitration demands. No demand could be made earlier than 10 days after presentation of evidence to the Architect, unless the Architect rendered a written decision before that time. <u>Moses H. Cone Hospital</u>, 460 U.S. at 5 fn. 2.

5

whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. at 25-6. Regardless of the breadth of an arbitration agreement or its open-ended nature, procedural "gateway" issues are matters for the arbitrator – rather than the court – to determine.

Finally, AWI cites certain dicta from Howsam and Green Tree in support of its position that the Bankruptcy Court appropriately decided whether Sea-Pac's time to initiate arbitration had lapsed.  AWI relies upon the Supreme Court's unremarkable acknowledgment in Howsam that NASD arbitrators would be well-suited to interpret their own rules.  AWI also cites the Supreme Court's observation in Green Tree that the arbitration panel in that case would be better suited to address issues of class arbitration. However, both of these statements are dicta and neither in any way limits the Supreme Court's holdings in those cases — that "gateway" issues of procedural arbitrability are for the arbitrator, not the court, to determine.  Accordingly, pursuant to the controlling authority of Howsam and Green Tree, the issue of whether Sea-Pac timely initiated arbitration was a matter for the arbitrator – not the Bankruptcy Court – to decide.

The Bankruptcy Court's ruling was based solely on its resolution of the gateway procedural issue, i.e. whether Sea-Pac timely invoked the arbitration provisions in the Agreements: "I don't need to get into where the initial dispute should be heard in the first instance because I think the untimeliness of the [arbitration] demand means you are here."  Appendix 10, Tr. of Hearing at 21, lines 15-17.  The Bankruptcy Court was plainly wrong.  This was not a decision the Bankruptcy Court had the authority to make. Its decision should be reversed.

6

**II.     The Bankruptcy Court Lacked Discretion to Deny Arbitration**

    **A.     Discretion Exists Only Where The Dispute Derives Exclusively From The Bankruptcy Code And The Arbitration Proceeding Would Conflict With The Purposes Of The Bankruptcy Code**

Before the Court can determine whether the bankruptcy court abused its discretion, the Court must determine whether the Bankruptcy Court had any discretion to exercise. Mintze, 434 F.3d at 228 (citing Hays & Co. v. Merrill Lynch Inc. (In re Monge Oil Corp.), 885 F.2d 1149, 1156 (3d Cir. 1989). Whether a bankruptcy court has the discretion to deny enforcement of an arbitration clause is a question of law. Mintze, 434 F.3d at 228.

The Federal Arbitration Act ("FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See 9 U.S.C. § 2. The FAA has established a strong policy in favor of arbitration. See Moses H. Cone Hospital, 460 U.S. at 24. It requires rigorous enforcement of arbitration agreements. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220 (1985). The FAA's mandate compelling the enforcement of arbitration agreements can only be overridden if the party "opposing arbitration can demonstrate "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Mintze, 434 F.3d at 229 (quoting Shearson/Am Exp., Inc. v. McMahon, 482 U.S. 220, 227 (1987)). To avoid enforcement of an arbitration agreement, a party opposing arbitration must establish Congressional intent to create an exception to the FAA's mandate in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) an inherent conflict between arbitration and the statute's underlying purposes. Mintze, 434 F.3d at 229 (citing McMahon, 482 U.S. at 227

(1987)).  Only if the <u>McMahon</u> standard is met, does a court have discretion to deny enforcement of an otherwise applicable arbitration clause. <u>Mintze,</u> 434 F.3d at 330; <u>see also</u> <u>Hays</u>, 885 F.2d at 1156-57.

Whether a matter is a core or non-core bankruptcy proceeding does not affect whether a bankruptcy court has discretion to deny enforcement of an arbitration agreement. <u>Mintze</u>, 434 F.3d at 429.  In <u>Mintze</u>, the court rejected the argument that <u>Hays</u>' application of the <u>McMahon</u> standards was limited only to statutory claims in non-core proceedings.  434 F.3d at 230-31.  It held that <u>Hays</u>' requirement that the <u>McMahon</u> standard must be satisfied before a court had discretion to deny arbitration applies equally to core and non-core proceedings.  <u>Id</u>. at 231.  The relevant distinction is whether the cause of action derived from the debtor or whether the cause of action derived from the Bankruptcy Code.  <u>Id</u>. at 231-32.  Non-enforcement of an otherwise applicable arbitration provision turns on "whether the proceeding derives *exclusively* from the Bankruptcy Code and if so whether the arbitration proceeding would conflict with the purposes of the Code."  <u>Id</u>. at 232 (<u>citing</u> <u>Insurance Co. of N. Am. v. NGC Settlement Trust (In re National Gypsum Co.)</u>, 118 F.3d 1056, 1067 (5th Cir. 1997)(emphasis supplied)).

