IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
*In re*                                    :    **Chapter 11**
                                           :
**ARMSTRONG WORLD INDUSTRIES,**  :    **Case No. 00-04471 (JKF)**
**INC.,** *et al.,*                        :
                                           :    **(Jointly Administered)**
                  **Debtors.**             :
---------------------------------------------------x
**SEA-PAC SALES COMPANY,**                 :
                                           :
                  **Appellant,**           :
                                           :
         **v.**                            :    **Civil Action No. 07-4**
                                           :    **Appeal No. 06-77**
**ARMSTRONG WORLD INDUSTRIES,**  :
**INC.,** *et al.,*                        :
                                           :    Re: Docket Nos. 16 and 17
                  **Appellee.**            :
---------------------------------------------------x

**MEMORANDUM OF ARMSTRONG WORLD INDUSTRIES, INC.
IN OPPOSITION TO SEA-PAC SALES COMPANY'S MOTION FOR STAY
PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION**

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

-and-

David A. Hickerson
Stephen A. Gibbons
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC  20005
(202) 682-7000

ATTORNEYS FOR ARMSTRONG WORLD
INDUSTRIES, INC.

Dated:  August 2, 2007
         Wilmington, Delaware

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY .................................................................................. 1

ARGUMENT ........................................................................................................ 8

A.    Neither the Federal Arbitration Act Nor Judicial
      Precedent Require a Stay of the Adversary Proceeding ........................... 8

B.    The Facts of the Case at Hand Preclude
      Application of an Automatic Divestiture Rule ....................................... 10

      i.     Because Issues Will Remain Before the Bankruptcy
             Court Regardless of the Outcome of the Arbitration
             Appeal, the Bankruptcy Court Is Not Divested of Jurisdiction .............. 10

      ii.    Jurisprudential Considerations Weigh Against
             Application of an Automatic Divestiture Rule ........................................ 14

C.    A Stay of the Adversary Proceeding Is Not Warranted
      Under the Traditional Four-Part Test for Discretionary Stays ............................... 18

CONCLUSION .................................................................................................. 20

RLF1-3185463-1

## TABLE OF AUTHORITIES

**Cases**

*Am. Tel. and Telegraph. Co. v. Integrated Network Corp.,*
1992 U.S. Dist. LEXIS 22641, at *6 (D.N.J. Jan. 8, 1992)..........................................16

*Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004)...........................9,12

*Bradford-Scott Data Corp. v. Physician Computing Network*, 128 F.3d 504
(7th Cir. 1997).........................................................................................................9,12,20

*Bratek v. Beyond Juice, LLC*, No. 04-4491, 2005 U.S. Dist. LEXIS 33352
(E.D. Pa. Dec. 15, 2005).............................................................................................9,16

*Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990).........................................9

*Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.),*
270 B.R. 99 (S.D.N.Y. 2001) ..................................................................................14,15

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) ..............................6,8,9,10

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) .............................................19

*Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.),*
2002 U.S. Dist. LEXIS 9409 (D. Del. May 22, 2002) .............................................18,19

*Hill v. PeopleSoft USA, Inc.*, 341 F. Supp. 2d 559 (D. Md. 2004) .....................................15

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)..............................................19

*Kittay v. Landegger (In re Hagerstown Fiber Ltd P'ship)*, 277 B.R. 181
(Bankr. S.D.N.Y. 2002).............................................................................................12,13

*McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158 (10th Cir. 2005) .....................9,12

*Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
945 F.2d 150 (6th Cir. 1991).......................................................................................19

*Mintze v. Am. Gen. Fin. Services Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006).....15,16

*Morgan v. Polaroid Corp. (In re Polaroid Corp.),*
2004 U.S. Dist. LEXIS 1917 (D. Del. Feb. 9, 2004)....................................................18

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004).........................................9,14

*Singer Creditor Trust v. Akai Electric Co.*, No. 00 Civ. 6793(LTS),
    2001 U.S. Dist. LEXIS 12902 (S.D.N.Y. Aug. 27, 2001) ........................................13,14

*In re Startec Global Communs. Corp.*, 303 B.R. 605 (D. Md. 2004)................................15

*U.S. v. Rodgers*, 101 F.3d 247 (2d Cir. 1996).......................................................................15

*U.S. v. Turley*, 891 F.2d 57 (3d Cir. 1990) ............................................................................9

**Statutes**

9 U.S.C. § 3.................................................................................................................................8

**Miscellaneous**

Third Circuit I.O.P. Ch. 5 .........................................................................................................9

## PRELIMINARY STATEMENT

Nearly seven months after appealing from the order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") denying its motion to compel arbitration, Sea-Pac Sales Company ("Sea-Pac") now asks this Court to stay the proceedings before the Bankruptcy Court. Sea-Pac makes this request even though Sea-Pac itself acknowledges that, even if arbitration were granted, the Bankruptcy Court would still have to preside over substantial bankruptcy issues upon which it clearly has jurisdiction. Given the timing of Sea-Pac's request and Sea-Pac's wholesale failure to respond adequately to AWI's discovery requests, this Court should recognize that Sea-Pac's motion is simply a tactical ploy designed to avoid further discovery. Neither the law nor the facts at hand support Sea-Pac's motion to stay these proceedings. Accordingly, Sea-Pac's request should be denied.