The claims Sea-Pac asserts in the Proof of Claim do not derive exclusively from the Bankruptcy Code.  They are state law contract claims based on the Agreements. Sea-Pac contends (1) that AWI breached the Residential Agreement by failing to reimburse Sea-Pac for RDC functions as required by the agreement; and (2)  that it breached the Commercial Agreement by appointing an second distributor in Sea-Pac's exclusive territory.

**B.     Sea-Pac's Claims are State Law Contract Claims: And Arbitration Would Not Conflict With The Purposes Of The Bankruptcy Code**

AWI contends that because bankruptcy issues are somehow intertwined with Sea-Pac's claim, the Bankruptcy Court should exercise its discretion against enforcing the parties' arbitration agreements.[4] AWI mischaracterizes the issues raised by the Sea-Pac Claim. Sea-Pac's underlying claims for breach in no way implicate statutory rights created by the Bankruptcy Code and do not implicate any objectives of the Bankruptcy Code.

There is no conflict with the statutory rights created by, or the purpose of, the Bankruptcy Code in enforcing the arbitration provisions of the Agreements. By the Sea-Pac Claim, Sea-Pac asserts a simple claim of breach of the Agreements. Arbitration of the Sea-Pac Claim would merely involve the determination of whether a valid contract existed between the parties, whether all conditions precedent to AWI's performance were satisfied (or excused), whether AWI failed to perform, whether AWI had any defenses to its breach of the Agreements, and whether Sea-Pac suffered any damages as a result of the claimed breaches. These issues neither implicate any statutory rights created by the Bankruptcy Code, nor conflict with any underlying objectives of the Bankruptcy Code. Accordingly, the Bankruptcy Court should exercise its discretion in favor of enforcing the parties' bargained-for dispute resolution procedure.

---

[4]     Because the Bankruptcy Court denied the Motion based on the perceived failure of Sea-Pac to timely initiate arbitration, a procedural "gateway" issue, it never exercised any discretion in the first instance. If this court were to reject Sea-Pac's Argument that the Court lacked discretion to deny arbitration it would be required to remand this case to the Bankruptcy Court. AWI makes a similar observation. Answering Brief at 25 n. 11. See also Hays, 885 F.2d at 1155 (because the district court did not explain what factors led it to exercise its discretion against enforcing the parties bargain to arbitrate, that deficiency renders the exercise of its discretion essentially unreviewable and would alone justify a remand).

In its attempt to artificially create conflicts with the Bankruptcy Code, AWI cites Sea-Pac's assertion of administrative expense priority claim and constructs a litany of issues potentially implicated by Sea-Pac's assertion of an administrative expense claim. However, none of the issues raised by Sea-Pac's assertion of an administrative expense priority claim involve Sea-Pac's underlying claim for breach. All that is required to determine whether the Sea-Pac Claim is entitled to administrative expense priority is (i) whether Sea-Pac was induced by AWI to provide services post-petition; and (ii) whether such services provided a benefit to AWI's estate. See generally In re Jartran, Inc., 732 F.2d 584, 587-88 (7th Cir. 1984). These issues are wholly independent of Sea-Pac's claim for breach. Moreover, it is not disputed that Sea-Pac provided post-petition services to AWI at the request of AWI.