## PROCEDURAL HISTORY

On December 6, 2000, AWI and two of its affiliated debtors each commenced in the Bankruptcy Court a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). By order entered on August 18, 2006, [Bank. Doc. No. 9755] this Court confirmed AWI's *Fourth Amended Plan of Reorganization, as Modified*, dated February 21, 2006 (the "**Plan**"). On October 2, 2006, the "Effective Date" under the Plan occurred, and AWI emerged from chapter 11 protection.

Sea-Pac filed a proof of claim (Claim No. 3528) on or about August 30, 2001, asserting certain liquidated and unliquidated, contingent and non-contingent, prepetition and postpetition obligations of AWI to Sea-Pac, in estimated amounts aggregating in excess of $7 million. The claim did not assert a right or request to arbitrate. On May 29, 2003, Sea-Pac

1

voluntarily withdrew its claim "with prejudice." *See Withdrawal of Proof of Claim No. 3528* [Bankr. Doc. No. 4841] [B-1].[1]

By order dated March 21, 2003 [Bankr. Doc. No. 4301] (the "*Administrative Expense Bar Date Order*"), the Bankruptcy Court set November 24, 2003 (the "*Administrative Expense Bar Date*") as the deadline for filing certain proofs of administrative expense claims against AWI in the chapter 11 case. Pursuant to the Administrative Expense Bar Date Order, any creditor asserting a claim for an administrative expense against AWI (of the type identified in the Administrative Expense Bar Date Order) was required to file a proof of such administrative expense on or before the Administrative Expense Bar Date. Sea-Pac *did not file* a proof of administrative expense for any claims relating to the Sea-Pac Agreements [as hereinafter defined] on or before the Administrative Expense Bar Date.

By Order dated September 29, 2005 [Bankr. Doc. No. 8652] (the "*Executory Contracts Bar Date Order*"), the Bankruptcy Court set November 8, 2005 (the "*Executory Contracts Bar Date*") as the deadline by which all parties to "Previously Scheduled Contracts" would be required to file proofs of claim for any and all claims against AWI relating to such Previously Scheduled Contracts. Each of the Sea-Pac Agreements was expressly identified in the Executory Contracts Bar Date Order as a "Previously Scheduled Contract," that is, as a contract that AWI originally listed on Schedule G to its Schedules of Assets and Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory. The Sea-Pac Agreements were identified as Previously Scheduled Contracts because

---

[1] All references to the record, as contained in *Appendix to Sea-Pac Sales Company's Memorandum of Law in Support of Motion for Stay Pending Appeal of the Court's November 20, 2006 Order*, shall be made herein as "A-[tab no.]." All references to the record, as contained in *Appendix to Armstrong World Industries, Inc.'s Memorandum of Law in Opposition to Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Bankruptcy Court's Order Denying Arbitration*, shall be made herein as "B-[tab no.]."

they expired according to their terms during the pendency of AWI's chapter 11 case – Sea-Pac having failed to ever require AWI to assume or reject them.

Sea-Pac filed a second proof of claim against AWI [A-1] (Claim No. 4854, the "*Second Sea-Pac Claim*") on or about November 8, 2005. The Second Sea-Pac Claim is one of the few remaining unresolved claims in AWI's chapter 11 case and stands as an obstacle to closing AWI's chapter 11 case. The Second Sea-Pac Claim arises from AWI's alleged breach of the parties' Commercial Flooring Products Distributorship Agreement (the "*Commercial Agreement*") and Residential Flooring Products Distributorship Agreement and Sales/Service Center Agreement (the "*Residential Agreement*" and together with the Commercial Agreement, the "*Sea-Pac Agreements*"). Specifically, the Second Sea-Pac Claim states that as a result of AWI's alleged breach of the Commercial Agreement, Sea-Pac suffered $2 million in damages, all of which, Sea-Pac claims, is entitled to administrative expense priority. It also states that as a result of AWI's alleged breach of the Residential Agreement, Sea-Pac suffered $2.9 million in damages, $2.5 million of which, Sea-Pac claims, is entitled to administrative expense priority. The Second Sea-Pac Claim contains no reference to any right or request of Sea-Pac to arbitrate any of the parties' disputes.

On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Bankr. Doc. No. 9683] [A-2] (the "*Claim Objection*"). In response to the Claim Objection, on September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Bankr. Doc. No. 9832] [A-3] (the "*Claim Answer*").

Also on September 15, 2006, Sea-Pac filed its *Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration,*

3

*and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [Bankr. Doc. No. 9830] [A-4] (the "***Arbitration Motion***"). The Arbitration Motion, filed over eleven months after the Second Sea-Pac Claim (and over 5 years after Sea-Pac's initial proof of claim), was the first indication of Sea-Pac's interest in arbitrating the parties' dispute.

On October 6, 2006, AWI filed its objection to the Arbitration Motion [Bankr. Case Doc. No. 9914] [B-2]. Also on October 6, 2006, AWI commenced this adversary proceeding (the "***Adversary Proceeding***") by filing its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Adv. Proc. Doc. No. 1] [B-3] (the "***Supplemental Objection***"). Among other things, in the Supplemental Objection, AWI has asserted claims against Sea-Pac for payment with respect to goods shipped by AWI to Sea-Pac prior to the Effective Date, but after the expiration of the Sea-Pac Agreements. Neither AWI nor Sea-Pac has any right to arbitrate such claims.