AWI alludes to a possible unspecified potential conflict in application of contract law principals by an arbitration panel with the Bankruptcy Code's standards for valuing administrative expense claims. See Answering Brief, p. 26. There is no such conflict. Absent evidence to the contrary, the contract rate is presumed to be the reasonable value of post-petition goods and services for purposes of valuing an administrative expense claim. See In re Adelphia Business Solutions, Inc., 296 B.R. 656, 664 (Bankr. S.D.N.Y. 2003) (citing In re Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir. 1988)) (Although it is true that once the threshold entitlement to administrative expense priority is established, the measure of compensation is the reasonable value of services, however, in most cases there will not be a difference since, "the contract rate is presumed to set the reasonable value, but either party may offer evidence to prove a different value."); In re ZB Co. Inc., 302 B.R. 316, 319 (Bankr. D. Del. 2003) ("Absent

evidence to the contrary, the contract rate is presumed to be the fair rental rate."); In re

DVI, Inc., 308 B.R. 703 707-708 (Bankr. D. Del. 2004) (Debtor liable for post-rejection

possession of leased premises at contract rate based on presumption); Gill v. Tishman

Construction Corp. of Calif. (In re Santa Monica Breach Hotel, Ltd.), 209 B.R. 772, 726-

27 (9th Cir. BAP 1997) (Debtor liable for administrative claim measured by pre-petition

contract, including an indemnity term, when it requested debtor to continue to provide

services post-petition); In re Curry Printers, Inc., 135 B.R. 564 (Bankr. N.D. Ind. 1991)

(equipment lessor was entitled to administrative expense based on debtor's continued

possession of equipment post-petition prior to rejection of leases presumptively at

contract rate, without regard to debtor's actual use of equipment); In re Coastal Carriers,

Corp., 128 B.R. 400 (Bankr. D. Md. 1991) (Debtor liable for administrative expense for

full amount of charter hire payments and fuel supplied although barge debtor chartered

sank before end of charter). [5]  Significantly, nowhere does AWI suggest that the contract

rate is not reasonable.  Contrary to the AWI's assertion, there is no potential conflict in

applicable contract law principals and the Bankruptcy Codes standards for valuing

administrative expense claims.

---

[5]      AWI miscites In re FBI Distribution Corp., 330 F.3d 36, 48 (1st Cir. 2003).  That case does not
hold that a creditor is entitled only to the reasonable value of beneficial services rendered in reorganization.
Indeed, there is no discussion of value.  The court held in that case an executive's claims based a pre-
petition employment and retention agreement were unsecured claims and were not entitled to
administrative priority status.  Id. at 48-49.  Similarly, AWI miscites In re Cardinal, 142 B.R. 801 (Bankr
S.D. Ohio 1992) as holding the measure of expenses entitled to an administrative expense is the benefit of
to the estate.  The court indicated that the only issue it was deciding was whether the claimant had a valid
claim that was entitled to an administrative priority but that it would not decide the proper amount.  Id. at
805.  AWI is apparently referring to Cardinal's discussion of United Trucking Service, Inc v. Trailer Rental
Company, Inc (In re United Trucking Service, Inc.), 859 F.2d 159 (6th Cir 1988), where the court
explained under the unique factual circumstances presented in that case, the measure of damages under the
applicable substantive law principals was unjust enrichment.  Id. at 804-05.  To the extent the appropriate
contractual measure of damages here is unjust enrichment, this does not create any inherent conflict with
the policies of the Bankruptcy Code since in arbitrators are probably more experienced than bankruptcy
judges in determining contractual and quasi contractual unjust enrichment claims.

Moreover, Sea-Pac's claim for breach can be bifurcated from its request for administrative expense priority treatment. See Hays, 865 F.2d at 1158-59. In Hays, the Chapter 11 trustee alleged various federal and state securities violations against Merrill Lynch in addition to fraudulent and constructive trust claims based on the trustee's bankruptcy powers under 11 U.S.C. § 544(b). Id. at 1149. Although the court held that the trustee's § 544(b) claims were not arbitrable because they were not derivative of the debtor, it nevertheless reversed the district court's decision denying Merrill Lynch's motion to compel arbitration of its other claims "[E]ven if there were some potential for an adverse impact on the core proceeding, such as inefficiency delay, duplicative proceedings or collateral estoppel effect," the court found, they were not substantial enough to override the federal policy favoring arbitration. Id. at 1158 [footnotes omitted]. Rather, the court held the claims should be bifurcated because "the Arbitration Act requires the district courts to compel arbitration of pendent arbitrable claims . . .,even where the result would be possibly the inefficient maintenance of separate proceedings in separate forums." Id. at 1159 (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985); cf. Moses H. Cone Hospital, 460 U.S. at 20 (FAA may require piecemeal resolution when necessary to give effect to an arbitration agreement). Accordingly, the court saw no reason why bifurcation would not also serve to protect the "federal" interest in preserving any non-arbitrable bankruptcy issues for resolution by the bankruptcy court. See Hays,865 F.2d at 1160. The same is true here.