On October 23, 2006, the Bankruptcy Court held a hearing (the "***Hearing***") on the Arbitration Motion and thereafter denied the motion, entering an order to that effect on November 20, 2006 [Main Doc. No. 10117] [B-4] (the "***Arbitration Order***").

On November 30, 3006, Sea-Pac filed a notice of appeal to this Court with respect to the Arbitration Order [Main Doc. No. 10134] (the "***Arbitration Appeal***"). The Arbitration Appeal has been fully briefed. Sea-Pac did not seek to stay any matters in the Adversary Proceeding at the time it filed the Arbitration Appeal. To the contrary, on December 15, 2006, AWI and Sea-Pac submitted an agreed form of scheduling order [Adv. Doc. No. 3], which the Bankruptcy Court signed on December 19, 2006 [Adv. Doc. No. 6] [B-5] (the "***Stipulated Scheduling Order***"). The Stipulated Scheduling Order expressly contemplated the continuation

4

of discovery and the filing of dispositive motions irrespective of the pendency of the Arbitration Appeal.

To date, fifteen sets of discovery requests have been exchanged between the parties. AWI has completed virtually all of its electronic document production, and has deposed four Sea-Pac witnesses. AWI's discovery efforts stand in stark contrast to Sea-Pac's. Where AWI has produced nearly 100,000 pages of responsive documents, Sea-Pac has produced approximately 1,000 pages, asserting improper objections to the production of documents and leaving AWI no other choice but to file a *Motion to Compel Discovery*, [Adv. Doc. No. 113] and memorandum in support thereof [Adv. Pro. Doc. No. 114] (together, the "***Motion to Compel***"), now pending before the Bankruptcy Court.

On March 23, 2007, Sea-Pac filed a motion to stay [Adv. Doc. No. 34] [A-6] (the "***March Stay Motion***"), as well as a memorandum of law in support thereof [Adv. Doc. No. 35] [A-6] (the "***March Stay Memorandum***"). Through that motion, Sea-Pac sought to stay only dispositive motions related to state law issues arising under the Sea-Pac Agreements or a trial in the Adversary Proceeding, pending resolution of the Arbitration Appeal. Sea-Pac did not, however, seek to stay discovery.

Sea-Pac then filed an *Emergency Motion for Expedited Consideration of Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Adv. Proc. Doc. No. 36] [B-7] (the "***March Emergency Motion***"), requesting that the March Stay Motion be heard on an emergency basis. The Bankruptcy Court granted the March Emergency Motion and required AWI to file a responsive brief within three days. AWI filed its *Memorandum in Opposition to Defendant Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Adv. Proc. Doc. No. 41] [B-8] (the "***March***

*Stay Motion Objection*") on March 30, 2007. Following an emergency hearing on April 2, 2007, the Court denied the March Stay Motion without prejudice to Sea-Pac's right to renew the motion at a later date.

On June 18, 2007, Sea-Pac filed its *Renewed Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Bankr. Case Doc. No. 10450] [A-9] (the "*June Stay Motion*"), as well as a memorandum of law in support thereof [Bankr. Case Doc. No. 10451] [A-9] (the "*June Stay Memorandum*"). Sea-Pac also filed an *Emergency Motion for Expedited Consideration of Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Bankr. Case Doc. No. 10449] [A-9] (the "*June Emergency Motion*"), requesting that the Bankruptcy Court consider the June Stay Motion on an expedited basis. The "emergency" cited by Sea-Pac was that the United States Court of Appeals for the Third Circuit (the "*Third Circuit*") had entered the *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007), decision two months earlier. The Bankruptcy Court denied Sea-Pac's June Emergency Motion and directed that briefing proceed in due and ordinary course. [Adv. Proc. Doc. No. 79] [A-10].

On July 5, 2007, AWI filed its *Memorandum in Opposition to Defendant Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Bankr. Case Doc. No. 10471] [B-9] (the "*June Stay Motion Objection*"), and on July 9, 2007 the Bankruptcy Court entered an order denying Sea-Pac's June Stay Motion [Bankr. Case Doc. No. 10472] [A-12][2] (the "*June Order*") adopting the June Stay Motion Objection as its basis.

---

[2] Sea-Pac takes issue with the fact the Bankruptcy Court denied the June Stay Motion before Sea-Pac's reply brief was due. *See* July Stay Memorandum [B-12, at 223]. Because Sea-Pac filed the June Stay Motion in AWI's main bankruptcy case, however, Sea-Pac was not entitled to file a reply without leave of the Bankruptcy Court. Sea-Pac never sought such leave.

6

Also on July 9, 2007 Sea-Pac filed the *Motion of Defendant Sea-Pac Sales Company for Leave of Court to File Amended Proof of Claim* [Adv. Proc. Doc. No. 89] [B-10] (the "***Motion to Amend***"), seeking an order granting it leave to file an amended proof of claim with respect to the Second Sea-Pac Claim. Sea-Pac seeks to amend its claim by further inflating the amount of damages allegedly owed it under the Residential Agreement, asserting that it is entitled to $2.5 million more than the minimum amount that it originally sought, raising its administrative expense damage claim under the Residential Agreement to $5 million. Sea-Pac also seeks to amend the Second Sea-Pac Claim to include a request for arbitration.