The bankruptcy issues related to administrative status are not dependent on the resolution of the underlying state law contract issued raised in Sea-Pac's proof of claim. Indeed, the issues pertaining to effect of Sea-Pac's earlier proof of claim, the

12

timeliness of its filing under the various bar date orders and whether Sea-Pac would, as a matter or substantive bankruptcy law be precluded from an award of attorney fees as a matter of substantive bankruptcy law, notwithstanding a contractual provision entitling it to an award, are primarily legal issues that are separate and distinct from the underlying contract claims raised in Sea-Pac's proof of claim. Consequently, AWI's contention that arbitration of the Sea-Pac claim would interfere with the Bankruptcy Code's underlying policy is wholly without merit.

The other policy reason AWI asserts is equally without merit having been rejected by the Third Circuit in Mintze. AWI asserts because Sea-Pac is asserting a claim for an administrative priority, allowance of this claim potentially will have an effect on other creditors and the strong policy of the Bankruptcy Court for resolving the entire body of claims against the estate. Mintze rejected this argument. Indeed, this the basis for its reversing the district court. The court held that "the potential effect on the order of priority of Mintze's other creditors "was not sufficient to create an inherent conflict between the Bankruptcy Code's underlying purpose and arbitration. Mintze, 434 F.3d at 231; see also Hays, 885 F.2d at 1149 ("mere existence of creditors in core proceeding who might be indirectly affected by the arbitration decision and who are not parties to the arbitration agreement does not require denial of Merrill Lynch's motion" to compel arbitration).

As in Mintze and Hays, AWI has failed to satisfy its burden under McMahon of demonstrating an inherent conflict between arbitration of Sea-Pac's claims and the underlying purpose of the Bankruptcy Code. Like the debtor in Hays, its "articulation of the bankruptcy policy that must override the policy favoring arbitration . .

13

. is couched in generalities that lack persuasive force." Hays, 885 F.2d at 1157. Accordingly, the Bankruptcy Court had no discretion to deny enforcement of the bargained for arbitration agreement.    The court should reverse the decision of the Bankruptcy Court and direct the Bankruptcy Court to order arbitration

**III.    Sea-Pac Timely Initiated Arbitration Under
The Parties Enforceable Arbitration Agreement.**

   **A.    Dispute Over the Sea-Pac Claim First Arose When
The Claims Objection Was Filed.**

Assuming the Bankruptcy Court properly addressed the timeliness of Sea-Pac's arbitration request in the first instance, the Bankruptcy Court erred in finding that Sea-Pac did not timely initiate arbitration.    Contrary to the Bankruptcy Court's findings, Sea-Pac initiated arbitration well within the time frame provided for under the Agreements.

The dispute regarding Sea-Pac's claim first arose on July 20, 2006 – the date the Claims Objection was filed with the Bankruptcy Court.    Prior to July 20, 2006, Sea-Pac's claim was deemed allowed under section 502(a) of the Bankruptcy Code. Section 502 of the Bankruptcy Code provides, in pertinent part:  "A claim . . ., proof of which is filed under section 502 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Thus, absent an objection to a proof of claim, such proof of claim is deemed allowed under section 502 of the Bankruptcy Code.  See In re Oakwood Homes, Corp., 449 F.3d 588, 603-04 (3d Cir. 2006); see also In re Shook, 278 B.R. 815 (8th Cir. BAP. 2002); In re Springbrook Apartments of Anderson, Ltd., 135 B.R. 526 (Bankr. S.D. Ohio 1992); In Re Hermansen, 84 B.R. 729 (Bankr. D. Colo. 1988). Consequently, the Sea-Pac Claim was an allowed claim, and no dispute existed, until AWI filed the Claims Objection on July 20, 2006.

14

While AWI discounts this position as "shocking" and "not credible," see Answering Brief, pp. 20, 21, it does not deny the fundamental principle that a contract party, such as AWI, may elect to breach and pay economic damages rather than perform. Such an election does not in itself constitute a dispute. Rather, it was not until AWI filed the Claims Objection that it contested that it was in breach and, thus, disputed the Sea-Pac Claim. Until that time, AWI could have elected to not object to the Sea-Pac Claim and, thus, allow the Sea-Pac Claim. Indeed, up until the filing of the Claims Objection, the Sea-Pac Claim was deemed allowed pursuant to section 502(a) of the Bankruptcy Code.