On July 19, 2007 Sea-Pac filed its *Motion for Stay Pending Appeal of the Bankruptcy Court's Order Denying Arbitration* [Doc. No. 16] [B-11] (the "***July Stay Motion***") and a memorandum of law in support thereof [Doc. No. 17] [B-12] (the "***July Stay Memorandum***"). Sea-Pac also filed a *Motion for Expedited Consideration of Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Bankruptcy Court's Order Denying Arbitration* [Doc. No. 18] [B-13] requesting that this Court consider the July Stay Motion on an expedited basis. The July Stay Motion seeks an order staying all aspects of the Adversary Proceeding pending final resolution of the Arbitration Appeal or, alternatively, an order staying all matters involving potentially arbitrable issues in the Adversary Proceeding.

It is all too convenient that Sea-Pac now takes the position that the *entire* Adversary Proceeding should be stayed, when at the time of its first stay request, Sea-Pac was content to have discovery continue. Only now, four months later, when Sea-Pac has reaped the benefits of discovery, while failing to produce discovery sought by AWI, does it seek such a broad stay. Sea-Pac's failure to comply with discovery requests makes evident the fact that Sea-

Pac is trying to find a means of excusing it from complying with AWI's discovery demands. The Court, however, should not stay proceedings for this purpose.

## ARGUMENT

**A.    Neither the Federal Arbitration Act Nor Judicial Precedent Require a Stay of the Adversary Proceeding.**

Sea-Pac now argues that, on the basis of the Third Circuit's decision in *Ehleiter*, it is entitled to a stay of the entire Adversary Proceeding. *Ehleiter* involved an appeal from a state court decision denying arbitration. In that case, unlike the instant case, the question was whether the Third Circuit had jurisdiction to consider the interlocutory appeal. Although the Federal Arbitration Act (the "*FAA*") clearly confers jurisdiction over interlocutory appeals, Section 3 of the FAA refers only to claims "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Because the defendant seeking to invoke arbitration was not even a party to the arbitration agreement in question, and the lower courts had not made a determination of whether such defendant was within the scope of such agreement, it was not clear that the Third Circuit had jurisdiction over the interlocutory appeal pursuant to the FAA. *Ehleiter*, 482 F.3d at 212. In the context of determining whether to exercise jurisdiction over such an interlocutory appeal the Third Circuit noted that "[w]ere we to conclude that Section 16(a)(1)(A) does not permit us to exercise jurisdiction over an interlocutory appeal of a ... denial of a motion to stay pursuant to Section 3,[3] a party wrongfully denied a stay would be forced to litigate the underlying dispute exhaustively before being able to secure vindication of his right to avoid litigation." *Id.* at 214.

---

[3] The denial of the "stay" to which the Third Circuit refers is the denial of the motion to stay the litigation pending arbitration of the dispute, not the denial of a motion to stay the litigation pending appeal from an order denying the arbitration motion.

While the Third Circuit's holding in *Ehleiter* addressed its jurisdiction to hear what might be considered an interlocutory appeal outside the scope of the FAA, the Court did refer, in a footnote, to an unpublished order it previously entered granting a stay of proceedings pending resolution of an appeal from denial of a motion to arbitrate and stated that in such order it "expressed [its] agreement with the majority rule of automatic divestiture where the Section 16(a) appeal is neither frivolous nor forfeited." *Ehleiter*, 482 F.3d at 215 n.6.[4] Although the Third Circuit's statement in the footnote reflects a general inclination to stay cases pending an appeal from an order denying arbitration, it does not constitute binding precedent. *U.S. v. Turley*, 891 F.2d 57, 60 (3d Cir. 1990) ("[O]nly published opinions of this court are regarded as precedential."); Third Circuit I.O.P. Ch. 5. In the absence of binding precedent by the Third Circuit, this Court should hold, as another United States District Court in the Third Circuit has already held, that "an appeal from the denial of a stay of proceedings in a district court pending an interlocutory appeal does not divest the [trial] court of jurisdiction." *Bratek v. Beyond Juice, LLC*, No. 04-4491, 2005 U.S. Dist. LEXIS 33352, at *6 (E.D. Pa. Dec. 15, 2005). Moreover, as discussed below, in a case such as the instant case, where Sea-Pac agrees that the bankruptcy issues and the AWI counterclaims are *not* subject to arbitration, an automatic divestiture rule cannot apply.

---

[4] The FAA does not provide an express right to a stay pending appeal from an order denying arbitration. The courts that have considered whether such appeal nonetheless divests the trial court of jurisdiction are divided on the issue. *Compare Bradford-Scott Data Corp. v. Physician Computing Network*, 128 F.3d 504 (7th Cir. 1997) (requiring trial court to stay proceedings pending appeal of denial of arbitration on the ground that trial court is automatically divested of jurisdiction upon such appeal), *McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158 (10th Cir. 2005) (same), and *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004) (same), *with Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990) (allowing trial court to exercise discretion regarding stay), and *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) (same).