**B.    Sea-Pac Timely Initiated Arbitration of its Claim.**

Because the dispute over the Sea-Pac Claim did not arise until July 20, 2006, Sea-Pac's request for arbitration was timely under the Agreements. First, under paragraphs 24 and 29 of the Commercial Agreement and Residential Agreement, respectively, Sea-Pac had 40 days to request mediation after the dispute arose. See Commercial Agreement ¶ 24; Residential Agreement ¶ 29. Then, in the absence of a request for mediation, Sea-Pac had 30 days to initiate arbitration before AWI could resort to litigation. Thus, the Agreements required Sea-Pac to initiate arbitration within seventy (70) days of the dispute first arising.

Sea-Pac initiated arbitration within 70 days of the dispute arising. The dispute first arose when AWI filed the Claims Objection on July 20, 2006. The parties had until August 28, 2006 to request mediation. Neither party requested mediation, so Sea-Pac had an additional 30 days from August 29, 2006 to initiate arbitration. Sea-Pac filed the stay motion on September 15, 2006 – well within the deadline to initiate

15

arbitration of September 28.  Accordingly, Sea-Pac's initiation of arbitration was timely and its right to arbitration did not lapse as AWI contends.

### C.    Section 108(c) Suspended the Time For Making an Arbitration Demand

AWI argues that Sea-Pac was not preventing from initiating arbitration of its dispute with AWI by operation of the automatic stay under section 362 of the Bankruptcy Code and consequently § 108(c) ) does not apply to suspend the period for making an arbitration demand.  This is not what the trial court thought[6] and its is not the law in this district.  Safety National Casualty Corp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.), 303 B.R. 299, 303 (D. Del 2003) (holding automatic stay is broad and covers  all proceedings against the debtor including an declaratory action related to the scope of insurance coverage).

AWI also argues that section 108(c) applies only to those time periods that commence before the filing of a bankruptcy petition.  This interpretation argument finds no support in the text of § 108(c) .  See In re Cowan, 207 B.R. 207 (E. D. Cal. 1997) ("There is no language in that section which limits it to claims arising prior to the petition.  Section 108(c) refers only to 'a claim against the debtor.'").  The term "claim" as defined by § 101(5) of the Bankruptcy Code is neither limited to prepetiton claims nor specifically confined to pre-petition claims within section 108(c).  Cowen, 207 B.R at 210.

In contrast, sections 108(a) and 108(b) )bare limited by their express terms to prepetition claims.  Both Sections § 108(a) and 108(b) describe the time in which the

---

[6] "Now. you may be able to extend that period by filing an appropriate motion with the Bankruptcy Court because you can't invoke [the Arbitration] c[l]ause if the stay's in place, but your remedy then is to get relief from the stay." Appendix 10, Tr. of Hearing, at 19, lines 2-5.

debtor or trustee may do certain things based on time limitations imposed by applicable nonbankruptcy law if "such period has not expired before the date of filing of a petition." Unlike sections 108(a) or 108(b), section 108(c) does not apply to debtors but relates to actions against the debtor, nor does it contain any temporal limitations that relate to the petition date.[7]   The duration of time periods under § 108(c) for commencing or continuing an action against the debtor are measured solely by the duration of the automatic stay as it pertains to the action in question.

Contrary to AWI's contentions § 108(c) is not limited in application to time periods which commence prior to the filing of the petition.  As the Bankruptcy Court noted, the automatic stay imposed by § 362 stayed Sea-Pac from making an arbitration demand under the Agreements.  By its express terms § 108(c) suspended the time limit in which Sea-Pac was required to make an arbitration demand.

**D.    A Waiver Based On An Untimely Arbitration Demand
Can Only Be Sustain Based On A Showing of Prejudice**

Even assuming Sea-Pac did not timely invoke its arbitration rights and the Bankruptcy Court was the proper arbiter of that issue (both of which Sea-Pac disputes, as discussed supra), the Bankruptcy Court erred in finding that Sea-Pac forfeited its right to arbitration through the lapse of time.  Courts have held that a waiver of arbitration rights is not to be lightly inferred absent a showing of prejudice.  See Shubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.), 335 B.R. 556, 565 (Bankr. D. Del.