9

**B.**    **The Facts of the Case at Hand Preclude Application of an Automatic Divestiture Rule.**

   i.    *Because Issues Will Remain Before the Bankruptcy Court Regardless of the Outcome of the Arbitration Appeal, the Bankruptcy Court Is Not Divested of Jurisdiction.*

AWI and Sea-Pac are involved in a complex commercial dispute. This case is dramatically different from *Ehleiter*, where, had the defendant not waived its right to arbitrate, the one claim asserted by the plaintiff would no longer remain in state court and the entire dispute would instead be sent to arbitration. Here, many of the issues raised in the Adversary Proceeding undoubtedly will remain before the Bankruptcy Court regardless of the outcome of the Arbitration Appeal. These issues include (i) the effect of Sea-Pac having filed a proof of claim and then withdrawing it "with prejudice;" (ii) whether any portion of Sea-Pac's claims are entitled to administrative expense priority (including the effect of Sea-Pac never having sought to compel AWI to assume or reject the Sea-Pac Agreements despite Sea-Pac's knowledge of AWI's alleged breaches) and, if so, (a) whether Sea-Pac is barred from asserting administrative expenses by virtue of Sea-Pac's failure to comply with the Administrative Expense Bar Date established in AWI's chapter 11 case, and (b) what the appropriate award of administrative expense would be under the bankruptcy law; (iii) whether the Bankruptcy Court's Executory Contracts Bar Date Order extended Sea-Pac's time to assert any alleged administrative expense against AWI; (iv) if Sea-Pac may assert an administrative expense, how any such administrative expense would be valued; and (v) whether the Bankruptcy Code bars Sea-Pac from asserting a claim for attorneys' fees and interest. Given the extensive bankruptcy issues involved in the Adversary Proceeding, even if the Sea-Pac Claim were subject to arbitration, the only circumstance in which the Bankruptcy Court would have no further involvement with the Sea-Pac Claim would be if the arbitration panel concluded that Sea-Pac had <u>no</u> claims against AWI.

10

Moreover, AWI has asserted counterclaims in the Adversary Proceeding, seeking damages for Sea-Pac's failure to distribute goods and pay AWI for goods AWI supplied to Sea-Pac. These counterclaims – the very claims that initiated the Adversary Proceeding – are not subject to arbitration because they arose after expiration of the Sea-Pac Agreements. *See* Supplemental Objection [B-3, at 31-6]. Likewise, by Sea-Pac's own admission, a portion of the Second Sea-Pac Claim is based on a five month period after expiration of the Sea-Pac Agreements, and is therefore not subject to arbitration. *See* July Stay Memorandum [B-12, at 233].

Sea-Pac has conceded, on numerous occasions, that certain issues are nonarbitrable, and will therefore proceed before the Bankruptcy Court *even if* Sea-Pac is successful in the Arbitration Appeal. Perhaps the most telling example of Sea-Pac's recognition that the Bankruptcy Court is the proper forum to decide certain issues notwithstanding the Arbitration Appeal is the fact that Sea-Pac never before sought to stay the entire Adversary Proceeding. Instead, Sea-Pac sought to stay only dispositive motions relating to state law issues, specifically requesting that "all discovery and any motion practice other than pertaining to state law related contract issues" go forward. *See* March Stay Motion [A-6, at 3]. Other examples include Sea-Pac's statement in the Arbitration Motion that "arbitration of Sea-Pac's claims will not determine the priority of the claims – merely the amount",[5] Arbitration Motion [A-4, at 8], and Sea-Pac's statement in its memorandum of law supporting the very motion before this Court, that "[it] agrees there may be certain issues that ultimately will have to be resolved by the bankruptcy court ...." *See* July Stay Memorandum [B-12, at 232-33].

---

[5] AWI believes that, if Sea-Pac's claims are determined to constitute allowed administrative expenses, the Bankruptcy Court must determine the amount of such allowed administrative expense pursuant to bankruptcy law.

That nonarbitrable claims remain before the Bankruptcy Court distinguishes this case from cases in which courts have been divested of jurisdiction following the appeal of an order denying arbitration. *See McCauley*, 413 F.3d at 1159 (where decision on appeal holding that certain claims were arbitrable would leave no claims pending before lower court); *Blinco*, 366 F.3d at 1250 (where a finding that a dispute concerning a violation of the Real Estate Settlement Procedures Act was arbitrable would leave no claim pending before trial court); *Bradford-Scott Data Corp*, 128 F.3d at 506 (granting stay of proceedings where party opposing stay did not argue that certain claims were nonarbitrable).[6] Because, in this case, nonarbitrable claims are pending before the Bankruptcy Court, the Bankruptcy Court could not have been divested of jurisdiction as a result of the Arbitration Appeal, and, therefore, no automatic divestiture rule applies.

Sea-Pac relies on *Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181 (Bankr. S.D.N.Y. 2002), as support for its argument that a stay should apply where an action involves both arbitrable and nonarbitrable claims. While Sea-Pac correctly points out that both arbitrable and nonarbitrable claims were pending before the *Hagerstown Fiber* court, it fails to fully explain the unique procedural posture of that case. *Id.* at 205. In staying resolution of certain of the nonarbitrable claims pending conclusion of arbitration of the arbitrable claims, the court *did not* apply an automatic divestiture rule because the court in that case was not faced with

---

[6] Sea-Pac contends that because the United States Court of Appeals for the Seventh Circuit rejected Bradford-Scott's argument that "because there were defendants who were not part of the appeal the action would nevertheless go forward in the district court, and accordingly the action should not be stayed," the *Bradford-Scott Data Corp.* case rejects AWI's argument that no automatic divestiture rule applies. *See* July Stay Memorandum [B-12, at 228-29]. AWI, however, does not argue that because the action will continue against *other parties*, Sea-Pac is not entitled to a stay. Rather, AWI argues that because the action will continue against Sea-Pac itself, not against other unrelated parties, no automatic divestiture rule applies. Therefore, the analogy Sea-Pac attempts to make between the argument put forth by Bradford-Scott and the argument put forth by AWI is untenable, and the *Bradford-Scott Data Corp* case can, in no way, be read to reject AWI's argument.