---

[7]    In re Tyler, 166 B.R. 21, 26 (Bankr. S.D.N.Y. 1994), the only case which AWI cites that construes § 108(c) relies entirely on cases construing sections 108(a) and 108 (b).  The other cases AWI cites all involve sections 108(a) and 108 (b), which because of the significant textual differences are inapposite. The statements in Fricker v. Corestates Bank N.A. (In re Fricker), 192 B.R. 388, 394 (Bankr E.D. Pa 1996), which AWI cites as recognizing that each of subsections of 108 implicitly relates to pre-petition claims is pure dicta, since the applicable state law period had run out before the bankruptcy case.  Moreover, it cites as its sole authority, In re Dougherty, 187 B.R. 883, 885-86 (Bankr E.D. Pa 1995)—another case that AWI cites—that involved only the application of § 108(b).

2005). <u>Winstar</u>, like the present case, involved a contractual limitation specifying the time in which arbitration had to be invoked. <u>Id</u>. When the defendants invoked an arbitration agreement in response to the Trustee's adversary proceeding, the Trustee argued that the demand was untimely. <u>Id</u>. at 561. Nonetheless, the court in Winstar granted the motion to stay the adversary pending arbitration. <u>Id</u>. at 568-69. The court noted that:

> [T]he Trustee also implies that, since Wellspring did not seek arbitration until after the Trustee commenced this adversary proceeding, Wellspring, in essence, waived the option to have the Matter determined at arbitration. "The Third Circuit has established that prejudice is the touchstone for determining whether the right to arbitrate has been waived. The parties trying to avoid arbitration has the burden of establishing prejudice." .

<u>Winstar</u>, 335 B.R. at 567 (<u>quoting</u> <u>In re Fleming Co., Inc.</u>, 325 B.R. 687, 691 (Bankr. D. Del. 2005) (<u>quoting</u> <u>Hexworth v. Binder, Robinson and Co.</u>, 980 F.2d 912, 925 (3rd Cir. 1992)). The <u>Winstar</u> court went on to note "[A] party cannot avoid arbitration because of the other party's failure to comply with the negotiation steps of a grievance procedure as long as that other party acted in good faith to preserve its right to arbitration." <u>Winstar</u>, 335 B.R. at 568 (<u>quoting</u> <u>Welborn Clinic v. Med Quist, Inc.</u>, 301 F.3d 634, 638 (7th Cir. 2002)).

AWI, as the party attempting to avoid arbitration, has failed to meet its burden. AWI has made no showing of any prejudice in enforcing the parties' arbitration agreement. Without a demonstration of prejudice – which the AWI has not shown – the Bankruptcy Court erred in finding that Sea-Pac had forfeited its right to arbitration under the Agreements. <u>See</u> <u>Winstar</u>, 335 B.R. at 568. Moreover, Sea-Pac has acted in good faith to preserve its right to arbitrate. Consequently, the Bankruptcy Court should not have inferred a waiver of Sea-Pac's right to arbitrate.

18

## CONCLUSION

Appellant, Sea-Pac Sales Company, respectfully requests that the Court (1) reverse the Order entered by the United States Bankruptcy Court for the District of Delaware denying Sea-Pac Sales Company's Motion (I) To Stay Objection By Armstrong World Industries, Inc. To Sea-Pac's Proof Of Claim No. 4854 Pending Arbitration, And (II) For Relief From The Automatic Stay Or, In The Alternative, For Relief From The Discharge Injunction, (2) enter an order staying the Claims Objection pending arbitration, (3) direct the court order the parties to arbitrate, and (4) grant relief from the discharge injunction to permit Sea-Pac to pursue its claims in arbitration.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Sea-Pac Sales Company*

Dated: March 8, 2007

<u>CERTIFICATE OF SERVICE</u>

I, Michael G. Busenkell, certify that on March 8, 2007 I caused a copy of

the foregoing Appellant's Reply Brief to be served as indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801
***By Hand***

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
***By First Class Mail***

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC 20005
***By First Class Mail***

_____
Michael G. Busenkell (No. 3933)

U0004984V3