12

a request to stay the nonarbitrable claims pending an appeal from the denial of a motion to compel arbitration. *Id.* at 196-98. Rather, the bankruptcy court already had concluded that certain claims should be arbitrated and, in its discretion, stayed the nonarbitrable claims pending resolution of the arbitrable claims. Central to its decision was its conclusion that the arbitration may contribute to the resolution of the nonarbitrable claims. *Id.* at 208-09. Here, the Bankruptcy Court concluded that the Second Sea-Pac Claim is not arbitrable. Moreover, a failure to stay the nonarbitrable claims would have required the parties to litigate the same factual disputes in two forums simultaneously – before the arbitrators and before the bankruptcy court. *Id.* Here, unlike in *Hagerstown Fiber*, no other action relating to the Second Sea-Pac Claim is going forward. Unlike *Hagerstown Fiber*, a stay of the Adversary Proceeding would mean that all proceedings would come to a complete standstill, not simply concentrate matters in a single forum. Therefore, Sea-Pac's attempt to analogize *Hagerstown Fiber* to the instant case must fail.

Sea-Pac also *references* two other cases to support its theory that the presence of nonarbitrable claims does not preclude application of an automatic divestiture rule. *See* July Stay Memorandum [B-12, at 229]. Just like the *Hagerstown Fiber* case, however, these cases are materially distinguishable from the case at hand, and do not support Sea-Pac's theory. S*inger Creditor Trust v. Akai Electric Co.*, No. 00 Civ. 6793(LTS), 2001 U.S. Dist. LEXIS 12902 (S.D.N.Y. Aug. 27, 2001), involved an appeal from an order of the United States Bankruptcy Court for the Southern District of New York (the "***Southern District Bankruptcy Court***") denying the defendant's motion to compel arbitration and for a stay of the adversary proceeding pending arbitration. *Id.* at *1. The United States District Court for the Southern District of New York (the "***Southern District Court***") reversed the Southern District Bankruptcy Court's order, holding that the Southern District Bankruptcy Court lacked discretion to refuse

13

arbitration of the issues raised in the adversary proceeding. *Id.* at \*17. Because the *Singer* decision involved an analysis of whether the Southern District Bankruptcy Court had discretion to refuse arbitration and <u>not</u> whether an automatic divestiture rule applies to an action that involves both arbitrable and nonarbitrable claims the decision is inapplicable. *Id.* at \*16-7. *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001), unlike *Singer*, did involve an automatic divestiture rule. In *Cibro*, the Southern District Court applied an automatic divestiture rule to stay proceedings pending the appeal of an order denying an arbitration request. *Id.* at 108. In that case, however, the Southern District Bankruptcy Court had held that the issues raised in the adversary proceeding fell within the arbitration clause, but had chosen to exercise its discretion not to enforce the clause. *Id.* at 104. Here, as Sea-Pac has itself admitted, certain issues in the Adversary Proceeding are clearly outside the scope of the arbitration provision in the Sea-Pac Agreements. Further, the *Cibro* decision predates the United States Court of Appeals for the Second Circuit's decision in *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004), where the Court explicitly held that a court has jurisdiction to proceed with a case despite the pendency of an appeal from an order denying a motion to compel arbitration. *Id.* at 54.

Accordingly, no law *supports* Sea-Pac's contention that an automatic divestiture rule applies where the court has before it clearly nonarbitrable claims, as well as potentially arbitrable claims, and the Court should not create such a rule in this case.

  ii. *Jurisprudential Considerations Weigh Against Application of an Automatic Divestiture Rule.*

Recognizing that, at the very least, a trial court is not divested of jurisdiction to consider nonarbitrable issues during the appeal of an order denying a motion to compel arbitration, Sea-Pac proposes that this Court first decide whether the issues presented in the

14

Adversary Proceeding are nonarbitrable, arbitrable, or share common issues with the arbitrable issues and then, after having gone through that arduous process, stay claims that fall in the latter two categories. *See* July Stay Memorandum [B-12, at 232]. Sea-Pac's proposal contravenes the policies behind an automatic divestiture rule, and therefore should be rejected.

"Th[e] divestiture rule is founded on 'concerns of efficiency' ...." *In re Winimo Realty Corp.*, 270 B.R. at 105 (quoting *U.S. v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)). Thus, courts that have not adopted a *per se* rule staying proceedings look to the circumstances presented and only grant a stay if it would be prudent to do so. *Compare Hill v. PeopleSoft USA, Inc.*, 341 F. Supp. 2d 559, 561 (D. Md. 2004) (prudential concerns weighed against granting a stay of all proceedings where doing so would have caused potentially prejudicial delays in the proceedings), *with In re Startec Global Communs. Corp.*, 303 B.R. 605, 609 (D. Md. 2004) (prudential concerns weighed in favor of granting a stay where a delay in the proceedings for a few more months would not prejudice either of the parties). No efficiency will be achieved by adopting Sea-Pac's approach; thus prudential concerns dictate a denial of the requested stay.

First, parsing out each issue to decide which claims are arbitrable and should be stayed and which should not, as Sea-Pac would have this Court do, would take a great deal of time given the interplay between the state-law and bankruptcy-specific issues in the dispute between AWI and Sea-Pac. In fact, proceeding in this manner would have the effect of *reducing* judicial efficiency by unnecessarily complicating matters and requiring piecemeal resolution of the parties' dispute. Second, even if Sea-Pac succeeds in the Arbitration Appeal, the appropriate result will be a remand to the Bankruptcy Court for application of the analysis set forth in *Mintze v. Am. Gen. Fin. Services Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006) – *i.e.*, whether the Bankruptcy Court has discretion to deny enforcement of the arbitration provision because it

15

would conflict with the policies underlying the Bankruptcy Code, and if so, whether the Court should exercise such discretion. *See Mintze*, 434 F.3d at 231-33.

Third, even in arbitration, the parties will have to engage in identical discovery, research, analysis, and briefing of the issues in which they would be and have already been engaged in the bankruptcy case. Eight and one-half years have passed since the parties entered into the Sea-Pac Agreements, and many of both parties' former employees have long since moved on to jobs with other companies. Whether before a panel of arbitrators or the Bankruptcy Court, the Sea-Pac dispute is a complex commercial dispute. Staying the Adversary Proceeding will not obviate the need to engage in such discovery and analysis if Sea-Pac ultimately prevails in the Arbitration Appeal, but will only defer such discovery and analysis to a point that may be years in the future. Indeed, in allowing discovery to proceed pending the appeal of the denial of a motion requesting arbitration, the United States District Court for the Eastern District of Pennsylvania reasoned, "[w]hether the case proceeds to decision by way of arbitration before the Federal Arbitration Act or before a jury in this Court, discovery will be of assistance to the parties in preparing for either the arbitration or the trial, and also for determining the relative strengths and weaknesses of each other's positions ...." *Bratek*, 2005 U.S. Dist. LEXIS 33352, at *2. *See also Am. Tel. and Telegraph. Co. v. Integrated Network Corp.*, 1992 U.S. Dist. LEXIS 22641, at *6 (D.N.J. Jan. 8, 1992) (denying defendant's request to stay discovery during appeal of denial to remand case to state court noting that any discovery that takes place during pendency of appeal could be used in state court proceeding). The same reasoning applies in this case. As such, this Court should allow the entire Adversary Proceeding, including discovery, to continue so that even if Sea-Pac is successful in the Arbitration Appeal – which is unlikely – all necessary discovery and analysis will be complete when the arbitration commences. Surely prudential

concerns weigh in favor of this approach because it allows for a speedier resolution of the parties' dispute than would otherwise be realized if the Arbitration Appeal was stayed. Allowing the case to proceed is crucial given that the Second Sea-Pac Claim is one of the few remaining unresolved claims in AWI's chapter 11 case, standing as an obstacle to effecting a final distribution to holders of allowed Class 6 unsecured claims and to closing the case.

In looking to whether the circumstances of this case weigh in favor of granting the July Stay Motion, this Court should also consider factors concerning the fairness of allowing a stay at this point in the Adversary Proceeding. From the time that Sea-Pac filed the Arbitration Appeal, on November 30, 2006, it has had ample opportunity to seek to stay these proceedings. Yet it did not do so, either at the outset or at any point during the nearly four months before the March Stay Motion. Instead, Sea-Pac actively participated in the Adversary Proceeding. For example, it has twice negotiated with AWI and submitted to the Bankruptcy Court stipulated scheduling orders that explicitly contemplated the filing of dispositive motions. In fact, Sea-Pac has even filed its own dispositive motion.

Moreover, having failed to request a stay of discovery in its March Stay Motion, Sea-Pac propounded numerous discovery requests on AWI. Complying with its discovery obligations, AWI has (i) responded to four sets of discovery requests from Sea-Pac, (ii) produced more than 99,500 pages of documents to Sea-Pac; (iii) already deposed four Sea-Pac witnesses in Seattle; and (iv) noticed the remaining of its depositions for the end of August 2007. Sea-Pac, on the other hand, has steadfastly refused to engage in meaningful discovery. For example, Sea-Pac has (i) produced very few of the specific documents that AWI has expressly requested and that Sea-Pac witnesses have testified in fact exist, (ii) cancelled depositions it requested; (iii) unilaterally limited the scope of documents sought by AWI; (iv) refused to answer basic

17

interrogatories; and (v) asserted improper objections to the production of indisputably relevant documents. Tellingly, Sea-Pac has refused to depose any witness until the beginning of September 2007 even though fact discovery closes on September 21, 2007. Notwithstanding AWI's multiple letters outlining Sea-Pac's patently deficient responses to AWI's discovery requests, Sea-Pac continues to avoid its discovery obligations. As a result, AWI filed a motion to compel discovery. Having reaped the benefits of continued discovery for months, Sea-Pac cannot now be heard to complain that the Adversary Proceeding should be stayed.

**C.     A Stay of the Adversary Proceeding Is Not Warranted Under the Traditional Four-Part Test for Discretionary Stays.**

As made clear above, Sea-Pac is not entitled to a stay of the Adversary Proceeding under an automatic divestiture rule. Likewise, because Sea-Pac cannot satisfy the elements of the traditional four-part test for discretionary stays pending appeal, Sea-Pac is also not entitled to a discretionary stay.

To obtain a discretionary stay, the movant must demonstrate that (i) it has a likelihood of success on the merits of the appeal; (ii) it will be subject to irreparable harm if the stay is not granted; (iii) the granting of the stay will not substantially harm other interested parties; and (iv) the granting of the stay would serve the public interest. *Hertz Corp. v. ANC Rental Corp.* (*In re ANC Rental Corp.*), 2002 U.S. Dist. LEXIS 9409, *4-5 (D. Del. May 22, 2002). All four of these elements must be satisfied in order for a discretionary stay to be appropriate. *Id.* at *5; *Morgan v. Polaroid Corp.* (*In re Polaroid Corp.*), 2004 U.S. Dist. LEXIS 1917, *3-4 (D. Del. Feb. 9, 2004). A discretionary stay cannot be granted to Sea-Pac because, at the very least, it does not have a significant likelihood of success on the merits of its Arbitration Appeal, and it cannot demonstrate that it will suffer *any* irreparable harm if the stay is not granted. Indeed, given the absence of any claim of irreparable harm by Sea-Pac, even if the

18

Court were to balance the four factors, it would still have no basis for staying any portion of the Adversary Proceeding.

The Bankruptcy Court denied Sea-Pac's Arbitration Motion based on factual findings supported in the record and the special features of the AWI/Sea-Pac arbitration provisions that distinguish them from those at issue in the cases relied upon by Sea-Pac, such as *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). There is no reason to believe that the Bankruptcy Court erred in deciding that it -- and not an arbitrator -- should determine whether Sea-Pac's arbitration request was untimely, or that the Bankruptcy Court's factual determinations in connection therewith were clearly erroneous. AWI's arguments in this regard are more fully set forth in its *Answering Brief*, filed with this Court on February 26, 2007. *See Appellee's Answering Brief* [Doc. No. 9] [B-6].

If this Court denies the July Stay Motion and allows the Adversary Proceeding to continue, Sea-Pac will surely suffer no irreparable harm. No one, including AWI, contends that a ruling on the merits of the Sea-Pac dispute by the Bankruptcy Court would in any way render the Arbitration Appeal moot or would have any preclusive effect on the merits if Sea-Pac ultimately prevailed in the Arbitration Appeal and the non-bankruptcy issues were presented to an arbitration panel. As a result, Sea-Pac cannot suffer irreparable harm by any continuation of the action in the Bankruptcy Court because it will not suffer "certain, great, and actual" harm. *Hertz Corp.*, U.S. Dist. LEXIS 9409, at *7. If anything, the only injury Sea-Pac might suffer as a result of continuation of the Adversary Proceeding is additional costs. It is black letter law, though, that money damages cannot constitute irreparable harm. *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (mere

19

injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not sufficient); *Bradford-Scott*, 128 F.3d at 505 ("[A]ppellants' request would fail at the outset, for the costs of litigation are not irreparable injury.").

Because Sea-Pac is unable to demonstrate either a likelihood of success on the merits of its Arbitration Appeal or irreparable harm if the requested stay is not granted, Sea-Pac is not eligible for a discretionary stay under the traditional standard for such stays.

## CONCLUSION

For all of the reasons discussed above, the July Stay Motion should be denied. As the Bankruptcy Court has twice concluded, the nonarbitrable issues raised in the Adversary Proceeding preclude the Bankruptcy Court from being divested of jurisdiction while the Arbitration Appeal is pending. As such, the Adversary Proceeding should go forward. Sea-Pac actively participated in the Adversary Proceeding for months, reaping the benefits of discovery, and cannot now be heard to demand a stay. Accordingly, the July Stay Motion should be denied.

Dated: August 2, 2007
      Wilmington, Delaware

                    Mark D. Collins (No. 2981)
                    Jason M. Madron (No. 4431)
                    RICHARDS, LAYTON & FINGER, P.A.
                    One Rodney Square
                    920 North King Street
                    Wilmington, DE  19801
                    (302) 651-7700

                          -and-

                    Stephen Karotkin
                    Debra A. Dandeneau
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, NY  10153
                    (212) 310-8000

                          -and-

20

David A. Hickerson
Stephen A. Gibbons
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC  20005
(202) 682-7000

ATTORNEYS FOR ARMSTRONG WORLD
INDUSTRIES, INC.

21

## CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 2nd day of August 2007, I caused a copy of the **Memorandum of Armstrong World Industries, Inc. in Opposition to Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Bankruptcy Court's Order Denying Arbitration** to be served on the parties listed below and in the manner so indicated:

### Via Hand Delivery and Electronic Mail

Karen Lee Turner
Michael G. Busenkell
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801
E-mail: kturner@eckertseamans.com
mbusenkell@eckertseamans.com

### Via First Class Mail and Electronic Mail

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL, PSC
1201 Third Avenue, Suite 2900
Seattle, WA 98101
E-mail: dcarey@karrtuttle.com
mfeinberg@karrtuttle.com

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA 98154
E-mail: avk@rohdelaw.com


Jason M. Madron (No. 4431)