IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

*In re*                                              :        **Chapter 11**
                                                     :
**ARMSTRONG WORLD INDUSTRIES,**  :        **Case No. 00-04471 (JKF)**
**INC.,** *et al.,*                                  :
                                                     :        **(Jointly Administered)**
                       **Debtors.**               :
---------------------------------------------------------x

**SEA-PAC SALES COMPANY,**          :
                                                     :
                       **Appellant,**             :
                                                     :
            **v.**                                   :        **Civil Action No. 07-4**
                                                     :        **Appeal No. 06-77**
**ARMSTRONG WORLD INDUSTRIES,**  :
**INC.,** *et al.,*                                  :
                                                     :
                       **Appellee.**              :
---------------------------------------------------------x

## APPENDIX TO ARMSTRONG WORLD INDUSTRIES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SEA-PAC SALES COMPANY'S MOTION FOR STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

David A. Hickerson
Stephen A. Gibbons
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
(202) 682-7000

ATTORNEYS FOR ARMSTRONG WORLD
INDUSTRIES, INC.

Dated:  August 2, 2007
        Wilmington, Delaware

## INDEX

Withdrawal of Proof of Claim No. 3528 ....................................................................................1

Objection of Armstrong World Industries, Inc. to Sea-Pac Sales Company's
Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's
Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from the
Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction .........................2

Supplemental Objection and Counterclaims of Armstrong World Industries, Inc.
with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854) ......................3

Order Denying Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong
World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and
(ii) for Relief from the Automatic Stay or, in the Alternative, for Relief from the
Discharge Injunction ..................................................................................................................4

Stipulated Scheduling Order dated December 19, 2006 ............................................................5

Appellee's Answering Brief ........................................................................................................6

Emergency Motion for Expedited Consideration of Sea-Pac Sales Company's Motion
for Stay Pending Appeal of the Court's November 20, 2006 Order............................................7

Memorandum in Opposition to Defendant Sea-Pac Sales Company's Motion for Stay
Pending Appeal of the Court's November 20, 2006 Order .........................................................8

Memorandum in Opposition to Defendant Sea-Pac Sales Company's Renewed Motion
for Stay Pending Appeal of the Court's November 20, 2006 Order............................................9

Motion of Defendant Sea-Pac Sales Company for Leave of Court to File Amended Proof of Claim .........10

Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Bankruptcy Court's
Order Denying Arbitration..........................................................................................................11

Sea-Pac Sales Company's Memorandum of Law in Support of Motion for Stay Pending
Appeal of the Bankruptcy Court's Order Denying Arbitration ...................................................12

Motion for Expedited Consideration of Sea-Pac Sales Company's Motion for Stay Pending
Appeal of the Bankruptcy Court's Order Denying Arbitration ...................................................13

Unpublished Decisions Cited in Memorandum of Armstrong World Industries, Inc.
In Opposition to Sea-Pac Sales Company's Motion for Stay Pending Appeal of the
Bankruptcy Court's Order Denying Arbitration ..........................................................................14

- *Am. Tel. and Telegraph. Co. v. Integrated Network Corp.*, 1992 U.S. Dist. LEXIS 22641 (D.N.J. Jan. 8, 1992)
- *Bratek v. Beyond Juice, LLC*, No. 04-4491, 2005 U.S. Dist. LEXIS 33352 (E.D. Pa. Dec. 15, 2005)
- *Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.)*, 2002 U.S. Dist. LEXIS 9409 (D. Del. May 22, 2002)
- *Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, 2004 U.S. Dist. LEXIS 1917 (D. Del. Feb. 9, 2004)
- *Singer Creditor Trust v. Akai Electric Co*, No. 00 Civ. 6793(LTS), 2001 U.S. Dist. LEXIS 12902 (S.D.N.Y. Aug. 27, 2001)

RLF1-3185467-1

**1**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11 Case No.** |
|  | : |  |
| **ARMSTRONG WORLD INDUSTRIES,** | : | **00-4471 (RJN)** |
| **INC.,** *et aL,* | : |  |
|  | : | **(Jointly Administered)** |
| Debtors. | : |  |

## WITHDRAWAL OF PROOF OF CLAIM

Pursuant to Rule 3006 of the Federal Rules of Bankruptcy Procedure, Sea Pac Sales ("SPS"), a creditor in the above-captioned chapter 11 cases, hereby withdraws with prejudice its proof of claim filed against Armstrong World Industries, Inc. on August 30, 2001, numbered 3528, in the liquidated, noncontingent amount of $11,448.00 and the precautionary unliquidated, contingent amount of $7,000,000 (the "Proof of Claim"). Withdrawal of this Proof of Claim is without prejudice to SPS to seek payment for any unpaid postpetition expenses, in accordance with the provisions of Bankruptcy Code and any applicable orders of the Court and SPS expressly reserves its rights under any agreement made by the Debtor postpetition, including, but not limited to any rights SPS has under that certain Inventory Purchase Agreement with Armstrong World Industries, dated April 1, 2003. A copy of the Proof of Claim is attached hereto as Exhibit "A."

Dated: May 28, 2003     Sea Pac Sale By: _____, President

Name: Jared Williams

Title: President

MII:\13675P\03\12X3V03\.DOC\17168.0020

EXHIBIT "A"

DO NOT USE THIS FORM IF YOU HAVE AN ASBESTOS PERSONAL INJURY CLAIM

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Name of Debtor: check one (See Reverse Side for Complete List of Debtors and Case Nos.)
- ☐ Armstrong World Industries, Inc. (Case No. 00-4471)
- ☐ Nitram Liquidators, Inc. (Case No. 00-4469)
- ☐ Desseaux Corporation of North America (Case No. 00-4470)

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars | |
|---|---|---|
| Name and Address where notices should be sent:<br><br>Sea Pac Sales<br>Dale Griffiths, Pres<br>6307 South 228th Street<br>Kent, WA 98032<br>Telephone # 253-796-3500 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | This Space is for Court Use Only |

Account or other number by which creditor identifies debtor:   Check box if ☐ replaces   this claim ☐ amends   a previously filed claim, dated _____

| 1. Basis for Claim | | | |
|---|---|---|---|
| ☐ Acquisition/Divestitures | ☐ Freight | ☐ Non-Asbestos Property Damage | ☐ Taxes |
| ☐ Asbestos Property Damage | ☒ Goods Sold | ☐ Officer Indemnity | ☐ Tooling |
| ☐ Bank Service Charges | ☐ Industrial Revenue Bonds | ☐ Other _____ | ☐ Trade Payables |
| ☐ Contribution, Indemnity or Guaranty | ☐ Letters of Credit or Surety Bonds | ☐ Other Financing<br>☐ Pension Insurance | ☐ Unknown<br>☐ Wages, Salaries and |
| ☐ Customer Deposits | ☐ Litigation | ☐ Professional Fees | Compensation (fill out below) |
| ☐ Environmental | ☐ Long Term Disability | ☐ Property Leases | Your SS #: _____ |
| ☐ Equipment Financing | ☐ Mechanic's Liens | ☐ Reclamation Notices | Unpaid compensation for services |
| ☐ ESOP Repurchase Obligation | ☐ Money Loaned<br>☐ Mortgages | ☐ Retiree Benefits as defined in 11 U.S.C. §1114(a) | performed from _____<br>(date) |
| ☐ Executory Contracts | ☐ Non-Asbestos | ☐ Senior Debt | to _____ |
| ☐ Expenses | Personal Injury | ☐ Subordinated Debt | (date)<br>☐ Workers' Compensation |

| 2. Date debt was incurred: | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed:   $ See Attached
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim   Attach itemized statement of all interest or additional charges

| 5. Secured Claim. | 6. Unsecured Priority Claim. |
|---|---|
| ☐ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☐ Real Estate  ☐ Motor Vehicle<br>☐ Other _____<br><br>Value of Collateral: $ _____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____ | ☐ Check this box if you have an unsecured priority claim.<br>Amount entitled to priority $ _____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4,300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)<br>☐ Up to $1,950 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8)<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__). |

| 7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary<br>9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space is for Court Use Only<br><br>RECEIVED<br>TRUMBULL SERVICES COMPANY<br><br>2001 AUG 30 PM 2: 16<br><br>BANKRUPTCY |
|---|---|
| Date<br>8/29/01 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Dale Griffiths    DALE GRIFFITHS, President<br>SEA-PAC SALES    8/30/01 #3528 |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Prepared by Trumbull Services on Time: 12:15 pm Date: 6-September-01

Exhibit A

**PROOF OF CLAIM**
**(Sea Pac Sales Company)**

Sea Pac Sales Company ("SPSC") is an Armstrong distributor under a series of Sales Service Agreements ("Contracts") with Armstrong World Industries, Inc.

SPSC has a liquidated, noncontingent claim for $11,448 for STPA and SCPR for sales of products pursuant to the Contracts made prior to December 6, 2000.

SPSC additionally asserts an unliquidated, contingent, unmatured claim for STPA and SCPR based on materials shipped prior to December 6, 2000, in the amount of $100,000. This amount is estimated and subject to amendment, revision or supplementation. SPSC contends that its right to these payments are post-petition contractual obligations of the debtor entitled to administrative priority. SPSC files this claim on a precautionary basis to the extent this claim is determined to be a prepetition claim.

SPSC is also a third party beneficiary of that certain Inventory Purchase Agreement dated April 23, 2001, between Armstrong World Industries, Inc., and U.S. Bank. SPSC as third party beneficiary asserts an unliquidated, contingent, unmatured claim in the amount of $7,000,000. This amount is estimated and subject to amendment, revision or supplementation. SPSC contends that its right to these payments are post-petition contractual obligations of the debtor entitled to administrative priority. It files this claim on a precautionary basis to the extent this claim is determined to be a prepetition claim.

SPSC has not received any notice from the court and any notice of the bar date other than that contained in the letter dated August 24, 2001, from Stephen E. Stockwell, Senior V.P. Strategic Relations. SPSC expressly reserves the right to amend and supplement this proof of claim for any other damages arising out of its pre-petition contractual relationships with Armstrong World Industries, Inc., including, but not limited to, any damages or breaches the untimely notice of the bar date precluded Sea Pac from discovering and for any claims which may arise form the subsequent rejection of the Contracts

Proof of Claim - Exhibit A
Sea Pac sale Company, page 1 of 1

Prepared by Trumbull Services on Time: 12:15 pm Date: 6-September-01

B - 4

**2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------x
*In re*                                          :    **Chapter 11**
                                                 :
**ARMSTRONG WORLD INDUSTRIES,**                  :    **Case No. 00-4471 (JKF)**
**INC., et al.,**                                :
                                                 :    **(Jointly Administered)**
                        **Debtors.**             :
                                                 :    Re: Docket No. 9830
------------------------------------------------x

**OBJECTION OF ARMSTRONG WORLD INDUSTRIES, INC. TO SEA-PAC
SALES COMPANY'S MOTION (I) TO STAY OBJECTION BY ARMSTRONG
WORLD INDUSTRIES, INC. TO SEA-PAC'S PROOF OF CLAIM NO. 4854
PENDING ARBITRATION, AND (II) FOR RELIEF FROM THE AUTOMATIC STAY
OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE DISCHARGE INJUNCTION**

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY COURT JUDGE:

Armstrong World Industries, Inc. ("*AWI*"), as reorganized debtor, hereby objects

(the "*Objection*") to the Motion, dated September 15, 2006 [Docket No. 9830] (the "*Arbitration*

*Motion*"), of Sea-Pac Sales Company ("*Sea-Pac*") seeking (i) to stay the objection, dated July

20, 2006 [Docket No. 9683] (the "*Claim Objection*"), filed by AWI with respect to Sea-Pac's

proof of claim no. 4854 (the "*Sea-Pac Claim*") pending arbitration and (ii) relief from the

automatic stay or, in the alternative, for relief from the discharge injunction. In support of the

Objection, AWI respectfully represents as follows:

**I.    OVERVIEW OF OBJECTION**

1.    By the Arbitration Motion, Sea-Pac seeks to compel arbitration of its

claims against AWI rather than have the Claim Objection resolved by this Court. The

Arbitration Motion must be denied. Sea-Pac has no right to submit its claims to arbitration under

the explicit terms of the expired Sea-Pac Agreements[1] because it failed to exercise its option to elect arbitration, and the expired Sea-Pac Agreements unambiguously authorize litigation of disputes in such circumstances. Moreover, as Sea-Pac itself concedes,[2] the Claim Objection raises the following disputed bankruptcy issues that this Court, and not an arbitration panel, should decide:

    i.    Whether any portion of Sea-Pac's claims are entitled to administrative expense priority;

    ii.    if so, whether Sea-Pac is barred from asserting administrative expenses by virtue of Sea-Pac's failure to comply with the administrative expense bar date established in AWI's chapter 11 case;

    iii.    if Sea-Pac may assert an administrative expense, how any such administrative expense would be valued; and

    iv    whether Sea-Pac is entitled to attorneys' fees.

    2    Included in the Sea-Pac Claim is a claimed administrative expense arising from AWI's alleged breach of an exclusivity provision in the expired Sea-Pac Agreements during the pendency of AWI's chapter 11 case. Thus, determining Sea-Pac's right to administrative expense priority is inextricably intertwined with the underlying factual issues of whether the alleged breach occurred, when Sea-Pac had notice of the alleged breach, how (if at all) Sea-Pac was damaged by its continued performance under the Sea-Pac Agreements despite full knowledge of the events giving rise to the alleged breach, how AWI's estate benefited (if at all) from the alleged breach, and the effect of Sea-Pac remaining silent for years and never seeking relief from this Court, or even an arbitration panel, with respect to the alleged breach.

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Claim Objection.

[2] In the Arbitration Motion, Sea-Pac states that "arbitration of Sea-Pac's claims will not determine the priority of claims — merely the amount." Arbitration Motion, ¶ 16

RLF1-3068065-1

Accordingly, even if the arbitration provision conferred upon Sea-Pac the right to seek arbitration — which it does not — the overwhelming weight of the bankruptcy policies implicated in this matter compel the Court to exercise its discretion to deny the Arbitration Motion.

## II.     JURISDICTION

3.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Except as otherwise discussed herein, no previous request for the relief sought herein has been made to this or any other court.

## III.     FACTUAL BACKGROUND

4.     Except to the extent supplemented by certain relevant facts set forth herein, the material facts, including the relationship between the parties and the terms of the expired Sea-Pac Agreements, are set forth in the Claim Objection.

### A.     *The Sea-Pac Claim*

5.     On or about November 8, 2005, Sea-Pac filed the Sea-Pac Claim, claim no. 4854, against AWI in the amount of $4.9 million, plus interest and attorneys' fees. Sea-Pac contends that no less than $4.5 million of the Sea-Pac Claim is entitled to administrative expense priority.

6.     The Sea-Pac Claim arises from alleged breaches by AWI of the expired Sea-Pac Agreements and is comprised of the following components:

   i.     The Commercial Agreement Breach Claim: Sea-Pac alleges that AWI breached the Commercial Agreement by "its appointment and provision of product to a second distributor within [Sea-Pac's] exclusive territory," resulting in damages to Sea-Pac in an amount no less than $2 million. Sea-Pac asserts that *"AWI's*

3

*breach began in 2003* and such breach continued through the term and the extensions of [the Commercial Agreement]...." Sea-Pac further contends that the entire Commercial Agreement Breach Claim is entitled to administrative expense priority because it is "attributable to [AWI's] post petition breach of [the Commercial Agreement] which Sea-Pac was induced to perform pending [AWI's] assumption or rejection of it."

ii.    The Residential Agreement Breach Claim:  Sea-Pac asserts that AWI breached the Residential Agreement and "was unjustly enriched, by, among other conduct, failing to reimburse Sea-Pac for RDC functions and services." Sea-Pac further alleges that "*AWI's illegal conduct began in 2000* and continued through the term of and extension of [the Residential Agreement] and resulted in damages and/or restitution owed in an amount no less than $2.9 million." Sea-Pac contends that $2.5 million of the $2.9 million in RDC functions and services for which AWI allegedly failed to reimburse Sea-Pac were provided postpetition and, therefore, constitute an administrative expense claim.

iii.   Attorneys' Fees:  Finally, the Sea-Pac Claim asserts that "[p]ursuant to the provisions of the applicable agreements," Sea-Pac is entitled to attorneys' fees and interest if AWI disputes its claims.

## B.  The Claim Objection and the Arbitration Motion

7.     On July 20, 2006, AWI filed the Claim Objection. AWI objects to the

Sea-Pac Claim on a number of grounds, including that (i) AWI has an absolute defense to the

Commercial Agreement Breach Claim because Sea-Pac failed to meet the annual mill shipment

requirements required to maintain its exclusivity as AWI's distributor within the relevant

territory, (ii) Sea-Pac is barred from asserting entitlement to any administrative expense arising

prior to November 24, 2003 because Sea-Pac failed to assert such administrative expenses, as

required by the Administrative Expense Bar Date established in AWI's chapter 11 case,[3] and

---

[3]  In the *Declaration of Jared Williams in Support of Sea-Pac's Answer to Armstrong's Objection*, dated September 14, 2006 [Docket No. 9834] (the "*Declaration*"), Sea-Pac's President, Jared Williams, asserts that Sea-Pac did not receive notice of the Administrative Expense Bar Date Declaration, ¶ 14. As indicated in the Trumbull Affidavit of Service annexed as Exhibit "B" to the Claim Objection, AWI's claims agent mailed notice of the Administrative Expense Bar Date to each of the following addresses for Sea-Pac: Sea Pac Sales, P.O. Box 3846, Seattle, WA 98124; Sea Pac Sales, P.O. Box 24994, Seattle, WA 98124-0994; and Sea Pac Sales Company, 6307 South 228th Street, Kent, WA 98032. *See* Trumbull Affidavit of Service, p. 269. These addresses include (i) the notice address

(iii) Sea-Pac's Commercial Agreement Breach Claim is not entitled to administrative expense priority in any event because, among other things, such claim arises from an alleged breach of a prepetition contract for which the proper remedy would have been to seek to compel AWI to assume or reject the Commercial Agreement — instead, Sea-Pac continued performing for years after receiving formal notice of the facts giving rise to the alleged breach — and Sea-Pac has conferred no benefit on AWI's estate.

8.    In response to the Claim Objection, Sea-Pac filed its Answer to the Claim Objection, together with the Declaration and a supporting memorandum of law. Simultaneously therewith, Sea-Pac filed the Arbitration Motion, which represents the first indication of Sea-Pac's interest in arbitrating the parties' disputes.

9.    In substance, the Arbitration Motion asserts that the expired Sea-Pac Agreements require arbitration of all disputes arising thereunder, and, therefore, the Court should stay proceedings on the Claim Objection pending arbitration.[4] Alternatively, Sea-Pac requests

---

provided by Sea-Pac in the original proof of claim, claim number 3528, filed by Sea-Pac against AWI's estate (a copy of such claim, which was subsequently withdrawn, is attached hereto as Exhibit "A"), and (ii) the address AWI used to mail correspondence to Sea-Pac, including the letters extending the terms of the Sea-Pac Agreements and noting appointment of a second distributor. *See* Exhibits "A" and "C" annexed to the Claim Objection.

[4] On the date hereof, AWI has also filed a supplement to the Claim Objection, which sets forth objections of AWI to any additional administrative expenses asserted by Sea-Pac in any amendment or deemed amendment to the Sea-Pac Claim, as well as certain counterclaims of AWI, in each case with respect to recent activities occurring during the pendency of AWI's chapter 11 case. Because the alleged claims and counterclaims described in such pleading are independent of the expired Sea-Pac Agreements, they are not subject to the Arbitration Motion.

that the Court modify the automatic stay or grant relief from the discharge injunction[5] to allow

Sea-Pac to proceed with arbitration with respect to the claims asserted in the Sea-Pac Claim.

### C. *Alternative Dispute Resolution*
### <u>*Provisions of the Expired Sea-Pac Agreements*</u>

10.    With respect to alternative dispute resolutions under the expired Sea-Pac

Agreements, the parties agreed as follows:

> [AWI] and [Sea-Pac] agree to attempt to resolve promptly any
> dispute arising out of this Agreement by negotiation between executives of
> [Sea-Pac] and [AWI] who have authority to settle the dispute. If any
> dispute is not resolved by negotiation within 30 days of its arising, then, at
> the written request of either party within an additional 10 days, the dispute
> shall be submitted to mediation with a mediator chosen jointly.

Commercial Agreement, ¶ 24; Residential Agreement, ¶ 29. The expired Sea-Pac Agreements

further provide as follows:

> *In the absence of a request for mediation*, or if any dispute is not
> resolved within 90 days following a request for mediation, *then, at the*
> *option of either party, such dispute shall be submitted to binding*
> *arbitration* in Philadelphia, Pennsylvania, under the Commercial
> Arbitration Rules of the American Arbitration Association. [...].

Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30 (emphasis added). Notably, this

paragraph in each of the expired Sea-Pac Agreements concludes with the following statement:

> *If arbitration is not initiated within 30 days of its becoming an option, as*
> *provided above, either party may resort to litigation pursuant to*
> *paragraph [–].*

*Id.* (emphasis added). Unfortunately, in the Arbitration Motion, Sea-Pac completely omits any

reference to this last sentence of the relevant provisions of the expired Sea-Pac Agreements,

---

[5]  On October 2, 2006, the "Effective Date" under AWI's Fourth Amended Plan of
Reorganization, As Modified, dated February 21, 2006 (the "*Plan*"), occurred, and AWI emerged from
chapter 11

thereby incorrectly implying that the requested arbitration is mandated by the expired Sea-Pac Agreements. *See* Arbitration Motion, ¶ 5

## IV.    OBJECTION

11.    Sea-Pac has failed to establish any basis for the relief requested in the Arbitration Motion. Under the principles enunciated by the Third Circuit in the *Mintze* decision, the Court must consider the following three issues to determine whether or not to compel this matter to be resolved by arbitration: (i) whether the dispute is governed by an enforceable arbitration clause, (ii) whether the court has discretion to deny enforcement of the arbitration clause (*i.e.*, whether the Bankruptcy Code conflicts with the Federal Arbitration Act (the "*FAA*") in such a way as to bestow discretion on the Court to decline to enforce an otherwise applicable arbitration provision), and (iii) if the Court has such discretion, whether the Court should exercise its discretion to deny arbitration. *In re Mintze*, 434 F.3d 222 (3d Cir. 2006). Application of the *Mintze* analysis to the instant case makes clear that Sea-Pac's Arbitration Motion must be denied.

### A.  *Sea-Pac Has No Right to Arbitration*
### *Under the Terms of the Expired Sea-Pac Agreements*

12.    As set forth above, it is clear from the face of the expired Sea-Pac Agreements that they do not mandate arbitration as Sea-Pac suggests. To the contrary, the expired Sea-Pac Agreements expressly permit the parties to litigate their disputes if no party timely elects arbitration.

13.    The undisputed facts clearly demonstrate that neither Sea-Pac nor AWI elected to proceed with arbitration within the deadlines provided in the expired Sea-Pac Agreements. Specifically, the expired Sea-Pac Agreements provide that "*[i]f any dispute is not*

7

*resolved by negotiation within 30 days of its arising, then, at the written request of either party within an additional 10 days, the dispute shall be submitted to mediation with a mediator chosen jointly.*" Accordingly, Sea-Pac had 40 days from the date the dispute arose to send AWI a written request to submit to mediation  Although Sea-Pac admits in the Sea-Pac Claim that the alleged breaches forming the basis of its claims occurred as early as 2000 and 2003, taking the latest possible date on which the dispute could have technically arisen — November 4, 2005, the date on which Sea-Pac filed the Sea-Pac Claim — either Sea-Pac or AWI had until December 14, 2005 to request mediation.  No such request was made by either party.

14.    In accordance with the expired Sea-Pac Agreements, "*[i]n the absence of a request for mediation ... then, at the option of either party, such dispute shall be submitted to binding arbitration....*" As of December 14, 2005 no request for mediation had been made, and, until the recent filing of the Arbitration Motion, Sea-Pac took no action in furtherance of its option to submit the alleged disputes to arbitration.

15.    The expired Sea-Pac Agreements, though, provide a deadline by which a party must elect arbitration: "*If arbitration is not initiated within 30 days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [--].*" Because neither Sea-Pac nor AWI requested mediation, arbitration became an option no later than December 14, 2005.  Under the express terms of the expired Sea-Pac Agreements, Sea-Pac then had an additional 30 days to initiate arbitration and, therefore, could have done so at any time on or before January 13, 2006 at the latest.  Sea-Pac failed to do so and made no request for arbitration until after AWI — six months after the expiration of the latest possible deadline for requesting arbitration — filed the Claim Objection  Sea-Pac's request to arbitrate the parties' disputes, made solely in response to the Claim Objection, is simply too little too late.

8

16.    The clear intention of the parties, as evidenced by the plain language of the expired Sea-Pac Agreements, was to create the ability to submit disputes to arbitration *if and only if* arbitration was sought within the appropriate time frame, after which either party had the express right to initiate litigation. Having failed to invoke either mediation or arbitration within the deadlines established under the explicit terms of the expired Sea-Pac Agreements, Sea-Pac now is bound by AWI's election to litigate the parties' disputes. Because Sea-Pac has no enforceable right to arbitration, the Court need not even consider whether it can or should defer resolution of the Claim Objection to arbitration.

**B.   *Arbitration is Not an Appropriate Forum***
      ***for Resolution of the Sea-Pac Claim***

17.    Even assuming, *arguendo*, the arbitration provisions in the expired Sea-Pac Agreements were enforceable under the terms of the expired Sea-Pac Agreements, the Court is not required to enforce such arbitration provisions and, indeed, in this case, strong policy reasons support having a single forum — this Court — resolve the disputes between Sea-Pac and AWI. *Schubert v Wellspring Media, Inc (In re Winstar Communications, Inc)*, 335 B.R. 556, 566 (Bankr D. Del 2005) ("a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purposes of the Code, including the centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.") (*quoting In re Startec Global Comm. Corp*, 300 B.R. 244, 250 (D. Md. 2003)).

**i.    The Court Has Discretion to Deny**
       **Enforcement of Arbitration Provisions**

18.    In *Mintze*, the Third Circuit reiterated the standard first articulated in *Hays & Co v. Merrill Lynch, Inc (In re Monge Oil Corp)* ("*Hays*"), 885 F.2d 1149 (3d Cir 1989),

9

for when a bankruptcy court may exercise its discretion to deny a request for arbitration. *Mintze*,

434 F.3d 222; *Hays*, 885 F.2d 1149 (applying to bankruptcy proceedings the analysis set forth in

the Supreme Court's decision in *Shearson/Am. Exp. v. McMahon*, 482 U.S. 200 (1987)).[6] Under

*Mintze*, whether the court has discretion to deny enforcement of an otherwise applicable

arbitration clause depends on whether the party opposing arbitration has established

congressional intent to preclude judicial remedies for the statutory rights at issue by showing that

the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of

an arbitration provision. *Mintze* at 229. The fundamental issue for the Court is whether the

dispute could arise outside of bankruptcy or whether the "statutory rights" at issue derive

exclusively from the provisions of the Bankruptcy Code. *Mintze* at 231; *see also Insurance Co.*

*of N. Am. V NGC Settlement Trust (In re National Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir.

1997).

      19.    In *Mintze*, because the claimant did not raise any statutory claims created

by the Bankruptcy Code, the court found no inherent conflict between arbitration and the

consumer protection issues involved. Here, however, Sea-Pac has asserted entitlement to an

administrative expense — a creature of the Bankruptcy Code — which is afforded priority

treatment ahead of other creditors.[7] "Where the issues to be arbitrated involve exclusively

---

[6] In *McMahon*, the Supreme Court interpreted the FAA as establishing a federal policy favoring arbitration and requiring enforcement of arbitration provisions. The Court noted, however, that the FAA's mandate to allow arbitration may be overridden by a contrary congressional intent to prohibit waiver of a judicial forum for a particular claim, which intent is deducible from the statute's text, legislative history, or underlying objectives. *McMahon*, 482 U.S. at 226-7.

[7] Allowance or disallowance of Sea-Pac's claim for an administrative expense is a core bankruptcy issue that should be decided by the Court. "Resolving claims is the most fundamental of bankruptcy court processes, and therefore, is rarely relegated to arbitration." *In re Glen Eagle Square, Inc.*, WL 71782, *1 (Bankr. E.D. Pa. 1991) (citing *Zimmerman v. Cont'l Airlines, Inc.* 712 F.2d 55, 59 (3d Cir. 1983), *cert. denied*, 464 U.S. 1038 (1984)); *see also Hays*, 885 F.2d at 1156, n 9 (specifically

bankruptcy matters, *such as the determination of claim priority*, such issues *should not be submitted* to arbitration because they are core bankruptcy matters." *In re Slipped Disk*, 245 B.R. 342, 345 (Bankr. N.D. Iowa 2000) (emphasis added).

      20.    Accordingly, under the Third Circuit's analysis, with respect to core bankruptcy issues, "bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision provided the standard in *McMahon* has been met." *In re APF Co.*, 264 B.R. 344, 362 (Bankr. D. Del. 2001) (Walsh, J.) (exercising discretion to deny arbitration of core proceedings derived from the Bankruptcy Code where arbitration would conflict with fundamental tenets of centralized resolution of purely bankruptcy issues and equality of distribution among creditors) In other words, the Court may exercise its discretion to deny enforcement of an otherwise applicable arbitration provision if arbitration would jeopardize the fundamental objectives of the Bankruptcy Code. Accordingly, even if there were an enforceable arbitration provision at issue here, which there is not, the Court has discretion to refuse to refer the matter to arbitration because, here, arbitration of the Claim Objection (which raises bankruptcy-specific issues) conflicts with the objectives of the Bankruptcy Code.

      **ii.    The Court Should Exercise Its Discretion
to Deny the Arbitration Motion Because
the Facts Here Mitigate Against Arbitration**

      21.    In determining whether to exercise discretion to deny enforcement of an arbitration provision, courts have considered a number of factors, including the following: (i) the importance of a centralized resolution of purely bankruptcy issues, (ii) whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration

---

distinguishing the non-core issues at hand from typical core issues including "the allowance of claims against the estate ")

process, (iii) the degree to which special bankruptcy expertise is necessary in deciding the issue, (iv) the impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause, and (v) whether the parties have commenced arbitration outside of bankruptcy [8] *See, e.g., Winstar*, 335 B.R. at 365-366; *Slipped Disk*, 245 B.R. at 346.

   22. Of course, where the proceeding at issue derives from provisions of the Bankruptcy Code or relates to matters as to which the Bankruptcy Court was granted specific jurisdiction to resolve, it invokes more of the concerns reflected in the above-referenced factors, making arbitration inappropriate. *See, e.g., Glen Eagle Square Inc.*, 1991 WL 71782 at *1 ("As to core proceedings, deferral [to arbitration] should not be the norm, and relief to allow arbitration to go forward should be granted only if the balance of hardships tips in favor of the party seeking arbitration.") (internal citations to *Hays* omitted). In this case, resolution of the Claim Objection requires determinations with respect to a number of bankruptcy-specific issues which, collectively, demonstrate that the bankruptcy policies reflected in the foregoing factors weigh heavily in favor of the Court retaining jurisdiction to resolve the Claim Objection.

   ➢ *Priority of Sea-Pac's Claims Relative to Other Creditors*

   23. Liquidating the Sea-Pac Claim also requires determining whether any portion of the Sea-Pac Claims is entitled to administrative expense priority. Determining the priority of claims is within the exclusive jurisdiction of the Bankruptcy Court, given the strong policy of the Bankruptcy Code to have a centralized forum for resolving the entire body of claims against a debtor's estate. *See, e.g.*, APF, 264 B.R. 344, 364 ("The efficient resolution of claims and the conservation of the bankruptcy estate's assets is an integral purpose of bankruptcy

---

[8] *See APF*, 264 B.R. at 363 (" particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve these fundamental Bankruptcy Code issues.")

and inures to the benefit of the [d]ebtor's creditors.'") (*citing Nat'l Gypsum*, 118 F.3d at 1069,

n.21) Because administrative expense claims are afforded priority status under the Bankruptcy

Code, the party seeking administrative expense priority has a heavy burden to demonstrate

entitlement to such priority, and the Bankruptcy Court is in a unique position to evaluate whether

that burden — as a legal, as well as a factual, matter — has been met. In this case, resolving the

Sea-Pac Claim includes determining whether Sea-Pac's alleged breach of contract claims should

be elevated above the claims of other similarly situated creditors of AWI's estate — an estate

this Court has been administering for nearly six years.

      24    Moreover, proving entitlement to an administrative expense priority claim

requires satisfaction of bankruptcy-specific standards. Indeed, to prove that any damages

suffered by Sea-Pac qualify as administrative expenses, Sea-Pac must, as a matter of bankruptcy

law, show that its continued performance was induced by AWI notwithstanding that Sea-Pac

knew of the alleged breaches that form the basis of its claims beginning in 2000 and 2003

(before the Sea-Pac Agreements expired). Sea-Pac continued to perform in spite of the alleged

breaches, and Sea-Pac took no action in AWI's chapter 11 case to protect its rights for any

alleged breach of the Sea-Pac Agreements until November of 2005 — after the Sea-Pac

Agreements expired. It is AWI's position that, if Sea-Pac was really harmed by AWI's actions,

its remedy was to move to compel AWI to assume or reject the Sea-Pac Agreements, which it

did not do. By continuing to perform (and, with respect to the Commercial Agreement Breach

Claim, not even asserting that the appointment of the second distributor was a default), Sea-Pac

deprived AWI of the ability to reject the Sea-Pac Agreements. An arbitration panel lacking

experience in the bankruptcy concepts associated with postpetition performance under executory

13

contracts (and rejection of such contracts) would be unable to assess the merits of AWI's Claim Objection

> *Applicability of the Administrative Expense Bar Date*

25      The Claim Objection requires the Court to decide whether Sea-Pac is barred from asserting any administrative expenses arising prior to November 24, 2003 by virtue of Sea-Pac's failure to comply with the Administrative Expense Bar Date established in AWI's chapter 11 case. AWI submits that Sea-Pac is absolutely barred from asserting its administrative expense claims after failing to comply with this Court's order establishing a bar date for such claims. The Administrative Expense Bar Date Order explicitly required Sea-Pac — as a counterparty to a then unexpired executory contract with actual knowledge of the alleged breaches by AWI that form the basis of its claims — to assert such claims (as claims for "breach of an obligation – contractual, statutory, or otherwise – by AWI ...")[9] on or before the Administrative Expense Bar Date. Sea-Pac has asserted that the Administrative Expense Bar Date did not apply to its claims and suggests that the Executory Contracts Bar Date entered two years later relieved Sea-Pac of any obligation to comply with the Administrative Expense Bar Date. In short, Sea-Pac's response to this portion of the Claim Objection raises questions about the interpretation of two previous orders entered by this Court. It is indisputable that Bankruptcy Courts have the absolute right to enforce and interpret their own orders *In re Continental Airlines, Inc* , 236 B R 318, 325-26 (Bankr. D Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders."), *aff'd*, 279 F 3d 226 (3d Cir. 2002). Accordingly, this Court — and not a panel of arbitrators unfamiliar with the orders in question

---

[9] *See* Administrative Expense Bar Date Order, attached as Exhibit "D" to the Claim Objection.

— is in the best position to determine the applicability of the Administrative Expense Bar Date to Sea-Pac's claims.

> ➢ *Valuing Administrative Expense Claims*

26.    Resolving the Sea-Pac Claim also requires the Court to value any administrative expense claims to which Sea-Pac may be entitled. Contrary to Sea-Pac's simplified suggestion, liquidating the Sea-Pac Claim involves more than a simple breach of contract dispute to determine the amount, if any, of damages suffered by Sea-Pac on account of the alleged breaches by AWI. As a matter of bankruptcy law, if any of Sea-Pac's claims are entitled to administrative expense priority, what that claim might be is not necessarily based upon the damages that an arbitration panel might otherwise assess, but upon the reasonable value of the services (or benefits) provided by Sea-Pac to AWI's estate. *See In re FBI Distribution Corp.*, 330 F.3d 36, 48 (1ˢᵗ Cir. 2003) (holding that a creditor is entitled to only the reasonable value of the beneficial services rendered during the reorganization); *In re Adelphia Business Solutions, Inc.*, 296 B.R. 656, 664, n.9 (Bankr. S.D.N.Y. 2003) (recognizing that courts should be guided by "the equitable principle of unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him"); *In re Cardinal Indus., Inc.*, 142 B.R. 801, 805 (Bankr. S.D. Ohio 1992) (holding that the measure of expense entitled to an administrative priority is the benefit to the estate, not the damage to the claimant). Again, the remedy, if the other party finds it is being harmed, is for that party to seek to compel assumption or rejection of the contract at issue.[10] Because the analysis involved in valuing administrative expense claims

---

[10] Prior to the amendment of the Bankruptcy Code to require ongoing postpetition payment for equipment leases (and, before then, real estate leases), a number of cases addressed this issue, which are often referred to as the "use and occupancy" cases. *See, e.g., Philadelphia Co. v. Dipple*, 312 U.S. 168, 61 S.Ct. 538, 85 L. Ed. 651 (1941); *aff'g* 111 F.2d 932 (3d Cir. 1940) (prior to assumption of an executory lease, the trustee or debtor in possession is required to pay as an administrative expense only the value of

15

derives from the development of a unique area of bankruptcy law, it requires the expertise of the

Bankruptcy Court, and application of breach of contract principles by an arbitration panel may

well conflict with the standard imposed by the Bankruptcy Code. In that regard, this Court's

statement in *In re Oakwood Homes Corp*, applies with equal force to the issue of valuing

administrative priority claims:

> The law and the lore surrounding adjudication of such claims is extensive,
> and has been developed over significant periods of time. The result is,
> that certain fact situations may be expected to bring about fairly consistent
> results, wherever they are tried. To subject these matters to arbitration,
> before individuals or tribunals with little or no experience in bankruptcy
> law or practice, and with little or no concern for the rights and interests of
> the body of creditors, of which the particular defendant is only one, would
> introduce variables into the equation which could potentially bring about
> totally inconsistent results. Such a result would be contrary to the primary
> policy of the Bankruptcy Code, which is that all classes of creditors of a
> debtor are entitled to be treated as equitably as possible...

2005 LEXIS 429, *14-15 (Bankr. D. Del. 2005) (holding that statutory fraudulent

conveyance and preference actions may not be submitted to arbitration and finding that,

even if such actions were debtor-derivative, the court would exercise discretion to decline

enforcement of arbitration provision as contrary to the objectives of the Bankruptcy

Code).

> ➤ *Sea-Pac's Entitlement to Attorneys' Fees*

27    As set forth more fully in the Claim Objection, AWI disputes Sea-Pac's

entitlement to attorneys' fees not only because the expired Sea-Pac Agreements fail to contain

any language that would entitle Sea-Pac to such fees, but also because, as a matter of bankruptcy

the use or occupancy); *Palmer v. Palmer*, 104 F.2d 161, 163 (2d Cir.), *cert. denied*, 308 U.S. 590, 60 S.
Ct. 120, 84 L. Ed. 494 (1939) ("the trustee need not pay the rent during the probationary period, and the
court will hold off the lessor and force him to be content with the value of the use and occupancy
meanwhile... "); *Crook v. Zorn*, 100 F.2d 792 (5th Cir.), *cert. denied*, 307 U.S. 630, 59 S. Ct. 833, 83 L.
Ed. 1573 (1939) (same)

law, an unsecured creditor may not recover postpetition attorneys' fees or other collection costs from an insolvent debtor. Accordingly, whether Sea-Pac is entitled to a claim for attorneys' fees is a question this Court will ultimately have to resolve as a bankruptcy matter and is not something that can be easily assessed by a panel of arbitrators.

        28    For all of the reasons set forth above, liquidating the Sea-Pac Claim is inherently intertwined with distinctive bankruptcy concepts that require specific expertise — and this Court will ultimately have to determine the priority of Sea-Pac's claims in any event. Of course, to the extent the issues could be segregated so as to allow arbitration to determine Sea-Pac's damages and a subsequent determination of priority by the Bankruptcy Court, it would require this Court to revisit many of the facts reviewed by the arbitrators and would impose additional costs and expenses on AWI, which is directly contrary to the bankruptcy objectives favoring resolution of bankruptcy claims in one forum and encouraging expeditious administration of the estate for the benefit of all creditors. Conversely, resolution of certain of the bankruptcy issues by the Bankruptcy Court, including whether Sea-Pac's claims are entitled to administrative expense priority and, if so, whether any such administrative expenses are barred by Sea-Pac's failure to comply with the Administrative Expense Bar Date, could substantially narrow the issues to be resolved. Efficiency concerns, therefore, mitigate against arbitration and in favor of this Court retaining jurisdiction over the Claim Objection.

RLF1-3068065-1

## V.    CONCLUSION

29.    Because resolution of the Sea-Pac Claim implicates so many bankruptcy objectives and because the facts so strongly mitigate against arbitration, the Court should exercise its discretion to deny the Arbitration Motion. Ultimately, the Court is required to balance the policies underlying the FAA and the Bankruptcy Code to determine whether an inherent conflict exists. When such balancing is applied to this case, the scale tips heavily against arbitration. As an initial matter, the FAA does not apply because Sea-Pac cannot satisfy the threshold showing of a valid and enforceable arbitration provision.[11] On the other hand, the nature of the Claim Objection and Sea-Pac's asserted entitlement to priority treatment in the Sea-Pac Claim implicate strong bankruptcy concerns that directly conflict with the proposed arbitration. In *APF*, this Court noted the following:

> The efficient resolution of claims and the conservation of the bankruptcy estate's assets is an integral purpose of bankruptcy and inures to the benefit of the debtor's creditors. This policy concerns more than the mere private rights of individuals to an arbitration agreement, which was the preeminent concern of Congress in passing the FAA. In this regard, it seems to me that efficiency concerns in the bankruptcy context, at least as they pertain to fundamental bankruptcy rights such as the ones here, may present a genuine conflict between the FAA and the Bankruptcy Code.

---

[11] Section 3 of the FAA provides that a court has the power to stay a proceeding *if* the court determines that the arbitration clause applies to the dispute. *See* 9 U.S.C. § 3; Arbitration Motion, ¶ 9. In fact, section 3 of the FAA provides that, upon being satisfied that an issue is referable to arbitration, the court "shall on application of one of the parties stay the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration.*" 9 U.S.C. § 3. Where, as here, the applicant is in default in proceeding with such arbitration, the FAA mandate does not apply.

RLF1-3068065-1

264 B.R. at 364. The statement applies with equal force to the instant matter and, therefore, the

Court should deny the Arbitration Motion.

Dated:      October 6, 2006           Respectfully submitted,
             Wilmington, Delaware

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

19

## Exhibit A

DO NOT USE THIS FORM IF YOU HAVE AN ASBESTOS PERSONAL INJURY CLAIM

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Name of Debtor: check one (See Reverse Side for Complete List of Debtors and Case Nos.)
- ☐ Armstrong World Industries, Inc. (Case No. 00-4471)
- ☐ Nitram Liquidators, Inc. (Case No. 00-4469)
- ☐ Desseaux Corporation of North America (Case No. 00-4470)

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Name and Address where notices should be sent:
Sea Pac Sales
Dale Griffiths, Pres
6307 South 228th Street
Kent, WA 98032
Telephone # 253-796-3500

- ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars
- ☐ Check box if you have never received any notices from the bankruptcy court in this case.
- ☐ Check box if the address differs from the address on the envelope sent to you by the court.

This Space is for Court Use Only

Account or other number by which creditor identifies debtor:

Check box if ☐ replaces ☐ amends a previously filed claim, dated _____

| 1. Basis for Claim | | | |
|---|---|---|---|
| ☐ Acquisition/Divestitures | ☐ Freight | ☐ Non-Asbestos Property Damage | ☐ Taxes |
| ☐ Asbestos Property Damage | ☒ Goods Sold | ☐ Officer Indemnity | ☐ Tooling |
| ☐ Bank Service Charges | ☐ Industrial Revenue Bonds | ☐ Other _____ | ☐ Trade Payables |
| ☐ Contribution, Indemnity or Guaranty | ☐ Letters of Credit or Surety Bonds | ☐ Other Financing | ☐ Unknown |
| ☐ Customer Deposits | ☐ Litigation | ☐ Pension Insurance | ☐ Wages, Salaries and Compensation (fill out below) |
| ☐ Environmental | ☐ Long Term Disability | ☐ Professional Fees | Your SS #: _____ |
| ☐ Equipment Financing | ☐ Mechanic's Liens | ☐ Reclamation Notices | Unpaid compensation for services performed from _____ |
| ☐ ESOP Repurchase Obligation | ☐ Money Loaned ☐ Mortgage | ☐ Property Leases ☐ Retiree Benefits as defined in 11 U.S.C. §1114(a) | (date) to _____ |
| ☐ Executory Contracts | ☐ Non-Asbestos Personal Injury | ☐ Senior Debt | (date) |
| ☐ Expenses | | ☐ Subordinated Debt | ☐ Workers' Compensation |

| 2. Date debt was incurred: | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed: $ See Attached
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Secured Claim.
☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $ _____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. Unsecured Priority Claim.
☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ _____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $4,300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3)
   ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)
   ☐ Up to $1,950 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6)
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8)
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

RECEIVED
TRUMBULL SERVICES
COMPANY

2001 AUG 30  PM 2: 16

BANKRUPTCY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any). |
|---|---|
| 8/29/01 | Dale Griffiths    DALE GRIFFITHS, President SEA PAC SALES |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Prepared by Trumbull Services on Time: 12:15 pm Date: 6-September-01

B -- 25

Exhibit A

**PROOF OF CLAIM**
(Sea Pac Sales Company)

Sea Pac Sales Company ("SPSC") is an Armstrong distributor under a series of Sales Service Agreements ("Contracts") with Armstrong World Industries, Inc.

SPSC has a liquidated, noncontingent claim for $11,448 for STPA and SCPR for sales of products pursuant to the Contracts made prior to December 6, 2000.

SPSC additionally asserts an unliquidated, contingent, unmatured claim for STPA and SCPR based on materials shipped prior to December 6, 2000, in the amount of $100,000. This amount is estimated and subject to amendment, revision or supplementation. SPSC contends that its right to these payments are post-petition contractual obligations of the debtor entitled to administrative priority. SPSC files this claim on a precautionary basis to the extent this claim is determined to be a prepetition claim.

SPSC is also a third party beneficiary of that certain Inventory Purchase Agreement dated April 23, 2001, between Armstrong World Industries, Inc., and U.S. Bank. SPSC as third party beneficiary asserts an unliquidated, contingent, unmatured claim in the amount of $7,000,000. This amount is estimated and subject to amendment, revision or supplementation. SPSC contends that its right to these payments are post-petition contractual obligations of the debtor entitled to administrative priority. It files this claim on a precautionary basis to the extent this claim is determined to be a prepetition claim.

SPSC has not received any notice from the court and any notice of the bar date other than that contained in the letter dated August 24, 2001, from Stephen E. Stockwell, Senior V P Strategic Relations. SPSC expressly reserves the right to amend and supplement this proof of claim for any other damages arising out of its pre-petition contractual relationships with Armstrong World Industries, Inc., including, but not limited to, any damages or breaches the untimely notice of the bar date precluded Sea Pac from discovering and for any claims which may arise form the subsequent rejection of the Contracts

Proof of Claim - Exhibit A
Sea Pac sale Company, page 1 of 1

Prepared by Trumbull Services on Time: 12:15 pm Date: 6-September-01

## CERTIFICATE OF SERVICE

I, Jason M Madron, hereby certify that on the 6th day of October, 2006, I caused copies of the foregoing **Objection of Armstrong World Industries, Inc. to Sea-Pac Sales Company's Motion (I) To Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (II) For Relief from the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction** to be served upon the parties on the attached list and in the manner indicated thereon

_Jason M Madron_
Jason M Madron (No. 4431)

**ARMSTRONG WORLD INDUSTRIES, INC.**
**CASE NO. 00-4471**
**SERVICE LIST**

**Via Hand Delivery**

Karen Lee Turner
Michael G. Busenkell
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801

**Via First Class Mail**

Michael M. Feinberg
Diana K. Carey
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98102

Al Van Kampen
Rohde & Van Kampen, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA 98154

Sea-Pac Sales Company
6307 South 228th Street
Kent, WA 98032

RLF1-3068066-1

**3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------- x
In re                                         :    Chapter 11
                                              :
ARMSTRONG WORLD INDUSTRIES,                   :    Case No. 00-4471 (IKF)
INC., et al.,                                 :
                                              :    (Jointly Administered)
              Debtors                         :
                                              :
                                              :
---------------------------------------------- x
In re                                         :
                                              :
ARMSTRONG WORLD INDUSTRIES,                   :
INC., et al.,                                 :    Adversary Proceeding No.
                                              :
Plaintiff,                                    :
                                              :    _____
v.                                            :
                                              :
SEA-PAC SALES COMPANY,                        :
                                              :
Defendant.                                    :
---------------------------------------------- x
```

SUPPLEMENTAL OBJECTION AND COUNTERCLAIMS OF
ARMSTRONG WORLD INDUSTRIES, INC. WITH RESPECT TO
PROOF OF CLAIM OF SEA-PAC SALES COMPANY (CLAIM NO. 4854)

TO THE HONORABLE JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY COURT JUDGE:

Armstrong World Industries, Inc. ("*AWI*"), as reorganized debtor, hereby

supplements its objection (the "*Supplemental Objection*"), dated July 20, 2006 [Docket No

9683] (the "*Claim Objection*"), with respect to claims filed against AWI by Sea-Pac Sales

Company ("*Sea-Pac*") on or about November 8, 2005, as reflected in proof of claim

number 4854 (the "*Sea-Pac Claim*"), and asserts counterclaims (the "*Counterclaims*") against

Sea-Pac  In support of the Supplemental Objection and Counterclaims, AWI respectfully

represents as follows:

RLF1-3068064-1

## I.    OVERVIEW

1.      Since filing the Claim Objection, AWI has become aware of additional information relating to the Sea-Pac Claim, which requires AWI to amend the Claim Objection in order to (i) assert additional defenses to the Sea-Pac Claim, and (ii) raise additional objections to the Sea-Pac Claim to the extent it is amended or deemed amended by Sea-Pac to include additional administrative expenses with respect to actions occurring prior to the Effective Date and as to which Sea-Pac has threatened to bring suit against AWI  Moreover, AWI has become aware of claims it has against Sea-Pac, which have arisen during the pendency of AWI's chapter 11 case and are appropriately included as Counterclaims against Sea-Pac.[1]

## II.    JURISDICTION

2.      On December 6, 2000 (the "*Commencement Date*"), AWI and two of its affiliated debtors each commenced a case under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*")  On October 2, 2006, the "Effective Date" under AWI's Fourth Amended Plan of Reorganization, As Modified, dated February 21, 2006 (the "*Plan*"), occurred, and AWI emerged from chapter 11 protection.

3.      As a result of the Counterclaims asserted herein, this is an adversary proceeding initiated by AWI pursuant to sections 502, 503 and 553 of the Bankruptcy Code and Bankruptcy Rules 7001 and 7003

4.      This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U S C. §§ 157 and 1334 because the issues involved arise in

---

[1] AWI has also filed a complaint commencing suit against Sea-Pac in the United States District Court for the Eastern District of Pennsylvania, Case No  2:06-CV-4435 (the "*Pennsylvania Action*"), asserting many of the claims included herein as Counterclaims  AWI intends to stay the Pennsylvania Action pending resolution of these matters by the Court

or are related to the voluntary petition for relief filed under chapter 11 of the Bankruptcy Code by AWI. Jurisdiction is also proper before this Court pursuant to section 9.3 and 9.4 of the Plan.

5.    This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157 and, accordingly, this Court has the power to enter final findings of fact and conclusions of law, subject to review under 28 U.S.C. § 158.

6    Venue in this district is proper pursuant to 28 U.S.C § 1409(a) because this is the district where AWI's chapter 11 case is pending.

### III.    COUNTERCLAIMS

7.    AWI has claims against Sea-Pac, which have arisen during the pendency of AWI's chapter 11 case, as follows:[2]

8.    For many years Sea-Pac has been a wholesale distributor for AWI's commercial and residential floor covering products in the Pacific Northwest. Pursuant to this arrangement, Sea-Pac agreed to warehouse, sell and distribute AWI's products to AWI's retailers and other customers in the Pacific Northwest.

9.    In the summer of 2006, AWI and Sea-Pac were involved in discussions concerning the future of the distribution relationship between the parties. On July 19, 2006, Frank Ready, President and CEO of the North American Floor Products division of AWI, sent a letter to Mr. Jared Williams, President of Sea-Pac (July 19, 2006 Letter, attached hereto as Exhibit "A"). In the letter, AWI stated that it would continue the distribution relationship with Sea-Pac until July 31, 2007 The letter further stated that: "If you [Sea-Pac] would like to exit any of those businesses [i.e. vinyl, wood, laminate, installation and all related products] as an

---

[2] AWI incorporates by reference the background information included in the Claim Objection as if fully set forth herein. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Claim Objection

3

[AWI] distributor at any time before that date, we would be happy to discuss with you an earlier transition."

10.    By letter dated September 15, 2006 from Mr. Williams to Mr. Ready, Sea-Pac accepted AWI's offer to continue the distribution relationship through July 31, 2007. (September 15, 2006 Letter attached hereto as Exhibit "B"). This letter specifically stated: "[Sea-Pac] hereby accepts [AWI]'s offer in your letter of July 19, 2006, to continue the distribution relationship between the companies. ..."

11.    The July 19, 2006 and September 15, 2006 letters constitute an agreement between AWI and Sea-Pac (hereinafter referred to collectively as the "*Letter Agreement*"). Pursuant to the Letter Agreement, Sea-Pac would continue to act as AWI's distributor and warehouse and sell AWI's products to its customers in the Pacific Northwest. Pursuant to the Letter Agreement, this distribution relationship was to continue until July 31, 2007 unless AWI and Sea-Pac agreed to an earlier transition.

12.    AWI relied upon Sea-Pac's promise to act as its distributor in the Pacific Northwest until July 31, 2007 unless an earlier transition date was agreed to by the parties. Although the parties continued their discussions regarding the winding up of the distribution relationship, the parties reached no further agreement.

13    It was common knowledge among the employees of Sea-Pac and AWI that Sea-Pac and AWI were negotiating a transition to a different distribution relationship for AWI in the Pacific Northwest. One or more employees of Sea-Pac contacted AWI regarding the status of Sea-Pac as an AWI distributor and inquiring as to their current and future employment situation. Certain AWI sales representatives told certain Sea-Pac sales people that, "if you lose your employment with Sea-Pac and do not have a written agreement preventing you from

RLF1-3068064-1

working for us, then we would be extremely interested in speaking with you about employment possibilities with AWI."

14.    On Saturday, September 30, 2006, Mr. Williams emailed Paul Murfin, Vice President of Sales for AWI Floor Products. The email accused AWI of having a program of trying to hire away Sea-Pac's sales representatives. The email concluded: "I will obviously be filing a lawsuit against you for tortuous [sic] interference with my business and intentional efforts to destroy Sea-Pac. That will sit real well with the press and the other distributors "

15    In response to this email, Mr. Paul K. Murfin, Vice President of Sales for AWI Floor Products, responded, "There has been no plan to hire your people away. What we have said is that if they lose their jobs with you that we would be interested in talking to them."

16.    On October 2, 2006, Mr. Terry Goodall, Director of Sales for Sea-Pac, sent a letter to all of AWI's retailers and customers in the Pacific Northwest. (October 2, 2006 letter attached hereto as Exhibit "C"). This letter notified AWI's customers that AWI and Sea-Pac have come to a "strategic impasse" and have "agreed to separate and we are anxious for this to occur." Sea-Pac stated:

> "However, we realize the importance to you of having a smooth transition so this is not also disruptive to your business and commitments you have to your customers. To this end, we have been diligently negotiating with [AWI] to develop a transition plan that works for everyone... To our surprise, we learned over this last weekend that [AWI], using our confidential information, has been secretly soliciting several of our key personnel for future employment. Accordingly, we now have to move to protect Sea-Pac from this activity. I know that each of you, as successful entrepreneurs, understand our need to do that. Unfortunately, that brings our efforts to effect a smooth transition with [AWI] to an end."

17.    In the October 2, 2006 letter, Sea-Pac told AWI's customers of the "diversification of our product lines" and encouraged AWI's customers to purchase competing Non-AWI flooring products from Sea-Pac

18.    The October 2, 2006 letter was a unilateral repudiation and material breach of Sea-Pac's obligations under the Letter Agreement.  The letter effectively, unilaterally, and immediately ended the distribution relationship between AWI and Sea-Pac without notice to AWI

19.    On October 2, 2006, in a phone call to AWI manager Jay Fike, Mr. Williams repeated his threat to sue AWI and reiterated his decision to immediately repudiate and terminate Sea-Pac's obligations and services as a distributor of AWI's products in the Pacific Northwest

20.    Because of Sea-Pac's immediate and unilateral repudiation of its obligation, AWI has incurred and continues to incur increased expenses in finding substitute distribution services, cancelled orders, increased sales cost, lost sales, and loss of reputation and goodwill.

(i)    *Count I: (Breach of Contract)*

21.    AWI incorporates by reference its allegations set forth in paragraphs 8 through 20 hereof, as if fully set forth herein.

22.    The July 19, 2006 letter and September 15, 2006 letter constitute a valid and enforceable agreement ("Letter Agreement") between Sea-Pac and AWI pursuant to which Sea-Pac was required to act as AWI's distributor in the Pacific Northwest until July 31, 2007 unless an earlier transition date was agreed to by the parties

6

23.    Sea-Pac's actions and letter of October 2, 2006 constitute a unilateral repudiation and material breach of its obligations under the Letter Agreement.

24.    Sea-Pac provided no notice of its actions and intentions to unilaterally repudiate its obligations and withdraw as AWI's distributor.

25.    Sea-Pac's breach of contract has caused and will continue to cause AWI damages in excess of $75,000 in the form of increased costs and expenses in finding substitute distribution services, cancelled orders, increased sales cost, lost sales, and loss of reputation and goodwill.

26.    AWI is entitled to damages to compensate it for all such damages caused by Sea-Pac's breach of contract.

27.    To the extent Sea-Pac is entitled to an allowed administrative expense for any portion of the Sea-Pac Claim, AWI's liability for such administrative expense should be offset by the amount of damages owed to AWI as a result of Sea-Pac's breach of the Letter Agreement.

(ii)    *Count II: Anticipatory Breach of Contract —*
         *Failure to Pay Amounts Due for Goods Supplied to Sea-Pac*

28    As of the Effective Date, AWI's records reflect that a total amount of $2,011,187.33 was owed to AWI by Sea-Pac on account of goods delivered prior to the Effective Date, which amount is subject to reduction by certain credits applied in the ordinary course of the parties' business dealings.[3]

29.    Although certain invoices with respect to such goods are not yet past due, Sea-Pac's actions lead AWI to believe that Sea-Pac does not intend to pay the amounts owing to

---

[3] This amount also does not reflect other amounts payable, or that may be payable, to Sea-Pac by AWI, including reimbursement of expenses for, among other things, filebacks and certain RDC functions.

AWI for such goods by due dates approaching in the very near future. To the extent that Sea-Pac

fails to pay for such goods, AWI has a counterclaim against Sea-Pac that may offset AWI's

liability on account of any allowed administrative expense that Sea-Pac might have against AWI.

### IV.    SUPPLEMENTAL CLAIM OBJECTION

30.    AWI hereby supplements the Claim Objection as follows:

(i)    *The Sea-Pac Claim is Barred to the Extent it Asserts*
       *Claims Previously Asserted and Withdrawn, With Prejudice.*

31.    On August 30, 2001, Sea-Pac filed proof of claim number 3528 against

AWI, asserting liquidated claims of approximately $111,500 as well as a precautionary,

contingent claim in the amount of $7,000,000, all with respect to the Sea-Pac Agreements. On

May 29, 2003 — well after Sea-Pac became aware of the alleged breaches asserted in the Sea-

Pac Claim — Sea-Pac withdrew with prejudice such proof of claim. *See* Withdrawal of Proof of

Claim [Docket No. 4841]. Accordingly, to the extent the claims asserted in the Sea-Pac Claim

have already been asserted and withdrawn with prejudice, Sea-Pac is barred from re-asserting

such claims

(ii)    *Sea-Pac's Residential Agreement Breach Claim Must Be*
        *Disallowed Because It Is Barred By the Applicable Statute of Limitations.*

32.    AWI has an additional defense to the Residential Agreement Breach

Claim asserted by Sea-Pac, which is that such claim is barred, in whole or in part, by the

applicable statute of limitations.

33.    Therefore, AWI requests that the Residential Agreement Breach Claim be

disallowed and expunged in its entirety

(iii)   *AWI Objects to Any Amendment of the Sea-Pac*
        *Claim Asserting Additional Administrative Expenses for*
        *Actions Occurring Before the Effective Date of AWI's Plan.*

34.    As set forth above, AWI has been notified that Sea-Pac is likely to amend the Sea-Pac Claim to assert additional administrative expense claims, including alleged claims against AWI for tortious interference and/or other claims for allegedly misusing Sea-Pac's confidential information and/or allegedly trying to hire Sea-Pac's sales force away from Sea-Pac.

35.    AWI denies that it attempted to hire Sea-Pac's sales force away from Sea-Pac, that it misused Sea-Pac's confidential information, or that it took any action that was a breach of any contractual duty or a violation of any state or federal law and, therefore, AWI objects to the Sea-Pac Claim to the extent it is amended to assert that AWI attempted to do any of the above

### V.    NOTICE

36.    Notice of this Supplemental Objection has been provided to the United States Trustee for the District of Delaware, Sea-Pac in accordance with the address or addresses for further notice provided on the Sea-Pac Claim, and counsel of record for Sea-Pac    AWI submits that no other or further notice need be provided of this Supplemental Objection.

9

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, AWI prays for entry of judgment (i) finding that Sea-Pac breached its agreement with AWI when it unilaterally repudiated its distribution obligations and withdrew as AWI's distributor in the Pacific Northwest, (ii) awarding AWI damages for breach of contract, which damages should offset AWI's liability for any allowed administrative expense of Sea-Pac, (iii) finding Sea-Pac liable for any outstanding amounts owed to AWI, which amounts should offset AWI's liability for any allowed administrative expense of Sea-Pac, (iv) awarding AWI its costs in this matter, and (v) granting AWI such other and further relief as is just and proper.

Dated:      October 6, 2006          Respectfully submitted,
            Wilmington, Delaware

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P O Box 551
Wilmington, Delaware  19899
(302) 651-7700

            -and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

10

# EXHIBIT A



Your ideas become reality.

ARMSTRONG WORLD INDUSTRIES INC
2500 COLUMBIA AVE  LANCASTER PA 17603
P O BOX 3001  LANCASTER PA 17604
717 397 0611

www armstrong com

*Via Certified U.S. Mail and Facsimile (253) 796-3507*

July 19, 2006

Mr. Jared R. Williams
President
Sea-Pac Sales Company
6307 South 228th Street
Kent, WA 98032

      Re:    Sea-Pac Sales

Dear Jared:

Based upon our many recent discussions concerning our differing business expectations, it has become apparent that the future goals of our companies are not compatible. We believe that it is not in our respective economic best interests to continue the disruptive relationship that has caused much conflict and controversy over the past several months.

As we have already communicated to you, your RDC monthly fee "supplement" was discontinued effective April 30. That supplement was begun merely as an accommodation to you and was never meant to become permanent. We understand that that decision has led you to begin to cease performing RDC functions on behalf of Armstrong. You have rejected replenishment orders and our fee schedule. You have stated you will ship RDC products from existing inventory. We accept that decision and will no longer expect those services from you after August 31, after which we will repurchase remaining RDC inventory. You will be paid RDC fees for those services until that date according to our standard RDC fee schedule. Also, as previously stated, you should inform your bank that we will not be renewing the inventory repurchase guarantee which expires on September 30, 2006.

This letter is notice to you that we have determined not to renew all distribution relationships between our companies for vinyl, wood, laminate, installation and all related products effective July 31, 2007. If you would like to exit any of those businesses as an Armstrong distributor any time before that date, we would be happy to discuss with you an earlier transition. In any event, if it is your preference when those transitions occur, we will repurchase at your cost, and handle reshipping for all current cartoned Armstrong inventory, unused displays or other unused merchandising materials purchased from Armstrong.

B - 40

We would like to meet with you to go over the details of these changes in our relationship and to answer any questions you may have  Further, we have enclosed our response to your Proof of Claim filed in Armstrong's bankruptcy case  As you can see, we have absolute defenses to your claims.  If you would like to discuss disposition of those claims at our meeting, we would be happy to do so or we will let the Bankruptcy Court deal with them  I will give you a call to discuss a convenient time and place for us to meet and work out an amicable separation of our businesses  We wish you the best in your future endeavors

Sincerely,

Frank J Ready
President & CEO
North American Floor Products

EXHIBIT B

# Sea-Pac Sales

September 15, 2006

*Via Facsimile and Certified Mail*

Mr. Frank Ready, President & CEO
North American Floor Products
Armstrong World Industries, Inc.
2500 Columbia Avenue
Lancaster, Pennsylvania 17603

     Re:   *Distribution of Armstrong and AHFC by Sea-Pac Sales Company*

Dear Frank:

Unfortunately, you were unwilling to sign the transition agreement the two companies'
and their lawyers spent weeks negotiating and drafting. Sea-Pac hereby withdraws that
proposal.

Instead, Sea-Pac Sales hereby accepts Armstrong's offer in your letter of July 19, 2006,
to continue the distribution relationships between the companies, and for Armstrong to
repurchase at Sea-Pac's cost, and pay for reshipping, all current cartoned inventory,
unused displays or other unused merchandising materials purchased from Armstrong,
when Sea-Pac discontinues selling Armstrong products.

Sea-Pac reserves its rights with respect to Armstrong's termination of RDC services.
Armstrong's notice to Sea-Pac that it was terminating those services was not sufficiently
in advance to constitute a commercially reasonable notice period.

We are notifying US Bank of your instruction that Armstrong would not renew the
Inventory Purchase Agreement with the bank and of Armstrong's planned termination of
Sea-Pac. You are intimately aware of the arrangement with the bank and you should
expect to hear from its representatives.

Best Regards,

Jared R. Williams, President
Sea-Pac Sales Company

cc:    Mr. Al Van Kampen

6307 South 228th Street, Kent, WA 98032 ◦ Phone (253) 796-3500 ◦ Fax (253) 796-3507

# EXHIBIT C



October 2, 2006

To Our Valued Customers:

As many of you know from recent press reports, Armstrong and Sea-Pac have come to strategic impasse on the direction of our companies. We have agreed to separate and we are anxious for that to occur. However, we realize the importance to you of having a smooth transition so this is not also disruptive to your business and commitments you have to your customers. To this end, we have been diligently negotiating with Armstrong to develop a transition plan that works for everyone. Naturally, there are a lot of business and financial complications and entanglements involved in separating such a long-standing relationship so it has been very difficult. To our surprise, we learned over this last weekend that Armstrong, using our confidential information, has been secretly soliciting several of our key personnel for future employment. Accordingly, we now have to move to protect Sea-Pac from this activity. I know that each of you, as successful entrepreneurs, understand our need to do that. Unfortunately, that brings our efforts to effect a smooth transition with Armstrong to an end. That is very unfortunate for all concerned, but given these tactics I hope you understand we have no choice.

Sea-Pac has been pursuing diversification for several years now and we are anxious to continue on that course. The diversification of our product lines is in the best interest of Sea-Pac, and in the long run, will allow us to serve you better.

We are now able to expand our product offering into some exciting new avenues we have been exploring for some time. Here are just a few of many examples:

Laminate - we have the best laminate line in the market with Quick Step and we will be adding a second line shortly with one of the best brand names in the industry.

Vinyl Composition Tile - we will be adding a new VCT line that is very high quality in comparison to competitive products, but at similar or better pricing. We are also evaluating some new roll vinyl as well.

B – 45

Vinyl planks and luxury vinyl tile - We have added a floating line of patented vinyl planks (November 06) and tile (due first quarter of 07). which are revolutionary and pre-orders, are accelerating at an unbelievable pace. This will be another revolutionary advance in the flooring business - a vinyl that can be put down anywhere - basements, bathrooms, over other flooring, etc. with a minimum of installation costs and problems. This is a "hot seller" for our dealers and we encourage you to get your displays as quickly as possible

A variety of new stone and wood products are on board and are being very well received in the commercial and residential community

We have consummated a lease on a new Portland facility and it will be open no later than December 1, 2006 and we are negotiating for a facility in Boise, Idaho and will be moving to Western Canada next spring

We have inaugurated a new in house trucking system beginning in October 06.

The flooring business has become innovative and fun again, so we at Sea-Pac are excited about now being positioned to add these new opportunities as they arise!

Again we apologize in advance for any complications that may arise due to the transition away from Armstrong, but we have little control over that and we will provide all the help we can. We can acquire product, within reason, from sister distributors and we have a substantial inventory to draw from. As far as we are aware, Armstrong's commercial products will also be available at Pacific Commercial and we know Armstrong will provide access to their residential products through another venue soon. but we just don't have any information who that will be

We have been an Armstrong supplier for 50 years and we certainly part with fond memories and wish them well.

We are excited about our new strategic profile and look forward to serving you

Terry Goodall
Sea-Pac Director of Sales

## CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 6th day of October, 2006, I caused copies of the foregoing **Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)** to be served upon the parties on the attached list and in the manner indicated thereon

Jason M. Madron (No. 4431)

ARMSTRONG WORLD INDUSTRIES, INC.
CASE NO. 00-4471
<u>SERVICE LIST</u>

<u>Via Hand Delivery</u>

*(United States Trustee)*
Richard Schepacarter
Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519

Karen Lee Turner
Michael G. Busenkell
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801

<u>Via First Class Mail</u>

Michael M. Feinberg
Diana K. Carey
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98102

Al Van Kampen
Rohde & Van Kampen, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA 98154

Sea-Pac Sales Company
6307 South 228th Street
Kent, WA 98032

RLF1-3068070-1

**4**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| ARMSTRONG WORLD INDUSTRIES, | ) |
| INC., et al., | ) |
| | ) Case No. 00-04471 (JKF) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) Re: D.I. 9830 |

ORDER DENYING SEA-PAC SALES COMPANY'S MOTION (I) TO STAY
OBJECTION BY ARMSTRONG WORLD INDUSTRIES, INC. TO SEA-PAC'S
PROOF OF CLAIM NO. 4854 PENDING ARBITRATION, AND (II) FOR
RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR
RELIEF FROM THE DISCHARGE INJUNCTION

UPON CONSIDERATION of the motion of Sea-Pac Sales Company (i)
to stay objection by Armstrong World Industries, Inc. to Sea-Pac's proof of claim no.
4854 pending arbitration, and (ii) for relief from the automatic stay or, in the alternative,
for relief from the discharge injunction (the "Motion") (D.I. 9830), the objection thereto,
the arguments of counsel at a hearing held on October 23, 2006 (the "Hearing"), and the
entire record herein, and the Court having subject matter jurisdiction to consider the
Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, it
is hereby ORDERED that the Motion is DENIED for the reasons stated on the record at
the Hearing.

Dated: Wilmington, Delaware

_____Nov. 20_____, 2006

_Judith K. Fitzgerald_

_____
JUDITH K. FITZGERALD
United States Bankruptcy Judge

B - 49

**5**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re                                                          :     Chapter 11

ARMSTRONG WORLD INDUSTRIES,     :     Case No. 00-4471 (JKF)
INC., *et al*,                                                :
                                                                   :     (Jointly Administered)
                         Debtors                          :     Re: Docket Nos. 9683, 9832, 9833, 9834, 9913 & 10182
                                                                   :
                                                                   :

---------------------------------------------------------- x

In re                                                          :

ARMSTRONG WORLD INDUSTRIES,     :
INC., *et al*,                                                :
                                                                   :
                         Plaintiff,                        :
                                                                   :
          v.                                                   :     Adversary Proceeding No. 06-50899 (JKF)
                                                                   :     Re: Adv. Docket No. 1 & 3
SEA-PAC SALES COMPANY,             :
                                                                   :
                         Defendant.                      :

---------------------------------------------------------- x

## STIPULATED SCHEDULING ORDER

TO:     THE HONORABLE JUDITH K. FITZGERALD
          UNITED STATES BANKRUPTCY JUDGE:

          In connection with the above-captioned matter, plaintiff, Armstrong World

Industries, Inc. ("AWI"), and defendant, Sea-Pac Sales Company ("Sea-Pac"), have agreed to the

following scheduling order. By agreement of the parties and this Court, IT IS SO ORDERED:

          1.     Sea-Pac shall answer or reply, make additional claims, move to dismiss, and/or
                  otherwise respond to the Supplemental Objection and Counterclaims of
                  Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales
                  Company (Claim No. 4854) no later than December 14, 2006.

          2.     AWI's time to respond to Sea-Pac's answer, additional claims, motion to dismiss,
                  and/or other response to the Supplemental Objection and Counterclaims of
                  Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales
                  Company (Claim No. 4854) shall not begin to run until January 2, 2007. In other

words, January 2, 2007 shall be the first day of the time period within which AWI has to respond.

3. In the event Sea-Pac files a motion to dismiss, AWI shall file its response no later than January 26, 2007 and Sea-Pac shall file its reply no later than February 9, 2007.

4. Fact discovery, including the depositions of all non-experts, shall be completed by June 15, 2007.

5. On or before June 20, 2007, each side shall identify any expert witnesses that it intends to call at trial and provide reports.

6. On or before July 26, 2007, each side shall identify any rebuttal expert witnesses that it intends to call at trial and provide rebuttal expert reports.

7. Expert discovery, including the depositions of all experts, shall be completed by August 31, 2007

8. Motions for Summary Judgment shall be filed with the Court on or before September 10, 2007.

9. Oppositions to Motions for Summary Judgment shall be filed with the Court no later than twenty-one calendar days after the filing of Motions for Summary Judgment.

10. A Replies *limited to 5 pages* to Oppositions to Motions for Summary Judgment shall be filed with the Court no later than ten days after the filing of Oppositions to Motions for Summary Judgment.

11. 10 B *(b)* Exhibit lists, exhibits, *premarked for identification* and witness lists to be filed and exchanged by October 19, 2007.

12. A pretrial conference will be held on *Nov. 26, 2007* *and argument on any motion for summary judgment.*

13. Trial is set to commence on *a date to be determined at the pretrial conference.*

14. Nothing in this Stipulated Scheduling Order shall preclude either party from moving the Court to amend this Order for good cause.

Dated: December *19*, 2006
Wilmington, Delaware

*The parties shall file*

*(C) 10 B. On completion of briefing notice. One binder containing all pleadings & briefs & exhibits & affidavits shall be sent to Pittsburgh Chambers not later than Dec 26, 2007*

_____
*J.K. Fitzgerald*
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

RLF1-3093788-1

B - 51

AGREED AS TO THE FORM OF ORDER:

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

-and-

David A. Hickerson
Stephen A. Gibbons
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW – Suite 900
Washington, D.C. 20005

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

RLF1-3093788-1

3

B - 52

AGREED AS TO THE FORM OF ORDER:

Karen Lee Turner (No. 4332)
Michael G. Busenkell (No. 3933)
ECKERT SEAMANS CHERIN & MELLOTT LLC
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

-and-

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

-and-

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

ATTORNEYS FOR CREDITOR
SEA-PAC SALES COMPANY

RLF1-3093788-1

4

**6**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*In re* ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

------------------------------------------------------------x

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | : | |
| | : | Civil Action No. 07-4 |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| ARMSTRONG WORLD INDUSTRIES, INC., | : | Bankr. Case No. 00-04471 |
| | : | Appeal No. 06-77 |
| Appellee. | : | |
| | : | |

------------------------------------------------------------x

## APPELLEE'S ANSWERING BRIEF

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR APPELLEE
ARMSTRONG WORLD INDUSTRIES, INC.

Dated: February 26, 2007
Wilmington, Delaware

RLF1-3119812-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF CASE ..................................................................................... 2

PROCEDURAL HISTORY .................................................................................. 4

FACTUAL BACKGROUND ............................................................................... 9

    A. The Sea-Pac Agreements ............................................................................ 9

    B. The Second Sea-Pac Claim ....................................................................... 11

    C. Alternative Dispute Resolution Provisions
       of the Sea-Pac Agreements ...................................................................... 12

ARGUMENT ...................................................................................................... 13

    A. In Denying the Stay Motion Itself, the
       Bankruptcy Court Acted Entirely Within Its Authority ............................. 14

    B. The Stay Motion Should Be Denied ......................................................... 17

        i. AWI Has a Contractual Right to Litigate, and
          Sea-Pac Has No Right to Arbitrate, Under the
          Terms of the Sea-Pac Agreements ...................................................... 18

        ii. Arbitration is Not an Appropriate Forum
          for Resolution of the Second Sea-Pac Claim ...................................... 25

           ➤ The Court Has Discretion to Deny
              Enforcement of Arbitration Provisions .......................................... 26

           ➤ The Bankruptcy Court May (and Should)
              Exercise Its Discretion to Deny the Stay Motion
              Because the Facts Here Mitigate Against Arbitration ..................... 27

                ▪ Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim
                  with Prejudice .......................................................................... 28

                ▪ Priority of Sea-Pac's Claims Relative to Other Creditors ......... 28

                ▪ Applicability of the Administrative Expense Bar Date ............. 30

                ▪ Valuing Administrative Expense Claims .................................. 31

                 ▪ Sea-Pac's Entitlement to Attorneys' Fees ................................ 32

CONCLUSION .................................................................................................. 33

RLF1-3119812-1

i

## TABLE OF AUTHORITIES

Cases

*Cirillo v. Tice Entertainment Inc*, No. 89-3422XX, 1989 WL 144938,
(D.N.J. Nov. 20, 1989) ................................................................................. 23

*Dougherty v. IRS (In re Dougherty)*, 187 B.R. 883 (Bankr. E.D. Pa. 1995) ................ 23

*Fricker v. Corestates Bank, N.A. (In re Fricker)*, 192 B.R. 388
(Bankr. E.D. Pa. 1996) ................................................................................. 23

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ....................... 14,15,16,17

*Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*,
885 F.2d 1149 (3d Cir. 1989) ......................................................................... 26

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ....................... 14,15,16,17

*Independent Fire Insurance Co. v. Pender (In re Phillip)*, 948 F.2d 985
(5th Cir. 1991) ............................................................................................. 23

*In re Adelphia Business Solutions, Inc.*, 296 B.R. 656 (Bankr. S.D.N.Y. 2003) ............ 31

*In re Anderson*, 23 B.R. 174, 175 (Bankr. N.D. Ill. 1982) ..................................... 23

*In re APF Co.*, 264 B.R. 344 (Bankr. D. Del. 2001) ....................................... 28,29

*In re Barclay Bros., Inc.*, No. 82-03920G, 1986 Bankr. LEXIS 6995,
(Bankr. E.D. Pa. Feb. 6, 1986) ....................................................................... 21

*In re Cardinal Industries, Inc.*, 142 B.R. 801 (Bankr. S.D. Ohio 1992) ..................... 31

*In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999),
*aff'd*, 279 F.3d 226 (3d Cir. 2002) ............................................................... 30,31

*In re FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 2003) ..................................... 31

*In re Oakwood Homes Corp.*, No. 02-13396PJW, 2005 WL 670310,
(Bankr. D. Del. Mar. 18, 2005) ....................................................................... 32

*In re Slipped Disc*, 245 B.R. 342 (Bankr. N.D. Iowa 2000) ............................... 27,28

*In re Startec Global Communications Corp.*, 300 B.R. 244 (D. Md. 2003) ................ 25

B – 56

*In re Tyler*, 166 B.R. 21 (Bankr. W.D.N.Y. 1994) .................................................23

*Insurance Co. of North America v. NGC Settlement Trust*
*(In re National Gypsum Co.)*, 118 F.3d 1056 (5th Cir. 1997) ...........................26,29

*J.E. Adams Industries, Ltd. v. Aurora National Life Assurance Co.*
*(In re J.E. Adams Industries, Ltd.)*, 269 B.R. 808 (N.D. Iowa 2001) ...............23,24

*Mintze v. American General Financial Services Inc. (In re Mintze)*,
434 F.3d 222 (3d Cir. 2006).......................................................................4,17,18,26

*Nortex Trading Corp. v. Newfield*, 311 F.2d 163 (2d Cir. 1962) ............................21

*Northern Specialty Sales, Inc. v. INTV Corp. (In re Northern Specialty*
*Sales, Inc.)*, 57 B.R. 557 (Bankr. D. Or. 1986) ....................................................24

*Schubert v. Wellspring Media, Inc. (In re Winstar Communications, Inc.)*,
335 B.R. 556 (Bankr. D. Del. 2005)....................................................................25,28

*Shearson/American Express, Inc. v. McMahon*, 482 U.S. 200 (1987) ....................26

*Smith v. Dowden*, 47 F.3d 940 (8th Cir. 1995) ........................................................21

**Statutes**

9 U.S.C. § 1 *et seq.*.................................................................................................18

11 U.S.C. § 108(a) ...............................................................................................23,24

11 U.S.C. § 108(b) .................................................................................................23

11 U.S.C. § 108(c) .......................................................................................21,22,23,24

11 U.S.C. § 362(a)(1) ...............................................................................................22

11 U.S.C. § 362(f) ...................................................................................................24

11 U.S.C. § 502(a) ..............................................................................................20,21

28 U.S.C. § 157(b)(2)(B) .........................................................................................28

iii

## PRELIMINARY STATEMENT

Having never before demanded arbitration at any time during the years since the parties' dispute first arose and became a continual issue of contention between them, Sea-Pac Sales Company ("*Sea-Pac*") seeks now to deprive Armstrong World Industries, Inc. ("*AWI*") of its contractual right to litigate that dispute, even though that dispute underlies the claims that Sea-Pac itself has asserted against AWI in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"). In its claims, Sea-Pac asserts that it is entitled to payment of its asserted claims as "administrative expenses" in AWI's chapter 11 case with priority over the claims of other creditors. AWI has objected to the allowance and priority of such claims.

AWI's right to litigate (and not arbitrate) its disputes with Sea-Pac is a contractual right, bargained-for and expressly provided in the Sea-Pac Agreements (as defined hereinafter). Moreover, by asserting administrative expense priority for its claims, Sea-Pac itself has raised bankruptcy issues that it concedes must be determined by the Bankruptcy Court. Nevertheless, based upon a factually and legally untenable conception of when the parties' dispute arose and its erroneous conclusions about its ability to delay requesting arbitration, Sea-Pac seeks to avoid Bankruptcy Court scrutiny of its claims and, instead, to compel arbitration.

After hearing the parties, the Bankruptcy Court rejected Sea-Pac's arguments and denied its *Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from*

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D I.

9830] [A-3][1] (the "*Stay Motion*")  Sea-Pac now appeals.

### STATEMENT OF CASE

      The Bankruptcy Court's denial of Sea-Pac's motion to stay the

proceedings on AWI's claim objection must be affirmed.  Under the explicit terms of the

dispute resolution provisions of the Sea-Pac Agreements, AWI has a contractual right to

litigate the dispute underlying Sea-Pac's claims, and Sea-Pac has no right to compel

arbitration under these circumstances  As Sea-Pac itself concedes,[2] AWI's objection to

Sea-Pac's claims raises bankruptcy issues that the Bankruptcy Court, and not an

arbitration panel, should decide.  These include the following:

> ➢ the effect of Sea-Pac having filed a proof of claim and then withdrawing it "with prejudice";
>
> ➢ whether any portion of Sea-Pac's claims are entitled to administrative expense priority;
>
> ➢ if so, whether Sea-Pac is barred from asserting administrative expenses by virtue of Sea-Pac's failure to comply with the administrative expense bar date established in AWI's chapter 11 case;
>
> ➢ whether the Bankruptcy Court's Executory Contracts Bar Date Order (as defined hereinafter) extended Sea-Pac's time to assert any alleged administrative expense against AWI;
>
> ➢ if Sea-Pac may assert an administrative expense, how any such administrative expense would be valued; and

---

[1] All references to the record, as contained in *Appellant's Appendix to Opening Brief*, shall be made herein as "A-[tab no ] "  All references to the record, as contained in *Appellee's Appendix to Answering Brief*, shall be made herein as "B-[tab no ]."

[2] In the Stay Motion, Sea-Pac states that "arbitration of Sea-Pac's claims will not determine the priority of claims – merely the amount "  Stay Motion, ¶ 16 [A-3]

> whether Sea-Pac is entitled to attorneys' fees

Included in Sea-Pac's claims is a putative administrative expense arising from AWI's alleged breach of an exclusivity provision in the Sea-Pac Agreements during the pendency of AWI's chapter 11 case. Thus, determining Sea-Pac's right to administrative expense priority is inextricably intertwined with the underlying factual issues of whether the alleged breach occurred, when Sea-Pac had notice of the alleged breach, how Sea-Pac was damaged (if at all) by its continued performance under the Sea-Pac Agreements despite full knowledge of the events giving rise to the alleged breach, how AWI's estate benefited (if at all) from the alleged breach, and the effect of Sea-Pac remaining silent for years and never seeking relief from the Bankruptcy Court – or even an arbitration panel – with respect to the alleged postpetition breach. Accordingly, even if the dispute resolution provisions of the Sea-Pac Agreements conferred upon Sea-Pac the ability to compel arbitration now (which they do not), the overwhelming bankruptcy policies implicated in this matter compel the exercise of discretion to deny the Stay Motion.

Without reaching the need to exercise such discretion, the Bankruptcy Court determined – correctly – not to stay the claim objection proceedings or compel arbitration, based upon finding as a factual matter that the dispute between AWI and Sea-Pac arose as early as 2003 and that the condition precedent to AWI's contractual right to litigate (namely, no party initiating arbitration within a specified period of time after the dispute arose) had been satisfied. In making these determinations itself, rather than putting the matter to an arbitration panel, the Bankruptcy Court acted within its inherent authority as a court to determine the litigability of the matters brought before it.

3

The two broad issues raised on this appeal by Sea-Pac are as follows:

i.   Whether a court, rather than a panel of arbitrators, is the proper
     forum to interpret and apply a contractual provision that expressly
     permits parties to litigate after they have not sought arbitration of
     their dispute.

ii.  Whether AWI's contractual right to litigate disputed issues with
     Sea-Pac should be enforced, where the parties' contracts expressly
     allow litigation under the circumstances, and the overlay of
     bankruptcy issues demonstrates that arbitration of the parties'
     dispute would be inappropriate in any event.

Upon appeal, a bankruptcy court's findings of fact are reviewed under a

clearly erroneous standard, and its conclusions of law are reviewed *de novo*. *See Mintze*

*v. Am. Gen. Fin Services Inc  (In re Mintze)*, 434 F 3d 222, 227-28 (3d Cir. 2006)

## PROCEDURAL HISTORY

On December 6, 2000, AWI and two of its affiliated debtors (collectively,

the "*Debtors*") each commenced in the Bankruptcy Court a case under chapter 11 of title

11 of the United States Code (the "*Bankruptcy Code*"). By order entered on August 18,

2006 [D.I. 9755] (the "*Confirmation Order*"), this Court confirmed AWI's *Fourth*

*Amended Plan of Reorganization, as Modified*, dated February 21, 2006 (the "*Plan*").

On October 2, 2006, the "Effective Date" under the Plan occurred, and AWI emerged

from chapter 11 protection

Sea-Pac filed a proof of claim (Claim No. 3528, the "*Original Sea-Pac*

*Claim*") on or about August 30, 2001, asserting certain liquidated and unliquidated,

contingent and non-contingent, prepetition and postpetition obligations of AWI to Sea-

Pac, in estimated amounts aggregating in excess of $7 million. On May 29, 2003, Sea-

4

Pac filed its *Withdrawal of Proof of Claim No 3528* [D.I 4841] [B-2], voluntarily

withdrawing the Original Sea-Pac Claim "with prejudice "

By order dated March 21, 2003 [D.I. 4301] (the "*Administrative Expense*

*Bar Date Order*"), the Bankruptcy Court set November 24, 2003 (the "*Administrative*

*Expense Bar Date*") as the deadline for filing certain proofs of administrative expense

claims against AWI in the chapter 11 case  Pursuant to the Administrative Expense Bar

Date Order, any creditor asserting a claim for an administrative expense against AWI (of

the type identified in the Administrative Expense Bar Date Order) was required to file a

proof of such administrative expense on or before the Administrative Expense Bar Date.

The Administrative Expense Bar Date Order identified six categories of claims explicitly

subject to the Administrative Expense Bar Date, including the following:

> Any Administrative Expense for breach of an obligation – contractual,
> statutory or otherwise – by AWI, including any environmental liability
> (other than any environmental liability with respect to property that is
> currently owned or operated by AWI).

Sea-Pac did not file a proof of administrative expense for any claims relating to the Sea-

Pac Agreements on or before the Administrative Expense Bar Date.

By Order dated September 29, 2005 [D.I  8652] (the "*Executory*

*Contracts Bar Date Order*"), the Court set November 8, 2005 (the "*Executory Contracts*

*Bar Date*") as the deadline by which all parties to "Previously Scheduled Contracts"

would be required to file proofs of claim for any and all claims against AWI relating to

such Previously Scheduled Contracts. Each of the Sea-Pac Agreements was identified in

the Executory Contracts Bar Date Order as a "Previously Scheduled Contract," that is, as

a contract that originally was listed by AWI on Schedule G to its Schedules of Assets and

5

Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory. The Sea-Pac Agreements were identified as Previously Scheduled Contracts because they expired according to their terms during the pendency of AWI's chapter 11 case without being either assumed or rejected pursuant to section 365 of the Bankruptcy Code.

On or about November 8, 2005, Sea-Pac filed a second proof of claim against AWI (Claim No. 4854, the *"Second Sea-Pac Claim"*) [A-1], in the amount of $4.9 million, plus interest and attorneys' fees. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority.

On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc to the Proof of Claim of Sea-Pac Sales Company (Claim No 4854)* [D.I 9683] [A-2] (the *"Claim Objection"*).[3]

In response to the Claim Objection, on September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc to the Proof of Claim of Sea-Pac Sales Company (Claim No 4854)* [D.I. 9832] [A-5] (the *"Claim Answer"*), together with a supporting memorandum of law [D.I. 9833] [A-6] (the *"Answering*

---

[3] In the Claim Objection, AWI objects to the Second Sea-Pac Claim on a number of grounds, including that (i) AWI has an absolute defense to the Commercial Agreement Breach Claim because Sea-Pac failed to meet the annual mill shipment requirements required to maintain its exclusivity as AWI's distributor within the relevant territory, (ii) Sea-Pac is barred from asserting entitlement to any administrative expense arising prior to November 24, 2003 because Sea-Pac failed to assert such administrative expenses as required by the Administrative Expense Bar Date, and (iii) Sea-Pac's Commercial Agreement Breach Claim is not entitled to administrative expense priority in any event because, among other things, such claim arises from an alleged breach of a prepetition contract for which the proper remedy would have been to seek to compel AWI to assume or reject the Commercial Agreement – instead, Sea-Pac continued performing for years after receiving formal notice of the facts giving rise to the alleged breach – and Sea-Pac has conferred no benefit on AWI's estate. [A-2]

6

*Memorandum*"), and the *Declaration of Jared Williams in Support of Sea-Pac's Answer to Armstrong's Objection* [D.I. 9834] [B-3] (the "*Williams Declaration*").

Also on September 15, 2006, Sea-Pac filed its Stay Motion, which represents the first indication of Sea-Pac's interest in arbitrating the parties' disputes. In substance, the Stay Motion asserted that the Sea-Pac Agreements require arbitration of all disputes arising thereunder, and, therefore, the Bankruptcy Court should stay proceedings on the Claim Objection pending arbitration. *Id.* Additionally, Sea-Pac requested that the Bankruptcy Court grant relief from the automatic stay or the discharge injunction to allow Sea-Pac to proceed with arbitration with respect to the claims asserted in the Second Sea-Pac Claim. *Id.*

In response to the Stay Motion, on October 6, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I. 9914] [A-4] (the "*Stay Objection*").[4]

On October 16, 2006, Sea-Pac filed its *Reply of Sea-Pac Sales Company to Debtors' Objection to Sea-Pac Sales Company's Motion (i) to Stay Objection by*

---

[4] Simultaneously, AWI also filed its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [D.I. 9913] [B-4], which sets forth objections of AWI to any additional administrative expenses asserted by Sea-Pac in any amendment or deemed amendment to the Second Sea-Pac Claim, as well as certain counterclaims of AWI, in each case with respect to activities occurring during the pendency of AWI's chapter 11 case. Because the alleged claims and counterclaims described in such pleading are independent of the Sea-Pac Agreements, they are not subject to the Stay Motion.

7

*Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending*

*Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief*

*from the Discharge Injunction* [D.I. 9951, Exh. A] [A-7]

Arguments of the parties on the Stay Motion and Stay Objection were

heard before the Honorable Judith K. Fitzgerald at a hearing in the Bankruptcy Court on

October 23, 2006 (the "*Hearing*"), at the conclusion of which the court denied the Stay

Motion. In denying the Stay Motion, the Bankruptcy Court found as follows:

> The dispute clearly in Sea-Pac's view has nothing to do with the bar date
> or the debtor's agreement to extend the contract or assume the contract. It
> has to do with the fact that under Sea-Pac's construction of the contract,
> the debtor couldn't appoint a second distributor and under the debtor's
> construction of the contract, the debtor could. That's the dispute. When it
> arose, I think Sea-Pac had 40 days from that date to make a determination
> to invoke arbitration, and whatever bells and whistles you had to get
> through in order to make that invocation are procedural hurdles but they
> were not hurdles that could not have been accomplished in the context of
> the bankruptcy case.

Tr. of Hearing, at 19-20, lines 24-10 [D.I. 10023] [A-10]

> [T]he fact that Sea-Pac didn't invoke the arbitration simply let the dispute
> abide but it let it abide in litigation mode as opposed to arbitration mode. I
> think Sea-Pac has not properly invoked the right to arbitration under the
> contract. I should say, has untimely invoked the right to arbitration under
> the contract, and as a result, I don't think that there is any longer a viable
> arbitrable issue. So I don't need to get into where the initial dispute
> should be heard in the first instance because I think the untimeliness of the
> invocation of the right means you're here.

Tr. of Hearing, at 21, lines 15-25

On November 20, 2006, the Bankruptcy Court entered its *Order Denying*

*Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries,*

*Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from*

8

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I
10117] [A-8].

Sea-Pac filed its *Notice of Appeal* to this Court [D.I. 10134] [A-9] on

November 30, 2006, followed by its *Statement of Issues and Designation of Record on*

*Appeal* [D.I. 10161] on December 11, 2006  AWI filed its *Counter-Statement of Issues*

*and Counter-Designation of Record with Respect to Sea-Pac Sales Company's Statement*

*of Issues and Designation of Record on Appeal* [D.I. 10195] on December 21, 2006.

### FACTUAL BACKGROUND

Except to the extent supplemented by certain relevant facts set forth

herein, the material facts, including the relationship between the parties and the terms of

the Sea-Pac Agreements, are set forth in the Claim Objection.

### A.    *The Sea-Pac Agreements*

For over seven years, Sea-Pac has been a wholesale distributor for AWI's

commercial and residential products  Claim Objection, ¶ 2 [A-2].  The parties' pertinent

contractual relationship began on or about February 15, 1999, prior to the commencement

of AWI's chapter 11 case, when AWI and Sea-Pac entered into (i) a Commercial

Flooring Products Distributorship Agreement (the "*Commercial Agreement*") and (ii) a

Residential Flooring Products Distributorship Agreement and Sales/Service Center

Agreement (the "*Residential Agreement*" and together with the Commercial Agreement,

the "*Sea-Pac Agreements*").  *Id*  Pursuant to the Sea-Pac Agreements, AWI appointed

Sea-Pac to be a wholesale distributor of AWI's commercial resilient floor covering

products and residential resilient flooring products, respectively, in the northwestern

9

United States (with certain exceptions)  *Id*  In connection with the Residential

Agreement, AWI also appointed Sea-Pac to be a Regional Distribution Center ("*RDC*")

at its Kent, Washington location to deliver products to certain designated customers

located in the region.  Claim Objection, ¶ 3 [A-2]

The Sea-Pac Agreements expired in accordance with their terms on

February 15, 2004.  Claim Objection, ¶ 7 [A-2].  By letter agreement between the parties,

the terms of the Sea-Pac Agreements were extended through March 31, 2004.  Claim

Answer, ¶ 7 [A-5].  Thereafter, the parties continued to do business and, on or about

August 27, 2004, AWI and Sea-Pac entered into a new interim letter agreement on

similar terms as existed at the expiration of the Sea-Pac Agreements  Claim Objection,

Exh. A. [A-2].  The interim agreement expired on December 31, 2004.  Claim Objection,

¶ 7 [A-2]

Sometime after Sea-Pac and AWI entered into the Sea-Pac Agreements,

and continuing throughout the course of their relationship, the parties disagreed about

various provisions in both the Commercial Agreement and the Residential Agreement.

Pursuant to the Commercial Agreement, Sea-Pac's status as an exclusive

distributor was dependent upon Sea-Pac's satisfaction of certain minimum purchase

requirements, called "annual mill shipment requirements," for AWI's commercial

resilient floor covering products.  Second Sea-Pac Claim, Exh. A; Commercial

Agreement, ¶ 3 [A-1].  As a result of Sea-Pac's failure to meet its annual mill shipment

requirements in 2002, AWI notified Sea-Pac that it would appoint a second distributor of

commercial flooring products  Claim Objection, ¶¶ 5-6 & Exh. C [A-2].  In 2003, AWI

appointed Pacific Mat & Commercial Flooring PLLC as a second distributor to distribute

10

AWI's commercial flooring products in the region previously covered exclusively by Sea-Pac. Claim Objection, ¶ 6 [A-2]. Sea-Pac claims that, as early as March 2003, Sea-Pac informed AWI that it believed the appointment of Pacific-Mat to constitute a breach of the Commercial Agreement. Williams Declaration, ¶ 13 [B-3, at 42-43]. Sea-Pac states that it continued to allege such breach on numerous occasions thereafter. Id.

Pursuant to the Residential Agreement, AWI agreed to compensate Sea-Pac for its RDC services according to a fee schedule established by AWI. Second Sea-Pac Claim, Exh. B; Residential Agreement, ¶ 12(g) [A-1]. According to Sea-Pac, "[s]oon after the RDC system was implemented, [it] began to realize that AWI was not reimbursing it in full for RDC activities and [it] complained to AWI about this." Williams Declaration, ¶ 7 [B-3, at 40]. After this initial complaint, Sea-Pac consistently alleged, over the course of four years, that it was being under-reimbursed for its RDC services. Williams Declaration, ¶ 8 [B-3, at 40-41] & Exh. 6-7 [B-3, at 58-65].

**B.    _The Second Sea-Pac Claim_**

On or about November 8, 2005, Sea-Pac filed the Second Sea-Pac Claim against AWI in the amount of $4.9 million, plus interest and attorneys' fees. Second Sea-Pac Claim [A-1]. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority. Attachment to Second Sea-Pac Claim, ¶ 3 [A-1].

The Second Sea-Pac Claim arises from alleged breaches by AWI of the Sea-Pac Agreements and is comprised of the following components:

i    The Commercial Agreement Breach Claim: Sea-Pac alleges that AWI breached the Commercial Agreement by "its appointment and

11

RLF1-3119812-1

provision of product to a second distributor within [Sea-Pac's] exclusive territory," resulting in damages to Sea-Pac in an amount no less than $2 million  Attachment to Second Sea-Pac Claim, ¶ 2 [A-1] Sea-Pac asserts that "*AWI's breach began in 2003* and such breach continued through the term and the extensions of [the Commercial Agreement]...." *Id.* (emphasis added)  Sea-Pac further contends that the entire Commercial Agreement Breach Claim is entitled to administrative expense priority because it is "attributable to [AWI's] postpetition breach of [the Commercial Agreement] which Sea-Pac was induced to perform pending [AWI's] assumption or rejection of it." *Id.* at ¶ 3.

ii      The Residential Agreement Breach Claim:  Sea-Pac asserts that AWI breached the Residential Agreement and "was unjustly enriched, by, among other conduct, failing to reimburse Sea-Pac for RDC functions and services " Attachment to Second Sea-Pac Claim, ¶ 2 [A-1]  Sea-Pac further alleges that "*AWI's illegal conduct began in 2000* and continued through the term of and extension of [the Residential Agreement] and resulted in damages and/or restitution owed in an amount no less than $2.9 million." *Id.* (emphasis added)  Sea-Pac contends that $2.5 million of the $2.9 million in RDC functions and services for which AWI allegedly failed to reimburse Sea-Pac were provided postpetition and, therefore, constitute an administrative expense claim  *Id.* at ¶ 3

iii     Attorneys' Fees:  Finally, the Sea-Pac Claim asserts that "[p]ursuant to the provisions of the applicable agreements," Sea-Pac is entitled to attorneys' fees and interest if AWI disputes its claims.  Attachment to Second Sea-Pac Claim, ¶ 2 [A-1].

C.      **Alternative Dispute Resolution**
        **Provisions of the Sea-Pac Agreements**

                With respect to alternative dispute resolution mechanisms under the Sea-

Pac Agreements, the parties agreed as follows:

        [AWI] and [Sea-Pac] agree to attempt to resolve promptly any dispute arising out of this Agreement by negotiation between executives of [Sea-Pac] and [AWI] who have authority to settle the dispute.  If any dispute is not resolved by negotiation within 30 days of its arising, then, at the written request of either party within an additional 10 days, the dispute shall be submitted to mediation with a mediator chosen jointly

Second Sea-Pac Claim, Exh A-B, Commercial Agreement, ¶ 24; Residential Agreement,

¶ 29 [A-1]. The Sea-Pac Agreements further provide as follows:

> In the absence of a request for mediation, or if any dispute is not resolved within 90 days following a request for mediation, then, at the option of either party, such dispute shall be submitted to binding arbitration in Philadelphia, Pennsylvania, under the Commercial Arbitration Rules of the American Arbitration Association. [ . ]

*Id*., Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30. Notably, this paragraph

concludes with the following statement:

> *If arbitration is not initiated within 30 days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [--].*

*Id*. (emphasis added) (the "*Litigation Clause*"). Tellingly, in its Opening Brief, Sea-Pac

omits any reference to the Litigation Clause in its description of the relevant provisions of

the Sea-Pac Agreements, instead choosing to bury it in a footnote on page 18 of its

Opening Brief. Opening Brief, at 18  Such omission falsely creates the impression that

the requested arbitration is mandated by the Sea-Pac Agreements. *Id.* at 7 & 18.

## ARGUMENT

The Bankruptcy Court's denial of Sea-Pac's Stay Motion must be affirmed

because (i) it is for a court, and not a panel of arbitrators, to decide whether a contractual

right to litigate may be exercised, where the parties' agreement expressly provides such

right after the failure of the parties to initiate arbitration, (ii) AWI's right to litigate its

dispute with Sea-Pac is currently enforceable in court, based upon the Bankruptcy

Court's unchallenged factual finding that Sea-Pac's arbitration request was untimely, and

(iii) in any event, arbitration is inappropriate in light of the bankruptcy issues that are

inextricably intertwined with resolution of the Second Sea-Pac Claim

13

RLF1-3119812-1

*A.*    *In Denying the Stay Motion Itself, the*
       *Bankruptcy Court Acted Entirely Within Its Authority*

Sea-Pac contends that the Bankruptcy Court improperly usurped the role of an arbitration panel in deciding whether Sea-Pac had "waived" its right to have arbitrators decide the merits of the parties' dispute. Such argument is premised on a fundamental mischaracterization of the nature of the dispute resolution provisions of the Sea-Pac Agreements and results in a miscasting of the issue before the Bankruptcy Court below and at issue in this appeal.

The dispositive issue is not, as Sea-Pac contends, whether Sea-Pac "waived" its arbitration right due to untimely assertion – although the Bankruptcy Court did indeed find that Sea-Pac had lost its right to compel arbitration due to the lapse of the period of time agreed to in the Sea-Pac Agreements. The issue here is really whether AWI's contractual right to litigate has become enforceable as a result of that lapse of time. As such, the issue is one that is squarely within a court's competence and authority to determine as a straightforward matter of contract application and does not implicate the "questions of arbitrability" upon which Sea-Pac focuses.

Sea-Pac would have this Court believe that the dispute resolution provisions of the Sea-Pac Agreements are just like the provisions at issue in cases such as *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), and *Green Tree Fin'l Corp v. Bazzle*, 539 U.S. 444 (2003). Unfortunately for Sea-Pac, they are fundamentally different – the dispute resolution provisions of the Sea-Pac Agreements not only expressly limit the availability of arbitration as a remedy, but more importantly, the Litigation Clause in each of the Sea-Pac Agreements expressly permits recourse to

14

litigation  As a result, Sea-Pac misapplies here the principles set forth in *Howsam* and *Green Tree* for application in different circumstances.

In *Howsam*, the parties' agreement contained a broad, comprehensive arbitration clause that provided for arbitration of all controversies. *Howsam*, 537 U.S. at 81. In that context, the United States Supreme Court concluded that the question in that case – whether a statute of limitations imposed by the NASD's arbitration rules barred the petitioner's claim – should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator. *Id* at 85. Similarly, in *Green Tree*, the parties' agreements contained broad, comprehensive arbitration clauses that provided for arbitration of all controversies. *Green Tree*, 539 U.S at 448. Again, in that context, the Court concluded that the question in that case – whether the contract contemplated class arbitration – should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator. *Id* at 451-52.

Unlike the arbitration clauses in *Howsam* and *Green Tree*, however, the dispute resolution provisions of the Sea-Pac Agreements are not open-ended. Instead, they provide only finite periods for the exclusive employment of certain alternative dispute resolution mechanisms – first, negotiations during the 30 days after a dispute arises, then mediation if initiated within the next 10 days, then arbitration if initiated within the next 30 days. *See* Second Sea-Pac Claim, Exh A-B Commercial Agreement, ¶¶ 24 & 25; Residential Agreement, ¶¶ 29 & 30 [A-1]. And then, notably unlike the agreements in *Howsam* and *Green Tree*, which are silent on the question of what happens

15

in the event that arbitration is not initiated, the Sea-Pac Agreements very specifically permit ultimate recourse to litigation. *See* Second Sea-Pac Claim, Exh A-B Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30 [A-1]  Viewed in this context, it could not be clearer that the provisions at issue in this case were meant only to afford a limited opportunity for alternative dispute resolution rather than to impose a permanent commitment to it, and that, therefore, after completion of a 70-day hiatus without use of arbitration, the ability to litigate is expressly returned to the parties as a matter of contractual right under the terms of their agreements.

Indeed, the Bankruptcy Court implicitly recognized this contractual construction, noting "that Sea-Pac didn't invoke the arbitration simply let the dispute abide ... in litigation mode as opposed to arbitration mode " Tr. of Hearing, at 21, lines 15-17 [A-10]. This led directly to the Bankruptcy Court's conclusion that "I don't need to get into where the initial dispute should be heard in the first instance because I think the untimeliness of the invocation of the [arbitration] right means you're here." *Id* , lines 22-25

Even if the rubric in *Howsam* and *Green Tree* for analyzing questions of arbitrability applied, the Court's conclusion must still be that it is for a court rather than an arbitration panel to decide the question of the litigability of the parties' dispute under the Sea-Pac Agreements  As explained above, the Sea-Pac Agreements are not simply "arbitration" agreements to be analyzed in the sense that Sea-Pac proposes, but more accurately they are "litigation" agreements  As such, the contracting parties surely would have expected that, if no party requested arbitration, and the other party had commenced a judicial proceeding to determine a dispute, the judicial decisionmaker would determine

16

the gateway question of whether one party properly invoked its right to hale the other before the court.

It is worth noting, also, that the questions of arbitrability in *Howsam* and *Green Tree* raised issues that the Supreme Court considered to be within the specialized expertise of the arbitrators in those cases. In *Howsam*, the Court presumed that NASD arbitrators would be more expert than a court in interpreting the statute of limitations provided in their own rules. *Howsam*, 537 U.S. at 85. In *Green Tree*, the Court expected that the arbitration panel would be better able to address arbitration procedures implicated by the problems of class arbitration. *Green Tree*, 539 U.S. at 453. Nothing about the preliminary issue in this appeal – when the dispute between Sea-Pac and AWI arose – makes arbitration more appropriate than litigation. To the contrary, in light of the bankruptcy issues implicated by the Second Sea-Pac Claim, it is more appropriate that the Bankruptcy Court rather than an arbitration panel make the determination regarding AWI's right to litigate those issues

For all of the reasons set forth above, the Bankruptcy Court was right — it is for a court to decide whether to find and enforce AWI's contractual right to litigate its dispute with Sea-Pac.

**B.    *The Stay Motion Should Be Denied***

The Bankruptcy Court's decision to deny the Stay Motion must be affirmed because Sea-Pac has failed to establish any basis for the relief it requested. Under the principles enunciated by the Third Circuit in *Mintze*, the Court must consider the following three issues to determine whether or not to compel this matter to be

17

resolved by arbitration: (i) whether the dispute is governed by an enforceable arbitration

clause, (ii) whether the court has discretion to deny enforcement of the arbitration clause

(*i e*, whether the Bankruptcy Code conflicts with the Federal Arbitration Act, 9 U S C

§§ 1-16 (the "*FAA*"), in such a way as to bestow discretion on the Bankruptcy Court to

decline to enforce an otherwise applicable arbitration provision), and (iii) if the

Bankruptcy Court has such discretion, whether the Bankruptcy Court should exercise its

discretion to deny arbitration. *Mintze*, 434 F 3d 222   Application of the *Mintze* analysis

to the instant case makes clear that Sea-Pac's Stay Motion must be, and was, correctly

denied

Specifically, the Court should find that (i) the dispute is not governed by

an enforceable arbitration clause, and (ii) arbitration is not an appropriate forum for

resolution of the issues raised by the Second Sea-Pac Claim.

### i. *AWI Has a Contractual Right to Litigate,* *and Sea-Pac Has No Right to Arbitrate,* *Under the Terms of the Sea-Pac Agreements*

As set forth above, it is clear from the face of the Sea-Pac Agreements that

they do not mandate arbitration as Sea-Pac suggests.  To the contrary, the Sea-Pac

Agreements expressly permit AWI to litigate if Sea-Pac has not timely initiated

arbitration.

The undisputed facts clearly demonstrate that neither Sea-Pac nor AWI

elected to proceed with arbitration within the time period provided in the Sea-Pac

Agreements.  The Sea-Pac Agreements include the Litigation Clause, which provides a

deadline by which a party must elect arbitration: "*If arbitration is not initiated within 30*

18

*days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [--].*" Under the terms of the Sea-Pac Agreements, arbitration became an "option" within 40 days of the dispute arising and, therefore, AWI was permitted to litigate its dispute with Sea-Pac within 70 days after the dispute arose so long as neither Sea-Pac nor AWI had requested arbitration prior to such time.[5]

The Bankruptcy Court found, as a factual matter, that the substance of the Second Sea-Pac Claim is a dispute that arose years ago.[6] This finding is based on ample evidence in the record, not least of which is Sea-Pac's own assertion in the Second Sea-Pac Claim that the alleged breaches forming the basis of its claims occurred as early as 2000 and 2003. *See* Attachment to Second Sea-Pac Claim, ¶ 2 [A-1].[7] Sea-Pac has not contested this evidence or identified any contrary evidence to the effect that the Bankruptcy Court's finding of fact regarding the date that the parties' dispute arose is clearly erroneous.

Indeed, Sea-Pac does not even challenge in this appeal the Bankruptcy Court's conclusion that the dispute between the parties arose many years before AWI

---

[5] The dispute resolution provisions provide that, after a dispute arises, the parties have 30-day negotiation period and an additional ten days to request mediation, after which either party could submit the dispute to binding arbitration

[6] "The dispute . . . has to do with the fact that under Sea-Pac's construction of the contract, the debtor couldn't appoint a second distributor and under the debtor's construction of the contract, the debtor could. That's the dispute." Tr of Hearing, at 20, lines 1-5 [A-10]

[7] Other allegations by Sea-Pac include the following: "Sea-Pac further alleges that it objected on numerous occasions to the appointment of a second distributor . . ." Claim Answer, ¶6 [A-5]; "Sea-Pac consistently complained the [*sic*] AWI's RDC fees did not reimburse it for its services." Answering Memorandum, at 3 [A-6] and Williams Declaration, ¶¶ 7-8 [B-3, at 40-41] & Exh. 6-7 [B-3, at 58-65]; "I pointed out to AWI representatives on many occasions that the appointment of a second distributor was not only a poor business decision, but also a breach of AWI's contract with Sea-Pac. Indeed, I recall specifically stating this to Rik Born, AWI's vice-president in March 2003." Williams Declaration, ¶13 [B-3, at 42].

objected to the Second Sea-Pac Claim — except to contend that the dispute regarding its claims first arose on July 23, 2006, *i.e.*, only when AWI filed its Claim Objection, arguing that no dispute could exist beforehand because under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest . . . objects." *See* Opening Brief, at 13; 11 U.S.C. § 502(a). Such argument is untenable for at least three reasons: (i) it is unsupported by Sea-Pac's own evidence, which demonstrates years of disagreement between the parties regarding the alleged breaches underlying the Second Sea-Pac Claim, (ii) it misapplies a procedural bankruptcy rule to answer a question of fact, and (iii) it leads to absurd results.

        First, it is shocking that Sea-Pac would attempt to gainsay the existence of a dispute with AWI prior to the filing of the Claim Objection, or even of the Second Sea-Pac Claim. As the Bankruptcy Court recognized at the Hearing, the mere allegation of breach of an agreement is indicative of a dispute between the parties.[8] In this case, Sea-Pac states that it made such allegations as early as March 2003, and the dispute has gone unresolved ever since. Instead of representing the beginning, the Second Sea-Pac Claim and the Claim Objection are nothing more than the latest developments in a dispute that stretches back at least three years.

        Second, to determine an underlying issue of fact, Sea-Pac relies upon a procedural rule that merely creates a presumption of claim allowance for bankruptcy purposes. As noted by the Bankruptcy Court, such rules can hardly dictate whether

---

[8] "It seems to me that the dispute arises as soon as Sea-Pac decides that it has a claim that it thinks that Armstrong is in breach." Tr. of Hearing, at 18, lines 20-22 [A-10].

RLF1-3119812-1

and/or when a dispute arises[9] Indeed, what if AWI had never commenced a bankruptcy case? Furthermore, if Sea-Pac's application of section 502(a) were carried through to its logical conclusion, any pre-existing dispute between parties could be made to disappear unilaterally by the magic of filing a proof of claim, only to become a dispute again once the debtor filed an objection. Such an on-again/off-again theory of disputes is not credible

Finally, Sea-Pac's idea that the dispute between the parties could not exist until the Claim Objection was filed creates an impossible, Catch-22 situation that makes nonsense of the dispute resolution provisions of the Sea-Pac Agreements. Because the filing of a proof of claim and a responsive objection are traditionally considered to be acts in the nature of civil litigation, *see, e g , Smith v Dowden*, 47 F 3d 940, 943 (8th Cir 1995); *Nortex Trading Corp v Newfield*, 311 F 2d 163, 164 (2d Cir. 1962); *In re Barclay Bros . Inc*, No. 82-03920G, 1986 Bankr. LEXIS 6995, at *3 (Bankr. E.D Pa. Feb 6, 1986), Sea-Pac's contention forces an interpretation of the Sea-Pac Agreements that enables AWI and Sea-Pac to initiate litigation only after 70 days have passed since the initiation of litigation  This cannot be right.

Equally unavailing to Sea-Pac is its argument that the time to initiate arbitration under the Sea-Pac Agreements was tolled by section 108(c) of the Bankruptcy Code. Section 108(c), however, is neither implicated nor applicable to aid Sea-Pac in

---

[9] "You know, whether there's been a proof of claim bar date or not at that point in time is a bankruptcy issue, but your dispute because you think that Armstrong breached the contract because it appointed a second distributor is the date by which that 40-day period begins." Tr  of Hearing, at 18-19, lines 22-2 [A-10]

21

these circumstances, and its reliance thereon is entirely misplaced. Section 108(c)

provides in relevant part as follows:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period for commencing or continuing
> a civil action in a court other than a bankruptcy court on a claim against
> the debtor . . . and such period has not expired before the date of the filing
> of the petition, then such period does not expire until the later of —
>
> (1) the end of such period, including any suspension of such period
> occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under
> section 362, 922, 1201, or 1301 of this title, as the case may be, with
> respect to such claim.

11 U.S.C. § 108(c).

Sea-Pac's tolling argument fails first because it begins with a premise that

is not true – that Sea-Pac was prevented from initiating arbitration of its dispute with

AWI by the operation of the automatic stay under section 362 of the Bankruptcy Code.

In truth, to the extent that Sea-Pac asserts, as it does, that AWI breached the Sea-Pac

Agreements after the commencement of AWI's chapter 11 case, Sea-Pac was never

enjoined by the automatic stay from commencing arbitration with respect to such alleged

breach. As applicable to the commencement of arbitration, the automatic stay only

applies to "the commencement or continuation . . of a judicial, administrative, or other

action or proceeding against the debtor that was or could have been commenced before

the commencement of the [chapter 11 case] . . or to recover a claim against the debtor

that arose before the commencement of the [chapter 11 case]." 11 U.S.C. § 362(a)(1).

Regardless of whether Sea-Pac's claims are entitled to administrative expense priority – a

different issue from when the claims arose – it is clear that Sea-Pac's claims for

postpetition breach of the Sea-Pac Agreements could not have been commenced

RLF1-3119812-1

prepetition and do not involve claims arising prior to the commencement of AWI's

chapter 11 case  Accordingly, Sea-Pac was not enjoined from seeking arbitration, and

section 108(c) of the Bankruptcy Code is inapplicable.  *See Cirillo v  Tice Entm't Inc* ,

No  89-3422XX, 1989 WL 144938, at \*1-2 (D N J  Nov. 20, 1989) (creditor not barred

by automatic stay from commencing action against debtor for alleged postpetition breach

of a prepetition contract); *In re Anderson*, 23 B R  174, 175 (Bankr  N D  Ill. 1982)

(creditor not barred by automatic stay from commencing action against debtor for alleged

postpetition fraud under a prepetition contract).

Consistent with the application of the automatic stay to claims that arise

prepetition, section 108(c) has been interpreted to apply only to those time periods that

commence *before* the filing of a bankruptcy petition, rather than after.  *See Fricker v.*

*Corestates Bank, N A. (In re Fricker)*, 192 B.R  388, 394 (Bankr  E D. Pa  1996)

(recognizing that each of the subsections of section 108 implicitly relates to prepetition

claims); *Dougherty v  IRS (In re Dougherty)*, 187 B.R  883, 886 (Bankr  E D  Pa  1995)

(noting that section 108 extends time for asserting only prepetition, as opposed to

postpetition, claims); *In re Tyler*, 166 B R  21, 26 (Bankr  W D.N.Y  1994) (section

108(c) inapplicable where creditor's request for entry of deficiency judgment could only

have been made postpetition).  The application of sections 108(a) and 108(b) of the

Bankruptcy Code, which extend the time within which the debtor may take certain

actions, also has been limited to time periods that began to run prior to the

commencement of the chapter 11 petition  *See Indep  Fire Ins  Co  v  Pender (In re*

*Phillip)*, 948 F.2d 985, 987 (5th Cir. 1991) (section 108(a) inapplicable where time began

to run after filing of bankruptcy petition); *J.E  Adams Indus , Ltd  v  Aurora Nat'l Life*

23

*Assurance Co. (In re J.E. Adams Indus., Ltd.)*, 269 B.R. 808, 815 (N.D. Iowa 2001)
(section 108(b) inapplicable where time did not start to run until after filing of bankruptcy
petition); *N. Specialty Sales, Inc. v. INTV Corp. (In re N. Specialty Sales, Inc.)*, 57 B.R.
557, 559 (Bankr. D. Or. 1986) (section 108(a) inapplicable where claim arose
postpetition). Indeed, if the Court were to accept Sea-Pac's argument on section 108(c),
it would mean that Sea-Pac's right to invoke arbitration never expired while AWI's right
expired years ago.

     If Sea-Pac had wanted to initiate arbitration of the dispute underlying its
claims, it could have done so and at least should have attempted to do so, notwithstanding
the pendency of AWI's chapter 11 case. Even if Sea-Pac believed that the automatic stay
might prevent Sea-Pac from initiating arbitration, the Bankruptcy Code certainly
provided avenues for relief – as noted by the Bankruptcy Court at the Hearing[10] – that
Sea-Pac chose not to employ. Sea-Pac's arguments now – that it might not have been
able to obtain timely relief, or that it might not have prevailed in obtaining relief at all –
are incredible. For example, section 362(f) of the Bankruptcy Code provides for "such
relief from the stay . . . as is necessary to prevent irreparable damage to the interest of an
entity in property, if such interest will suffer such damage before there is an opportunity
for notice and a hearing . . ." 11 U.S.C. § 362(f).

     The clear intention of the parties, as evidenced by the plain language of
the Sea-Pac Agreements, was to create the ability to submit disputes to arbitration *if and
only if* arbitration was sought within the appropriate timeframe, after which either party

---

[10] "[W]hatever bells and whistles you had to get through in order to make that invocation are
procedural hurdles but they were not hurdles that could not have been accomplished in the
context of the bankruptcy case." Tr. of Hearing, at 20, lines 7-10 [A-10]

24

had the express right to initiate litigation. Having failed to challenge the Bankruptcy

Court's factual finding that the dispute arose years ago, and having failed to invoke either

mediation or arbitration within the deadlines established under the explicit terms of the

Sea-Pac Agreements, Sea-Pac now is bound by AWI's election to litigate the parties'

disputes. Because Sea-Pac no longer has an enforceable right to compel arbitration, the

Court need not even consider whether it can or should defer resolution of the Claim

Objection to arbitration.

### ii. Arbitration Is Not an Appropriate Forum for Resolution of the Second Sea-Pac Claim

Even assuming, *arguendo*, that the arbitration provisions in the Sea-Pac

Agreements were timely invoked by Sea-Pac and enforceable under the terms thereof, the

Court should not enforce such arbitration provisions because strong policy reasons

support having a single forum – the Bankruptcy Court – resolve the disputes between

Sea-Pac and AWI [11] *Schubert v. Wellspring Media, Inc. (In re Winstar Communications,*

*Inc.)*, 335 B.R. 556, 566 (Bankr. D. Del. 2005) ("a bankruptcy court retains significant

discretion to assess whether arbitration would be consistent with the purposes of the

[Bankruptcy] Code, including the centralized resolution of purely bankruptcy issues, the

need to protect creditors and reorganizing debtors from piecemeal litigation, and the

---

[11] Because the Bankruptcy Court did not need to reach this issue given its conclusion on the timeliness of Sea-Pac's request for arbitration, if the Court were to conclude that Sea-Pac's arbitration request was timely or that an arbitration panel should determine such issue, it nevertheless would have to remand this case for the Bankruptcy Court to determine, in the exercise of its discretion, whether arbitration would be consistent with the purposes of the Bankruptcy Code

undisputed power of a bankruptcy court to enforce its own orders.") (quoting *In re Startec Global Comm. Corp.*, 300 B.R. 244, 250 (D. Md. 2003)).

> ➢ The Court Has Discretion to Deny
> Enforcement of Arbitration Provisions

In *Mintze*, the Third Circuit reiterated the standard first articulated in *Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*, 885 F.2d 1149 (3d Cir. 1989), for when a bankruptcy court may exercise its discretion to deny a request for arbitration. *Mintze*, 434 F.3d 222; *Hays*, 885 F.2d 1149 (applying to bankruptcy proceedings the analysis set forth in the Supreme Court's decision in *Shearson/Am. Exp. v. McMahon*, 482 U.S. 200 (1987)).[12] Under *Mintze*, whether the court has discretion to deny enforcement of an otherwise applicable arbitration clause depends on whether the party opposing arbitration has established congressional intent to preclude judicial remedies for the statutory rights at issue by showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration provision. *Mintze*, 434 F.3d at 229. The fundamental issue under *Mintze* is whether the dispute could arise outside of bankruptcy or whether the "statutory rights" at issue derive exclusively from the provisions of the Bankruptcy Code. *Mintze*, 434 F.3d at 231; *see also Ins. Co. of N. Am. v. NGC Settlement Trust (In re National Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997).

---

[12] In *McMahon*, the Supreme Court interpreted the FAA as establishing a federal policy favoring arbitration and requiring enforcement of arbitration provisions. The Court noted, however, that the FAA's mandate to allow arbitration may be overridden by a contrary congressional intent to prohibit waiver of a judicial forum for a particular claim, which intent is deducible from the statute's text, legislative history, or underlying objectives. *McMahon*, 482 U.S. at 226-27.

RLF1-3119812-1

In *Mintze*, because the claimant did not raise any statutory claims created by the Bankruptcy Code, the court found no inherent conflict between arbitration and the consumer protection issues involved. Here, however, Sea-Pac has asserted entitlement to an administrative expense – a creature of the Bankruptcy Code – which is afforded priority treatment ahead of other creditors. "Where the issues to be arbitrated involve exclusively bankruptcy matters, *such as the determination of claim priority*, such issues *should not be* submitted to arbitration because they are core bankruptcy matters." *In re Slipped Disc*, 245 B.R. 342, 345 (Bankr. N.D. Iowa 2000) (emphasis added). Because resolution of such issue and the other issues relating to the merits of Sea-Pac's claims are tied inextricably to bankruptcy principles and are dependent upon the interpretation of orders of the Bankruptcy Court during AWI's chapter 11 case relating specifically to administrative expense claims and the filing of claims under contracts, arbitration of the Claim Objection would conflict with the objectives of the Bankruptcy Code. Accordingly, the Bankruptcy Court has the discretion to refuse to refer the Sea-Pac claims to arbitration.

> ➢ The Bankruptcy Court May (and Should)
>   Exercise Its Discretion to Deny the Stay Motion
>   <u>Because the Facts Here Mitigate Against Arbitration</u>

In determining whether to exercise discretion to deny enforcement of an arbitration provision, courts have considered a number of factors, including the following: (i) the importance of a centralized resolution of purely bankruptcy issues, (ii) whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration process, (iii) the degree to which special bankruptcy

27

expertise is necessary in deciding the issue, (iv) the impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause, and (v) whether the parties have commenced arbitration outside of bankruptcy.[13] *See, e.g., Winstar*, 335 B.R. at 365-366; *Slipped Disc*, 245 B.R. at 346. In this case, resolution of the Claim Objection requires determinations with respect to a number of bankruptcy-specific issues which, collectively, demonstrate that arbitration of the Claim Objection would be inconsistent with the policies and objectives of the Bankruptcy Code, and accordingly, the Bankruptcy Court may exercise its discretion to retain jurisdiction to resolve the Claim Objection.

> * *Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim with Prejudice*

An initial consideration in determining allowance of the Second Sea-Pac Claim is whether, or to what extent, Sea-Pac's voluntary withdrawal of the Original Sea-Pac Claim "with prejudice" precludes Sea-Pac from asserting further claims thereafter. Determining the effect of a party's filings in a court is generally within the inherent authority of that court. Such questions are all the more appropriate to be determined by the Bankruptcy Court where the matter concerns the allowance or disallowance of claims against a debtor's estate, which is a core proceeding within the jurisdiction of the Bankruptcy Court. *See* 28 U.S.C. § 157(b)(2)(B).

> * *Priority of Sea-Pac's Claims Relative to Other Creditors*

---

[13] *See In re APF Co.*, 264 B.R. 344, 363 (Bankr. D. Del. 2000) (" particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve these fundamental Bankruptcy Code issues.")

28

Liquidating the Second Sea-Pac Claim also requires determining whether any portion thereof is entitled to administrative expense priority. Determining the priority of claims is within the exclusive jurisdiction of the Bankruptcy Court, given the strong policy of the Bankruptcy Code to have a centralized forum for resolving the entire body of claims against a debtor's estate. *See, e.g., APF*, 264 B.R. 344, 364 ("The efficient resolution of claims and the conservation of the bankruptcy estate's assets is an integral purpose of bankruptcy and inures to the benefit of the [d]ebtor's creditors.") (citing *Nat'l Gypsum*, 118 F.3d at 1069, n.21). Because administrative expense claims are afforded priority status under the Bankruptcy Code, the party seeking administrative expense priority has a heavy burden to demonstrate entitlement to such priority, and the Bankruptcy Court is in a unique position to evaluate whether that burden – as a legal, as well as a factual, matter – has been met. In this case, resolving the Second Sea-Pac Claim includes determining whether Sea-Pac's alleged breach of contract claims should be elevated above the claims of other similarly situated creditors of AWI's estate – an estate the Bankruptcy Court has been administering for more than six years.

Moreover, proving entitlement to an administrative expense priority claim requires satisfaction of bankruptcy-specific standards. Indeed, to prove that any damages suffered by Sea-Pac qualify as administrative expenses, Sea-Pac must, as a matter of bankruptcy law, show that its continued performance was induced by AWI notwithstanding that Sea-Pac knew of the alleged breaches that form the basis of its claims beginning in 2000 and 2003 (before the Sea-Pac Agreements expired). Sea-Pac continued to perform in spite of the alleged breaches, and Sea-Pac took no action in AWI's chapter 11 case to protect its rights for any alleged breach of the Sea-Pac

29

Agreements until November of 2005 — after the Sea-Pac Agreements expired. It is AWI's position that, if Sea-Pac had been harmed by AWI's actions, its remedy was to move to compel AWI to assume or reject the Sea-Pac Agreements, which it did not do. By continuing to perform, Sea-Pac deprived AWI of the ability to reject the Sea-Pac Agreements. An arbitration panel lacking experience in the bankruptcy concepts associated with postpetition performance under executory contracts (and rejection of such contracts) would be unable to assess the merits of AWI's Claim Objection.

- *Applicability of the Administrative Expense Bar Date*

The Claim Objection also requires a decision whether Sea-Pac is barred from asserting any administrative expenses arising prior to November 24, 2003 by virtue of Sea-Pac's failure to comply with the Administrative Expense Bar Date established in AWI's chapter 11 case. AWI submits that Sea-Pac is absolutely barred from asserting its administrative expense claims after failing to comply with the Bankruptcy Court's order establishing a bar date for such claims. The Administrative Expense Bar Date Order explicitly required Sea-Pac – as a counterparty to a contract with actual knowledge of the alleged breaches by AWI that form the basis of its claims – to assert such claims (as claims for "breach of an obligation – contractual, statutory, or otherwise – by AWI. ") on or before the Administrative Expense Bar Date. Sea-Pac has asserted that the Administrative Expense Bar Date did not apply to its claims and suggests that the Executory Contracts Bar Date entered two years later relieved Sea-Pac of any obligation to comply with the Administrative Expense Bar Date. In short, Sea-Pac's response to this portion of the Claim Objection raises questions about the interpretation of two previous

30

RLF1-3119812-1

orders entered by the Bankruptcy Court. It is indisputable that bankruptcy courts have

the absolute right to enforce and interpret their own orders. *In re Continental Airlines,*

*Inc*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses

the inherent authority to enforce its own orders."), *aff'd*, 279 F.3d 226 (3d Cir. 2002).

Accordingly, the Bankruptcy Court – and not a panel of arbitrators unfamiliar with the

orders in question – is in the best position to determine the applicability of the

Administrative Expense Bar Date to Sea-Pac's claims.

- *Valuing Administrative Expense Claims*

Resolving the Sea-Pac Claim also requires a determination of the value of

any administrative expense claims to which Sea-Pac may be entitled. Contrary to Sea-

Pac's simplified suggestion, liquidating the Sea-Pac Claim involves more than a simple

breach of contract dispute to determine the amount, if any, of damages suffered by Sea-

Pac on account of the alleged breaches by AWI. As a matter of bankruptcy law, if any of

Sea-Pac's claims are entitled to administrative expense priority, the possible value of that

claim is not necessarily based upon the damages that an arbitration panel might otherwise

assess, but upon the reasonable value of the services (or benefits) provided by Sea-Pac to

AWI's estate. *See In re FBI Distribution Corp*, 330 F.3d 36, 48 (1st Cir. 2003) (holding

that a creditor is entitled to only the reasonable value of the beneficial services rendered

during the reorganization); *In re Adelphia Business Solutions, Inc*, 296 B.R. 656, 664,

n.9 (Bankr. S.D.N.Y. 2003) (recognizing that courts should be guided by "the equitable

principle of unjust enrichment of the debtor's estate, rather than the compensation of the

creditor for the loss to him"); *In re Cardinal Indus., Inc*, 142 B.R. 801, 805 (Bankr. S.D.

31

Ohio 1992) (holding that the measure of expense entitled to an administrative priority is

the benefit to the estate, not the damage to the claimant). Again, the remedy, if the other

party finds it is being harmed, is for that party to seek to compel assumption or rejection

of the contract at issue. Because the analysis involved in valuing administrative expense

claims derives from the development of a unique area of bankruptcy law, it requires the

expertise of the Bankruptcy Court, and application of breach of contract principles by an

arbitration panel may well conflict with the standard imposed by the Bankruptcy Code.

In that regard, the Bankruptcy Court's statement in *In re Oakwood Homes Corp.* applies

with equal force to the issue of valuing administrative priority claims:

> The law, and the lore surrounding adjudication of such claims is extensive,
> and has been developed over significant periods of time. The result is,
> that certain fact situations may be expected to bring about fairly consistent
> results, wherever they are tried. To subject these matters to arbitration,
> before individuals or tribunals with little or no experience in bankruptcy
> law or practice, and with little or no concern for the rights and interests of
> the body of creditors, of which the particular defendant is only one, would
> introduce variables into the equation which could potentially bring about
> totally inconsistent results. Such a result would be contrary to the primary
> policy of the Bankruptcy Code, which is that all classes of creditors of a
> debtor are entitled to be treated as equitably as possible.

No. 02-13396PJW, 2005 WL 670310, at *5 (Bankr. D. Del. Mar. 18, 2005) (holding that

statutory fraudulent conveyance and preference actions may not be submitted to

arbitration and finding that, even if such actions were debtor-derivative, the court would

exercise discretion to decline enforcement of arbitration provision as contrary to the

objectives of the Bankruptcy Code).

- *Sea-Pac's Entitlement to Attorneys' Fees*

AWI disputes Sea-Pac's entitlement to attorneys' fees not only because

the Sea-Pac Agreements fail to contain any language that would entitle Sea-Pac to such

32

fees, but also because, as a matter of bankruptcy law, an unsecured creditor may not recover postpetition attorneys' fees or other collection costs from an insolvent debtor Accordingly, whether Sea-Pac is entitled to a claim for attorneys' fees is a question the Bankruptcy Court will ultimately have to resolve as a bankruptcy matter and is not something that can be easily assessed by a panel of arbitrators

For all of the reasons set forth above, liquidating the Sea-Pac Claim is inherently intertwined with distinctive bankruptcy concepts that require specific expertise — and the Bankruptcy Court ultimately would have to determine the priority of Sea-Pac's claims in any event  Even if the issues could be segregated so as to allow arbitration to determine Sea-Pac's damages and a subsequent determination of priority by the Bankruptcy Court, it would require the Bankruptcy Court to revisit many of the facts reviewed by the arbitrators and would impose additional costs and expenses on AWI, which is directly contrary to the bankruptcy objectives favoring resolution of bankruptcy claims in a single forum and encouraging expeditious administration of the estate for the benefit of all creditors  As a result, the Claim Objection is precisely the situation in which bankruptcy-created rights inherently conflict with the principles of arbitration and warrant the retention of jurisdiction by the Bankruptcy Court in the exercise of its discretion

## CONCLUSION

For all of the reasons discussed above, the Bankruptcy Court was correct to deny Sea-Pac's Stay Motion, which determination implicated no question of arbitrability that would require referral of the matter to an arbitration panel.  Furthermore,

33

the Bankruptcy Court correctly determined, as a matter of interpretation and application

of the express terms of the Sea-Pac Agreements, that AWI has an enforceable right to

litigate – and Sea-Pac has no enforceable right to arbitrate – the disputes underlying Sea-

Pac's bankruptcy claims. Even if Sea-Pac were found to have a viable right to arbitrate

pursuant to the Sea-Pac Agreements, the Court should remand this matter for the

Bankruptcy Court to exercise its discretion to determine whether denial of the Stay

Motion is warranted in light of the overwhelming weight of the bankruptcy policies

implicated in the resolution of Sea-Pac's bankruptcy claims.

Accordingly, the Bankruptcy Court's order denying Sea-Pac's Stay

Motion should be affirmed.

Dated: February 26, 2007          Respectfully submitted,
      Wilmington, Delaware

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

        -and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR APPELLEE
ARMSTRONG WORLD INDUSTRIES, INC.

34

RLF1-3119812-1

B - 91

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Jason M Madron, hereby certify that on the 26th day of February, 2007, I electronically

filed the **Appellee's Answering Brief** with the Clerk of the Court using CM/ECF which will

send notifications of such filing to the following :

Michael Busenkell
mbusenkell@eckertseamans.com

Mark David Collins
Collins@rlf.com

Karen Lee Turner
kturner@eckertseamans.com

I, Jason M. Madron, hereby certify that on the 26th day of February, 2007, I sent via Hand

Delivery Service (Local) or via First Class Mail (Non-Local) the **Appellee's Answering Brief** to

the following participants:

**Via Hand Delivery**
(United States Trustee)
Richard Schepacarter
Office of the United States Trustee
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801-3519

**Via First Class Mail**

*(Attorneys for Sea-Pac Sales Company)*
Michael M. Feinberg
Diana K. Carey
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, Washington 98102

RLF1-3119809-1

B — 92

**Via First Class Mail**

*(Attorneys for Sea-Pac Sales Company)*
Al Van Kampen
Rohde & Van Kampen PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154

Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Madron@rlf.com

**7**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                              )
                                   )    Chapter 11
ARMSTRONG WORLD INDUSTRIES,        )
INC. et al.,                       )
                                   )    Case No. 00-04471 (JKF)
          Debtors.                 )
                                   )    Jointly Administered
                                   )
                                   )
_____)
In re                              )
                                   )
ARMSTRONG WORLD INDUSTRIES,        )
INC. et al.,                       )
                                   )    Adv. Pro. No. 06-50899
                                   )    (JKF)
          Plaintiff,               )
                                   )
     v.                            )
                                   )
SEA-PAC SALES COMPANY,             )
                                   )
          Defendant.               )

EMERGENCY MOTION OF SEA-PAC SALES COMPANY FOR EXPEDITED
CONSIDERATION OF SEA-PAC SALES COMPANY'S MOTION FOR STAY
PENDING APPEAL OF THE COURT'S NOVEMBER 20, 2006 ORDER

        Sea-Pac Sales Company ("Sea-Pac"), by and through

its undersigned counsel, hereby moves this Honorable Court

(the "Emergency Motion") requesting an immediate hearing on

the Motion Of Sea-Pac Sales Company For Expedited

Consideration Of Sea-Pac Sales Company's Motion For Stay

Pending Appeal Of The Court's November 20, 2006 Order (the

"Stay Motion"), and in support thereof alleges the

following:

1.    On or about September 15, 2006, Sea-Pac filed a motion to (i) stay objection by Armstrong World Industries, Inc. ("AWI") to Sea-Pac's proof of claim no. 4854 pending arbitration, and (ii) for relief from the automatic stay or, in the alternative, for relief from the discharge injunction ("Stay Motion") (Docket No. 9830). In the Stay Motion, Sea-Pac argued that the Court should stay proceedings on AWI's objection to claim no. 4854 pending arbitration. On October 23, 2006, the Court held a hearing on the Stay Motion and, after hearing argument, denied the stay motion.

2.    On November 20, 2006, the Court issued the Order denying the Stay Motion for the reasons stated on the record. (Docket No. 10117). On November 30, 2006, Sea-Pac filed a Notice of Appeal of the Order (the "Appeal") (Docket No. 10134). The Appeal has been fully brief.

3    On March 1, 2007, AWI filed the Motion For Partial Summary Judgment (Docket No. 23), the disposition of which Sea-Pac seeks to stay pending the Appeal.

4.    In light of AWI's pending motion for summary judgment and Sea-Pac's response deadline of April 2, 2007 [confirm], Sea-Pac requests that the Court schedule an immediate hearing on its Stay Motion to stay all dispositive motions, pending the disposition of the Appeal.

2

Failure to provide an immediate hearing may result in irreparable harm to Sea-Pac and the erosion of Sea-Pac's right to arbitration during the pendency of the Appeal.

5.    Contemporaneously with the filing of this Emergency Motion, Sea-Pac has filed the Stay Motion, a copy of which is attached hereto as Exhibit "A."

6.    The undersigned hereby certifies that copies of this Emergency Motion, together with the Stay Motion, have been sent to counsel for the Debtor, simultaneously with the filing of this Emergency Motion.

WHEREFORE, Sea-Pac requests that this Court enter the Order annexed hereto granting the Emergency Motion and scheduling a hearing at the first available date. Further, the order annexed hereto requires the Debtor to file a response and serve upon counsel for Sea-Pac the day before the hearing.

March 23, 2007

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

/s/ Michael G. Busenkell
Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware  19801
(302) 425-0430 (Telephone)

3

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Creditor, Sea-Pac Sales
Company*

*U0005770*

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                          )
                               )    Chapter 11
ARMSTRONG WORLD INDUSTRIES,    )
INC. et al.,                   )
                               )    Case No. 00-04471 (JKF)
          Debtors.             )
                               )    Jointly Administered
                               )
                               )
_____)
In re                          )
                               )
ARMSTRONG WORLD INDUSTRIES,    )
INC. et al.,                   )
                               )    Adv. Pro. No. 06-50899
                               )    (JKF)
          Plaintiff,           )
                               )
     v.                        )
                               )
SEA-PAC SALES COMPANY,         )
                               )
          Defendant.           )
_____

ORDER GRANTING MOTION FOR EMERGENCY HEARING

AND NOW, this _____ day of _____,

2007, upon consideration of the Motion Of Sea-Pac Sales

Company For Expedited Consideration Of Sea-Pac Sales

Company's Motion For Stay Pending Appeal Of The Court's

November 20, 2006 Order (the "Emergency Motion"), it is

hereby

ORDERED, ADJUDGED AND DECREED that:

1.    The Emergency Motion be and the same is

hereby GRANTED; Sea-Pac's Motion For Stay Pending Appeal Of

The Court's November 20, 2006 Order (the "Stay Motion")
will be considered by this Court at a hearing to be held on
_____, 2007 at _____.m.;

      2.   An Answer or other responsive pleading to
the Stay Motion must be filed on or before the close of
business on _____, 2007; and

      3.   The Stay Motion, the attached Emergency
Motion and this Order shall be served using CM/ECF System
to send notification to all individuals and to be served
electronically pursuant to the CM/ECF System and served by
regular first-class mail to all other interested parties
who have requested notice pursuant to B.R. 2002 the same
day this Order is entered.

                          _____
                          The Honorable Judith K. Fitzgerald
                          United States Bankruptcy Court Judge

2

B - 99

CERTIFICATE OF SERVICE

I, Tara L. Lattomus, certify that on March 23, 2007, I caused copies of the foregoing Emergency Motion Of Sea-Pac Sales Company For Expedited Consideration Of Sea-Pac Sales Company's Motion For Stay Pending Appeal Of The Court's November 20, 2006 Order to be served in the manner indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC  20005
*By First Class Mail*

Tara L. Lattomus (No. 3515)

B - 100

**8**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------x
In re                            :
                                 :   Chapter 11 Case No.
ARMSTRONG WORLD INDUSTRIES,      :
INC., et al.,                    :   00-4471 (JKF)
                                 :
            Debtors.             :   (Jointly Administered)
                                 :
--------------------------------x
In re                            :
                                 :
ARMSTRONG WORLD INDUSTRIES,      :
INC., et al.,                    :   Adversary Proceeding No.
                                 :
            Plaintiff,           :   06-50899-JKF
                                 :
v.                               :
                                 :Response Deadline:  March 30, 2007
                                 :at 12:00 p.m.
   SEA-PAC SALES COMPANY,        :Hearing Date:  April 2, 2007 at 1:00 p.m.
                                 :
            Defendant.           :
--------------------------------x
```

MEMORANDUM OF PLAINTIFF ARMSTRONG WORLD INDUSTRIES, INC.
IN OPPOSITION TO DEFENDANT SEA-PAC SALES COMPANY'S MOTION FOR
STAY PENDING APPEAL OF THE COURT'S NOVEMBER 20, 2006 ORDER

TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................1

II.   PROCEDURAL HISTORY ..................................3

III.  ARGUMENT ...........................................7

      A.   Stay of Proceedings in the Bankruptcy Court
           Pending Resolution of an Interlocutory Appeal
           Under Section 16(a) of the Federal Arbitration
           Act Is Not Mandated by Either Statute or Judicial
           Precedent ......................................7

      B.   A Stay of Proceedings in the Court Is Not
           Warranted Under the Traditional Four-Part Test
           for Discretionary Stays ......................14

IV.   CONCLUSION .........................................18

i

TABLE OF AUTHORITIES

Page

CASES

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) .................... 9

*Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th
 Cir. 2004)................................................... 8

*Bradford-Scott Data Corp. v. Physician Computing Network*,
128 F.3d 504 (7th Cir. 1997) ........................... 8, 14, 17

*Bratek v. Beyond Juice, LLC*, 2005 U.S. Dist. LEXIS 33352
(E.D. Pa. Dec. 15, 2005) .................................. 9, 10

*Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir.
 1990)..................................................... 8, 9

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) . 15, 16

*Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.)*,
2002 U.S. Dist. LEXIS 9409 (D. Del. May 22, 2002) ......... 15, 16

*Hill v. PeopleSoft USA, Inc.*, 341 F. Supp. 2d 559 (D. Md.
2004)                                                          9

*Homeless Patrol v. Town of Thompson*, 2006 WL 2956310
(D.N.J. Oct. 16, 2006)                                         9

*Howsam v. Dean  Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ..... 16

*Levine v. United Healthcare Corp.*, 285 F.Supp.2d 552
 (D.N.J. 2003)............................................... 8

*McCauley v. Halliburton Energy Services*, 413 F.3d 1158
 (10th Cir. 2005)........................................... 8, 9

*Michigan Coal. of Radioactive Material Users, Inc. v.
 Griepentrog*, 945 F.2d 150 (6th Cir. 1991)................. 17

*Mintze v. America General Finance Services Inc. (In re
 Mintze)*, 434 F.3d 222 (3d Cir. 2006)....................... 11

*Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, 2004 U.S.
 Dist. LEXIS 1917 (D. Del. Feb. 9, 2004)..................... 15

B - 103

Page

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) ...... 9

*Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003), *cert. denied*, 541 U.S. 959 (2004) .................... 9

*In re Startec Global Communs. Corp.*, 303 B.R. 605 (D. Md. 2004) ...................................................... 9

*Tidewater Oil Co. v. United* States, 409 U.S. 151 (1972) ........ 8

*Vaughn v. Flowserve Corp.*, 2006 WL 3231417 (D.N.J. Nov. 8, 2006) ................................................... 8

STATUTES

9 U.S.C. § 16(a) ................................................ 7, 8

MISCELLANEOUS

9 J. Moore, *Moore's Federal Practice* ¶ 203.11, 3-54. ........... 8

iii

I.    INTRODUCTION

Armstrong    World    Industries,    Inc.    ("AWI"),    as
reorganized    debtor    and    Plaintiff    in    the    above-captioned
adversary proceeding, opposes the *Motion for Stay Pending Appeal
of the Court's November 20, 2006 Order* [Adv. Docket No. 34][1] (the
"*Stay Motion*") filed by Defendant Sea-Pac Sales Company ("Sea-
Pac") on March 23, 2007.

Sea-Pac    wants    to    arbitrate    this    complex    business
dispute, and this Court has denied its request to do so.    Sea-
Pac appealed from such decision, and that appeal is pending.
For the last four months, the case has been pursued with vigor
on all fronts, including discovery, by all parties.    On March 1,
2007, AWI filed a *Motion for Partial Summary Judgment* [Adv.
Docket No. 23] (the "*Summary Judgment Motion*") to narrow the
scope of the issues in dispute and discovery relating thereto.
Now, after AWI agreed to Sea-Pac's requests to extend its time
to respond to the Summary Judgment Motion, Sea-Pac seeks to stay
"any dispositive motions related to any state law issue arising
under the agreements that are the subject of Sea-Pac's proof of
claim No. 4854, or a trial in this adversary proceeding, pending

---

[1] All references to the docket in this adversary proceeding shall be
made herein as "Adv. Docket No. __"; all references to the docket in
the jointly administered Chapter 11 cases of AWI and its debtor
affiliates shall be made herein as "Main Docket No. __"; and all
references to the docket in the appeal before the District Court shall
be made herein as "District Docket No. __."

1

resolution of Sea-Pac's appeal of the Court's November 20, 2006 Order." *Sea-Pac Sales Company's Memorandum of Law in Support of Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* (the "*Stay Memorandum*"), at 1.

Sea-Pac makes this 11th-hour "emergency" request to the Court even though Sea-Pac itself already has agreed that dispositive motions could be presented to the Court. Scheduling Order [Adv. Docket No. 3], entered on December 19, 2006 [Adv. Docket No. 6] (the "*First Stipulated Scheduling Order*"). Despite Sea-Pac's agreement (and Sea-Pac's own filing of a dispositive motion), Sea-Pac now seeks to stay AWI's pending Summary Judgment Motion. Sea-Pac wishes the litigation to go forward in every respect except where its own claims are threatened - this is the "compromise" offered by Sea-Pac in the Stay Motion. Stay Memorandum, at 3. Sea-Pac's offer of "compromise" could not be more disingenuous or self-serving. Sea-Pac wants the right to force AWI to provide wide-ranging discovery (including electronic discovery, which is exponentially more burdensome on AWI than Sea-Pac and which Sea-Pac knows could not be secured in arbitration), and it wants to press its own dispositive motions, but it does not want to have the merits of its own claims tested by AWI's dispositive motions.

2

Given the substance and timing of Sea-Pac's request for relief, it is clear that the Stay Motion is simply part of a pattern of conduct designed to yield a tactical advantage to Sea-Pac in its litigation with AWI, and, therefore, the jurisprudential concerns that have led some courts to stay certain proceedings pending appeal of an order denying arbitration do not exist in this case. Accordingly, the Court should deny the Stay Motion.

## II. PROCEDURAL HISTORY

On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Main Docket No. 9683] (the "*Claim Objection*"), seeking disallowance of Sea-Pac's claim or, to the extent any portion is allowed, determination that the claim is not entitled to any priority status.

On or about September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Main Docket No. 9832], as well as a memorandum [Main Docket No. 9833] and a declaration [Main Docket No. 9834] in support thereof (collectively, the "*Objection Response*"). Also on September 15, 2006, Sea-Pac filed its *Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from the Automatic*

3

*Stay or, in the Alternative, for Relief from the Discharge Injunction* [Main Docket No. 9830] (the "*Arbitration Motion*").

On October 6, 2006, AWI filed its objection to Sea-Pac's Arbitration Motion [Main Docket No. 9914] (the "*Arbitration Objection*"). Also on October 6, 2006, AWI commenced this adversary proceeding by filing its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Adv. Docket No. 1] (the "*Complaint*").

On October 23, 2006, this Court held a hearing on the Arbitration Motion and thereafter denied the motion, entering an order to that effect on November 20, 2006 [Main Docket No. 10117] (the "*Arbitration Order*").

On November 30, 3006, Sea-Pac filed a notice of appeal to the United States District Court for the District of Delaware (the "*District Court*") with respect to the Arbitration Order [Main Docket No. 10134] (the "*Appeal*"). Sea-Pac did not seek to stay any matters in this adversary proceeding at that time. To the contrary, on December 15, 2006, AWI and Sea-Pac submitted an agreed form of scheduling order [Adv. Docket No. 3], which this Court entered on December 19, 2006 [Adv. Docket No. 6] (the "*First Stipulated Scheduling Order*"). The First Stipulated Scheduling Order expressly contemplates the filing of

4

dispositive motions: "Motions for Summary Judgment shall be filed with the Court on or before September 10, 2007."

Also on December 15, 2006, Sea-Pac filed its *Motion of Defendant Sea-Pac Sales Company to Dismiss for Lack of Subject Matter Jurisdiction* [Adv. Docket No. 4], as well as a memorandum of law in support thereof [Adv. Docket No. 5] (together, the "*Motion to Dismiss*"). AWI filed an *Answering Memorandum* [Adv. Docket No. 14] on January 26, 2007, and Sea-Pac filed a *Reply Memorandum* [Adv. Docket No. 19] on February 9, 2007. Briefing with respect to Sea-Pac's Motion to Dismiss has been completed.

On March 1, 2007, AWI filed its Summary Judgment Motion. In the Summary Judgment Motion, AWI argues that (i) Sea-Pac, as a matter of law, waived its claim that AWI improperly appointed a second distributor in the Pacific Northwest by choosing not to bring its breach of contract action at the time of the alleged breach, but instead continuing to fully perform under the parties' agreement, and by subsequently entering into a new interim contract on similar terms with full and specific knowledge that the two-distributor relationship was already in place, and (ii) Sea-Pac is barred, as a matter of bankruptcy law, from asserting a prepetition claim under the parties' agreement because Sea-Pac voluntarily withdrew "with prejudice" its original proof of claim. Pursuant to Rule 7007-1(a) of the Local Rules of the United States Bankruptcy Court

for the District of Delaware (effective Feb. 1, 2007), Sea-Pac
was required to file its responsive pleading within 14 days
thereafter.    Sea-Pac, however, did not file a responsive
pleading and did not seek to stay the disposition of AWI's
Summary Judgment Motion at that time.    Instead, Sea-Pac
requested that AWI agree to an extension of time for Sea-Pac to
file a responsive brief.

AWI extended to Sea-Pac' the professional courtesy of
agreeing to its request, and, on March 13, 2007, the parties
proposed to the Court an agreed form of scheduling order
regarding the Summary Judgment Motion [Adv. Docket No. 29],
which the Court entered on March 19, 2007 [Adv. Docket No. 30]
(the "*Second Stipulated Scheduling Order*").    Pursuant to the
Second Stipulated Scheduling Order, AWI agreed to give Sea-Pac
more than two additional weeks to respond to the Summary
Judgment Motion.    Specifically, the Second Stipulated Scheduling
Order provides that Sea-Pac "shall respond to AWI's motion for
summary judgment no later than April 2, 2007" and that AWI
"shall file and serve any reply no later than April 16, 2007."
Second Stipulated Scheduling Order, ¶¶ 1 & 2

Only now, on the eve of its deadline to file a
response to the Summary Judgment Motion, Sea-Pac seeks to stay
dispositive motions in this adversary proceeding (in particular,
the Summary Judgment Motion) until after resolution of the

6

Appeal (which, presumably, would include any appeal to the United States Court of Appeals for the Third Circuit or even the United States Supreme Court). Sea-Pac makes this request nearly four months after initiating the Appeal, more than three months after submission of the First Stipulated Scheduling Order, nearly two weeks after the submission of the Second Stipulated Scheduling Order, and well after filing (and allowing to be fully briefed) its own dispositive motion.

## III. ARGUMENT

A.  Stay of Proceedings in the Bankruptcy Court Pending Resolution of an Interlocutory Appeal Under Section 16(a) of the Federal Arbitration Act Is Not Mandated by Either Statute or Judicial Precedent.

Sea-Pac argues that it is entitled to a stay of proceedings in the Bankruptcy Court pending resolution of the Appeal. Yet neither the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), nor judicial precedent in this district or circuit supports such an entitlement.

The FAA provides a right to take an interlocutory appeal from a denial of a motion to compel arbitration or a denial of a stay pending arbitration. *See* FAA § 16(a). Notably absent from the FAA, however, is any provision imposing an automatic stay on proceedings in the trial court during the pendency of such an appeal. *See* 9 U.S.C. §§ 1-16. Section 16(a) is itself a departure from the rule that a party may not

7

appeal from an interlocutory order.[2]    Therefore, it would be logical to conclude that, had Congress intended to depart from another well-established principle – "where an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal"[3] – it could have so provided in the FAA.

As Sea-Pac observed in its Stay Memorandum, no controlling precedent exists in the Third Circuit regarding whether a trial court must stay all proceedings pending resolution of an interlocutory appeal under § 16(a), and the circuit courts that have addressed the question have reached different conclusions.    Compare *Bradford-Scott Data Corp. v. Physician Computing Network*, 128 F.3d 504 (7th Cir. 1997) (requiring trial court to stay proceedings pending appeal of denial of arbitration), *McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158 (10th Cir. 2005) (same), and *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004) (same), *with Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990)

---

[2] *Tidewater Oil Co. v. United* States, 409 U.S. 151, 170 (1972) (recognizing the general rule that appellate review is only available after a final order); *Levine v. United Healthcare Corp.*, 285 F.Supp.2d 552, 556 (D.N.J. 2003) (same); *Vaughn v. Flowserve Corp.*, 2006 WL 3231417, *2 (D.N.J. Nov. 8, 2006) (same).

[3] 9 J. Moore, *Moore's Federal Practice* ¶ 203.11, 3-54.

8

(allowing trial court to exercise discretion regarding stay), *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) (same), *Hill v. PeopleSoft USA, Inc.*, 341 F. Supp. 2d 559, 560 (D. Md. 2004) (same), and *In re Startec Global Communs. Corp.*, 303 B.R. 605, 609 (D. Md. 2004) (same); *see also Bratek v. Beyond Juice, LLC*, 2005 U.S. Dist. LEXIS 33352, *6 (E.D. Pa. Dec. 15, 2005) ("an appeal from the denial of a stay of proceedings in a [trial] court pending an interlocutory appeal does not divest the [trial] court of jurisdiction"). Even those circuits that require a stay, however, do not treat the question as one of subject matter jurisdiction, but, instead, focus on the jurisprudential considerations raised by the appeal of an order denying arbitration.[4] Because the issue is not a matter of subject matter jurisdiction, the circuits that have refused to adopt a *per se* rule staying proceedings have acknowledged that the decision to grant a stay "is a proper subject for the

---

[4] All the circuit courts imposing a stay only do so upon the request of a party in the action. If an appeal of an order denying arbitration divested the court of subject matter jurisdiction, however, the court would be permitted - indeed required - to consider such issue *sua sponte*. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 502 (2006) (noting that courts have an independent obligation to determine whether subject matter jurisdiction exists); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003), *cert. denied*, 541 U.S. 959 (2004) (same); *Homeless Patrol v. Town of Thompson*, 2006 WL 2956310, *2 (D.N.J. Oct. 16, 2006) (same). *See also McCauley*, 413 F.3d at 1162 n.1 (acknowledging that "we are not talking about constitutional or statutory jurisdiction").

RLF1-3133331-1

exercise of discretion by the trial court." *Britton*, 916 F.2d at 1412.

Rather than engage in a weighing of the jurisprudential considerations raised by Sea-Pac's Stay Motion, Sea-Pac simply suggests that the Court adopt the "modified approach" taken by the trial court in *Bratek*. Stay Memorandum, at 8. In *Bratek*, the trial court stayed dispositive motions and the ultimate jury trial on the matter, but permitted limited discovery (*i.e.*, each side limited to three depositions) to continue. Sea-Pac does not wholly embrace *Bratek* because it does not seek to stay all dispositive motions — it expressly carves out dispositive motions relating to bankruptcy issues — and Sea-Pac offers no limitation on discovery. What on its face appears to be a "compromise" will have the opposite effect of what was intended in *Bratek* — it will add complexity to this litigation by forcing the parties and the Court to separate the "bankruptcy" issues from the "state law" issues (even though they are inextricably intertwined), it will halt any action that might narrow the issues and thereby narrow discovery and reduce costs, and it will discourage settlement by not affording the parties the benefit of the Court's rulings on important issues.

First, no significant economy or efficiency will be achieved by staying this Court's proceedings. Sea-Pac's arguments are grounded in the premise that, if it prevails in

10

the Appeal, thereby mooting any dispositions made by this Court in the interim, "the parties may have to start all over in another forum." Stay Memorandum, at 8. This argument vastly oversimplifies the circumstances of this case and overstates the consequences of such a result on appeal. Even if Sea-Pac succeeds in the Appeal, the appropriate result will be a remand to this Court for application of the analysis set forth in *Mintze v. Am. Gen. Fin. Services Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006) – *i.e.*, whether the Court has discretion to deny enforcement of an arbitration provision because it would conflict with the policies underlying the Bankruptcy Code, and if so, whether the Court should exercise such discretion. *See Mintze*, 434 F.3d at 231-33. As a result of the interplay between state-law and bankruptcy-specific issues in the dispute between AWI and Sea-Pac,[5] AWI is confident that resolution of the parties' dispute ultimately will not be relegated to the arbitral forum.

More importantly, Sea-Pac's premise ignores that, even in an arbitration, the parties will likely have to engage in similar research, analysis, and briefing of any dispositive issues in which they would be engaged in the bankruptcy case.

---

[5] This is more fully discussed in AWI's *Answering Brief* with respect to the Appeal [District Docket No. 9], a copy of which is attached hereto as Exhibit A.

11

Whether before a panel of arbitrators or this Court, the Sea-Pac dispute is a complex commercial dispute. Staying dispositive motions will not obviate the need to engage in such analysis if Sea-Pac ultimately prevails in the Appeal, but will only defer such analysis to a point that may be years in the future. Notably, Sea-Pac never suggests that arbitration would ever result in a limitation of discovery; similarly, arbitration will not limit any legal issues.

Furthermore, by its terms, Sea-Pac's Stay Motion seeks to stay only state law issues arising in this action. Stay Motion, at 1; Stay Memorandum, at 1. Thus, even if relief were granted as requested, bankruptcy-specific issues would remain for this Court to consider. Indeed, granting the Stay Motion would not even have the effect of putting off a determination of the Summary Judgment Motion because the Summary Judgment Motion also seeks disallowance of certain of Sea-Pac's claims on the basis of Sea-Pac's withdrawal of its original proof of claim with prejudice. This is clearly a "bankruptcy issue" that will need to be addressed by this Court. In essence, granting Sea-Pac's Stay Motion would have the effect of reducing judicial efficiency by unnecessarily complicating matters and requiring piecemeal resolution of the parties' dispute. On the other hand, disposition of the Summary Judgment Motion conceivably will promote efficiency - if AWI prevails on the Summary

12

Judgment Motion, the parties will be able to narrow the scope of issues and limit discovery going forward; if AWI does not prevail, the parties will simply continue discovery as Sea-Pac proposes.    Moreover, even if any judicial determination is rendered moot by a victory by Sea-Pac in the Appeal (and any subsequent remand), such determination will at least afford both parties the "reality check" of how other impartial arbiters may view their positions on the merits.    By not affording the parties the benefit of dispositive rulings, the Court will discourage rather than facilitate settlement of the parties' dispute.

Because consideration of the Stay Motion should be based on jurisprudential considerations, the Court should consider other factors concerning the fairness of allowing dispositive motions to be stayed at this point in the adversary proceeding.    From the time that Sea-Pac filed its notice of appeal with respect to the Arbitration Order, on November 30, 2006, Sea-Pac has had ample opportunity to seek to stay these proceedings pending resolution of the Appeal.    Yet it did not do so, either at the outset or at any point during the nearly four months since that time.    Instead, quite to the contrary, Sea-Pac negotiated and coordinated with AWI and submitted to the Court stipulated scheduling orders that explicitly contemplate the filing of dispositive motions - not just once, but twice.

13

Furthermore, not only did Sea-Pac previously agree to allow dispositive motions, but Sea-Pac has in fact taken advantage of those agreements by filing its own dispositive motion, to which AWI has responded and which remains pending before this Court. Surely it is unfair to hear Sea-Pac argue, now, that it would be inefficient and uneconomical for the Court to consider the pleadings that AWI has prepared and submitted in good faith in the course of this adversary proceeding.

Given the jurisprudential considerations outlined above, it is clear that Sea-Pac is not entitled to the relief it has requested, and that granting such relief would amount to rewarding Sea-Pac for engaging in litigation tactics. Even under the rule established by the Seventh Circuit – which permits the court to determine "whether there is any good reason why the [trial] court may carry on once an appeal has been filed," *Bradford-Scott Data Corp.*, 128 F.3d at 505 – ample "good reason" exists to deny the Stay Motion.

B.   A Stay of Proceedings in the Court Is Not Warranted Under the Traditional Four-Part Test for Discretionary Stays.

As an alternative to a stay under the FAA framework, Sea-Pac argues that the Court should stay consideration of state law dispositive motions based on the traditional four-part test for discretionary stays pending appeal. Stay Memorandum, at 9.

14

Because Sea-Pac cannot satisfy the elements of the test, however, such discretionary stay cannot be granted.

To obtain a discretionary stay, the movant must demonstrate that (i) it has a likelihood of success on the merits of the appeal; (ii) it will be subject to irreparable harm if the stay is not granted; (iii) the granting of the stay will not substantially harm other interested parties; and (iv) the granting of the stay would serve the public interest. *Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.)*, 2002 U.S. Dist. LEXIS 9409, *4-5 (D. Del. May 22, 2002). All four of these elements must be satisfied in order for a discretionary stay to be appropriate. *Id.*, at *5; *Morgan v. Polaroid Corp. (In re Polaroid Corp.)*, 2004 U.S. Dist. LEXIS 1917, *3-4 (D. Del. Feb. 9, 2004). A discretionary stay cannot be granted to Sea-Pac because, at the very least, it does not have a significant likelihood of success on the merits of its Appeal, and it cannot demonstrate that it will suffer *any* irreparable harm if the stay is not granted. Indeed, given the absence of any claim of irreparable harm by Sea-Pac, even if the Court were to balance the four factors, it would still have no basis for staying any portion of the proceedings before it.

This Court's Arbitration Order denied Sea-Pac's Arbitration Motion based on factual findings supported in the record and the special features of the AWI/Sea-Pac arbitration

15

provisions that distinguish them from those at issue in the cases relied upon by Sea-Pac, such as *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). There is no reason to believe that the Court erred in deciding that it – and not an arbitrator – should determine whether Sea-Pac's arbitration request was untimely, or that this Court's factual determinations in connection therewith were clearly erroneous. AWI's arguments in this regard are more fully set forth in its *Answering Brief* with respect to the Appeal, a copy of which is annexed hereto as Exhibit A.

More importantly, the whole purpose underlying a stay pending appeal is to prevent irreparable harm. The injury alleged by Sea-Pac – that it will lose the benefit of its agreed upon forum – can hardly be deemed irreparable harm. No one, including AWI, contends that a ruling on the merits of the Sea-Pac dispute by this Court would in any way render the Appeal moot or would have any preclusive effect on the merits if Sea-Pac ultimately prevailed in the Appeal and the "non-bankruptcy" issues were presented to an arbitration panel. As a result, Sea-Pac cannot suffer irreparable harm by any continuation of the action in this Court because it will not suffer "certain, great, and actual" harm. *Hertz Corp.*, U.S. Dist. LEXIS 9409, at *7. If anything, the only injury Sea-Pac might suffer as a

16

result of not staying dispositive motions would be additional costs. It is black letter law, though, that money damages cannot constitute irreparable harm. *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F 2d 150, 154 (6th Cir. 1991) (mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not sufficient); *Bradford-Scott*, 128 F.3d at 505 ("[A]ppellants' request would fail at the outset, for the costs of litigation are not irreparable injury.").

Because Sea-Pac is unable to demonstrate either a likelihood of success on the merits of its Appeal or irreparable harm if the requested stay is not granted, Sea-Pac is not eligible for a discretionary stay under the traditional standard for such stays.

17

IV.   CONCLUSION

    For all of the reasons discussed above, Sea-Pac's Stay

Motion should be denied.

Dated:   March 30, 2007
          Wilmington, Delaware

                       Mark D. Collins (No. 2981)
                       Jason M. Madron (No. 4431)
                       RICHARDS, LAYTON & FINGER, P.A.
                       One Rodney Square
                       P.O. Box 551
                       Wilmington, DE 19899
                       (302) 651-7700

                       -and-

                       Stephen Karotkin
                       Debra A. Dandeneau
                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, NY 10153
                       (212) 310-8000

                       -and-

                       David A. Hickerson
                       Stephen A. Gibbons
                       WEIL, GOTSHAL & MANGES LLP
                       1300 Eye Street, N.W., Suite 900
                       Washington, DC 20005
                       (202) 682-7000

                       ATTORNEYS FOR ARMSTRONG
                       WORLD INDUSTRIES, INC., AS
                       REORGANIZED DEBTOR

RLF1-3133331-1

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*In re* ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

-------------------------------------------------x

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | : | |
| | : | Civil Action No. 07-4 |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| ARMSTRONG WORLD INDUSTRIES, INC., | : | Bankr. Case No. 00-04471 |
| | : | Appeal No. 06-77 |
| Appellee. | : | |
| | : | |

-------------------------------------------------x

## APPELLEE'S ANSWERING BRIEF

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

ATTORNEYS FOR APPELLEE
ARMSTRONG WORLD INDUSTRIES, INC.

Dated: February 26, 2007
   Wilmington, Delaware

RLF1-3119612-1

B - 124

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  The Sea-Pac Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  The Second Sea-Pac Claim . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.  Alternative Dispute Resolution Provisions
        of the Sea-Pac Agreements . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.  In Denying the Stay Motion Itself, the
        Bankruptcy Court Acted Entirely Within Its Authority . . . . . . . . 14

    B.  The Stay Motion Should Be Denied . . . . . . . . . . . . . . . . . . . . 17

       i.  AWI Has a Contractual Right to Litigate, and
          Sea-Pac Has No Right to Arbitrate, Under the
          Terms of the Sea-Pac Agreements . . . . . . . . . . . . . . . . 18

       ii  Arbitration is Not an Appropriate Forum
          for Resolution of the Second Sea-Pac Claim . . . . . . . . . . . 25

           ➢  The Court Has Discretion to Deny
              Enforcement of Arbitration Provisions . . . . . . . . . . . 26

           ➢  The Bankruptcy Court May (and Should)
              Exercise Its Discretion to Deny the Stay Motion
              Because the Facts Here Mitigate Against Arbitration . . . . . 27

               ▪  Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim
                  with Prejudice . . . . . . . . . . . . . . . . . . . . . . . . 28

               ▪  Priority of Sea-Pac's Claims Relative to Other Creditors . . . . 28

               ▪  Applicability of the Administrative Expense Bar Date . . . . . 30

               ▪  Valuing Administrative Expense Claims . . . . . . . . . . . . 31

               ▪  Sea-Pac's Entitlement to Attorneys' Fees . . . . . . . . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B - 125

## TABLE OF AUTHORITIES

Cases

*Cirillo v. Tice Entertainment Inc.*, No. 89-3422XX, 1989 WL 144938,
(D.N.J. Nov. 20, 1989) .................................................................. 23

*Dougherty v. IRS (In re Dougherty)*, 187 B.R. 883 (Bankr. E.D. Pa. 1995) ................ 23

*Fricker v. Corestates Bank, N.A. (In re Fricker)*, 192 B.R. 388
(Bankr. E.D. Pa. 1996)...................................................................... 23

*Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ................. 14,15,16,17

*Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*,
885 F.2d 1149 (3d Cir. 1989).......................................................... 26

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).............. 14,15,16,17

*Independent Fire Insurance Co. v. Pender (In re Phillip)*, 948 F.2d 985
(5th Cir. 1991) ............................................................................. 23

*In re Adelphia Business Solutions, Inc.*, 296 B.R. 656 (Bankr. S.D.N.Y. 2003)........ 31

*In re Anderson*, 23 B.R. 174, 175 (Bankr. N.D. Ill. 1982) .......................... 23

*In re APF Co.*, 264 B.R. 344 (Bankr. D. Del. 2001) ............................... 28,29

*In re Barclay Bros., Inc.*, No. 82-03920G, 1986 Bankr. LEXIS 6995,
(Bankr. E.D. Pa. Feb. 6, 1986) ........................................................ 21

*In re Cardinal Industries. Inc.*, 142 B.R. 801 (Bankr. S.D. Ohio 1992) ............... 31

*In re Continental Airlines, Inc.*, 236 B.R. 318 (Bankr. D. Del. 1999),
*aff'd*, 279 F.3d 226 (3d Cir. 2002) ................................................ 30,31

*In re FBI Distribution Corp.*, 330 F.3d 36 (1st Cir. 2003) ........................ 31

*In re Oakwood Homes Corp.*, No. 02-13396PJW, 2005 WL 670310,
(Bankr. D. Del. Mar. 18, 2005) ........................................................ 32

*In re Slipped Disc*, 245 B.R. 342 (Bankr. N.D. Iowa 2000)........................ 27,28

*In re Startec Global Communications Corp.*, 300 B.R. 244 (D. Md. 2003) ........... 25

RLF1-3119812-1

*In re Tyler*, 166 B R 21 (Bankr W.D N Y 1994) .. ... . . . . . . . . . .. . ..-. - .. .23

*Insurance Co of North America v NGC Settlement Trust*
*(In re National Gypsum Co )*, 118 F 3d 1056 (5th Cir 1997) .. . . . . . .. .. .. ..26,29

*J E Adams Industries, Ltd v Aurora National Life Assurance Co*
*(In re J E Adams Industries, Ltd )*, 269 B R 808 (N D Iowa 2001) . . . . .. . ... .. .23,24

*Mintze v American General Financial Services Inc (In re Mintze)*,
434 F 3d 222 (3d Cir 2006) . . . . . . . . . . . . ... ..... ... ... . . . 4,17,18,26

*Nortex Trading Corp v Newfield*, 311 F 2d 163 (2d Cir 1962) . . . .. .. . .. .. .. 21

*Northern Specialty Sales, Inc v INTV Corp (In re Northern Specialty*
*Sales, Inc )*, 57 B R 557 (Bankr D Or 1986) . . .. .. ... . . . . .. .. . . ... .. . 24

*Schubert v Wellspring Media, Inc (In re Winstar Communications, Inc )*,
335 B R 556 (Bankr D Del 2005) . . . . . . . . . . . .. .. .. . .. . .. . . . . .25,28

*Shearson/American Express, Inc v McMahon*, 482 U S 200 (1987) . . .. .. . . . . 26

*Smith v Dowden*, 47 F 3d 940 (8th Cir 1995) . . .. .. .. .. . .. .. . . .... .. . .21

<u>Statutes</u>

9 U S C § 1 *et seq* . . . . . . . . .. . . . . . . . ..... .... . . . . ... . . .18

11 U S C § 108(a) . . . .. .. . . . .... . . .. . . . .. . ... .. .23,24

11 U S C § 108(b) ..... .. . . . ........ ...... . . . . . . . . . .. .. .23

11 U S C § 108(c) . . . . . . . . . .. .. . ... . . .. . .. . 21,22,23,24

11 U S.C § 362(a)(1) . . . . . . . . .. .. . . . . . . . . . . .. .22

11 U S C § 362(f) . . . . . . .. . . . . ... .... .. .. ... .. ...... .. .24

11 U S C § 502(a) . . . . . . .. .. . . . . . . . . . . . 20,21

28 U S C § 157(b)(2)(B) . . . . . . . . . ... . ... ... . .. . . .28

RLF1-3119812-1

B - 127

## PRELIMINARY STATEMENT

Having never before demanded arbitration at any time during the years since the parties' dispute first arose and became a continual issue of contention between them, Sea-Pac Sales Company ("*Sea-Pac*") seeks now to deprive Armstrong World Industries, Inc. ("*AWI*") of its contractual right to litigate that dispute, even though that dispute underlies the claims that Sea-Pac itself has asserted against AWI in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") In its claims, Sea-Pac asserts that it is entitled to payment of its asserted claims as "administrative expenses" in AWI's chapter 11 case with priority over the claims of other creditors. AWI has objected to the allowance and priority of such claims

AWI's right to litigate (and not arbitrate) its disputes with Sea-Pac is a contractual right, bargained-for and expressly provided in the Sea-Pac Agreements (as defined hereinafter) Moreover, by asserting administrative expense priority for its claims, Sea-Pac itself has raised bankruptcy issues that it concedes must be determined by the Bankruptcy Court. Nevertheless, based upon a factually and legally untenable conception of when the parties' dispute arose and its erroneous conclusions about its ability to delay requesting arbitration, Sea-Pac seeks to avoid Bankruptcy Court scrutiny of its claims and, instead, to compel arbitration

After hearing the parties, the Bankruptcy Court rejected Sea-Pac's arguments and denied its *Motion (i) to Stay Objection by Armstrong World Industries, Inc to Sea-Pac's Proof of Claim No 4854 Pending Arbitration, and (ii) for Relief from*

1

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D 1.
9830] [A-3][1] (the "*Stay Motion*")   Sea-Pac now appeals

### STATEMENT OF CASE

The Bankruptcy Court's denial of Sea-Pac's motion to stay the

proceedings on AWI's claim objection must be affirmed.  Under the explicit terms of the

dispute resolution provisions of the Sea-Pac Agreements, AWI has a contractual right to

litigate the dispute underlying Sea-Pac's claims, and Sea-Pac has no right to compel

arbitration under these circumstances   As Sea-Pac itself concedes,[2] AWI's objection to

Sea-Pac's claims raises bankruptcy issues that the Bankruptcy Court, and not an

arbitration panel, should decide   These include the following:

> ➤ the effect of Sea-Pac having filed a proof of claim and then withdrawing it "with prejudice";
>
> ➤ whether any portion of Sea-Pac's claims are entitled to administrative expense priority;
>
> ➤ if so, whether Sea-Pac is barred from asserting administrative expenses by virtue of Sea-Pac's failure to comply with the administrative expense bar date established in AWI's chapter 11 case;
>
> ➤ whether the Bankruptcy Court's Executory Contracts Bar Date Order (as defined hereinafter) extended Sea-Pac's time to assert any alleged administrative expense against AWI;
>
> ➤ if Sea-Pac may assert an administrative expense, how any such administrative expense would be valued; and

---

[1] All references to the record, as contained in *Appellant's Appendix to Opening Brief*, shall be made herein as "A-[tab no ] "  All references to the record, as contained in *Appellee's Appendix to Answering Brief*, shall be made herein as "B-[tab no ] "

[2] In the Stay Motion, Sea-Pac states that "arbitration of Sea-Pac's claims will not determine the priority of claims – merely the amount "  Stay Motion, ¶ 16 [A-3]

RLF1-3119812-1

➢  whether Sea-Pac is entitled to attorneys' fees

Included in Sea-Pac's claims is a putative administrative expense arising from AWI's alleged breach of an exclusivity provision in the Sea-Pac Agreements during the pendency of AWI's chapter 11 case. Thus, determining Sea-Pac's right to administrative expense priority is inextricably intertwined with the underlying factual issues of whether the alleged breach occurred, when Sea-Pac had notice of the alleged breach, how Sea-Pac was damaged (if at all) by its continued performance under the Sea-Pac Agreements despite full knowledge of the events giving rise to the alleged breach, how AWI's estate benefited (if at all) from the alleged breach, and the effect of Sea-Pac remaining silent for years and never seeking relief from the Bankruptcy Court – or even an arbitration panel – with respect to the alleged postpetition breach. Accordingly, even if the dispute resolution provisions of the Sea-Pac Agreements conferred upon Sea-Pac the ability to compel arbitration now (which they do not), the overwhelming bankruptcy policies implicated in this matter compel the exercise of discretion to deny the Stay Motion.

Without reaching the need to exercise such discretion, the Bankruptcy Court determined – correctly – not to stay the claim objection proceedings or compel arbitration, based upon finding as a factual matter that the dispute between AWI and Sea-Pac arose as early as 2003 and that the condition precedent to AWI's contractual right to litigate (namely, no party initiating arbitration within a specified period of time after the dispute arose) had been satisfied. In making these determinations itself, rather than putting the matter to an arbitration panel, the Bankruptcy Court acted within its inherent authority as a court to determine the litigability of the matters brought before it.

3

The two broad issues raised on this appeal by Sea-Pac are as follows:

i    Whether a court, rather than a panel of arbitrators, is the proper forum to interpret and apply a contractual provision that expressly permits parties to litigate after they have not sought arbitration of their dispute

ii.   Whether AWI's contractual right to litigate disputed issues with Sea-Pac should be enforced, where the parties' contracts expressly allow litigation under the circumstances, and the overlay of bankruptcy issues demonstrates that arbitration of the parties' dispute would be inappropriate in any event.

Upon appeal, a bankruptcy court's findings of fact are reviewed under a clearly erroneous standard, and its conclusions of law are reviewed *de novo. See Mintze v Am Gen Fin Services Inc (In re Mintze)*, 434 F 3d 222, 227-28 (3d Cir. 2006)

## PROCEDURAL HISTORY

On December 6, 2000, AWI and two of its affiliated debtors (collectively, the "*Debtors*") each commenced in the Bankruptcy Court a case under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") By order entered on August 18, 2006 [D.I 9755] (the "*Confirmation Order*"), this Court confirmed AWI's *Fourth Amended Plan of Reorganization, as Modified*, dated February 21, 2006 (the "*Plan*") On October 2, 2006, the "Effective Date" under the Plan occurred, and AWI emerged from chapter 11 protection

Sea-Pac filed a proof of claim (Claim No 3528, the "*Original Sea-Pac Claim*") on or about August 30, 2001, asserting certain liquidated and unliquidated, contingent and non-contingent, prepetition and postpetition obligations of AWI to Sea-Pac, in estimated amounts aggregating in excess of $7 million  On May 29, 2003, Sea-

Pac filed its *Withdrawal of Proof of Claim No. 3528* [D.I. 4841] [B-2], voluntarily

withdrawing the Original Sea-Pac Claim "with prejudice."

By order dated March 21, 2003 [D.I. 4301] (the "*Administrative Expense*

*Bar Date Order*"), the Bankruptcy Court set November 24, 2003 (the "*Administrative*

*Expense Bar Date*") as the deadline for filing certain proofs of administrative expense

claims against AWI in the chapter 11 case. Pursuant to the Administrative Expense Bar

Date Order, any creditor asserting a claim for an administrative expense against AWI (of

the type identified in the Administrative Expense Bar Date Order) was required to file a

proof of such administrative expense on or before the Administrative Expense Bar Date.

The Administrative Expense Bar Date Order identified six categories of claims explicitly

subject to the Administrative Expense Bar Date, including the following:

> Any Administrative Expense for breach of an obligation – contractual,
> statutory or otherwise – by AWI, including any environmental liability
> (other than any environmental liability with respect to property that is
> currently owned or operated by AWI).

Sea-Pac did not file a proof of administrative expense for any claims relating to the Sea-

Pac Agreements on or before the Administrative Expense Bar Date.

By Order dated September 29, 2005 [D.I. 8652] (the "*Executory*

*Contracts Bar Date Order*"), the Court set November 8, 2005 (the "*Executory Contracts*

*Bar Date*") as the deadline by which all parties to "Previously Scheduled Contracts"

would be required to file proofs of claim for any and all claims against AWI relating to

such Previously Scheduled Contracts. Each of the Sea-Pac Agreements was identified in

the Executory Contracts Bar Date Order as a "Previously Scheduled Contract," that is, as

a contract that originally was listed by AWI on Schedule G to its Schedules of Assets and

5

Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory. The Sea-Pac Agreements were identified as Previously Scheduled Contracts because they expired according to their terms during the pendency of AWI's chapter 11 case without being either assumed or rejected pursuant to section 365 of the Bankruptcy Code

On or about November 8, 2005, Sea-Pac filed a second proof of claim against AWI (Claim No. 4854, the "*Second Sea-Pac Claim*") [A-1], in the amount of $4.9 million, plus interest and attorneys' fees. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority

On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc to the Proof of Claim of Sea-Pac Sales Company (Claim No 4854)* [D.I. 9683] [A-2] (the "*Claim Objection*").[3]

In response to the Claim Objection, on September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc to the Proof of Claim of Sea-Pac Sales Company (Claim No 4854)* [D I 9832] [A-5] (the "*Claim Answer*"), together with a supporting memorandum of law [D.I. 9833] [A-6] (the "*Answering*

---

[3] In the Claim Objection, AWI objects to the Second Sea-Pac Claim on a number of grounds, including that (i) AWI has an absolute defense to the Commercial Agreement Breach Claim because Sea-Pac failed to meet the annual mill shipment requirements required to maintain its exclusivity as AWI's distributor within the relevant territory, (ii) Sea-Pac is barred from asserting entitlement to any administrative expense arising prior to November 24, 2003 because Sea-Pac failed to assert such administrative expenses as required by the Administrative Expense Bar Date, and (iii) Sea-Pac's Commercial Agreement Breach Claim is not entitled to administrative expense priority in any event because, among other things, such claim arises from an alleged breach of a prepetition contract for which the proper remedy would have been to seek to compel AWI to assume or reject the Commercial Agreement -- instead, Sea-Pac continued performing for years after receiving formal notice of the facts giving rise to the alleged breach -- and Sea-Pac has conferred no benefit on AWI's estate  [A-2]

6

*Memorandum*"), and the *Declaration of Jared Williams in Support of Sea-Pac's Answer to Armstrong's Objection* [D.I 9834] [B-3] (the "*Williams Declaration*")

Also on September 15, 2006, Sea-Pac filed its Stay Motion, which represents the first indication of Sea-Pac's interest in arbitrating the parties' disputes. In substance, the Stay Motion asserted that the Sea-Pac Agreements require arbitration of all disputes arising thereunder, and, therefore, the Bankruptcy Court should stay proceedings on the Claim Objection pending arbitration. *Id* Additionally, Sea-Pac requested that the Bankruptcy Court grant relief from the automatic stay or the discharge injunction to allow Sea-Pac to proceed with arbitration with respect to the claims asserted in the Second Sea-Pac Claim *Id*

In response to the Stay Motion, on October 6, 2006, AWI filed its *Objection of Armstrong World Industries, Inc to Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries. Inc to Sea-Pac's Proof of Claim No 4854 Pending Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D I 9914] [A-4] (the "*Stay Objection*") [4]

On October 16, 2006, Sea-Pac filed its *Reply of Sea-Pac Sales Company to Debtors' Objection to Sea-Pac Sales Company's Motion (i) to Stay Objection by*

---

[4] Simultaneously, AWI also filed its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No 4854)* [D I 9913] [B-4], which sets forth objections of AWI to any additional administrative expenses asserted by Sea-Pac in any amendment or deemed amendment to the Second Sea-Pac Claim, as well as certain counterclaims of AWI, in each case with respect to activities occurring during the pendency of AWI's chapter 11 case Because the alleged claims and counterclaims described in such pleading are independent of the Sea-Pac Agreements, they are not subject to the Stay Motion

7

*Armstrong World Industries, Inc to Sea-Pac's Proof of Claim No 4854 Pending*

*Arbitration, and (ii) for Relief from the Automatic Stay or, in the Alternative, for Relief*

*from the Discharge Injunction* [D I 9951, Exh A] [A-7]

Arguments of the parties on the Stay Motion and Stay Objection were

heard before the Honorable Judith K Fitzgerald at a hearing in the Bankruptcy Court on

October 23, 2006 (the "*Hearing*"), at the conclusion of which the court denied the Stay

Motion. In denying the Stay Motion, the Bankruptcy Court found as follows:

> The dispute clearly in Sea-Pac's view has nothing to do with the bar date
> or the debtor's agreement to extend the contract or assume the contract It
> has to do with the fact that under Sea-Pac's construction of the contract,
> the debtor couldn't appoint a second distributor and under the debtor's
> construction of the contract, the debtor could That's the dispute. When it
> arose, I think Sea-Pac had 40 days from that date to make a determination
> to invoke arbitration, and whatever bells and whistles you had to get
> through in order to make that invocation are procedural hurdles but they
> were not hurdles that could not have been accomplished in the context of
> the bankruptcy case

Tr of Hearing, at 19-20, lines 24-10 [D I. 10023] [A-10]

> [T]he fact that Sea-Pac didn't invoke the arbitration simply let the dispute
> abide but it let it abide in litigation mode as opposed to arbitration mode I
> think Sea-Pac has not properly invoked the right to arbitration under the
> contract I should say, has untimely invoked the right to arbitration under
> the contract, and as a result, I don't think that there is any longer a viable
> arbitrable issue So I don't need to get into where the initial dispute
> should be heard in the first instance because I think the untimeliness of the
> invocation of the right means you're here

Tr. of Hearing, at 21, lines 15-25

On November 20, 2006, the Bankruptcy Court entered its *Order Denying*

*Sea-Pac Sales Company's Motion (i) to Stay Objection by Armstrong World Industries,*

*Inc to Sea-Pac's Proof of Claim No 4854 Pending Arbitration, and (ii) for Relief from*

8

*the Automatic Stay or, in the Alternative, for Relief from the Discharge Injunction* [D.I 10117] [A-8].

Sea-Pac filed its *Notice of Appeal* to this Court [D I 10134] [A-9] on November 30, 2006, followed by its *Statement of Issues and Designation of Record on Appeal* [D.I 10161] on December 11, 2006 AWI filed its *Counter-Statement of Issues and Counter-Designation of Record with Respect to Sea-Pac Sales Company's Statement of Issues and Designation of Record on Appeal* [D I 10195] on December 21, 2006.

## FACTUAL BACKGROUND

Except to the extent supplemented by certain relevant facts set forth herein, the material facts, including the relationship between the parties and the terms of the Sea-Pac Agreements, are set forth in the Claim Objection

### A.    *The Sea-Pac Agreements*

For over seven years, Sea-Pac has been a wholesale distributor for AWI's commercial and residential products  Claim Objection, ¶ 2 [A-2]  The parties' pertinent contractual relationship began on or about February 15, 1999, prior to the commencement of AWI's chapter 11 case, when AWI and Sea-Pac entered into (i) a Commercial Flooring Products Distributorship Agreement (the "*Commercial Agreement*") and (ii) a Residential Flooring Products Distributorship Agreement and Sales/Service Center Agreement (the "*Residential Agreement*" and together with the Commercial Agreement, the "*Sea-Pac Agreements*")  *Id*  Pursuant to the Sea-Pac Agreements, AWI appointed Sea-Pac to be a wholesale distributor of AWI's commercial resilient floor covering products and residential resilient flooring products, respectively, in the northwestern

9

United States (with certain exceptions)  *Id*  In connection with the Residential

Agreement, AWI also appointed Sea-Pac to be a Regional Distribution Center ("*RDC*")

at its Kent, Washington location to deliver products to certain designated customers

located in the region  Claim Objection, ¶ 3 [A-2]

The Sea-Pac Agreements expired in accordance with their terms on

February 15, 2004. Claim Objection, ¶ 7 [A-2]  By letter agreement between the parties,

the terms of the Sea-Pac Agreements were extended through March 31, 2004  Claim

Answer, ¶ 7 [A-5]. Thereafter, the parties continued to do business and, on or about

August 27, 2004, AWI and Sea-Pac entered into a new interim letter agreement on

similar terms as existed at the expiration of the Sea-Pac Agreements  Claim Objection,

Exh  A. [A-2]  The interim agreement expired on December 31, 2004  Claim Objection,

¶ 7 [A-2]

Sometime after Sea-Pac and AWI entered into the Sea-Pac Agreements,

and continuing throughout the course of their relationship, the parties disagreed about

various provisions in both the Commercial Agreement and the Residential Agreement.

Pursuant to the Commercial Agreement, Sea-Pac's status as an exclusive

distributor was dependent upon Sea-Pac's satisfaction of certain minimum purchase

requirements, called "annual mill shipment requirements," for AWI's commercial

resilient floor covering products  Second Sea-Pac Claim, Exh. A; Commercial

Agreement, ¶ 3 [A-1].  As a result of Sea-Pac's failure to meet its annual mill shipment

requirements in 2002, AWI notified Sea-Pac that it would appoint a second distributor of

commercial flooring products  Claim Objection, ¶¶ 5-6 & Exh  C [A-2]  In 2003, AWI

appointed Pacific Mat & Commercial Flooring PLLC as a second distributor to distribute

10

AWI's commercial flooring products in the region previously covered exclusively by Sea-Pac. Claim Objection, ¶ 6 [A-2]. Sea-Pac claims that, as early as March 2003, Sea-Pac informed AWI that it believed the appointment of Pacific-Mat to constitute a breach of the Commercial Agreement. Williams Declaration, ¶ 13 [B-3, at 42-43]. Sea-Pac states that it continued to allege such breach on numerous occasions thereafter. *Id*

Pursuant to the Residential Agreement, AWI agreed to compensate Sea-Pac for its RDC services according to a fee schedule established by AWI. Second Sea-Pac Claim, Exh. B; Residential Agreement, ¶ 12(g) [A-1]. According to Sea-Pac, "[s]oon after the RDC system was implemented, [it] began to realize that AWI was not reimbursing it in full for RDC activities and [it] complained to AWI about this." Williams Declaration, ¶ 7 [B-3, at 40]. After this initial complaint, Sea-Pac consistently alleged, over the course of four years, that it was being under-reimbursed for its RDC services. Williams Declaration, ¶ 8 [B-3, at 40-41] & Exh. 6-7 [B-3, at 58-65]

### B.    *The Second Sea-Pac Claim*

On or about November 8, 2005, Sea-Pac filed the Second Sea-Pac Claim against AWI in the amount of $4.9 million, plus interest and attorneys' fees. Second Sea-Pac Claim [A-1]. Sea-Pac contends that no less than $4.5 million of the Second Sea-Pac Claim is entitled to administrative expense priority. Attachment to Second Sea-Pac Claim, ¶ 3 [A-1]

The Second Sea-Pac Claim arises from alleged breaches by AWI of the Sea-Pac Agreements and is comprised of the following components:

    i    The Commercial Agreement Breach Claim: Sea-Pac alleges that AWI breached the Commercial Agreement by "its appointment and

11

provision of product to a second distributor within [Sea-Pac's] exclusive territory," resulting in damages to Sea-Pac in an amount no less than $2 million  Attachment to Second Sea-Pac Claim, ¶ 2 [A-1] Sea-Pac asserts that "*AWI's breach began in 2003* and such breach continued through the term and the extensions of [the Commercial Agreement] . " *Id* (emphasis added). Sea-Pac further contends that the entire Commercial Agreement Breach Claim is entitled to administrative expense priority because it is "attributable to [AWI's] postpetition breach of [the Commercial Agreement] which Sea-Pac was induced to perform pending [AWI's] assumption or rejection of it." *Id* at ¶ 3.

ii    <u>The Residential Agreement Breach Claim</u>:  Sea-Pac asserts that AWI breached the Residential Agreement and "was unjustly enriched, by, among other conduct, failing to reimburse Sea-Pac for RDC functions and services " Attachment to Second Sea-Pac Claim, ¶ 2 [A-1]  Sea-Pac further alleges that "*AWI's illegal conduct began in 2000* and continued through the term of and extension of [the Residential Agreement] and resulted in damages and/or restitution owed in an amount no less than $2.9 million." *Id* (emphasis added). Sea-Pac contends that $2.5 million of the $2.9 million in RDC functions and services for which AWI allegedly failed to reimburse Sea-Pac were provided postpetition and, therefore, constitute an administrative expense claim  *Id* at ¶ 3

iii    <u>Attorneys' Fees</u>:  Finally, the Sea-Pac Claim asserts that "[p]ursuant to the provisions of the applicable agreements," Sea-Pac is entitled to attorneys' fees and interest if AWI disputes its claims  Attachment to Second Sea-Pac Claim, ¶ 2 [A-1]

C.    **Alternative Dispute Resolution**
       **Provisions of the Sea-Pac Agreements**

With respect to alternative dispute resolution mechanisms under the Sea-Pac Agreements, the parties agreed as follows:

[AWI] and [Sea-Pac] agree to attempt to resolve promptly any dispute arising out of this Agreement by negotiation between executives of [Sea-Pac] and [AWI] who have authority to settle the dispute.  If any dispute is not resolved by negotiation within 30 days of its arising, then, at the written request of either party within an additional 10 days, the dispute shall be submitted to mediation with a mediator chosen jointly

Second Sea-Pac Claim, Exh A-B, Commercial Agreement, ¶ 24; Residential Agreement,

¶ 29 [A-1]. The Sea-Pac Agreements further provide as follows:

> In the absence of a request for mediation, or if any dispute is not resolved within 90 days following a request for mediation, then, at the option of either party, such dispute shall be submitted to binding arbitration in Philadelphia, Pennsylvania, under the Commercial Arbitration Rules of the American Arbitration Association. [ ].

*Id* , Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30. Notably, this paragraph

concludes with the following statement:

> *If arbitration is not initiated within 30 days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [—].*

*Id.* (emphasis added) (the "*Litigation Clause*") Tellingly, in its Opening Brief, Sea-Pac

omits any reference to the Litigation Clause in its description of the relevant provisions of

the Sea-Pac Agreements, instead choosing to bury it in a footnote on page 18 of its

Opening Brief. Opening Brief, at 18 Such omission falsely creates the impression that

the requested arbitration is mandated by the Sea-Pac Agreements. *Id.* at 7 & 18.

## ARGUMENT

The Bankruptcy Court's denial of Sea-Pac's Stay Motion must be affirmed

because (i) it is for a court, and not a panel of arbitrators, to decide whether a contractual

right to litigate may be exercised, where the parties' agreement expressly provides such

right after the failure of the parties to initiate arbitration, (ii) AWI's right to litigate its

dispute with Sea-Pac is currently enforceable in court, based upon the Bankruptcy

Court's unchallenged factual finding that Sea-Pac's arbitration request was untimely, and

(iii) in any event, arbitration is inappropriate in light of the bankruptcy issues that are

inextricably intertwined with resolution of the Second Sea-Pac Claim

13

A.   *In Denying the Stay Motion Itself, the*
     <u>*Bankruptcy Court Acted Entirely Within Its Authority*</u>

        Sea-Pac contends that the Bankruptcy Court improperly usurped the role

of an arbitration panel in deciding whether Sea-Pac had "waived" its right to have

arbitrators decide the merits of the parties' dispute  Such argument is premised on a

fundamental mischaracterization of the nature of the dispute resolution provisions of the

Sea-Pac Agreements and results in a miscasting of the issue before the Bankruptcy Court

below and at issue in this appeal.

        The dispositive issue is not, as Sea-Pac contends, whether Sea-Pac

"waived" its arbitration right due to untimely assertion – although the Bankruptcy Court

did indeed find that Sea-Pac had lost its right to compel arbitration due to the lapse of the

period of time agreed to in the Sea-Pac Agreements  The issue here is really whether

AWI's contractual right to litigate has become enforceable as a result of that lapse of

time  As such, the issue is one that is squarely within a court's competence and authority

to determine as a straightforward matter of contract application and does not implicate

the "questions of arbitrability" upon which Sea-Pac focuses.

        Sea-Pac would have this Court believe that the dispute resolution

provisions of the Sea-Pac Agreements are just like the provisions at issue in cases such as

*Howsam v  Dean Witter Reynolds, Inc* , 537 U.S  79 (2002), and *Green Tree Fin'l Corp*

*v  Bazzle*, 539 U S  444 (2003)  Unfortunately for Sea-Pac, they are fundamentally

different – the dispute resolution provisions of the Sea-Pac Agreements not only

expressly limit the availability of arbitration as a remedy, but more importantly, the

Litigation Clause in each of the Sea-Pac Agreements expressly permits recourse to

14

litigation  As a result, Sea-Pac misapplies here the principles set forth in *Howsam* and *Green Tree* for application in different circumstances.

In *Howsam*, the parties' agreement contained a broad, comprehensive arbitration clause that provided for arbitration of all controversies  *Howsam*, 537 U.S  at 81.  In that context, the United States Supreme Court concluded that the question in that case – whether a statute of limitations imposed by the NASD's arbitration rules barred the petitioner's claim – should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator  *Id*  at 85.  Similarly, in *Green Tree*, the parties' agreements contained broad, comprehensive arbitration clauses that provided for arbitration of all controversies. *Green Tree*, 539 U S  at 448   Again, in that context, the Court concluded that the question in that case – whether the contract contemplated class arbitration -- should be presumed to be for arbitrators because it was not the sort of question that the contracting parties likely would have expected to be decided by a court rather than an arbitrator  *Id*  at 451-52

Unlike the arbitration clauses in *Howsam* and *Green Tree*, however, the dispute resolution provisions of the Sea-Pac Agreements are not open-ended   Instead, they provide only finite periods for the exclusive employment of certain alternative dispute resolution mechanisms – first, negotiations during the 30 days after a dispute arises, then mediation if initiated within the next 10 days, then arbitration if initiated within the next 30 days  *See* Second Sea-Pac Claim, Exh. A-B Commercial Agreement, ¶¶ 24 & 25; Residential Agreement, ¶¶ 29 & 30 [A-1]  And then, notably unlike the agreements in *Howsam* and *Green Tree*, which are silent on the question of what happens

15

in the event that arbitration is not initiated, the Sea-Pac Agreements very specifically permit ultimate recourse to litigation *See* Second Sea-Pac Claim, Exh A-B Commercial Agreement, ¶ 25; Residential Agreement, ¶ 30 [A-1]   Viewed in this context, it could not be clearer that the provisions at issue in this case were meant only to afford a limited opportunity for alternative dispute resolution rather than to impose a permanent commitment to it, and that, therefore, after completion of a 70-day hiatus without use of arbitration, the ability to litigate is expressly returned to the parties as a matter of contractual right under the terms of their agreements

Indeed, the Bankruptcy Court implicitly recognized this contractual construction, noting "that Sea-Pac didn't invoke the arbitration simply let the dispute abide     in litigation mode as opposed to arbitration mode " Tr. of Hearing, at 21, lines 15-17 [A-10]   This led directly to the Bankruptcy Court's conclusion that "I don't need to get into where the initial dispute should be heard in the first instance because I think the untimeliness of the invocation of the [arbitration] right means you're here " *Id* , lines 22-25

Even if the rubric in *Howsam* and *Green Tree* for analyzing questions of arbitrability applied, the Court's conclusion must still be that it is for a court rather than an arbitration panel to decide the question of the litigability of the parties' dispute under the Sea-Pac Agreements   As explained above, the Sea-Pac Agreements are not simply "arbitration" agreements to be analyzed in the sense that Sea-Pac proposes, but more accurately they are "litigation" agreements   As such, the contracting parties surely would have expected that, if no party requested arbitration, and the other party had commenced a judicial proceeding to determine a dispute, the judicial decisionmaker would determine

16

the gateway question of whether one party properly invoked its right to hale the other before the court

It is worth noting, also, that the questions of arbitrability in *Howsam* and *Green Tree* raised issues that the Supreme Court considered to be within the specialized expertise of the arbitrators in those cases. In *Howsam*, the Court presumed that NASD arbitrators would be more expert than a court in interpreting the statute of limitations provided in their own rules. *Howsam*, 537 U.S. at 85. In *Green Tree*, the Court expected that the arbitration panel would be better able to address arbitration procedures implicated by the problems of class arbitration. *Green Tree*, 539 U.S. at 453. Nothing about the preliminary issue in this appeal – when the dispute between Sea-Pac and AWI arose – makes arbitration more appropriate than litigation. To the contrary, in light of the bankruptcy issues implicated by the Second Sea-Pac Claim, it is more appropriate that the Bankruptcy Court rather than an arbitration panel make the determination regarding AWI's right to litigate those issues.

For all of the reasons set forth above, the Bankruptcy Court was right — it is for a court to decide whether to find and enforce AWI's contractual right to litigate its dispute with Sea-Pac.

## B.    *The Stay Motion Should Be Denied*

The Bankruptcy Court's decision to deny the Stay Motion must be affirmed because Sea-Pac has failed to establish any basis for the relief it requested. Under the principles enunciated by the Third Circuit in *Mintze*, the Court must consider the following three issues to determine whether or not to compel this matter to be

17

resolved by arbitration: (i) whether the dispute is governed by an enforceable arbitration clause, (ii) whether the court has discretion to deny enforcement of the arbitration clause (*i e*, whether the Bankruptcy Code conflicts with the Federal Arbitration Act, 9 U S C §§ 1-16 (the "*FAA*"), in such a way as to bestow discretion on the Bankruptcy Court to decline to enforce an otherwise applicable arbitration provision), and (iii) if the Bankruptcy Court has such discretion, whether the Bankruptcy Court should exercise its discretion to deny arbitration. *Mintze*, 434 F 3d 222  Application of the *Mintze* analysis to the instant case makes clear that Sea-Pac's Stay Motion must be, and was, correctly denied

Specifically, the Court should find that (i) the dispute is not governed by an enforceable arbitration clause, and (ii) arbitration is not an appropriate forum for resolution of the issues raised by the Second Sea-Pac Claim.

> ### i. *AWI Has a Contractual Right to Litigate,*
> ### *and Sea-Pac Has No Right to Arbitrate,*
> ### <u>*Under the Terms of the Sea-Pac Agreements*</u>

As set forth above, it is clear from the face of the Sea-Pac Agreements that they do not mandate arbitration as Sea-Pac suggests. To the contrary, the Sea-Pac Agreements expressly permit AWI to litigate if Sea-Pac has not timely initiated arbitration

The undisputed facts clearly demonstrate that neither Sea-Pac nor AWI elected to proceed with arbitration within the time period provided in the Sea-Pac Agreements  The Sea-Pac Agreements include the Litigation Clause, which provides a deadline by which a party must elect arbitration: "*If arbitration is not initiated within 30*

18

*days of its becoming an option, as provided above, either party may resort to litigation pursuant to paragraph [--].*" Under the terms of the Sea-Pac Agreements, arbitration became an "option" within 40 days of the dispute arising and, therefore, AWI was permitted to litigate its dispute with Sea-Pac within 70 days after the dispute arose so long as neither Sea-Pac nor AWI had requested arbitration prior to such time.[5]

The Bankruptcy Court found, as a factual matter, that the substance of the Second Sea-Pac Claim is a dispute that arose years ago[6] This finding is based on ample evidence in the record, not least of which is Sea-Pac's own assertion in the Second Sea-Pac Claim that the alleged breaches forming the basis of its claims occurred as early as 2000 and 2003  *See* Attachment to Second Sea-Pac Claim, ¶ 2 [A-1][7] Sea-Pac has not contested this evidence or identified any contrary evidence to the effect that the Bankruptcy Court's finding of fact regarding the date that the parties' dispute arose is clearly erroneous

Indeed, Sea-Pac does not even challenge in this appeal the Bankruptcy Court's conclusion that the dispute between the parties arose many years before AWI

---

[5] The dispute resolution provisions provide that, after a dispute arises, the parties have 30-day negotiation period and an additional ten days to request mediation, after which either party could submit the dispute to binding arbitration

[6] "The dispute    has to do with the fact that under Sea-Pac's construction of the contract, the debtor couldn't appoint a second distributor and under the debtor's construction of the contract, the debtor could  That's the dispute " Tr  of Hearing, at 20, lines 1-5 [A-10]

[7] Other allegations by Sea-Pac include the following: "Sea-Pac further alleges that it objected on numerous occasions to the appointment of a second distributor    " Claim Answer, ¶6 [A-5]; "Sea-Pac consistently complained the [*sic*] AWI's RDC fees did not reimburse it for its services " Answering Memorandum, at 3 [A-6] and Williams Declaration, ¶¶ 7-8 [B-3, at 40-41] & Exh  6-7 [B-3, at 58-65]; "I pointed out to AWI representatives on many occasions that the appointment of a second distributor was not only a poor business decision, but also a breach of AWI's contract with Sea-Pac  Indeed, I recall specifically stating this to Rik Born, AWI's vice-president in March 2003 " Williams Declaration, ¶13 [B-3, at 42]

19

B - 146

objected to the Second Sea-Pac Claim — except to contend that the dispute regarding its claims first arose on July 23, 2006, *i e*, only when AWI filed its Claim Objection, arguing that no dispute could exist beforehand because under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest objects " *See* Opening Brief, at 13; 11 U.S.C § 502(a)   Such argument is untenable for at least three reasons: (i) it is unsupported by Sea-Pac's own evidence, which demonstrates years of disagreement between the parties regarding the alleged breaches underlying the Second Sea-Pac Claim, (ii) it misapplies a procedural bankruptcy rule to answer a question of fact, and (iii) it leads to absurd results

First, it is shocking that Sea-Pac would attempt to gainsay the existence of a dispute with AWI prior to the filing of the Claim Objection, or even of the Second Sea-Pac Claim   As the Bankruptcy Court recognized at the Hearing, the mere allegation of breach of an agreement is indicative of a dispute between the parties [8]   In this case, Sea-Pac states that it made such allegations as early as March 2003, and the dispute has gone unresolved ever since   Instead of representing the beginning, the Second Sea-Pac Claim and the Claim Objection are nothing more than the latest developments in a dispute that stretches back at least three years.

Second, to determine an underlying issue of fact, Sea-Pac relies upon a procedural rule that merely creates a presumption of claim allowance for bankruptcy purposes   As noted by the Bankruptcy Court, such rules can hardly dictate whether

---

[8] "It seems to me that the dispute arises as soon as Sea-Pac decides that it has a claim that it thinks that Armstrong is in breach " Tr  of Hearing, at 18, lines 20-22 [A-10]

20

and/or when a dispute arises[9]  Indeed, what if AWI had never commenced a bankruptcy case?  Furthermore, if Sea-Pac's application of section 502(a) were carried through to its logical conclusion, any pre-existing dispute between parties could be made to disappear unilaterally by the magic of filing a proof of claim, only to become a dispute again once the debtor filed an objection  Such an on-again/off-again theory of disputes is not credible

Finally, Sea-Pac's idea that the dispute between the parties could not exist until the Claim Objection was filed creates an impossible, Catch-22 situation that makes nonsense of the dispute resolution provisions of the Sea-Pac Agreements  Because the filing of a proof of claim and a responsive objection are traditionally considered to be acts in the nature of civil litigation, *see, e g , Smith v Dowden*, 47 F 3d 940, 943 (8th Cir 1995); *Nortex Trading Corp v Newfield*, 311 F 2d 163, 164 (2d Cir 1962); *In re Barclay Bros , Inc* , No 82-03920G, 1986 Bankr LEXIS 6995, at *3 (Bankr. E D Pa Feb 6, 1986), Sea-Pac's contention forces an interpretation of the Sea-Pac Agreements that enables AWI and Sea-Pac to initiate litigation only after 70 days have passed since the initiation of litigation  This cannot be right.

Equally unavailing to Sea-Pac is its argument that the time to initiate arbitration under the Sea-Pac Agreements was tolled by section 108(c) of the Bankruptcy Code  Section 108(c), however, is neither implicated nor applicable to aid Sea-Pac in

---

[9] "You know, whether there's been a proof of claim bar date or not at that point in time is a bankruptcy issue, but your dispute because you think that Armstrong breached the contract because it appointed a second distributor is the date by which that 40-day period begins " Tr of Hearing, at 18-19, lines 22-2 [A-10]

RLF1-3110812-1

these circumstances, and its reliance thereon is entirely misplaced. Section 108(c)

provides in relevant part as follows:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy
> proceeding, or an agreement fixes a period for commencing or continuing
> a civil action in a court other than a bankruptcy court on a claim against
> the debtor . . and such period has not expired before the date of the filing
> of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period
>     occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under
>     section 362, 922, 1201, or 1301 of this title, as the case may be, with
>     respect to such claim.

11 U.S.C § 108(c)

Sea-Pac's tolling argument fails first because it begins with a premise that

is not true – that Sea-Pac was prevented from initiating arbitration of its dispute with

AWI by the operation of the automatic stay under section 362 of the Bankruptcy Code.

In truth, to the extent that Sea-Pac asserts, as it does, that AWI breached the Sea-Pac

Agreements after the commencement of AWI's chapter 11 case, Sea-Pac was never

enjoined by the automatic stay from commencing arbitration with respect to such alleged

breach  As applicable to the commencement of arbitration, the automatic stay only

applies to "the commencement or continuation . . of a judicial, administrative, or other

action or proceeding against the debtor that was or could have been commenced before

the commencement of the [chapter 11 case] . .   or to recover a claim against the debtor

that arose before the commencement of the [chapter 11 case]."  11 U S C. § 362(a)(1)

Regardless of whether Sea-Pac's claims are entitled to administrative expense priority – a

different issue from when the claims arose – it is clear that Sea-Pac's claims for

postpetition breach of the Sea-Pac Agreements could not have been commenced

22

prepetition and do not involve claims arising prior to the commencement of AWI's chapter 11 case. Accordingly, Sea-Pac was not enjoined from seeking arbitration, and section 108(c) of the Bankruptcy Code is inapplicable  *See Cirillo v  Tice Entm't Inc* , No  89-3422XX, 1989 WL 144938, at *1-2 (D N J  Nov  20, 1989) (creditor not barred by automatic stay from commencing action against debtor for alleged postpetition breach of a prepetition contract); *In re Anderson*, 23 B.R  174, 175 (Bankr  N D  Ill. 1982) (creditor not barred by automatic stay from commencing action against debtor for alleged postpetition fraud under a prepetition contract)

Consistent with the application of the automatic stay to claims that arise prepetition, section 108(c) has been interpreted to apply only to those time periods that commence *before* the filing of a bankruptcy petition, rather than after  *See Fricker v. Corestates Bank, N A  (In re Fricker)*, 192 B.R  388, 394 (Bankr. E D. Pa  1996) (recognizing that each of the subsections of section 108 implicitly relates to prepetition claims); *Dougherty v  IRS (In re Dougherty)*, 187 B.R  883, 886 (Bankr  E.D  Pa  1995) (noting that section 108 extends time for asserting only prepetition, as opposed to postpetition, claims); *In re Tyler*, 166 B R  21, 26 (Bankr  W D N Y  1994) (section 108(c) inapplicable where creditor's request for entry of deficiency judgment could only have been made postpetition)  The application of sections 108(a) and 108(b) of the Bankruptcy Code, which extend the time within which the debtor may take certain actions, also has been limited to time periods that began to run prior to the commencement of the chapter 11 petition  *See Indep Fire Ins Co  v  Pender (In re Phillip)*, 948 F 2d 985, 987 (5th Cir  1991) (section 108(a) inapplicable where time began to run after filing of bankruptcy petition); *J E  Adams Indus , Ltd  v  Aurora Nat'l Life*

23

*Assurance Co. (In re J.E. Adams Indus., Ltd.)*, 269 B.R. 808, 815 (N.D. Iowa 2001)

(section 108(b) inapplicable where time did not start to run until after filing of bankruptcy

petition); *N. Specialty Sales, Inc. v. INTV Corp. (In re N. Specialty Sales, Inc.)*, 57 B.R.

557, 559 (Bankr. D. Or. 1986) (section 108(a) inapplicable where claim arose

postpetition). Indeed, if the Court were to accept Sea-Pac's argument on section 108(c),

it would mean that Sea-Pac's right to invoke arbitration never expired while AWI's right

expired years ago.

        If Sea-Pac had wanted to initiate arbitration of the dispute underlying its

claims, it could have done so and at least should have attempted to do so, notwithstanding

the pendency of AWI's chapter 11 case. Even if Sea-Pac believed that the automatic stay

might prevent Sea-Pac from initiating arbitration, the Bankruptcy Code certainly

provided avenues for relief – as noted by the Bankruptcy Court at the Hearing[10] – that

Sea-Pac chose not to employ. Sea-Pac's arguments now – that it might not have been

able to obtain timely relief, or that it might not have prevailed in obtaining relief at all –

are incredible. For example, section 362(f) of the Bankruptcy Code provides for "such

relief from the stay . . . as is necessary to prevent irreparable damage to the interest of an

entity in property, if such interest will suffer such damage before there is an opportunity

for notice and a hearing . . ." 11 U.S.C. § 362(f).

        The clear intention of the parties, as evidenced by the plain language of

the Sea-Pac Agreements, was to create the ability to submit disputes to arbitration *if and

only if* arbitration was sought within the appropriate timeframe, after which either party

---

[10] "[W]hatever bells and whistles you had to get through in order to make that invocation are procedural hurdles but they were not hurdles that could not have been accomplished in the context of the bankruptcy case." Tr. of Hearing, at 20, lines 7-10 [A-10].

had the express right to initiate litigation. Having failed to challenge the Bankruptcy

Court's factual finding that the dispute arose years ago, and having failed to invoke either

mediation or arbitration within the deadlines established under the explicit terms of the

Sea-Pac Agreements, Sea-Pac now is bound by AWI's election to litigate the parties'

disputes. Because Sea-Pac no longer has an enforceable right to compel arbitration, the

Court need not even consider whether it can or should defer resolution of the Claim

Objection to arbitration

### ii. *Arbitration Is Not an Appropriate Forum* *for Resolution of the Second Sea-Pac Claim*

Even assuming, *arguendo*, that the arbitration provisions in the Sea-Pac

Agreements were timely invoked by Sea-Pac and enforceable under the terms thereof, the

Court should not enforce such arbitration provisions because strong policy reasons

support having a single forum – the Bankruptcy Court – resolve the disputes between

Sea-Pac and AWI [11] *Schubert v Wellspring Media, Inc (In re Winstar Communications,*

*Inc.)*, 335 B R 556, 566 (Bankr. D. Del. 2005) ("a bankruptcy court retains significant

discretion to assess whether arbitration would be consistent with the purposes of the

[Bankruptcy] Code, including the centralized resolution of purely bankruptcy issues, the

need to protect creditors and reorganizing debtors from piecemeal litigation, and the

---

[11] Because the Bankruptcy Court did not need to reach this issue given its conclusion on the timeliness of Sea-Pac's request for arbitration, if the Court were to conclude that Sea-Pac's arbitration request was timely or that an arbitration panel should determine such issue, it nevertheless would have to remand this case for the Bankruptcy Court to determine, in the exercise of its discretion, whether arbitration would be consistent with the purposes of the Bankruptcy Code

RLF1-3119812-1

undisputed power of a bankruptcy court to enforce its own orders ") (quoting *In re Startec Global Comm Corp*, 300 B.R. 244, 250 (D. Md. 2003))

> ➤ The Court Has Discretion to Deny
>   Enforcement of Arbitration Provisions

In *Mintze*, the Third Circuit reiterated the standard first articulated in *Hays & Co. v. Merrill Lynch, Inc. (In re Monge Oil Corp.)*, 885 F.2d 1149 (3d Cir. 1989), for when a bankruptcy court may exercise its discretion to deny a request for arbitration. *Mintze*, 434 F.3d 222; *Hays*, 885 F.2d 1149 (applying to bankruptcy proceedings the analysis set forth in the Supreme Court's decision in *Shearson/Am. Exp. v. McMahon*, 482 U.S. 200 (1987)).[12] Under *Mintze*, whether the court has discretion to deny enforcement of an otherwise applicable arbitration clause depends on whether the party opposing arbitration has established congressional intent to preclude judicial remedies for the statutory rights at issue by showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration provision. *Mintze*, 434 F.3d at 229. The fundamental issue under *Mintze* is whether the dispute could arise outside of bankruptcy or whether the "statutory rights" at issue derive exclusively from the provisions of the Bankruptcy Code. *Mintze*, 434 F.3d at 231; *see also Ins. Co. of N. Am. v. NGC Settlement Trust (In re National Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997)

---

[12] In *McMahon*, the Supreme Court interpreted the FAA as establishing a federal policy favoring arbitration and requiring enforcement of arbitration provisions. The Court noted, however, that the FAA's mandate to allow arbitration may be overridden by a contrary congressional intent to prohibit waiver of a judicial forum for a particular claim, which intent is deducible from the statute's text, legislative history, or underlying objectives. *McMahon*, 482 U.S. at 226-27

26

In *Mintze*, because the claimant did not raise any statutory claims created by the Bankruptcy Code, the court found no inherent conflict between arbitration and the consumer protection issues involved. Here, however, Sea-Pac has asserted entitlement to an administrative expense – a creature of the Bankruptcy Code – which is afforded priority treatment ahead of other creditors. "Where the issues to be arbitrated involve exclusively bankruptcy matters, *such as the determination of claim priority*, such issues *should not be* submitted to arbitration because they are core bankruptcy matters." *In re Slipped Disc*, 245 B.R. 342, 345 (Bankr. N.D. Iowa 2000) (emphasis added). Because resolution of such issue and the other issues relating to the merits of Sea-Pac's claims are tied inextricably to bankruptcy principles and are dependent upon the interpretation of orders of the Bankruptcy Court during AWI's chapter 11 case relating specifically to administrative expense claims and the filing of claims under contracts, arbitration of the Claim Objection would conflict with the objectives of the Bankruptcy Code. Accordingly, the Bankruptcy Court has the discretion to refuse to refer the Sea-Pac claims to arbitration.

> ➢ The Bankruptcy Court May (and Should)
> Exercise Its Discretion to Deny the Stay Motion
> Because the Facts Here Mitigate Against Arbitration

In determining whether to exercise discretion to deny enforcement of an arbitration provision, courts have considered a number of factors, including the following: (i) the importance of a centralized resolution of purely bankruptcy issues, (ii) whether the issue can be resolved more expeditiously by the bankruptcy judge as opposed to through the arbitration process, (iii) the degree to which special bankruptcy

27

expertise is necessary in deciding the issue, (iv) the impact on creditors of the debtor who were never parties to the agreement containing the arbitration clause, and (v) whether the parties have commenced arbitration outside of bankruptcy [13] *See. e g , Winstar*, 335 B R at 365-366; *Slipped Disc*, 245 B R at 346  In this case, resolution of the Claim Objection requires determinations with respect to a number of bankruptcy-specific issues which, collectively, demonstrate that arbitration of the Claim Objection would be inconsistent with the policies and objectives of the Bankruptcy Code, and accordingly, the Bankruptcy Court may exercise its discretion to retain jurisdiction to resolve the Claim Objection

- *Effect of Sea-Pac's Withdrawal of the Original Sea-Pac Claim with Prejudice*

An initial consideration in determining allowance of the Second Sea-Pac Claim is whether, or to what extent, Sea-Pac's voluntary withdrawal of the Original Sea-Pac Claim "with prejudice" precludes Sea-Pac from asserting further claims thereafter Determining the effect of a party's filings in a court is generally within the inherent authority of that court  Such questions are all the more appropriate to be determined by the Bankruptcy Court where the matter concerns the allowance or disallowance of claims against a debtor's estate, which is a core proceeding within the jurisdiction of the Bankruptcy Court  *See* 28 U S C  § 157(b)(2)(B).

- *Priority of Sea-Pac's Claims Relative to Other Creditors*

---

[13] *See In re APF Co* , 264 B R 344, 363 (Bankr D. Del 2000) [" particularly in a case such as this, where the parties have not commenced or requested arbitration outside of bankruptcy, this court is the most efficient and effective forum in which to resolve these fundamental Bankruptcy Code issues."]

Liquidating the Second Sea-Pac Claim also requires determining whether any portion thereof is entitled to administrative expense priority   Determining the priority of claims is within the exclusive jurisdiction of the Bankruptcy Court, given the strong policy of the Bankruptcy Code to have a centralized forum for resolving the entire body of claims against a debtor's estate   *See, e.g., APF*, 264 B R  344, 364 ("The efficient resolution of claims and the conservation of the bankruptcy estate's assets is an integral purpose of bankruptcy and inures to the benefit of the [d]ebtor's creditors ") (citing *Nat'l Gypsum*, 118 F.3d at 1069, n 21)   Because administrative expense claims are afforded priority status under the Bankruptcy Code, the party seeking administrative expense priority has a heavy burden to demonstrate entitlement to such priority, and the Bankruptcy Court is in a unique position to evaluate whether that burden – as a legal, as well as a factual, matter – has been met   In this case, resolving the Second Sea-Pac Claim includes determining whether Sea-Pac's alleged breach of contract claims should be elevated above the claims of other similarly situated creditors of AWI's estate – an estate the Bankruptcy Court has been administering for more than six years

Moreover, proving entitlement to an administrative expense priority claim requires satisfaction of bankruptcy-specific standards.  Indeed, to prove that any damages suffered by Sea-Pac qualify as administrative expenses, Sea-Pac must, as a matter of bankruptcy law, show that its continued performance was induced by AWI notwithstanding that Sea-Pac knew of the alleged breaches that form the basis of its claims beginning in 2000 and 2003 (before the Sea-Pac Agreements expired)   Sea-Pac continued to perform in spite of the alleged breaches, and Sea-Pac took no action in AWI's chapter 11 case to protect its rights for any alleged breach of the Sea-Pac

29

Agreements until November of 2005 — after the Sea-Pac Agreements expired  It is

AWI's position that, if Sea-Pac had been harmed by AWI's actions, its remedy was to

move to compel AWI to assume or reject the Sea-Pac Agreements, which it did not do.

By continuing to perform, Sea-Pac deprived AWI of the ability to reject the Sea-Pac

Agreements  An arbitration panel lacking experience in the bankruptcy concepts

associated with postpetition performance under executory contracts (and rejection of such

contracts) would be unable to assess the merits of AWI's Claim Objection

- *Applicability of the Administrative Expense Bar Date*

The Claim Objection also requires a decision whether Sea-Pac is barred

from asserting any administrative expenses arising prior to November 24, 2003 by virtue

of Sea-Pac's failure to comply with the Administrative Expense Bar Date established in

AWI's chapter 11 case  AWI submits that Sea-Pac is absolutely barred from asserting its

administrative expense claims after failing to comply with the Bankruptcy Court's order

establishing a bar date for such claims  The Administrative Expense Bar Date Order

explicitly required Sea-Pac – as a counterparty to a contract with actual knowledge of the

alleged breaches by AWI that form the basis of its claims – to assert such claims (as

claims for "breach of an obligation – contractual, statutory, or otherwise – by AWI  ")

on or before the Administrative Expense Bar Date  Sea-Pac has asserted that the

Administrative Expense Bar Date did not apply to its claims and suggests that the

Executory Contracts Bar Date entered two years later relieved Sea-Pac of any obligation

to comply with the Administrative Expense Bar Date  In short, Sea-Pac's response to this

portion of the Claim Objection raises questions about the interpretation of two previous

30

orders entered by the Bankruptcy Court. It is indisputable that bankruptcy courts have

the absolute right to enforce and interpret their own orders. *In re Continental Airlines,*

*Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses

the inherent authority to enforce its own orders."), *aff'd*, 279 F.3d 226 (3d Cir. 2002).

Accordingly, the Bankruptcy Court – and not a panel of arbitrators unfamiliar with the

orders in question – is in the best position to determine the applicability of the

Administrative Expense Bar Date to Sea-Pac's claims.

- *Valuing Administrative Expense Claims*

Resolving the Sea-Pac Claim also requires a determination of the value of

any administrative expense claims to which Sea-Pac may be entitled. Contrary to Sea-

Pac's simplified suggestion, liquidating the Sea-Pac Claim involves more than a simple

breach of contract dispute to determine the amount, if any, of damages suffered by Sea-

Pac on account of the alleged breaches by AWI. As a matter of bankruptcy law, if any of

Sea-Pac's claims are entitled to administrative expense priority, the possible value of that

claim is not necessarily based upon the damages that an arbitration panel might otherwise

assess, but upon the reasonable value of the services (or benefits) provided by Sea-Pac to

AWI's estate. *See In re FBI Distribution Corp.*, 330 F.3d 36, 48 (1st Cir. 2003) (holding

that a creditor is entitled to only the reasonable value of the beneficial services rendered

during the reorganization); *In re Adelphia Business Solutions, Inc.*, 296 B.R. 656, 664,

n.9 (Bankr. S.D.N.Y. 2003) (recognizing that courts should be guided by "the equitable

principle of unjust enrichment of the debtor's estate, rather than the compensation of the

creditor for the loss to him"); *In re Cardinal Indus., Inc.*, 142 B.R. 801, 805 (Bankr. S.D.

31

Ohio 1992) (holding that the measure of expense entitled to an administrative priority is

the benefit to the estate, not the damage to the claimant)  Again, the remedy, if the other

party finds it is being harmed, is for that party to seek to compel assumption or rejection

of the contract at issue.  Because the analysis involved in valuing administrative expense

claims derives from the development of a unique area of bankruptcy law, it requires the

expertise of the Bankruptcy Court, and application of breach of contract principles by an

arbitration panel may well conflict with the standard imposed by the Bankruptcy Code

In that regard, the Bankruptcy Court's statement in *In re Oakwood Homes Corp* applies

with equal force to the issue of valuing administrative priority claims:

> The law, and the lore surrounding adjudication of such claims is extensive,
> and has been developed over significant periods of time  The result is,
> that certain fact situations may be expected to bring about fairly consistent
> results, wherever they are tried  To subject these matters to arbitration,
> before individuals or tribunals with little or no experience in bankruptcy
> law or practice, and with little or no concern for the rights and interests of
> the body of creditors, of which the particular defendant is only one, would
> introduce variables into the equation which could potentially bring about
> totally inconsistent results  Such a result would be contrary to the primary
> policy of the Bankruptcy Code, which is that all classes of creditors of a
> debtor are entitled to be treated as equitably as possible

No. 02-13396PJW, 2005 WL 670310, at *5 (Bankr. D. Del. Mar. 18, 2005) (holding that

statutory fraudulent conveyance and preference actions may not be submitted to

arbitration and finding that, even if such actions were debtor-derivative, the court would

exercise discretion to decline enforcement of arbitration provision as contrary to the

objectives of the Bankruptcy Code).

- *Sea-Pac's Entitlement to Attorneys' Fees*

AWI disputes Sea-Pac's entitlement to attorneys' fees not only because

the Sea-Pac Agreements fail to contain any language that would entitle Sea-Pac to such

32

fees, but also because, as a matter of bankruptcy law, an unsecured creditor may not recover postpetition attorneys' fees or other collection costs from an insolvent debtor Accordingly, whether Sea-Pac is entitled to a claim for attorneys' fees is a question the Bankruptcy Court will ultimately have to resolve as a bankruptcy matter and is not something that can be easily assessed by a panel of arbitrators

For all of the reasons set forth above, liquidating the Sea-Pac Claim is inherently intertwined with distinctive bankruptcy concepts that require specific expertise — and the Bankruptcy Court ultimately would have to determine the priority of Sea-Pac's claims in any event Even if the issues could be segregated so as to allow arbitration to determine Sea-Pac's damages and a subsequent determination of priority by the Bankruptcy Court, it would require the Bankruptcy Court to revisit many of the facts reviewed by the arbitrators and would impose additional costs and expenses on AWI, which is directly contrary to the bankruptcy objectives favoring resolution of bankruptcy claims in a single forum and encouraging expeditious administration of the estate for the benefit of all creditors As a result, the Claim Objection is precisely the situation in which bankruptcy-created rights inherently conflict with the principles of arbitration and warrant the retention of jurisdiction by the Bankruptcy Court in the exercise of its discretion

## CONCLUSION

For all of the reasons discussed above, the Bankruptcy Court was correct to deny Sea-Pac's Stay Motion, which determination implicated no question of arbitrability that would require referral of the matter to an arbitration panel. Furthermore,

RLF1-3119812-1

the Bankruptcy Court correctly determined, as a matter of interpretation and application

of the express terms of the Sea-Pac Agreements, that AWI has an enforceable right to

litigate – and Sea-Pac has no enforceable right to arbitrate – the disputes underlying Sea-

Pac's bankruptcy claims. Even if Sea-Pac were found to have a viable right to arbitrate

pursuant to the Sea-Pac Agreements, the Court should remand this matter for the

Bankruptcy Court to exercise its discretion to determine whether denial of the Stay

Motion is warranted in light of the overwhelming weight of the bankruptcy policies

implicated in the resolution of Sea-Pac's bankruptcy claims

      Accordingly, the Bankruptcy Court's order denying Sea-Pac's Stay

Motion should be affirmed

Dated: February 26, 2007          Respectfully submitted,
      Wilmington, Delaware

                       Mark D. Collins (No. 2981)
                       Jason M. Madron (No. 4431)
                       RICHARDS, LAYTON & FINGER, P.A
                       One Rodney Square, P O Box 551
                       Wilmington, Delaware 19899
                       (302) 651-7700

                           -and-

                       Stephen Karotkin
                       Debra A. Dandeneau
                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, New York 10153
                       (212) 310-8000

                       ATTORNEYS FOR APPELLEE
                       ARMSTRONG WORLD INDUSTRIES, INC

RLF1-3119812-1

## CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 30th day of March, 2007, I caused copies of the foregoing **Memorandum of Plaintiff Armstrong World Industries, Inc. in Opposition to Defendant Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Court's November 20, 2006 Order** to be served upon the parties on the attached list and in the manner indicated thereon.

Jason M. Madron (No. 4431)

1

**ARMSTRONG WORLD INDUSTRIES, INC.**
**CASE NO. 06-50899**
**SERVICE LIST**

**Via Hand Delivery**

Karen Lee Turner
Michael G. Busenkell
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801

**Via Federal Express**

Michael M Feinberg
Diana K. Carey
Karr Tuttle Campbell
1201 Third Avenue, Suite 2900
Seattle, WA 98102

Al Van Kampen
Rohde & Van Kampen PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA 98154

RLFI-3133339-1

**9**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------x
In re                               :    Chapter 11
                                    :
ARMSTRONG WORLD INDUSTRIES,         :    Case No. 00-4471 (JKF)
INC., et al.,                       :
                                    :    (Jointly Administered)
            Debtors.                :
                                    :    Re: Docket Nos.  10450 and 10451
------------------------------------x
In re                               :
                                    :
ARMSTRONG WORLD INDUSTRIES,         :    Adversary Proceeding No.
INC., et al.,                       :
                                    :    06-50899 (JKF)
            Plaintiff,              :
                                    :
v.                                  :
                                    :    Re: Adv. Proc. Docket Nos.
                                    :       76 and 77
SEA-PAC SALES COMPANY,              :
                                    :
            Defendant.              :
------------------------------------x
```

MEMORANDUM OF PLAINTIFF ARMSTRONG
WORLD INDUSTRIES, INC. IN OPPOSITION TO
DEFENDANT SEA-PAC SALES COMPANY'S RENEWED MOTION FOR
STAY PENDING APPEAL OF THE COURT'S NOVEMBER 20, 2006 ORDER


Dated: July 5, 2007
       Wilmington, Delaware

                              Mark D. Collins (No. 2981)
                              Jason M. Madron (No. 4431)
                              RICHARDS, LAYTON & FINGER, P.A.
                              One Rodney Square
                              P.O. Box 551
                              Wilmington, DE 19899
                              (302) 651-7700

                              -and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

-and-

David A. Hickerson
Stephen A. Gibbons
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
(202) 682-7000

ATTORNEYS FOR ARMSTRONG
WORLD INDUSTRIES, INC., AS
REORGANIZED DEBTOR

RLF1-3174579-1

TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................. 1

II.  PROCEDURAL HISTORY ....................................... 2

III. ARGUMENT ................................................. 8

     A.   Because the Pending Motions Before this Court All
          Raise Bankruptcy Issues over Which This Court
          Clearly Has Jurisdiction, the Arbitration Appeal
          Does Not Divest This Court of Jurisdiction, and,
          Therefore, No "Automatic Divestiture Rule"
          Applies .......................................... 8

     B.   Sea-Pac's Litigation Conduct Supports a Finding
          That Sea-Pac Waived Any Right it May Have Had to
          Arbitrate ........................................ 13

IV.  CONCLUSION .............................................. 17

i

TABLE OF AUTHORITIES

Page

CASES

*Bittner v. Borne Chem. Co., Inc.*,
691 F.2d 134, 135-36 (3d Cir. 1982) ....................... 12-13

*Blinco v. Green Tree Servicing, LLC*,
366 F.3d 1249 (11th Cir. 2004) ............................... 10

*Bradford-Scott Data Corp v. Physician Computing
Network*, 128 F.3d 504 (7th Cir. 1997) ...................... 10

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) ......... 1, 7, 8, 9, 10, 12, 13, 14

*McCauley v. Halliburton Energy Servs.*,
413 F.3d 1158 (10th Cir. 2005) ............................... 10

STATUTES

Fed. R. Civ. P. 8(c) ................................... 6, 11

Fed. R. Bankr. P. 3007 ..................................... 11

MISCELLANEOUS

Del. Bankr. L.R. 3007-1(f) ................................. 11

ii

## I.    INTRODUCTION

Armstrong    World    Industries,    Inc.    ("AWI"),    as reorganized    debtor    and    Plaintiff    in    the    above-captioned adversary    proceeding,    opposes    the    *Renewed    Motion    for    Stay Pending    Appeal    of    the    Court's    November    20,    2006    Order*    [Bankr. Case Docket No. 10450; Adv. Proc. Docket No. 76] (the "*June Stay Motion*") filed by Defendant Sea-Pac Sales Company ("Sea-Pac") on June 18, 2007.

Sea-Pac bases its June Stay Motion on the premise that a    trial    court    is    automatically    divested    of    jurisdiction    to proceed where there is an appeal of an order denying a stay of litigation    pending    until    such    time    as    the    appeal    is    fully litigated, and cites to the recent decision of the United States Court of Appeals for the Third Circuit (the "*Third Circuit*") in *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007). In    relying    on    this    case,    however,    Sea-Pac    overlooks    the    fact that this Court, unlike the trial court in *Ehleiter*, undoubtedly retains jurisdiction to resolve bankruptcy issues - issues which incidentally    arise    in    every    dispositive    motion    pending    before this    Court    -    that    would    not    be    referred    to    any    arbitrator. Indeed, in its *Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Adv. Proc. Docket No. 34] (the "*March Stay Motion*"), Sea-Pac does not request a stay of bankruptcy issues,    but    rather    seeks    to    stay    only    dispositive    motions

1

related to state law issues. March Stay Motion, at 3. Because
all parties agree that this Court is not completely divested of
jurisdiction to consider certain issues while Sea-Pac's
arbitration appeal is pending, no automatic divestiture rule can
apply to the case at hand. Moreover, Sea-Pac's conduct in this
litigation supports a finding that Sea-Pac waived any right it
may have had to arbitrate. Thus, this Court should, as it did
less than three months ago with the March Stay Motion, order
that Sea-Pac's June Stay Motion be denied.

## II.  PROCEDURAL HISTORY

On December 6, 2000, AWI and two of its affiliated
debtors each commenced in this Court a case under chapter 11 of
title 11 of the United States Code.

By order dated April 18, 2001 [Bankr. Case Docket No.
642], this Court set August 31, 2001 as the deadline for filing
proofs of prepetition claims against AWI in the chapter 11 case.
Sea-Pac filed a proof of claim on or about August 30, 2001, in
which Sea-Pac asserted certain liquidated and unliquidated,
contingent and non-contingent, prepetition and postpetition
obligations of AWI to Sea-Pac arising under prepetition
contracts of AWI with Sea-Pac and certain postpetition contracts
of AWI with others. Sea-Pac never sought to compel arbitration
with respect to such claim, and, on May 29, 2003, Sea-Pac filed
its Withdrawal of Proof of Claim No. 3528 [Bankr. Case Docket

2

No. 4841] pursuant to which Sea-Pac voluntarily withdrew such claim "with prejudice."[1]

On or about November 8, 2005, Sea-Pac filed its second proof of claim against AWI (Claim No. 4854). At the time of such filing, Sea-Pac did not move to compel arbitration, stay proceedings, or seek relief from the automatic stay. On July 20, 2006, AWI filed its *Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Bankr. Case Docket No. 9683] (the "*Claim Objection*"), seeking disallowance of Sea-Pac's claim or, to the extent any portion is allowed, determination that the claim is not entitled to any priority status.

On or about September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc. to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Bankr. Case Docket No. 9832], as well as a memorandum [Bankr. Case Docket No. 9833] and a declaration [Bankr. Case Docket No. 9834] in support thereof. Also on September 15, 2006, Sea-Pac filed its *Motion (i) to Stay Objection by Armstrong World Industries, Inc. to Sea-Pac's Proof of Claim No. 4854 Pending Arbitration, and (ii) for Relief from the Automatic Stay or, in the*

---

[1]  In withdrawing such proof of claim, Sea-Pac only preserved its right to seek payment for unpaid postpetition expenses and its rights with respect to postpetition contracts.

3

Alternative, for Relief from the Discharge Injunction [Bankr. Case Docket No. 9830] (the "*Arbitration Motion*").

On October 6, 2006, AWI filed its objection to Sea-Pac's Arbitration Motion [Bankr. Case Docket No. 9914]. Also on October 6, 2006, AWI commenced this adversary proceeding by filing its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* [Adv. Proc. Docket No. 1] (the "*Supplemental Objection*").

On October 23, 2006, this Court held a hearing on the Arbitration Motion and thereafter denied the motion, entering an order to that effect on November 20, 2006 [Bankr. Case Docket No. 10117].

On November 30, 3006, Sea-Pac filed a notice of appeal to the United States District Court for the District of Delaware (the "*District Court*") with respect to the Arbitration Order [Bankr. Case Docket No. 10134] (the "*Arbitration Appeal*"). The Arbitration Appeal has been fully briefed.

On March 1, 2007, AWI filed its *Motion for Partial Summary Judgment* [Adv. Proc. Docket No. 23] (the "*Summary Judgment Motion*") to narrow the scope of the issues in dispute and discovery relating thereto. In the Summary Judgment Motion, AWI argues that (i) Sea-Pac, as a matter of law, waived its claim that AWI improperly appointed a second distributor in the

4

Pacific Northwest by choosing not to bring its breach of contract action at the time of the alleged breach, but instead continuing to fully perform under the parties' agreement, and by subsequently entering into a new interim contract on similar terms with full and specific knowledge that the two-distributor relationship was already in place, and (ii) Sea-Pac is barred, as a matter of bankruptcy law, from asserting a prepetition claim under the parties' agreement because Sea-Pac voluntarily withdrew "with prejudice" its original proof of claim.

On March 23, 2007, the eve of Sea-Pac's deadline to file a response to the Summary Judgment Motion, Sea-Pac filed the March Stay Motion to stay the disposition of the Summary Judgment Motion until the disposition of the Arbitration Appeal. Through its *Emergency Motion for Expedited Consideration of Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Adv. Proc. Docket No. 36] (the "*March Emergency Motion*"), Sea-Pac requested that the March Stay Motion be heard on an emergency basis. This Court granted the March Emergency Motion and required AWI to file a response brief within three days. AWI filed its *Memorandum in Opposition to Defendant Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Adv. Proc. Docket No. 41] (the "*March Emergency Motion Objection*") on March 30, 2007. Following an emergency hearing on April 2, 2007, the Court

5

denied the March Stay Motion without prejudice to Sea-Pac's right to renew the motion at a later date.

On April 2, 2007, Sea-Pac filed its *Memorandum in Opposition to AWI's Motion for Partial Summary Judgment* [Adv. Proc. Docket No. 43] (the "*Summary Judgment Opposition Memo*"). In the Summary Judgment Opposition Memo, Sea-Pac argues, among other things, that AWI's motion should be denied on the grounds that Fed. R. Civ. P. 8(c) requires AWI to have raised its waiver defense in the Claim Objection or the Supplemental Claim Objection.

On April 16, 2007, AWI filed its answering memorandum [Adv. Proc. Docket No. 48], together with its *Motion for Leave of Court to File Amended Supplemental Objection* [Adv. Proc. Docket No. 47] (the "*Motion for Leave to Amend*"). The Motion for Leave to Amend sought an order granting AWI leave to amend its Supplemental Objection so that AWI could add additional defenses in light of Sea-Pac's contention that AWI was obligated to have raised all affirmative defenses in its Claim Objection or its Supplemental Objection. On April 25, 2007, this Court entered an order granting AWI leave to amend its Supplemental Objection [Adv. Proc. Docket No 56]. On May 4, 2007, Sea-Pac filed its *Motion to Vacate the Court's Order Granting AWI's Motion for Leave to Amend* [Adv. Proc. Docket No. 59] (the "*Motion to Vacate*"), arguing that the Court entered an order

granting the Motion for Leave to Amend before Sea-Pac's deadline to respond. Sea-Pac used its Motion to Vacate to assert its response to the Motion for Leave to Amend. On May 18, 2007, AWI filed its *Objection to Sea-Pac Sales Company's Motion to Vacate the Court's Order Granting Armstrong World Industries, Inc.'s Motion for Leave to Amend* [Adv. Proc. Docket No. 63].

On June 18, 2007, Sea-Pac filed the June Stay Motion as well as a memorandum of law in support thereof [Bankr. Case Docket No. 10451; Adv. Proc. Docket No. 77] (the "*June Memorandum*"). Sea-Pac also filed an *Emergency Motion for Expedited Consideration of Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2006 Order* [Bankr. Case Docket No. 10449; Adv. Proc. Docket No. 75] (the "*June Emergency Motion*"), requesting that this Court consider the June Stay Motion on an expedited basis. The "emergency" cited by Sea-Pac this time was that the Third Circuit had entered the *Ehleiter* decision. On June 19, 2007, AWI filed its *Objection to Defendant's Motion for Expedited Consideration of Renewed Motion for Stay Pending Appeal* [Adv. Proc. Docket No. 78] (the "*June Emergency Motion Objection*"), arguing that the only apparent "emergency" that existed was one of Sea-Pac's own making - Sea-Pac had only now discovered the *Ehleiter* decision, though it had been decided more than two months earlier. Agreeing that no emergency existed, this Court

7

entered an order denying Sea-Pac's June Emergency Motion, and directing that briefing proceed in due and ordinary course. [Adv. Proc. Docket No. 79].

### III. ARGUMENT

A. Because the Pending Motions Before this Court All Raise Bankruptcy Issues over Which This Court Clearly Has Jurisdiction, the Arbitration Appeal Does Not Divest This Court of Jurisdiction, and, Therefore, No "Automatic Divestiture Rule" Applies.

The issue of whether or not a trial court must stay all proceedings pending resolution of an interlocutory appeal under § 16(a) of the Federal Arbitration Act has caused a split of authority among the circuit courts.[2]  Until recently, the Third Circuit had not provided any guidance as to its position regarding the issue of whether a lower court is divested of jurisdiction by the filing of a non-frivolous appeal from a denial of a motion to arbitrate.  Although the *Ehleiter* decision does not directly address the issue,[3]  the Third Circuit refers

---

[2]  For a full discussion of the circuit split see the March Emergency Motion Objection.

[3]  *Ehleiter* involved an appeal from the United States District Court for the Virgin Islands to the United States Court of Appeals for the Third Circuit of a decision by the Superior Court of the Virgin Islands denying arbitration.  The issue involved whether the Third Circuit had jurisdiction to consider the interlocutory appeal. Although the Federal Arbitration Act clearly confers jurisdiction over interlocutory appeals, Section 3 of the Federal Arbitration Act only refers to claims "referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3.  Because the defendant seeking to invoke arbitration was not even a party to the arbitration agreement in question, and the lower courts had not made a determination of whether such defendant was within the scope of such

8

in a footnote to an order it previously entered granting a stay of proceedings pending resolution of an appeal from a denial of a motion to arbitrate and states that in such order it "expressed [its] agreement with the majority rule of automatic divestiture where the Section 16(a) appeal is neither frivolous nor forfeited." *Ehleiter*, 482 F.3d at 215 n.6. In AWI's attempt to respond to Sea-Pac's June Emergency Motion on the day after it was filed, AWI overlooked the footnote reference in the *Ehleiter* case to the "automatic divestiture" issue. While the unpublished order referenced in the footnote is not part of the holding in the *Ehleiter* case and does not constitute binding precedent, AWI certainly agrees and understands that the Third Circuit's statement in the footnote clearly reflects a general inclination to stay cases pending an appeal from an order denying arbitration. AWI does not agree, however, that the Court should accept Sea-Pac's renewed invitation to stay any part of *this* proceeding.

The *Ehleiter* case, along with the cases holding that an automatic divestiture rule applies when a party appeals an order denying a motion to compel arbitration, differ from the case at hand in a material way. In those cases, there are no

agreement, it was not clear that the Third Circuit had jurisdiction over the interlocutory appeal pursuant to the Federal Arbitration Act. *Id.* at 212.

9

issues that will undeniably go forward in the trial court regardless of whether the stay pending the arbitration appeal is granted. Indeed, in those cases the parties seeking a stay of proceedings pending an arbitration appeal do not concede that certain issues may go forward in court while the appeal is pending. Rather, in those cases the parties seeking a stay of the proceedings argue, and the courts find, that the trial courts are *completely* divested of jurisdiction to consider *any issues* in the proceedings before them so as to avoid two trials. *See Ehleiter*, 482 F.3d at 210-11 (court's granting of a stay pending resolution of an arbitration appeal left no issues in the underlying case to continue forward in the lower court); *McCauley v. Halliburton Energy Servs.*, 413 F.3d 1158 (10th Cir. 2005) (same); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004) (same); *Bradford-Scott Data Corp v. Physician Computing Network*, 128 F.3d 504 (7th Cir. 1997) (same).

Here, unlike the situation in the referenced cases, there *are* issues that will undeniably go forward before this Court, and even Sea-Pac has conceded that they may go forward by not seeking to stay such issues. The pending motions before this Court include AWI's Summary Judgment Motion and Sea-Pac's Motion to Vacate. In its Summary Judgment Motion, AWI argues, among other things, that Sea-Pac is barred, as a matter of bankruptcy law, from asserting a prepetition claim under the

10

parties' agreement because Sea-Pac voluntarily withdrew "with prejudice" its original proof of claim. This is clearly not a state law issue, and will therefore proceed before this Court regardless of whether a stay is granted. Likewise, the Motion to Vacate deals with the interplay between Fed. R. Civ. P. 8(c), Fed. R. Bankr. P. 3007 and Del. Bankr. L.R. 3007-1(f). Surely it cannot be argued that the Motion to Vacate implicates state law issues that are subject to the June Stay Motion.

In this Adversary Proceeding, AWI also has asserted a claim against Sea-Pac arising from Sea-Pac's failure to pay amounts due to AWI following the expiration of the agreements between AWI and Sea-Pac. As with the bankruptcy issues, resolution of these claims is also outside the scope of the arbitration provision.

Not only will the parties continue to litigate the above mentioned issues regardless of whether a stay is granted, but Sea-Pac has not sought to stay discovery. Indeed, this Court itself recognized that permitting the parties to continue to brief dispositive motions (even if the Court defers consideration of such motions) will continue to assist the parties in framing the issues with the hope of ultimately achieving a consensual resolution. While the parties remain far apart, AWI believes that the discovery conducted to date demonstrates the absence of any foundation to Sea-Pac's claims.

11

That discovery will continue forward regardless of whether a stay is granted is another distinguishing feature between the case at hand and the cases supporting automatic divestiture.

Finally, although AWI has not yet sought to do so, it may move in the future to estimate Sea-Pac's claim. As AWI has argued in the Claim Objection, Sea-Pac is barred from asserting entitlement to any administrative expense arising prior to November 24, 2003 because Sea-Pac failed to assert such expense by the Court-approved administrative expense bar date. Moreover, AWI has argued that Sea-Pac's claims are not entitled to administrative expense priority in any event because the claims arise from alleged breaches of prepetition contracts, and Sea-Pac conferred no benefit on AWI's estate. Accordingly, AWI, in making distributions under its plan of reorganization, has treated Sea-Pac's claim as a disputed class 6 unsecured claim.

The Sea-Pac claim is one of the few remaining unresolved claims in AWI's chapter 11 case, and it, therefore, remains an obstacle to effecting a final distribution to holders of allowed Class 6 unsecured claims. If AWI so moves, this Court undeniably will have the power to estimate the Sea-Pac claim to effect a final distribution, and nothing in the *Ehleiter* decision takes away the Court's fundamental authority to adjudicate that purely bankruptcy issue. *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135-36 (3d Cir. 1982) ("[W]e are

12

persuaded that Congress intended the procedure [by which claims are to be estimated] to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue.    [T]here are no other limitations on the court's authority to evaluate the claim save those general principles which should inform all decisions made pursuant to the Code."). In conducting such an estimation, the Court will need to address all issues pertaining to the Sea-Pac claim, including matters of "pure" state law. By permitting the case to evolve, the Court will be in a better position to conduct any required estimation if AWI elects to pursue such action.

This is not a case where a stay of pending litigation will halt all proceedings before the court. Rather, this Court will continue to have jurisdiction over the disputes, at a minimum to determine bankruptcy-related issues. Therefore, this is not the sort of case to which an automatic divestiture rule should apply, and this Court should deny the June Stay Motion.

B.    Sea-Pac's Litigation Conduct Supports a Finding That Sea-Pac Waived Any Right it May Have Had to Arbitrate.

It is ironic that Sea-Pac places great emphasis on the *Ehleiter* case, a case in which the court affirmed the denial of the defendant's motion to stay the court proceedings pending arbitration based on the fact that the defendant actively

13

litigated the plaintiff's claims, when Sea-Pac itself has engaged in similar behavior. *Ehleiter*, 482 F.3d at 209. As in *Ehleiter*, where the Third Circuit found that litigation conduct that continued for four years constituted sufficient justification for the denial of a motion to compel arbitration, Sea-Pac's litigation conduct over the past six years warrants a conclusion that it waived any right it may have had to arbitrate. Sea-Pac's pattern of conduct demonstrates that Sea-Pac never provided AWI with any indication that it would seek arbitration:

> ➢ Sea-Pac filed a proof of claim in AWI's bankruptcy case, nearly six years ago, for alleged unsecured prepetition claims. The claim was filed one day prior to the bar date for general unsecured prepetition claims. Sea-Pac did not request or refer to arbitration at this time, and seemed satisfied to participate in this bankruptcy case just like any other creditor alleging a prepetition claim.

> ➢ Sea-Pac withdrew its proof of claim over four years ago in this bankruptcy case "with prejudice" and solely preserving its right to seek payment for unpaid postpetition expenses and further reserving its rights with respect to postpetition contracts. By doing so, Sea-Pac afforded AWI no indication of any alleged breach of the Sea-Pac Agreements,[4] nor did it trigger the arbitration provisions in the agreements. Rather, Sea-Pac's conduct suggested that any issues that may arise with respect to postpetition contracts or postpetition expenses, if any, would be dealt with in accordance with usual bankruptcy procedures for postpetition matters.

---

[4] Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Claim Objection.

> Sea-Pac never initiated arbitration or any of the dispute resolution mechanisms in the Sea-Pac Agreements, and, if it believed such action was prohibited by the automatic stay, never sought relief from the stay.

> Sea-Pac never filed a motion to compel AWI to assume or reject the Sea-Pac Agreements and did not file a proof of claim before the administrative bar date, despite numerous notices having been sent. Therefore, AWI had every right to believe there was no reason to reject the Sea-Pac Agreements prior to their expiration.

> Sea-Pac did not claim that there was any breach of contract or reason to arbitrate any dispute when the Sea-Pac Agreements were extended or when AWI offered to enter into new, interim contracts.

> Sea-Pac filed a new proof of claim in November 2005, just before the bar date for executory contract claims in this bankruptcy case, having made neither a reference to arbitration nor any effort to initiate the dispute resolution provisions of the Sea-Pac Agreements. Indeed, Sea-Pac did not raise the issue of arbitration until after AWI filed the Claim Objection with this Court.

> After AWI commenced this adversary proceeding, Sea-Pac agreed to a discovery schedule pending the Arbitration Appeal, propounded numerous interrogatories and heavy document requests (including extensive e-discovery requests to which AWI has responded at significant expense and effort), and scheduled (and then canceled) depositions. [5]

After considering these factors, it can hardly be said

that AWI and its creditors will not be prejudiced by the delay

---

[5] Notwithstanding that the parties are operating under an agreed discovery schedule and that AWI had arranged the schedules of its witnesses to accommodate Sea-Pac's request, Sea-Pac unilaterally, and without basis, canceled its depositions of AWI's witnesses. AWI, however, has proceeded with its depositions of Sea-Pac's witnesses.

15

and expense of Sea-Pac's litigation conduct if AWI is forced into arbitration of a portion of the issues in this case. This is especially true where, as detailed above, not all of the issues raised by the parties' disputes are ones that can be arbitrated. Here, the bankruptcy issues will be considered by this Court. Indeed, Sea-Pac itself admits that AWI's objection to Sea-Pac's claims raises bankruptcy issues that this Court – and not an arbitration panel – should decide.[6]    The obvious litigation conduct in which Sea-Pac engaged must not be overlooked. If Sea-Pac is permitted to arbitrate its claims, AWI and its creditors will undoubtedly be prejudiced.

---

[6]  In the Arbitration Motion, Sea-Pac states that "arbitration of Sea-Pac's claims will not determine the priority of claims – merely the amount." Arbitration Motion, at ¶ 16.

16

IV.  CONCLUSION

For all of the reasons discussed above, Sea-Pac's June

Stay Motion should be denied.

Dated:    July 5, 2007
          Wilmington, Delaware

                          _____
                          Mark D. Collins (No. 2981)
                          Jason M. Madron (No. 4431)
                          RICHARDS, LAYTON & FINGER, P.A.
                          One Rodney Square
                          P.O. Box 551
                          Wilmington, DE 19899
                          (302) 651-7700

                          -and-

                          Stephen Karotkin
                          Debra A. Dandeneau
                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, NY 10153
                          (212) 310-8000

                          -and-

                          David A. Hickerson
                          Stephen A. Gibbons
                          WEIL, GOTSHAL & MANGES LLP
                          1300 Eye Street, N.W., Suite 900
                          Washington, DC 20005
                          (202) 682-7000

                          ATTORNEYS FOR ARMSTRONG
                          WORLD INDUSTRIES, INC., AS
                          REORGANIZED DEBTOR

17

B - 184

<u>CERTIFICATE OF SERVICE</u>

I, Jason M. Madron, hereby certify that on the 5th day of July 2007, I caused a copy of the Memorandum of Plaintiff Armstrong World Industries, Inc. in Opposition to Defendant Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2006 Order to be served on the parties listed below and in the manner so indicated:

<u>Via Hand Delivery and Electronic Mail</u>

Karen Lee Turner
Michael G. Busenkell
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801
E-mail: <u>kturner@eckertseamans.com</u>
         <u>mbusenkell@eckertseamans.com</u>

<u>Via First Class Mail and Electronic Mail</u>

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL, PSC
1201 Third Avenue, Suite 2900
Seattle, WA 98101
E-mail: <u>dcarey@karrtuttle.com</u>
         <u>mfeinberg@karrtuttle.com</u>

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA 98154
E-mail: <u>avk@rohdelaw.com</u>

Jason M. Madron (No. 4431)

RLF1-3174504-1

B - 185

**10**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| ARMSTRONG WORLD INDUSTRIES, INC., *et al.*, | ) |
| | ) |
| | ) Case No.  00-04471 (JKF) |
| Debtors. | ) |
| | ) Jointly Administered |
| In re | ) |
| | ) |
| ARMSTRONG WORLD INDUSTRIES, INC., *et al.*, | ) Adversary Proceeding No. |
| | ) |
| | ) 06-50899 JKF |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| SEA-PAC SALES COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MOTION OF DEFENDANT SEA-PAC SALES COMPANY
FOR LEAVE OF COURT TO FILE AMENDED PROOF OF CLAIM**

TABLE OF CONTENTS

Page

I.    JURISDICTION .................................................. 1

II.   BACKGROUND ................................................... 2

III.  ARGUMENT ..................................................... 5

      A.    Leave to Amend a Timely Filed Proof of Claim
            Should be "Liberally Allowed" ......................... 5

      B.    Sea-Pac Amended Claim Alleges No New Claims .......... 6

CONCLUSION ......................................................... 8

- i -

TABLE OF AUTHORITIES

Page

**CASES**

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989) ................. 6

*Continental Motors Corp. v. Morris*, 169 F.2d 315 (10th
  Cir. 1948) ................................................... 7

*Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802
  (D. Del. 1986) .............................................. 6

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) ........... 6

*Fidelity and Deposit Co. v. Fitzgerald*, 272 F.2d 121
  (10th Cir. 1959) ............................................ 6

*Foman v. Davis*, 371 U.S. 178 (1962) .......................... 6

*Fresh Fruit Co. v. Delaware Cold Storage, Inc.*,
  961 F.Supp. 676 (D. Del. 1997) ............................. 6

*Hazel & Buehler, Inc. v. Station Plaza Assocs.*, 150 B.R.
  560 (Bankr D. Del. 1993) ................................... 6

*In re Hanscom Retail Foods, Inc.*, 96 B.R. 33 (Bankr. E.D.
  Pa. 1988) .............................................. 5, 6, 7

*In re Kellett Aircraft Corp.*, 173 F.2d 689 (3d Cir. 1949) ....... 7

*In re Orion Refining Corporation*, 317 B.R. 660 (Bankr D.
  Del. 2004) ................................................. 5

*In re Pollack*, 90 B.R. 747 (E.D. Pa. 1988) ................... 7

*In re Unger* 70 B.R. 519 (Bankr E.D. Pa. 1987) ............... 5

*Industrial Commissioner v. Schneider*, 162 F.2d 847 (2d
  Cir. 1947) ................................................. 7

*Interface Group-Nevada, Inc. v. Trans World Airlines,
  Inc. (In re Trans World Airlines)*, 145 F.3d 124
  (3d Cir. 1998) ........................................... 5, 6

*Menick v. Hoffman*, 205 F.2d 365 (9th Cir. 1953) ............. 6

*Werner v. Werner*, 267 F.3d 288 (3d Cir. 2001) .............. 6

**STATUTES**

28 U.S.C. § 1334 ............................................. 1

28 U.S.C. § 1408 ............................................. 1

28 U.S.C. § 1409 ............................................. 1

- ii -

28 U.S.C. § 157 ......................................................... 1

28 U.S.C. § 157(b) ..................................................... 1

**RULES**

F.R. Bankr. P. Rule 7015 ................................... 1, 5, 6

F.R. Civ. P. Rule 15 ............................................... 5

F.R. Civ. P. Rule 15(a) ...................................... 1, 5

B - 189

Sea-Pac Sales Company ("*Sea Pac*") a creditor and defendant in the above-captioned adversary proceeding, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7015 of the Federal Rules of Bankruptcy Procedure, moves this Court for an order granting it leave to file an *Amended Proof of Claim with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* (the "**Amended Sea-Pac Claim**") in the bankruptcy proceeding of Armstrong World Industries and its debtor affiliates (collectively "*AWI*"). The Amended Sea-Pac Claim is attached hereto as Exhibit A. The Amended Sea-Pac Claim is based on the same contracts and transactions asserted in Sea-Pac's original proof of claim, but seeks to increase the amount of the claim and to set forth with more particularity, based upon information learned through discovery, the basis of the claim and the relief requested. In support of this motion, Sea-Pac respectfully states as follows:

## I.   JURISDICTION

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

- 1 -

## II. BACKGROUND

2.    On December 6, 2000, AWI commenced a case in this Court under chapter 11 of title 11 of the United States Code. By an order entered on August 18, 2006, the United States District Court for the District of Delaware confirmed AWI's *Fourth Amended plan of Reorganization, as Modified, dated February 21, 2006.* On October 2, 2006, the **"*Effective Date*"** under such plan occurred, and AWI emerged from chapter 11 protection.

3.    By an *Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3)(I) Fixing a Final Dated for Filing Proofs of Claim Relating to Certain Contracts and Leases and (II) Approving the Proposed Forms Of Proof of Clam and Notice* dated September 29, 2005 ("*Executory Contracts Bar Date Order*") [Main Docket No. 8652][1] certain parties to executory contracts with AWI that had not been assumed or rejected, but had expired or terminated were directed to file proofs of claim by November 8, 2005, if they disagreed with the amount or characterization of their claim as described in Executory Contract Bar Date Order.

4.    On or about November 8, 2005, in response to the Executory Contract Bar Date Order, Sea-Pac timely filed its proof of claim number 4854 (the "*Sea-Pac Claim*") against AWI in

---

[1] All references to the docket in this adversary proceeding shall be made herein as "Adv. Docket No. __"; all references the jointly administered chapter 11 cases of AWI shall be made herein as "Main Docket No. __."

- 2 -

the amount of $4.9 million plus interest and attorneys' fees. Sea-Pac disagreed with both the amount and characterization of its claim as described in the Executory Bar Date Order and contended that no less than $4.5 million of the Sea-Pac Claim is entitled to administrative expense priority.

5.    The Sea-Pac Claim arises from alleged breaches by AWI of the parties' Commercial Flooring Products Distributorship Agreement (the *"Commercial Agreement"*) and Residential Flooring Products Distributorship Agreement and Sales/Service Center Agreement (the *"Residential Agreement"*).  On or about August 25, 2004, Sea-Pac and AWI entered into a post-petition letter Agreement (the *"Interim Agreement"*) effective as of that date, which continued the terms of the Commercial Agreement and the Residential Agreement through December 31, 2004.  Specifically, the Sea-Pac Claim alleges that (i) after commencing its chapter 11 case, AWI breached the Commercial Agreement and the Interim Agreement by appointing a second distributor within Sea-Pac's exclusive territory, and (ii) AWI breached the Residential Agreement and the Interim Agreement and was unjustly enriched by failing to reimburse Sea-Pac for RDC functions and services.

6.    On July 20, 2006, AWI filed its Objection of Armstrong World Industries Inc., to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854) (the *"Claim Objection"*) [Main Docket

- 3 -

No. 9683]. By the Claim Objection, the Debtors sought to disallow the Administrative Expense Claim or, in the alternative, reclassify the Administrative Expense Claim as a general unsecured claim.

7. On September 15, 2006, Sea-Pac filed its *Answer to Objection of Armstrong World Industries, Inc.* to the Proof of Claim of Sea-Pac Sales Company (Claim No. 4854) [Main Docket No. 9832], as well as a memorandum [Main Docket No. 9833] and a declaration in support thereof [Main Docket No. 9834].

8. On October 6, 2006, AWI filed its *Supplemental Objection and Counterclaims of Armstrong World Industries, Inc.,* with respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854) (the "*Supplemental Objection*"), thereby initiating this adversary proceeding. The Supplemental Objection also amended the Claim Objection by raising additional objections to the Sea-Pac Claim.

9. The parties are presently in the early stages of discovery. The amendment to the claim is based, in part, on materials produced by AWI in discovery. Prior to filing this motion, Sea-Pac provided AWI a copy of the *Sea-Pac Amended Claim* and requested AWI stipulate to granting AWI leave to file it. Even prior to filing, AWI was aware of the amounts Sea-Pac now claims based on settlement discussions between the parties.

- 4 -

### III. ARGUMENT

A.    Leave to Amend a Timely Filed Proof of Claim Should Be "Liberally Allowed."

10. Bankruptcy Rule 7015 provides that amendments to claims shall be governed by Rule 15 of the Federal Rules of Civil Procedure, which commits the decision to grant or deny leave to amend to the trial court's sound discretion.    *See Interface Group-Nevada v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 145 F.3d 124, 141 (3d Cir. 1998). As with amendments to pleadings generally, "[i]t is well settled that amendments to timely proofs of claim are to be liberally allowed." *In re Orion Refining Corporation*, 317 B.R. 660, 664 (Bankr. D. Del. 2004)(citing *In re Trans World Airlines*, 145 F.3d at 140).    Not only have amendments been liberally permitted, these amendments may occur after the bar date and relate back to the initial filing which was timely.    *See In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr. E.D. Pa. 1988) (citing *In re Unger* 70 B.R. 519, 521 (Bankr. E.D. Pa. 1987).    Rule 15(a) of the Federal Rules of Civil Procedure, which is incorporated by Bankruptcy Rule 7015, provides that a court may permit a party to amend its pleading by leave of court, and such leave, "shall be freely given when justice so requires."    The United States Supreme Court has held that "this

- 5 -

mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).[2]

## B.    Sea-Pac Amended Claim Alleges No New Claims.

11. An "amendment of a claim under Fed. R. Bankr. P. 7015 should be granted where the purpose is to cure a defect in the claim as originally filed to describe the claim with greater particularity or to plead a new theory on the facts set forth in the original claim." *Trans World Airlines*, 145 F.3d at 141 (citing *Hazel & Buehler, Inc. v. Station Plaza Assocs.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993)). "Conversely, if a 'new claim' is being asserted subsequent to the bar date an objection to its filing must be sustained." *Hanscom Retail Foods*, 96 B.R. at 35.

12. Case law extending back a half-century holds that an amendment that simply changes the amount of the claim is not a new claim and should be allowed. *See Fidelity and Deposit Co. v. Fitzgerald*, 272 F.2d 121, 131 (10th Cir. 1959); *Menick v. Hoffman*, 205 F.2d 365 (9th Cir. 1953); *Continental Motors Corp. v. Morris*, 169 F.2d 315 (10th Cir. 1948); *Industrial*

---

[2] Accordingly, courts in the third circuit have liberally granted leave to amend. *See, e.g., Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990); *Werner v. Werner*, 267 F.3d 288, 296 (3d Cir. 2001); *Bechtel v. Robinson*, 886 F.2d 644 652 (3d Cir. 1989); *Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802, 807 (D. Del. 1986). "A district court has the discretion to grant or deny leave to amend. However, the trial court may not deny leave to amend '[i]n the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Fresh Fruit Co. v. Delaware Cold Storage, Inc.*, 961 F.Supp. 676, 686 (D. Del. 1997) (citations omitted).

- 6 -

*Commissioner v. Schneider,* 162 F.2d 847 (2d Cir. 1947); *See also In re Kellett Aircraft Corp.,* 173 F.2d 689 (3d Cir. 1949)(creditor permitted to file an unsecured claim after the bar date because its claim for specific performance was denied). Bankruptcy courts in this circuit have followed this rule under the current bankruptcy code. *See In re Pollack*, 90 B.R. 747, 752 (E.D. Pa. 1988) ("When an initial proof of claim is timely, courts will allow amendment to increase the amount of the proof of claim, if the new claim does not set up a new, different or separate claim."); *Hanscom Retail Foods*, 96 B.R. at 35 ("fact that a subsequent proof of claim is for a larger sum than the earlier proof of claim does not prevent the latter from amending the former.")

13. The Amended Sea-Pac Claim is based on the same contracts between the parties and the same transactional facts alleged in the Sea-Pac Claim. No new facts or transactions are alleged. The only substantive differences between the Sea-Pac Claim and the Amended Sea-Pac Claim, is (1) the amount of the claim based on the Residential Contract is greater and (2) the Amended Claim sets forth the claim and the relief requested with greater particularity.[3]  The Amended Sea-Pac Claim also requests

---

[3]  The Amended Sea-Pac Claim also requests that the claim be arbitrated as provided for in the Commercial Agreement and the Residential Agreement. Sea-Pac's request that the contractual claim issues be arbitrated is the

that in the event the Sea-Pac Claim is not allowed as an administrative claim that it be allowed as an unsecured claim. In this respect, the Amended Sea-Pac Claim mirrors AWI's Claim Objection, which requests that if the court allows the Sea-Pac Claim that it be allowed as an unsecured claim.

14. Finally, AWI will suffer no prejudice from the allowance of the amendment. Discovery is still in its early stages. The amendment is based, in part, on materials AWI provided Sea-Pac in discovery. And, AWI is aware of the amounts Sea-Pac is now claiming based on the parties' settlement negotiations.

---

subject of a prior motion by Sea-Pac, which is now on appeal to the district court.

- 8 -

## CONCLUSION

Amendments to timely filed proofs of claim are to be liberally allowed if they do not assert a new claim. Sea-Pac asserts no new claim. The Amended Sea-Pac Claim is based on the same contracts and transactions as the Sea Pac Claim, and simply increases the amount of the claim based on the Residential Agreement and describes the claim and relief sought with greater particularity. No prejudice will result by allowance of the amendment. Based on Bankruptcy Rule 7015, and established precedent, Sea-Pac should be granted leave to file the Amended Sea-Pac Claim.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware  19801
(302) 425-0430 (Telephone)

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

- 9 -

Al Van Kampen
ROHDE & VAN KAMPEN, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Creditor, Sea-Pac Sales
Company*

Dated: July 9, 2007

- 10 -

# EXHIBIT A

FORM B10 (Official Form 10) (10/05)

| UNITED STATES BANKRUPTCY COURT | DISTRICT OF Delaware | PROOF OF CLAIM |
|---|---|---|

Name of Debtor
**Armstrong World Industries, Inc.**

Case Number
**00-4471 (JKF)**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Sea-Pac Sales Company | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br>c/o Michael M. Feinberg<br>Karr Tuttle Campbell, PS<br>1201 Third Avenue, Suite 2900<br>Seattle, Washington 98101<br>Telephone number: (206) 223-1313 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces      Amends Claim No. 4854
if this claim ☒ amends   a previously filed claim. dated: 11/4/05

| 1. Basis for Claim<br>☐ Goods sold<br>☒ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other __Breach of Contract__ | Text ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date)              (date) |
|---|---|

2. Date debt was incurred:
Feb 15, 1999 to Dec 2004

3. If court judgment, date obtained:

4. **Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ __400,000__

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**

☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.

Amount entitled to priority $ __7,000,000__

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☒ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__1__).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| 5. Total Amount of Claim at Time Case Filed: | $ 400,000 | 7,000,000 | 7,400,000 plus interest and |
|---|---|---|---|
| See Attached for Details | (unsecured) | (secured)   (priority) | (Total) attorney fees |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.   Administrative Priority is claimed with respect to priority amounts under 11 U.S.C. §§ 503(b)(1) and 507(a)(1)

6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any).<br><br>Michael M. Feinberg, Attorney for Sea-Pac Sales Company |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to  $500,000 or imprisonment for up to 5 years, or both  18 U.S.C. §§ 152 and 3571

B - 201

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| ARMSTRONG WORLD INDUSTRIES, | ) |
| INC. et al., | ) |
| | ) Case No. 00-04471 (JKF) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| | ) |

### ATTACHMENT TO AMENDED PROOF OF CLAIM OF
### SEA-PAC SALES COMPANY (No. 4854)

The following describes in greater detail the claims of Sea-Pac Sales Company ("*Sea-Pac*") against the debtor, Armstrong World Industries, Inc. ("*AWI*"):

### I. CLAIM BASED ON THE RESIDENTIAL AGREEMENT
### AND PROVIDING RDC SERVICES

A.    Facts

1.    AWI and Sea-Pac are parties to a Residential Flooring Products and Distributorship Agreement and Sales/Service Center Agreement, effective February 15, 1999, which originally had a five year term and which expired on February 15, 2004 (the "*Residential Agreement*"). By a letter agreement executed by the parties, the February 15, 2004 expiration date of the Residential Agreement was extended to March 31, 2004.

2.    As part of the Residential Agreement, AWI required Sea-Pac to be a Regional Distribution Center ("*RDC*") to warehouse, merchandise, service and ship to AWI's Corporate Retail Accounts, such as The Home Depot and Lowe's, to which AWI sold product directly.

3.    AWI was required to reimburse Sea-Pac for its RDC services so that Sea-Pac received a fair return on investment for the services it provided to AWI. Pursuant to

- 1 -

B - 202

Residential Agreement ¶ 12.g, the RDC fee schedule was to be reviewed by AWI at least annually and revised at its discretion. Sea-Pac was required to, and did provide AWI its financial performance of RDC activity, which was to be used in AWI's annual Operation Study to revise the fee schedule so that it fully-reimbursed Sea-Pac for its RDC services to AWI.

4.    The annual Operating Statement Studies prepared by AWI showed that AWI was not reimbursing Sea-Pac for its RDC services. As a result of AWI's failure to reimburse Sea-Pac for RDC services, Sea-Pac was in effect subsidizing AWI's profits for its direct sales to The Home Depot and Lowe's.

5.    After July 2004, AWI finally began paying Sea-Pac greater RDC fees so that the reimbursement more closely covered the actual RDC costs incurred by Sea-Pac.

6.    By a letter dated August 25, 2004, Sea-Pac and AWI entered into an interim agreement ("*Interim Agreement*") continuing the Residential Agreement on the same terms and conditions as were in effect on the expiration of the Residential Agreement. The Interim Agreement commenced on the date Sea-Pac executed it, August 27, 2004, and expired by its terms on December 31, 2004.

7.    AWI, in failing to properly reimburse Sea-Pac for the RDC services Sea-Pac provided AWI, breached its obligations under the Residential Agreement.

8.    As a proximate result of AWI's breach of the Residential Agreement and its failure to properly reimburse Sea-Pac for RDC services that AWI requested Sea-Pac provide, Sea-Pac was under-reimbursed in the approximate amount of $400,000 for pre-petition RDC services and $5,000,000 for post-petition RDC services through December 31, 2004, all of which benefited AWI.

- 2 -

#615007 v2 / 27597-001

9.      Alternatively, and for any time period outside the Residential or Interim Agreement, Sea-Pac is entitled to restitution based on quantum meriut or unjust enrichment in the amount of $400,000 for pre-petition RDC services Sea-Pac provided AWI and $5,000,000 for post-petition RDC services through December 31, 2004 that Sea-Pac provided AWI.

10.      The RDC services Sea-Pac provided AWI post-petition were at the request of AWI and in the ordinary course of the relationship between AWI and Sea-Pac.  Sea-Pac, therefore, is entitled to an administrative priority under 11 U.S.C. §§ 503(b)(1) and 507(a)(1).

11.      The Residential Agreement ¶ 30, provides for binding arbitration before the American Arbitration Association of any dispute arising out of the Commercial Agreement; and Residential Agreement ¶ 31, provides that with respect to any matter that is not arbitrated, venue for any federal lawsuit shall be the United States District Court for the Eastern District of Pennsylvania.

**B.      Relief Requested**

Sea-Pac requests the following relief based on the Residential Agreement and for providing RDC services as follows:

12.      For an allowed pre-petition claim in the amount of $400,000 for the pre-petition RDC services Sea-Pac provided AWI together with interest through the petition date.

13.      For an Allowed Administrative Expense Claim in the amount of $5,000,000, or in the alternative, for an allowed unsecured claim in the amount of $5,000,000 for post-petition RDC services, together with interest to the extent permitted by applicable law.

14.      For an allowed claim for Sea-Pac's costs and reasonable attorney fees incurred fees as provided for in the Residential Agreement and to the extent permitted by applicable law.

- 3 -

15.    For an order transferring this matter to arbitration before the American Arbitration Association as provided for by Residential Agreement ¶ 30, if this claim of Sea-Pac is contested by AWI, or in the alternative, transferring venue of this matter to the United States District Court for the Eastern District of Pennsylvania as provided in the Residential Agreement ¶ 31.

16.    For such additional relief as the Court considers appropriate.

## II. CLAIM BASED ON BREACH OF COMMERCIAL AGREEMENT

A.    **Facts**

16.    AWI and Sea-Pac are parties to a Commercial Flooring Products Distributorship Agreement, effective February 15, 1999, which originally had a five year term and expired on February 15, 2004 (the "Commercial Agreement"). By a letter agreement, the February 15, 2004 expiration date of the Commercial Agreement was extended to March 31, 2004.

17.    Pursuant to the Commercial Agreement ¶ 1, AWI appointed Sea-Pac

> to be its exclusive wholesale distributor for all commercial floor covering products made available to distribution by AWI's Floor Products Operations ("Commercial Flooring Products") within the geographic area described in Attachment A hereto ("Distributor Territory").

18.    Sea-Pac's Distributor Territory, where it was to be the exclusive wholesale distributor for the Northwest United States, included Washington, Oregon, Idaho, Montana and Northern Wyoming, plus Alaska. AWI reaffirmed the exclusivity in the letter agreement referenced in paragraph 16.

19.    Effective on or about April 1, 2003, AWI appointed Pacific Mat Company, a division of T&A Supply Company, as a second distributor of AWI's commercial flooring

- 4 -

B - 205

products for Sea-Pac's exclusive Distributor Territory. The Commercial Agreement did not permit AWI to appoint a second distributor for Sea-Pac's exclusive Distributor Territory.

20.     The Interim Agreement, in addition to continuing the Residential Agreement, also continued the Commercial Agreement on the same terms and conditions as were in effect on the expiration of the Commercial Agreement. Under the Interim Agreement, Sea-Pac remained, and AWI reaffirmed, that Sea-Pac was its exclusive distributor of AWI's Commercial Flooring Products within Sea-Pac's Distributor Territory.

21.     AWI breached the Commercial Agreement, proximately damaging Sea-Pac and benefiting itself.

22      As a proximate result of AWI's breach of the exclusive distributorship provision of the Commercial Agreement, Sea-Pac suffered damages of $2,000,000 This breach occurred post-petition in the ordinary course of the relationship between AWI and Sea-Pac. Sea-Pac, therefore, is entitled to an administrative priority under 11 U.S.C. §§ 503(b)(1) and 507(a)(1).

23.     The Commercial Agreement ¶ 25, provides for binding arbitration before the American Arbitration Association of any dispute arising out of the Commercial Agreement; and Commercial Agreement ¶ 26, provides that with respect to any matter that is not arbitrated, venue for any federal lawsuit shall be the United States District Court for the Eastern District of Pennsylvania.

**B.    Relief Requested**

Sea-Pac requests the following relief based on the Commercial Agreement as follows:

24.     For an Allowed Administrative Expense Claim in the amount of $2,000,000, or in the alternative, for an allowed unsecured claim in the amount of $2,000,000 for the damages

- 5 -

proximately caused by AWI's breach of the Commercial Agreement together with interest to the extent permitted by applicable law.

25.    For an allowed claim for Sea-Pac's costs and reasonable attorney fees as provided for in the Commercial Agreement and to the extent permitted by applicable law.

26.    For an order transferring this matter to arbitration before the American Arbitration Association as provided for by Commercial Agreement ¶ 25, if this claim of Sea-Pac is contested by AWI, or in the alternative, transferring venue of this matter to the United States District Court for the Eastern District of Pennsylvania as provided in the Commercial Agreement ¶ 26.

27     For such additional relief as the Court considers appropriate.

### III. Exhibits

A.    Commercial Flooring Products Distributorship Agreement, effective February 15, 1999.

B.    Residential Flooring Products and Distributorship Agreement and Sales/Service Center Agreement, effective February 15, 1999.

C.    Letter Agreements dated January 29 and February 9, 2004.

D.    Interim Agreement dated August 25, 2004.

- 6 -

CERTIFICATE OF SERVICE

I, Michael G. Busenkell, certify that on July 9,
I caused copies of the foregoing Motion Of Defendant Sea-
Pac Sales Company For Leave Of Court To File Amended Proof
Of Claim to be served in the manner indicated on:


Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger,
P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge &
Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC 20005
*By First Class Mail*



_____
Michael G. Busenkell (No. 3933)

**11**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:    ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

---

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-4 |
| | ) | |
| v. | ) | |
| | ) | |
| ARMSTRONG WORLD | ) | Bankruptcy Case No. 00-04471 |
| INDUSTRIES, INC., | ) | Appeal No. 06-77 |
| | ) | |
| Appellee | ) | |

## SEA-PAC SALES COMPANY'S MOTION FOR STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

Appellant Sea-Pac Sales Company ("Sea-Pac"), pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure and Federal Rule of Appellate Procedure 8(a), files it motion for an order granting a stay pending appeal of the Bankruptcy Court's Order denying arbitration. The grounds for this Motion are set forth in the accompanying Memorandum of Law.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Appellant
Sea-Pac Sales Company*

Dated:   July 19, 2007

*U0007954*

2

CERTIFICATE OF SERVICE

I, Michael B. Busenkell, Esquire, certify that on July 19, 2007, I caused copies of the foregoing to be served in the manner indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC  20005
*By First Class Mail*

Michael G. Busenkell (#3933)

**12**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:    ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

SEA-PAC SALES COMPANY,                )
                                      )
                  Appellant           )  Civil Action No. 07-4
                                      )
       v.                             )
                                      )
ARMSTRONG          WORLD   )  Bankruptcy Case No. 00-04471
INDUSTRIES, INC.,          )  Appeal No. 06-77
                                      )
                  Appellee            )

SEA-PAC SALES COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR STAY PENDING
APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

ECKERT  SEAMANS  CHERIN  &  MELLOTT
LLC
Karen Lee Turner (No. 4332)
Michael G. Busenkell (No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

        -and-

KARR TUTTLE CAMPBELL
Michael M. Feinberg
Diana K. Carey
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

        -and-

#619868 v2 / 27597-004

ROHDE & VAN KAMPEN PLLC
Al  Van Kampen
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

ATTORNEYS     FOR     SEA-PAC     SALES
COMPANY

#619868 v2 / 27597-004

TABLE OF CONTENTS

Page

I.   JURISDICTION AND VENUE ................................. 7

II.  RELIEF REQUESTED ....................................... 7

III. LEGAL ARGUMENT ......................................... 7

     A.   A Party Appealing An Order Denying A Motion to
          Compel Arbitration Is Entitled To A Stay
          Pending Appeal, If the Appeal Is Not
          Frivolous. .......................................... 8

     B.   The Stay Pending Appeal Applies to All Claims
          and All Matters, Including Discovery Arguably
          Within Scope of Arbitration Clause. .............. 11

          1.   All of the Issues Identified by AWI
               Should by Stayed by Sea-Pac's Appeal ....... 15

          2.   Discovery on the Arbitrable Issues is
               Stayed By Sea-Pac's Appeal ................. 20

     C.   Sea-Pac's Alleged Litigation Conduct is
          Irrelevant to the Stay Pending Appeal Issue. ..... 20

IV.  CONCLUSION ............................................ 26

- i -

B - 215

TABLE OF AUTHORITIES

Page

## CASES

*Akai Elec. Co. (In re Singer Co., N.V.)*, 2001
U.S.Dist.LEXIS 12902 (S.D.N.Y. 2001) .......................12

*Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249 (11th
Cir. 2004) ...........................................8, 12

*Bradford-Scott Data Corp. v. Physician Computer
Network, Inc.*, 128 F.3d 504 (7th Cir. 1997)8, 10, 11, 12, 17, 20

*Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir.
1990) ......................................................8

*Cibro Petroleum Products, Inc. v. City of Albany (In re
Winimo Realty Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001) .....12, 13

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d
Cir. 2007) ... 1, 6, 8, 9, 10, 11, 17, 19, 20, 21, 24, 25, 26

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,
(2002) ....................................................24

*In re Mintze*, 434 F.3d 222 (3d Cir. 2006) ..............18, 19

*In re Statewide Realty Co.*, 159 B.R. 719 (Bankr. D.
N.J. 1993) ................................................22

*In re: Transport Associates, Inc.*, 263 B.R. 531 (Bankr.
W.D. Ky. 2001) .........................................22, 23

*Kittay v. Ladegger (In re Hagerstown Fiber Ltd
Partnership)*, 277 B.R. 181 (S.D.N.Y. 2002) ...........12, 16

*Marie v. Allied Home Mortgage*, 402 F.3d 1 (1st Cir.
2005) .....................................................24

*MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir.
2006) .....................................................19

*McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d
1158 (10th Cir. 2005).................................8, 10, 12

*Mor-Ben Insurance Markets Corp., v. Trident General
Ins. Co., Ltd.*, 73 B.R. 644 (9th Cir. B.A.P. 1987) ........22

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir.
2004) ......................................................8

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220
(1987) ....................................................19

- ii -

**STATUTES**

11 U.S.C. § 502(a) .............................................23

28 U.S.C. § 1334 ...............................................7

28 U.S.C. § 1409 ...............................................7

28 U.S.C. § 1448 ...............................................7

28 U.S.C. § 158 ................................................7

9 U.S.C. § 16(a) ...........................6, 8, 9, 10, 16, 20

- iii -

Pursuant to the Third Circuit's ruling in *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007), Sea-Pac Sales Company (*"Sea-Pac"*) respectfully moves this Court for an order pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure staying this adversary proceeding, pending final resolution of Sea-Pac's appeal of the Court's November 20, 2006 Order (the *"Order Denying Arbitration"*). Alternatively, Sea-Pac requests the Court stay all matters involving potentially arbitrable issues in this case. In support of this Motion, Sea-Pac respectfully states as follows:

## I.    BACKGROUND

On December 6, 2000, AWI and certain of its affiliated companies (collectively *"AWI"*) filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the *"Bankruptcy Code"*) in the United States Bankruptcy Court for the District of Delaware (the *"Bankruptcy Court"*).[1]

Sea-Pac is a creditor of AWI based on two prepetition contracts: a Commercial Flooring Products

---

[1] By an order entered on August 18, 2006, the United States District Court for the District of Delaware confirmed AWI's Fourth Amended plan of Reorganization, as Modified, and on October 2, 2006, AWI emerged from chapter 11 protection.

-1-

Distributorship Agreement ("*Commercial Agreement*") and a Residential Flooring Products Distributorship and Sales/Service Agreement ("*Residential Agreement*"), both of which expired following two extensions on March 31, 2004. *See* Appendix 1. Both the Commercial Agreement and the Residential Agreement contain broadly worded arbitration clauses requiring the arbitration of disputes arising under the agreement.

By an *Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3)(I) Fixing a Final Dated for Filing Proofs of Claim Relating to Certain Contracts and Leases and (II) Approving the Proposed Forms Of Proof of Clam and Notice* dated September 29, 2005 ("*Executory Contracts Bar Date Order*"), the Bankruptcy Court set November 8, 2005 as the deadline by which all parties to "*Previously Scheduled Contracts*" must file proofs of claim for any and all claims against AWI relating to such Previously Scheduled Contracts, i.e., contracts that originally were listed by AWI on Schedule G to its Schedule of Assets and Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory because they had terminated or expired according to their terms. Both the Commercial Agreement

- 2 -

and the Residential Agreement were identified in the Executory Contracts Bar Date Order as a Previously Scheduled Contracts. The Executory Contracts Bar Date Order required parties to Previously Scheduled Contracts to file proof of claim if they disagreed with the amount or characterization of their claim as described in Executory Contract Bar Date Order.

On November 8, 2005, Sea-Pac filed a timely proof of claim in the AWI bankruptcy (the "Sea Pac Claim") based on Commercial and Residential Agreements. *See* Appendix 1. Sea-Pac additionally asserted claims under a letter Agreement (the "Interim Agreement") made on or about August 25, 2004, which adopted the terms of the Commercial Agreement and Residential Agreement effective August 25, 2004 through December 31, 2004. *Id.* Sea-Pac asserted that not less than $4,500,000 of its claim was entitled to administrative priority status under 11 U.S.C. 503(b)(1). *Id.* The Sea-Pac Claim has been designated as Claim 4854 by the AWI's claims agent. *Id.*

AWI took no action on Sea-Pac's Claim for over seven months. Finally on July 20, 2006, AWI filed an objection to Sea-Pac's Proof of Claim (the "*AWI Objection*"). *See* Appendix 2. By its objection, AWI sought

-3-

to disallow the Administrative Expense Claim or, in the alternative, reclassify the Administrative Expense Claim as a general unsecured claim. *See* Appendix 2, Objection ¶ 17.

On or about September 15, 2006, Sea-Pac filed its Response to the Supplemental Objection. *See* Appendix 3. Contemporaneously with its response to the AWI Objection, Sea-Pac filed a motion to pursuant to § 3 of the Federal Arbitration Act ("**FAA**") to (i) stay objection by Armstrong World Industries, Inc. to Sea-Pac's proof of claim no. 4854 pending arbitration, and (ii) for relief from the automatic stay or, in the alternative, for relief from the discharge injunction ("**Arbitration Motion**") to stay the proceedings on AWI's objection pending arbitration of Sea Pac's claims. *See* Appendix 4. Subsequently, AWI filed *a Supplemental Objection and Counterclaims of Armstrong World Industries Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)*("**Supplemental Objection**") raising additional defenses to the Sea-Pac Claim and asserting counterclaims, thereby commencing this Adversary Proceeding ("**Adversary Proceeding**").

After hearing argument on the Arbitration Motion on October 23, 2006, the Bankruptcy Court denied the Arbitration Motion ruling that Sea-Pac was obligated to

-4-

demand arbitration as soon as it was aware that a dispute arose, that Sea-Pac failed to preserve its right to arbitrate by not timely invoking the arbitration clauses contained in the Commercial Agreement and the Residential Agreement. *See* Appendix 5. Transcript at 19-21. On November 20, 2006, the court entered the Order Denying Arbitration. On November 30, 2006, Sea-Pac filed a timely Notice of Appeal under Section 16(a) of the FAA, which is presently pending before this Court.

On March 23, 2007, after AWI filed a motion for partial summary judgment, Sea-Pac filed a motion to stay the proceedings in the bankruptcy court on the Sea-Pac Claim pending this Court's disposition of Sea-Pac's Appeal ("Stay Pending Appeal Motion") and requested an expedited hearing. *See* Appendices 6 & 7. The bankruptcy court granted Sea-Pac's Motion for an Expedited Hearing and on April 2, 2007, held a hearing on the Stay Pending Appeal Motion. The bankruptcy court denied the motion without prejudice to Sea-Pac to renew the motion at a later date. A formal order denying the Stay Pending Appeal Motion was entered on April 6, 2007. *See* Appendix 8.

Following the entry of the Stay Pending Appeal Motion, the Third Circuit Court of Appeals issued its opinion in

*Ehleiter*, which held among other things, that a trial court is automatically divested of jurisdiction to proceed where there is an appeal under Section 16(a) of the FAA of an order denying a motion to stay litigation pending until such time as the appeal is fully litigated or determined to be frivolous or forfeited. 482 F.3d at 215 n.6.

On June 18, 2007, Sea-Pac filed its Renewed Motion for Stay Pending Appeal ("**Renewed Stay Pending Appeal Motion**") based on *Ehleiter* and again sought an expedited hearing. *See* Appendices 8 & 9. The bankruptcy court denied Sea-Pac's request for an expedited hearing and set a briefing schedule requiring AWI to file a response by July 5 and Sea Pac to file a reply by July 10, 2007. *See* Appendix 10. AWI filed its response on July 5, 2007. *See* Appendix 11. On July 9, 2007, *before* Sea-Pac's reply brief *was due*, the bankruptcy court issued its Order Denying Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2007 Order, summarily denying the Renewed Stay Pending Appeal Motion based on the reasons stated in AWI's response. See Appendix 12.

Sea-Pac now requests this Court grant it a *Stay Pending Appeal* as required by *Ehleiter*.

-6-

## I.    JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1334, Bankruptcy Rule 8005 and pursuant to Article IX of the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc. as Modified (the "*Plan*") and the Order Confirming the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as modified confirming the Plan.  Venue is proper pursuant to 28 U.S.C. §§ 1448 and 1409.

## II.  RELIEF REQUESTED

Sea-Pac requests that the Court enter an Order staying all proceedings before the bankruptcy court related to the Sea-Pac Claim pending resolution of this appeal by the District Court or in the alternative that this Court stay all issues related to the arbitrable issues in this matter.

## III. LEGAL ARGUMENT

Bankruptcy Rule 8005 enables the bankruptcy court, a bankruptcy appellate panel or district court to issue a stay pending appeal from a judgment, order or decree of a bankruptcy court.  The Rule provides that "the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in

- 7 -

interest." Bankruptcy Rule 8005 states that the motion for stay pending appeal "must ordinarily be presented to the bankruptcy judge in the first instance" before being presented to the district court. Sea-Pac has presented such a motion to the bankruptcy judge on two occasions.

A.    **A Party Appealing An Order Denying A Motion to Compel Arbitration Is Entitled To A Stay Pending Appeal, If the Appeal Is Not Frivolous.**

The Federal Arbitration Act provides that a party may immediately appeal an order denying a motion to compel arbitration or refusing to stay a matter during arbitration. 9 U.S.C. § 16(a). Sea-Pac has filed such an appeal that is presently pending before this Court. There is a split between the circuit courts of appeal as to whether a trial court must stay all proceedings pending the resolution of an interlocutory appeal under § 16(a) of the FAA.[2] At the time Sea-Pac filed its Stay Motion the Third Circuit had not addressed this issue. Subsequently, in *Ehleiter* the Third Circuit held that it would follow the

---

[2]    *Compare McCauley v. Halliburton Energy Servs., Inc*, 413 F.3d 1158, 1162-63 (10th Cir. 2005) (automatic divestiture of trial court jurisdiction unless appeal is frivolous or forfeited); *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) (automatic divestiture of trial court jurisdiction unless appeal is frivolous); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (endorsing automatic divestiture rule, reasoning that "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals"), with *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53-54 (2d Cir. 2004) (no automatic stay); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) (same).

-8-

majority of the circuits that hold a trial court is automatically divested of jurisdiction to proceed where there is an appeal under Section 16(a) of an order denying a motion to stay litigation until such time as the appeal is fully litigated or determined to be frivolous or forfeited. *Id.* at 215, n.6.

AWI argues[3] that the unpublished order referred to in *Ehleiter*, footnote 6, is not part of the holding and is not binding precedent. But, footnote 6 is plainly part of the decision in Ehleiter. With respect to the jurisdictional issue, the Third Circuit held the FAA's strong policy favoring arbitration is "best served, by allowing the party to obtain a definitive ruling on the denial of its Section 3 motion by way of interlocutory appeal to this Court, rather than requiring it to continue litigating the case to final judgment before obtaining a full round of appellate review on the waiver issue." 482 F.2d at 414-15. It reasoned, that in the event an appellate court determined that a stay pending appeal had be improperly denied, requiring a party to spend substantial time and expense fully litigating a matter whose result would have to be vacated, would effectively deprive the party of the

---

[3]    Sea-Pac was denied any opportunity to address AWI's arguments because the bankruptcy court entered its order denying Sea-Pac's Renewed Stay Motion before Sea-Pac's reply was due.

bargained for benefits of the arbitral forum. *Id.* at 214. *Accord McCauley*, 413 F.3d at 1161;(*Bradford-Scott Data Corp.*, 128 F.3d at 506 (court has "duty to protect the benefits of arbitration from erosion by the demands of litigation in district court during the pendency of a non-frivolous appeal from the denial of arbitration.")

Accordingly and consistent with its holding, the Third Circuit in footnote 6, indicated that it had granted a stay pending appeal and that the Third Circuit was not in agreement with the majority rule that there is "automatic divesture" of trial court jurisdiction where the § 16(a) appeal is neither frivolous or forfeited. *Id.* at 215, n.6. Indeed, there would have been no reason for the court to have even included footnote 6 unless it intended to adopt the "automatic divesture" rule.

*Ehleiter* unambiguously holds that a party who has filed a non-frivolous appeal under § 16(a) of the FAA is entitled to a stay pending appeal of the trial court's decision not to enforce an arbitration provision. AWI has never suggested that Sea-Pac's appeal is frivolous, not in its appeal brief and not in its responses to either of Sea-Pac's motions for a stay pending appeal. Accordingly, Sea-Pac plainly is entitled to an order staying the appeal

until its appeal of the Order Denying Arbitration has been fully litigated.

    B.    **The Stay Pending Appeal Applies to All Claims and All Matters, Including Discovery Arguably Within Scope of Arbitration Clause.**

AWI argued in its Opposition to Renewed Stay Motion that the Bankruptcy Court should not accept Sea-Pac's invitation to stay any part of this proceeding arguing that this case differs materially from *Ehleiter* because there are issues that will undeniably go forward in the trial court. The distinction AWI attempts to make is untenable. AWI is unable to cite a single case that supports its position and the cases it cites either hold to the contrary or do not address the issue.

For example, *Bradford-Scott Data Corp. v. Physician Computing Network*, 128 F.3d 504 (7th Cir. 1997), relied on by AWI, expressly rejects AWI's argument. In that case Bradford Scott argued that because there were defendants who were not part of the appeal the action would nevertheless go forward in the district court, and accordingly the action should not be stayed. But the Seventh Circuit reversed the district court holding the

- 11 -

effect of automatic divesture was to stay all proceedings of the arbitrable issues pending appeal.[4]

Likewise, district courts in their appellate capacity have consistently reversed bankruptcy courts that have refused to stay proceedings when a case presents both arbitrable and non-arbitrable issues as this case does. *Kittay v. Ladegger (In re Hagerstown Fiber Ltd Partnership)*, 277 B.R. 181, 199 (arbitrable claims subject to mandatory stay under the FAA and court must address whether to stay balance of non-arbitrable claims); *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001); *Akai Elec. Co. (In re Singer Co., N.V.)*, 2001 U.S.Dist. LEXIS 12902 (S.D.N.Y. 2001). At a minimum, the automatic divesture rule deprives the bankruptcy court of jurisdiction of all aspects of the arbitrable issues and only those issues that will not be affected by or do not share common issues with the arbitrable issues are not stayed. *See In re Hagerstown Fiber Ltd Partnership*, 277 B.R. at 208 (staying non-arbitrable fraudulent conveyance claims because they overlapped the arbitrable contract claims and shared common

---

[4] *Id.* at 507. *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162-63 (10th Cir. 2005) and *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) adopt *Bradford-Scott's* reasoning but involve only arbitrable claims. They provide no support for AWI's position that where there are both arbitrable and non-arbitrable claims, the automatic divesture rule does not apply.

questions of fact such that arbitration might contribute to resolution of issues raised by fraudulent conveyance claims); *In re Winimo Realty Corp.,* 270 B.R. 99 (staying all claims that were arguably dependant on the outcome of the arbitrable issues).

In *Hagerstown Fiber* the trustee filed a complaint containing 21 separate counts against over a dozen defendants arising out of an agreement to construct a waste paper pulping and facility and waste treatment plant. 277 B.R. at 189. Two counts of the complaint alleged breaches by the contractor and its parent of the construction contract, which contained what the court described as a "narrow" arbitration clause. *Id.* at 204. The remaining counts alleged various fraudulent conveyance claims under § 544(b) of the Bankruptcy Code, a turnover claim under § 542 of the Bankruptcy Code, and claims of fraud, breach of fiduciary duty, knowing participation in breaches of fiduciary duty, professional negligence as well as breaches of other contracts. These claims were asserted against the contractor, its parents and at least ten other parties. *See id.* at 195-196. The trustee conceded the arbitrability of the claims against the contractor and its parents under the construction contract but argued the remaining claims

-13-

against both the contractor and the other parties were non-arbitrable. *Id.* at 205. The court disagreed. Rather, the court held that to determine if the proceedings involving a claim should be stayed it was required to engage in a claim by claim analysis of whether the non-arbitrable claims and arbitrable claims involved common questions of law and fact or whether the arbitration was likely to dispose of issues common to the claims of the arbitrating and non-arbitrating defendants. *Id.* at 199. For example[5], the court held the fraudulent conveyance claims, although they were core bankruptcy proceedings and not subject to the arbitration clause, should nevertheless be stayed because they shared common questions of fact with the arbitrable contract claims regarding whether the debtor received fair consideration and accordingly resolution of the contract claims might contribute to resolution of the fraudulent conveyance claims. *Id.* at 208-09. With respect to the fraud claims, which were likewise non-arbitrable, the court held that as to the contractor they should be stayed because they were grounded on the construction contract, but severed the fraud claims against the other defendants that were not parties to the arbitration agreement. *Id.* at

---

[5] The following analysis is not a complete description of the court's analysis of all the claims, but only certain claims that have illustrative significance with respect to the issues presented here.

-14-

211. As to the claims against the construction sureties, it stayed the claims because the sureties had bound themselves for the contractor's performance under the construction contract and their liability could not be determined until the contractor's liability under the contract was determined. *Id.* at 212-13.

In the Third Circuit, when there are both arbitrable and non-arbitrable issues all proceedings involving the arbitrable issues must be stayed. A court thus is required either to stay the entire proceeding or determine whether the balance of the issues should be stayed based on whether they share common issues of fact or law with the arbitrable issues or are dependent on their outcome. In line with this analysis, this court should (i) stay the entire Adversary Proceeding or (ii) determine which non-arbitrable issues should be stayed because they share common issues of fact with the arbitrable issues or are dependent upon their outcome.

### 1. All of the Issues Identified by AWI Should by Stayed by Sea-Pac's Appeal

AWI contends, incorrectly, that there a certain issues that will undeniably go forward and that Sea-Pac is not seeking to stay those issues. While Sea-Pac agrees there may be certain issues that ultimately will have to be

B - 232

resolved by the bankruptcy court, Sea-Pac maintains that all the issues AWI has identified as issues that will indisputably go forward in the bankruptcy court are either arbitrable or subject to stay pending resolution of Sea-Pac's FAA § 16 appeal because they share common issues of law and fact with the arbitrable issues, are dependent upon the resolution of arbitrable issues or would be mooted by a decision requiring arbitration of Sea-Pac's claims based on the Commercial and Residential Agreements.

A portion of Sea-Pac's Claim is based on the roughly five-month period between the expiration of the Commercial and Residential Agreements, on March 31, 2004 and the Interim Agreement that was effective August 27 to December 31, 2004, and which incorporates the terms of the Commercial and Residential Agreement.  AWI claims that these claims are not arbitrable and should not be stayed. Assuming arguendo they are not covered by the arbitration clauses in the Commercial and Residential Agreements, they nonetheless share common issues of law and fact with the arbitrable claims, which requires that they be stayed.  See *In re Hagerstown Fiber Ltd Partnership*, 277 B.R. at 199, 208 and 212.  Moreover, the arbitrators will have to decide whether the parties intended that the Interim Agreement

- 16 -

would reinstate the parties' agreement covering the five-
month period, and how to count Sea-Pac's lost sales during
the period resulting from AWI's illegal appointment of a
second distributor. For example, if the competing
distributor received a sales order prior to March 31, but
delivered the flooring during the following five month
period, Sea-Pac believes that sale is part of its damages.
Not staying the matter would also raise the possibility of
two trials and inconsistent rulings involving the same
issues, which the automatic divesture rule is designed to
avoid. *See Ehleiter* 482 F.3d at 214 (automatic divesture
rule intended to prevent the possibility of two trials);
*Bradford-Scott*, 128 F.3d at 505 (continuation of
proceedings in the trial court creates risk of inconsistent
handling of the case by two tribunals). Contrary to AWI's
contention, the case law indicates that Sea-Pac's claim
during the roughly five-month period not covered by any
agreement should be stayed.

       AWI contends that the Motion to Vacate pending
before the bankruptcy court would not be stayed. The
Motion to Vacate involves the question of whether AWI
should be able to amend its complaint to add certain

affirmative defenses to the Sea-Pac Claim.[6]  If this Court determines that Sea-Pac's claims under the Residential and Commercial Agreements are arbitrable, this will return the parties to the status quo as of the date Sea-Pac requested arbitration and all orders entered by the trial court on the arbitrable claims would have to be vacated.  *See In re Mintze*, 434 F.3d 222, 233 (3d Cir. 2006)(vacating bankruptcy court's summary judgment order dismissing debtor's TILA and HOPEA claims, and restoring parties to the status quo as of the date of the motion to compel).  Whether AWI can amend its affirmative defenses should be determined by the procedural rules of the arbitral forum.

AWI also contends in its summary judgment argument that Sea-Pac is barred from asserting a pre-petition claim under federal bankruptcy law because it withdrew an earlier, unrelated claim with prejudice after AWI paid Sea-Pac the full amount it claimed.  Its analysis is driven by its faulty premise that only state law issues may be arbitrated.  Arbitration is "presumptively an appropriate and competent forum of federal statutory claims," including claims based on the Bankruptcy Code if

---

[6] Sea-Pac is seeking to vacate an order granting a AWI's Motion for Leave to Amend it Supplemental Objection.  As is the case here with Sea-Pac's Renewed Stay Motion, the bankruptcy court granted AWI's motion before Sea-Pac's opposition was due, so that Sea-Pac was never provided the opportunity to address the merits of the motion.

the are the subject of an enforceable arbitration provision. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2nd Cir. 2006)(citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 233 (1987)). The analysis of whether Sea-Pac's pre-petition claim is barred because it withdrew the claim after it had been paid in full turns on traditional claim preclusion principles. AWI does not suggest why, under the *McMahon* standard, the issue of whether Sea-Pac is barred from asserting its prepetition claim cannot be decided by an arbitrator.[7]

Under *Ehleiter*, Sea-Pac is entitled to stay all issues that were subject to an arbitration clause in the parties' written agreements and any other claim that has common issues of law or fact with the arbitrable issues or would be dependent on the outcome of the arbitration. All of the issues AWI contends are not arbitrable should be stayed pending resolution of Sea-Pac's § 16 appeal because they share common issues of law and fact with the

---

[7] The Supreme Court's *McMahon* standard, applies to all statutory claims subject to applicable arbitration clauses, including core bankruptcy proceedings. *Mintze*, 434 F.3d at 230-31. Under the *McMahon* standard, to overcome enforcement of arbitration,

> a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes."

*Mintze*, 434 F.3d at 229 (quoting *McMahon*, 482 U.S. at 227.)

-19-

arbitrable issues, or would be mooted by a decision requiring arbitration of Sea-Pac's claims based on the Commercial and Residential Agreements. Accordingly, this Court should stay the Adversary Proceeding.

### 2. Discovery on the Arbitrable Issues is Stayed By Sea-Pac's Appeal

Under the automatic divesture rule, all proceedings involving the arbitrable claims, including discovery are stayed. See *Bradford-Scott Data*, 128 F.3d at 507. AWI is simply incorrect when it contends that automatic divesture does not stay discovery.

### C. Sea-Pac's Alleged Litigation Conduct is Irrelevant to the Stay Pending Appeal Issue.

The bankruptcy Court held that Sea-Pac waived its right to arbitrate by failing to demand arbitration in the time required by the parties written agreement. That is the issue presently on appeal. Even if the bankruptcy court's decision had been based on Sea-Pac's litigation conduct there would be no reason for the court to deny a stay pending appeal. The teaching of *Ehleiter* is that even if the trial court determines not to stay a proceeding pending arbitration based on litigation conduct, the party advocating arbitration is nonetheless entitled to a stay pending appeal if the appeal is not frivolous.

- 20 -

In *Ehleiter*, the appellant had actively litigated the case in court for approximately four years. *Id.* at 210. During that time both parties engaged in extensive discovery, submitted and responded to several sets of interrogatories and requests for production of documents, took numerous depositions and submitted several expert reports. *Id.* Appellant then sought and was granted a continuance of the trial date during which it filed a motion for summary judgment, a motion to implead a third party defendant, and a motion to amend his complaint to include a claim for punitive damages. *Id.* All three motions had been fully briefed and were pending decision by the superior court when, on the final day for filing motions under the court's scheduling order and only one day before the parties' joint final pretrial statement and proposed jury instructions were due, appellant filed a motion to stay the case pending arbitration pursuant to Section 3 of the FAA, 9 U.S.C. § 3 based on a contractual arbitration clause contained in a contract of a related party. *Id.* Notwithstanding these acts, the Third Circuit Court of Appeals found the appeal to be non-frivolous and granted a stay pending appeal.

- 21 -

In point of fact, Sea-Pac has not engaged in any litigation conduct that could possibly amount to waiver. The so-called litigation conduct AWI points to relates to Sea-Pac's having filed two proofs of claim in this proceeding. The case law uniformly holds that the act of filing a proof of claim does not waive the creditor's right to invoke an otherwise valid right to arbitrate. *See In re Statewide Realty Co.*, 159 B.R. 719, 724 (Bankr. D.N.J. 1993); *In Re: Transport Associates, Inc.*, 263 B.R. 531, 536 (Bankr. W.D. Ky. 2001); *Mor-Ben Insurance Markets Corp., v. Trident General Ins. Co., Ltd.*, 73 B.R. 644, 645 (9th Cir. B.A.P. 1987).

After Sea-Pac filed its first proof of claim, AWI paid the amount claimed and Sea-Pac withdrew the claim. There was no dispute and consequently no need for arbitration or any other dispute resolution.[8]

On November 8, 2005, Sea-Pac filed its second proof of claim, which is the subject of this Adversary Proceeding. AWI did not take any action on the Sea-Pac Claim for more than seven months until July 20, 2006, when it filed the AWI Objection. Until the filing of the AWI Objection, the Sea-Pac Claim was deemed an allowed claim.

---

[8]    Under § 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed until a party in interest objects to it.

See 11 U.S.C. § 502(a).     Contemporaneously with its
response to the AWI Objection, Sea-Pac filed its
Arbitration Motion, which the bankruptcy court denied in
the Stay Order and which Sea-Pac has appealed to this
Court.

A party who files a proof of claim does not waive
a right to arbitrate based on litigation conduct if it
demands arbitration within a reasonable time after the
filing of an objection to the claim.     *In re Transport
Associates,* 263 B.R. at 536.  Sea-Pac filed its Arbitration
Motion with its first substantive pleading after AWI
objected to the Sea-Pac Claim.     There is absolutely no
basis for any argument that Sea-Pac waived its right to
arbitrate by litigation conduct, when the very first action
it took in the litigation was to demand arbitration.[9]  It is
ironic that AWI complains about delay since the delay it
complains about is largely the result of its own making by
waiting more than seven months after Sea-Pac filed its
claim before taking any action with respect to it.

Not only was there no litigation waiver, *Ehleiter*
suggests that the bankruptcy court's reasoning in denying

---

[9]  The other alleged litigation conduct relates to a period when
there were no litigation issues joined between the parties, or to
events that in the Adversary Proceeding subsequent to Sea-Pac filing
its Arbitration Motion.   Acts when there is no litigation and acts
after arbitration is demanded cannot serve as a basis for litigation
waiver.

Sea-Pac's Motion to Arbitrate in the first instance is untenable. *Ehleiter* adopted the First Circuit's analysis in *Marie v. Allied Home Mortgage*, 402 F.3d 1 (1st Cir. 2005), recognizing two different kinds of waiver may arise in case involving a contractual arbitration clause. 482 F.3d at 218-219. One is based on waiver, delay or a like defense arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, (2002). *See Ehleiter*, 482 F.3d at 218-19. The other type of waiver is based on litigation conduct in a judicial forum that is inconsistent with, and waives, the right to arbitrate. *Id.* at 219.

Where an allegation of waiver, delay or a like defense based on non-compliance with contractual conditions precedent, "there is a presumption that the arbitrator should decide such the merits of these defenses." *Ehleiter*, 482 F.3d at 219 (citing *Howsam*, 537 U.S. at 84). The bankruptcy court's decision that Sea-Pac waived the arbitration provision was based on non-compliance with a contractual conditions precedent.

> It seems that the dispute arises as soon as
> Sea-Pac decides it has a claim and thinks
> Armstrong is in breach. . . [Y] our dispute
> [is] because you think that Armstrong has

-24-

> breached the contract because it appointed a
> second distributor is the date by which that
> 40-day period begins . . . Sea-Pac didn't
> do that. I really don't think Sea-Pac has
> preserved the right to arbitrate. I think
> you had one at the outset. I mean, the
> contract clearly provides the parties with
> that 40-day window, but I don't think it was
> timely invoked in this instance.

Transcript of Hearing (October 23, 2006) at 19-20.

*Ehleiter* holds this type of waiver is for an arbitrator to

decide.

Where there is an alleged waiver based on

litigation conduct inconsistent with the right to

arbitrate, *Ehleiter* plainly holds that waivers of this type

are appropriately decided by the court. The bankruptcy

court's decision that Sea-Pac waived the right to arbitrate

was based solely on Sea-Pac's alleged failure to timely

invoke the arbitration clause in its contracts and not on

any litigation conduct.

As noted above, the bankruptcy court did not deny

Sea-Pac's Stay Motion based on litigation conduct but on

its supposed failure to timely invoke the arbitration

mechanism under the parties' written contracts. Moreover,

there is no basis to conclude that Sea-Pac waived its right

to arbitrate based on litigation conduct. However, it

makes no difference here — had the bankruptcy court waiver

- 25 -

ruling been based on litigation conduct, *Ehleiter* holds that the trial court is automatically divested of jurisdiction pending appeal of the arbitration. Sea-Pac is entitled to a stay pending appeal regardless of the basis of the bankruptcy court's waiver decision.

## IV.  CONCLUSION

*Ehleiter* is binding precedent and requires, at a minimum, that this court stay the proceedings before the bankruptcy court pending the conclusion of Sea-Pac's appeal under § 16(a) of the FAA as they pertain to the arbitratable issues. AWI cites absolutely no authority to support its position that this court can ignore *Ehleiter*. When both arbitrable and non-arbitrable issues are present, the court is required to stay the arbitrable issues, including any discovery related to them, and determine whether the non-arbitrable issues share common issues of law or fact with the arbitrable issues or are dependent on their outcome to determine whether they can go forward or whether permitting them to go forward would possibly lead to inconsistent results. The bankruptcy court failed to engage in this or any other analysis, summarily determining that the requested stay should be denied and that the whole matter should go forward without permitting Sea-Pac to reply to AWI's unsupported legal position.

This court should (i) stay the entire Adversary Proceeding or (ii) determine which non-arbitrable issues should be stayed because they share common issues of fact with the arbitrable issues or are dependent upon their outcome.

Dated: July 19, 2007.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell
  (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware  19801
(302) 425-0430 (Telephone)

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Creditor, Sea-Pac Sales Company*

-27-

CERTIFICATE OF SERVICE

I, Michael B. Busenkell, Esquire, certify that on July 19, 2007, I caused copies of the foregoing to be served in the manner indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC  20005
*By First Class Mail*

Michael G. Busenkell (#3933)

B - 245

**13**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:    ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

---

| | |
|---|---|
| SEA-PAC SALES COMPANY, | ) |
| | ) |
| Appellant | ) Civil Action No. 07-4 |
| | ) |
| v. | ) |
| | ) |
| ARMSTRONG WORLD | ) Bankruptcy Case No. 00-04471 |
| INDUSTRIES, INC., | ) Appeal No. 06-77 |
| | ) |
| Appellee | ) |

## MOTION OF SEA-PAC SALES COMPANY FOR EXPEDITED CONSIDERATION OF SEA-PAC SALES COMPANY'S MOTION FOR STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

Sea-Pac Sales Company ("Sea-Pac"), by and through its undersigned counsel, hereby moves this Honorable Court (the "Motion") requesting an immediate hearing on Sea-Pac Sales Company's Motion For Stay Pending Appeal Of The Bankruptcy Court's Order Denying Arbitration (the "Stay Motion"), and in support thereof alleges the following:[1]

1.   On or about September 15, 2006, Sea-Pac filed a motion with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to (i) stay objection by Armstrong World Industries, Inc. ("AWI")

---

[1]    On March 23, 2007, Sea-Pac filed its first Motion Of Sea-Pac Sales Company For Expedited Consideration Of Sea-Pac Sales Company's Motion For Stay Pending Appeal Of The Court's November 20, 2006 Order (D.I. 34) (the "Original Motion"). After a hearing, the Bankruptcy Court denied the Original Motion without prejudice. (Adv. Pro. No 06-50899, D.I. 46).

to Sea-Pac's proof of claim no. 4854 pending arbitration, and (ii) for relief from the automatic stay or, in the alternative, for relief from the discharge injunction ("Stay Motion") (Bankr. Case No. 00-4471, Docket No. 9830).[2] In the Stay Motion, Sea-Pac argued that the Bankruptcy Court should stay proceedings on AWI's objection to claim no. 4854 pending arbitration. On October 23, 2006, the Bankruptcy Court held a hearing on the Stay Motion and, after hearing argument, denied the Stay Motion.

2. On November 20, 2006, the Bankruptcy Court issued the Order denying the Stay Motion for the reasons stated on the record. (Bankr. Case No. 00-4471, Docket No. 10117). On November 30, 2006, Sea-Pac filed a Notice of Appeal of the Order (the "Appeal") (Bankr. Case No. 00-4471, Docket No. 10134). The Appeal is pending before this Court and has been fully briefed.

3. On March 1, 2007, AWI filed the Motion for Partial Summary Judgment (Adv. Pro. No. 06-50899) Docket No. 23) (the "Summary Judgment Motion"), the disposition of which Sea-Pac seeks to stay pending this Appeal. The

---

[2] On October 6, 2006, AWI filed its Supplemental Objection And Counterclaims Of Armstrong World Industries, Inc. With respect To Proof Of Claim Of Sea-Pac Sales Company (Claim No. 4854) (Adv. Pro. No. 06-50899; D.I. 1) and the Court converted this matter to an adversary proceeding.

2

Summary Judgment Motion has been fully brief and is pending the Court's adjudication.

4.    On March 23, 2007, Sea-Pac moved for a stay pending appeal before the bankruptcy court, which the court denied without prejudice on April 6, 2007.

5.    On June 18, 2007, Sea-Pac renewed its Motion for Stay Pending Appeal, in light of the Third Circuit Court of Appeal's decision in *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007), which Sea-Pac contends is controlling, divests the bankruptcy court of jurisdiction and required the bankruptcy court to stay the proceedings pending Sea-Pac's appeal.    *See* Sea-Pac's Memorandum in Support of its Motion for a Stay Pending Appeal, filed herewith.    Sea-Pac requested an expedited hearing, which the bankruptcy court denied and set a briefing schedule requiring AWI to file a response by July 5 and Sea Pac to file a reply by July 10, 2007. On July 9, 2007, *before* Sea-Pac's reply brief was due or had been filed, the bankruptcy court issued its Order Denying Sea-Pac Sales Company's renewed Motion for Stay Pending Appeal.

6.    Sea-Pac requests that the Court schedule an immediate hearing on the Motion to stay all proceedings, pending the disposition of this Appeal.    Failure to provide an immediate hearing may result in irreparable harm to Sea-

3

Pac and the erosion of Sea-Pac's right to arbitration during the pendency of the Appeal.

7.    Contemporaneously with the filing of this Motion, Sea-Pac has filed the Stay Motion, a copy of which is attached hereto as Exhibit "A" and a memorandum in support of the Stay Motion attached as Exhibit "B."

8.    The undersigned hereby certifies that copies of this Motion, together with the Stay Motion, have been sent to counsel for AWI, simultaneously with the filing of this Motion.

WHEREFORE, Sea-Pac requests that this Court enter the Order annexed hereto granting the Motion and scheduling a hearing at the first available date. Further, the order annexed hereto requires AWI to file a response and serve upon counsel for Sea-Pac the day before the hearing.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware  19801
(302) 425-0430

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

4

B - 249

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Appellant*
*Sea-Pac Sales Company*

Dated:  July 19, 2007

*U0007955*

5

## CERTIFICATE OF SERVICE

I, Michael B. Busenkell, Esquire, certify that on July 19, 2007, I caused copies of the foregoing to be served in the manner indicated on:

Mark D. Collins, Esquire
Jason M. Madron, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
*By Hand*

Stephen Karatkin, Esquire
Debra A. Dandeneau, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
*By First Class Mail*

Louis J. Rouleau, Esquire
Womble Carlyle Sandridge & Rice, PLLC
1401 Eye Street NW
Seventh Floor
Washington, DC  20005
*By First Class Mail*

Michael G. Busenkell (#3933)

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:    ARMSTRONG WORLD INDUSTRIES, INC., et al.

_____

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-4 |
| | ) | |
| v. | ) | |
| | ) | |
| ARMSTRONG WORLD | ) | Bankruptcy Case No. 00-04471 |
| INDUSTRIES, INC., | ) | Appeal No. 06-77 |
| | ) | |
| Appellee | ) | |

### SEA-PAC SALES COMPANY'S MOTION FOR STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

Appellant Sea-Pac Sales Company ("Sea-Pac"), pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure and Federal Rule of Appellate Procedure 8(a), files it motion for an order granting a stay pending appeal of the Bankruptcy Court's Order denying arbitration. The grounds for this Motion are set forth in the accompanying Memorandum of Law.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

_____

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

B - 253

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

*Attorneys for Appellant*
*Sea-Pac Sales Company*

Dated:  July 19, 2007

*U0007954*

2

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re:    ARMSTRONG WORLD INDUSTRIES, INC., *et al.*

| | | |
|---|---|---|
| SEA-PAC SALES COMPANY, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-4 |
| | ) | |
| v. | ) | |
| | ) | |
| ARMSTRONG WORLD INDUSTRIES, INC., | ) | Bankruptcy Case No. 00-04471 |
| | ) | Appeal No. 06-77 |
| | ) | |
| Appellee | ) | |

SEA-PAC SALES COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION FOR STAY PENDING
APPEAL OF THE BANKRUPTCY COURT'S ORDER DENYING ARBITRATION

ECKERT  SEAMANS  CHERIN  &  MELLOTT
LLC
Karen Lee Turner (No. 4332)
Michael G. Busenkell (No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430

                -and-

KARR TUTTLE CAMPBELL
Michael M. Feinberg
Diana K. Carey
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

                -and-

ROHDE & VAN KAMPEN PLLC
Al  Van Kampen
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

ATTORNEYS    FOR    SEA-PAC    SALES
COMPANY

TABLE OF CONTENTS

Page

I.   JURISDICTION AND VENUE ................................. 7

II.  RELIEF REQUESTED ....................................... 7

III. LEGAL ARGUMENT ......................................... 7

    A.   A Party Appealing An Order Denying A Motion to
        Compel Arbitration Is Entitled To A Stay
        Pending Appeal, If the Appeal Is Not
        Frivolous........................................ 8

    B.   The Stay Pending Appeal Applies to All Claims
        and All Matters, Including Discovery Arguably
        Within Scope of Arbitration Clause.............. 11

        1.   All of the Issues Identified by AWI
            Should by Stayed by Sea-Pac's Appeal ........ 15

        2.   Discovery on the Arbitrable Issues is
            Stayed By Sea-Pac's Appeal .................. 20

    C.   Sea-Pac's Alleged Litigation Conduct is
        Irrelevant to the Stay Pending Appeal Issue. ..... 20

IV.  CONCLUSION ............................................. 26

B - 258

TABLE OF AUTHORITIES

Page

CASES

*Akai Elec. Co.* (In re Singer Co., N.V.), 2001
U.S.Dist.LEXIS 12902 (S.D.N.Y. 2001) ...................... 12

*Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249 (11th
Cir. 2004) ............................................. 8, 12

*Bradford-Scott Data Corp. v. Physician Computer
Network, Inc.*, 128 F.3d 504 (7th Cir. 1997) 8, 10, 11, 12, 17, 20

*Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir.
1990) ...................................................... 8

*Cibro Petroleum Products, Inc. v. City of Albany (In re
Winimo Realty Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001) ..... 12, 13

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d
Cir. 2007) ... 1, 6, 8, 9, 10, 11, 17, 19, 20, 21, 24, 25, 26

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,
(2002) ..................................................... 24

*In re Mintze*, 434 F.3d 222 (3d Cir. 2006) ............... 18, 19

*In re Statewide Realty Co.*, 159 B.R. 719 (Bankr. D.
N.J. 1993) ................................................. 22

*In re: Transport Associates, Inc.*, 263 B.R. 531 (Bankr.
W.D. Ky. 2001) ......................................... 22, 23

*Kittay v. Ladegger (In re Hagerstown Fiber Ltd
Partnership)*, 277 B.R. 181 (S.D.N.Y. 2002) ............. 12, 16

*Marie v. Allied Home Mortgage*, 402 F.3d 1 (1st Cir.
2005) ..................................................... 24

*MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir.
2006) ..................................................... 19

*McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d
1158 (10th Cir. 2005) ............................... 8, 10, 12

*Mor-Ben Insurance Markets Corp., v. Trident General
Ins. Co., Ltd.*, 73 B.R. 644 (9th Cir. B.A.P. 1987) ........ 22

*Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir.
2004) ...................................................... 8

*Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220
(1987) .................................................... 19

- ii -

B - 259

## STATUTES

11 U.S.C. § 502(a) .......................................... 23

28 U.S.C. § 1334 ........................................... 7

28 U.S.C. § 1409 ........................................... 7

28 U.S.C. § 1448 ........................................... 7

28 U.S.C. § 158 ............................................ 7

9 U.S.C. § 16(a) ..........................6, 8, 9, 10, 16, 20

B -- 260

Pursuant to the Third Circuit's ruling in *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007), Sea-Pac Sales Company ("*Sea-Pac*") respectfully moves this Court for an order pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure staying this adversary proceeding, pending final resolution of Sea-Pac's appeal of the Court's November 20, 2006 Order (the "*Order Denying Arbitration*"). Alternatively, Sea-Pac requests the Court stay all matters involving potentially arbitrable issues in this case. In support of this Motion, Sea-Pac respectfully states as follows:

## I.    BACKGROUND

On December 6, 2000, AWI and certain of its affiliated companies (collectively "*AWI*") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*").[1]

Sea-Pac is a creditor of AWI based on two prepetition contracts: a Commercial Flooring Products

---

[1]    By an order entered on August 18, 2006, the United States District Court for the District of Delaware confirmed AWI's Fourth Amended plan of Reorganization, as Modified, and on October 2, 2006, AWI emerged from chapter 11 protection.

- 1 -

Distributorship Agreement ("*Commercial Agreement*") and a Residential Flooring Products Distributorship and Sales/Service Agreement ("*Residential Agreement*"), both of which expired following two extensions on March 31, 2004. *See* Appendix 1.    Both the Commercial Agreement and the Residential Agreement contain broadly worded arbitration clauses requiring the arbitration of disputes arising under the agreement.

By an *Order Pursuant to Bankruptcy Rules 2002(a)(7) and 3003(c)(3)(I) Fixing a Final Dated for Filing Proofs of Claim Relating to Certain Contracts and Leases and (II) Approving the Proposed Forms Of Proof of Clam and Notice* dated September 29, 2005 ("**Executory Contracts Bar Date Order**"), the Bankruptcy Court set November 8, 2005 as the deadline by which all parties to "**Previously Scheduled Contracts**" must file proofs of claim for any and all claims against AWI relating to such Previously Scheduled Contracts, i.e., contracts that originally were listed by AWI on Schedule G to its Schedule of Assets and Liabilities filed at the outset of its chapter 11 case, but which AWI believed should no longer be considered executory because they had terminated or expired according to their terms.    Both the Commercial Agreement

-2-

and the Residential Agreement were identified in the Executory Contracts Bar Date Order as a Previously Scheduled Contracts. The Executory Contracts Bar Date Order required parties to Previously Scheduled Contracts to file proof of claim if they disagreed with the amount or characterization of their claim as described in Executory Contract Bar Date Order.

On November 8, 2005, Sea-Pac filed a timely proof of claim in the AWI bankruptcy (the "Sea Pac Claim") based on Commercial and Residential Agreements. *See* Appendix 1. Sea-Pac additionally asserted claims under a letter Agreement (the "**Interim Agreement**") made on or about August 25, 2004, which adopted the terms of the Commercial Agreement and Residential Agreement effective August 25, 2004 through December 31, 2004. *Id.* Sea-Pac asserted that not less than $4,500,000 of its claim was entitled to administrative priority status under 11 U.S.C. 503(b)(1). *Id.* The Sea-Pac Claim has been designated as Claim 4854 by the AWI's claims agent. *Id.*

AWI took no action on Sea-Pac's Claim for over seven months. Finally on July 20, 2006, AWI filed an objection to Sea-Pac's Proof of Claim (the "*AWI Objection*"). *See* Appendix 2. By its objection, AWI sought

- 3 -

to disallow the Administrative Expense Claim or, in the alternative, reclassify the Administrative Expense Claim as a general unsecured claim. *See* Appendix 2, Objection ¶ 17.

On or about September 15, 2006, Sea-Pac filed its Response to the Supplemental Objection. *See* Appendix 3. Contemporaneously with its response to the AWI Objection, Sea-Pac filed a motion to pursuant to § 3 of the Federal Arbitration Act ("FAA") to (i) stay objection by Armstrong World Industries, Inc. to Sea-Pac's proof of claim no. 4854 pending arbitration, and (ii) for relief from the automatic stay or, in the alternative, for relief from the discharge injunction ("Arbitration Motion") to stay the proceedings on AWI's objection pending arbitration of Sea Pac's claims. *See* Appendix 4. Subsequently, AWI filed *a Supplemental Objection and Counterclaims of Armstrong World Industries Inc. with Respect to Proof of Claim of Sea-Pac Sales Company (Claim No. 4854)* ("Supplemental Objection") raising additional defenses to the Sea-Pac Claim and asserting counterclaims, thereby commencing this Adversary Proceeding ("Adversary Proceeding").

After hearing argument on the Arbitration Motion on October 23, 2006, the Bankruptcy Court denied the Arbitration Motion ruling that Sea-Pac was obligated to

-4-

demand arbitration as soon as it was aware that a dispute arose, that Sea-Pac failed to preserve its right to arbitrate by not timely invoking the arbitration clauses contained in the Commercial Agreement and the Residential Agreement. *See* Appendix 5. Transcript at 19-21. On November 20, 2006, the court entered the Order Denying Arbitration. On November 30, 2006, Sea-Pac filed a timely Notice of Appeal under Section 16(a) of the FAA, which is presently pending before this Court.

On March 23, 2007, after AWI filed a motion for partial summary judgment, Sea-Pac filed a motion to stay the proceedings in the bankruptcy court on the Sea-Pac Claim pending this Court's disposition of Sea-Pac's Appeal ("Stay Pending Appeal Motion") and requested an expedited hearing. *See* Appendices 6 & 7. The bankruptcy court granted Sea-Pac's Motion for an Expedited Hearing and on April 2, 2007, held a hearing on the Stay Pending Appeal Motion. The bankruptcy court denied the motion without prejudice to Sea-Pac to renew the motion at a later date. A formal order denying the Stay Pending Appeal Motion was entered on April 6, 2007. *See* Appendix 8.

Following the entry of the Stay Pending Appeal Motion, the Third Circuit Court of Appeals issued its opinion in

*Ehleiter*, which held among other things, that a trial court is automatically divested of jurisdiction to proceed where there is an appeal under Section 16(a) of the FAA of an order denying a motion to stay litigation pending until such time as the appeal is fully litigated or determined to be frivolous or forfeited. 482 F.3d at 215 n.6.

On June 18, 2007, Sea-Pac filed its Renewed Motion for Stay Pending Appeal ("**Renewed Stay Pending Appeal Motion**") based on *Ehleiter* and again sought an expedited hearing. *See* Appendices 8 & 9. The bankruptcy court denied Sea-Pac's request for an expedited hearing and set a briefing schedule requiring AWI to file a response by July 5 and Sea Pac to file a reply by July 10, 2007. *See* Appendix 10. AWI filed its response on July 5, 2007. *See* Appendix 11. On July 9, 2007, *before* Sea-Pac's reply brief *was due*, the bankruptcy court issued its Order Denying Sea-Pac Sales Company's Renewed Motion for Stay Pending Appeal of the Court's November 20, 2007 Order, summarily denying the Renewed Stay Pending Appeal Motion based on the reasons stated in AWI's response. *See* Appendix 12.

Sea-Pac now requests this Court grant it a Stay Pending Appeal as required by *Ehleiter*.

-6-

## I.    JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 and 1334, Bankruptcy Rule 8005 and pursuant to Article IX of the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc. as Modified (the "*Plan*") and the Order Confirming the Fourth Amended Plan of Reorganization of Armstrong World Industries, Inc., as modified confirming the Plan.  Venue is proper pursuant to 28 U.S.C. §§ 1448 and 1409.

## II.    RELIEF REQUESTED

Sea-Pac requests that the Court enter an Order staying all proceedings before the bankruptcy court related to the Sea-Pac Claim pending resolution of this appeal by the District Court or in the alternative that this Court stay all issues related to the arbitrable issues in this matter.

## III.    LEGAL ARGUMENT

Bankruptcy Rule 8005 enables the bankruptcy court, a bankruptcy appellate panel or district court to issue a stay pending appeal from a judgment, order or decree of a bankruptcy court.  The Rule provides that "the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in

-7-

interest." Bankruptcy Rule 8005 states that the motion for stay pending appeal "must ordinarily be presented to the bankruptcy judge in the first instance" before being presented to the district court. Sea-Pac has presented such a motion to the bankruptcy judge on two occasions.

A.    A Party Appealing An Order Denying A Motion to Compel Arbitration Is Entitled To A Stay Pending Appeal, If the Appeal Is Not Frivolous.

The Federal Arbitration Act provides that a party may immediately appeal an order denying a motion to compel arbitration or refusing to stay a matter during arbitration. 9 U.S.C. § 16(a). Sea-Pac has filed such an appeal that is presently pending before this Court. There is a split between the circuit courts of appeal as to whether a trial court must stay all proceedings pending the resolution of an interlocutory appeal under § 16(a) of the FAA.[2] At the time Sea-Pac filed its Stay Motion the Third Circuit had not addressed this issue. Subsequently, in *Ehleiter* the Third Circuit held that it would follow the

---

[2]    *Compare McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162-63 (10th Cir. 2005) (automatic divestiture of trial court jurisdiction unless appeal is frivolous or forfeited); *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) (automatic divestiture of trial court jurisdiction unless appeal is frivolous); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (endorsing automatic divestiture rule, reasoning that "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals"), with *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53-54 (2d Cir. 2004) (no automatic stay); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) (same).

-8-

majority of the circuits that hold a trial court is automatically divested of jurisdiction to proceed where there is an appeal under Section 16(a) of an order denying a motion to stay litigation until such time as the appeal is fully litigated or determined to be frivolous or forfeited. *Id.* at 215, n.6.

AWI argues[3] that the unpublished order referred to in *Ehleiter,* footnote 6, is not part of the holding and is not binding precedent. But, footnote 6 is plainly part of the decision in Ehleiter. With respect to the jurisdictional issue, the Third Circuit held the FAA's strong policy favoring arbitration is "best served, by allowing the party to obtain a definitive ruling on the denial of its Section 3 motion by way of interlocutory appeal to this Court, rather than requiring it to continue litigating the case to final judgment before obtaining a full round of appellate review on the waiver issue." 482 F.2d at 414-15. It reasoned, that in the event an appellate court determined that a stay pending appeal had be improperly denied, requiring a party to spend substantial time and expense fully litigating a matter whose result would have to be vacated, would effectively deprive the party of the

---

[3]    Sea-Pac was denied any opportunity to address AWI's arguments because the bankruptcy court entered its order denying Sea-Pac's Renewed Stay Motion before Sea-Pac's reply was due.

bargained for benefits of the arbitral forum. *Id.* at 214. *Accord McCauley*, 413 F.3d at 1161; (*Bradford-Scott Data Corp.*, 128 F.3d at 506 (court has "duty to protect the benefits of arbitration from erosion by the demands of litigation in district court during the pendency of a non-frivolous appeal from the denial of arbitration.")

Accordingly and consistent with its holding, the Third Circuit in footnote 6, indicated that it had granted a stay pending appeal and that the Third Circuit was not in agreement with the majority rule that there is "automatic divesture" of trial court jurisdiction where the § 16(a) appeal is neither frivolous or forfeited. *Id.* at 215, n.6. Indeed, there would have been no reason for the court to have even included footnote 6 unless it intended to adopt the "automatic divesture" rule.

*Ehleiter* unambiguously holds that a party who has filed a non-frivolous appeal under § 16(a) of the FAA is entitled to a stay pending appeal of the trial court's decision not to enforce an arbitration provision. AWI has never suggested that Sea-Pac's appeal is frivolous, not in its appeal brief and not in its responses to either of Sea-Pac's motions for a stay pending appeal. Accordingly, Sea-Pac plainly is entitled to an order staying the appeal

-10-

until its appeal of the Order Denying Arbitration has been fully litigated.

B.  The Stay Pending Appeal Applies to All Claims and All Matters, Including Discovery Arguably Within Scope of Arbitration Clause.

AWI argued in its Opposition to Renewed Stay Motion that the Bankruptcy Court should not accept Sea-Pac's invitation to stay any part of this proceeding arguing that this case differs materially from *Ehleiter* because there are issues that will undeniably go forward in the trial court. The distinction AWI attempts to make is untenable. AWI is unable to cite a single case that supports its position and the cases it cites either hold to the contrary or do not address the issue.

For example, *Bradford-Scott Data Corp. v. Physician Computing Network*, 128 F.3d 504 (7th Cir. 1997), relied on by AWI, expressly rejects AWI's argument. In that case Bradford Scott argued that because there were defendants who were not part of the appeal the action would nevertheless go forward in the district court, and accordingly the action should not be stayed. But the Seventh Circuit reversed the district court holding the

- 11 -

effect of automatic divesture was to stay all proceedings
of the arbitrable issues pending appeal.[4]

        Likewise, district courts in their appellate
capacity have consistently reversed bankruptcy courts that
have refused to stay proceedings when a case presents both
arbitrable and non-arbitrable issues as this case does.
*Kittay v. Ladegger (In re Hagerstown Fiber Ltd
Partnership)*, 277 B.R. 181, 199 (arbitrable claims subject
to mandatory stay under the FAA and court must address
whether to stay balance of non-arbitrable claims); *Cibro
Petroleum Products, Inc. v. City of Albany (In re Winimo
Realty Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001); *Akai Elec. Co.
(In re Singer Co., N.V.)*, 2001 U.S.Dist. LEXIS 12902
(S.D.N.Y. 2001). At a minimum, the automatic divesture
rule deprives the bankruptcy court of jurisdiction of all
aspects of the arbitrable issues and only those issues that
will not be affected by or do not share common issues with
the arbitrable issues are not stayed. *See In re Hagerstown
Fiber Ltd Partnership*, 277 B.R. at 208 (staying non-
arbitrable fraudulent conveyance claims because they
overlapped the arbitrable contract claims and shared common

---

[4]    *Id* at 507. *McCauley v. Halliburton Energy Servs., Inc.*, 413
F.3d 1158, 1162-63 (10th Cir. 2005) and *Blinco v. Greentree Servicing,
LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004) adopt *Bradford-Scott's*
reasoning but involve only arbitrable claims. They provide no support
for AWI's position that where there are both arbitrable and non-
arbitrable claims, the automatic divesture rule does not apply.

-12-

B - 272

questions of fact such that arbitration might contribute to resolution of issues raised by fraudulent conveyance claims); *In re Winimo Realty Corp.*, 270 B.R. 99 (staying all claims that were arguably dependant on the outcome of the arbitrable issues).

In *Hagerstown Fiber* the trustee filed a complaint containing 21 separate counts against over a dozen defendants arising out of an agreement to construct a waste paper pulping and facility and waste treatment plant. 277 B.R. at 189. Two counts of the complaint alleged breaches by the contractor and its parent of the construction contract, which contained what the court described as a "narrow" arbitration clause. *Id.* at 204. The remaining counts alleged various fraudulent conveyance claims under § 544(b) of the Bankruptcy Code, a turnover claim under § 542 of the Bankruptcy Code, and claims of fraud, breach of fiduciary duty, knowing participation in breaches of fiduciary duty, professional negligence as well as breaches of other contracts. These claims were asserted against the contractor, its parents and at least ten other parties. *See id.* at 195-196. The trustee conceded the arbitrability of the claims against the contractor and its parents under the construction contract but argued the remaining claims

- 13 -

against both the contractor and the other parties were non-arbitrable. *Id.* at 205. The court disagreed. Rather, the court held that to determine if the proceedings involving a claim should be stayed it was required to engage in a claim by claim analysis of whether the non-arbitrable claims and arbitrable claims involved common questions of law and fact or whether the arbitration was likely to dispose of issues common to the claims of the arbitrating and non-arbitrating defendants. *Id.* at 199. For example[5], the court held the fraudulent conveyance claims, although they were core bankruptcy proceedings and not subject to the arbitration clause, should nevertheless be stayed because they shared common questions of fact with the arbitrable contract claims regarding whether the debtor received fair consideration and accordingly resolution of the contract claims might contribute to resolution of the fraudulent conveyance claims. *Id.* at 208-09. With respect to the fraud claims, which were likewise non-arbitrable, the court held that as to the contractor they should be stayed because they were grounded on the construction contract, but severed the fraud claims against the other defendants that were not parties to the arbitration agreement. *Id.* at

---

[5] The following analysis is not a complete description of the court's analysis of all the claims, but only certain claims that have illustrative significance with respect to the issues presented here.

- 14 -

211.   As to the claims against the construction sureties, it stayed the claims because the sureties had bound themselves for the contractor's performance under the construction contract and their liability could not be determined until the contractor's liability under the contract was determined. *Id.* at 212-13.

In the Third Circuit, when there are both arbitrable and non-arbitrable issues all proceedings involving the arbitrable issues must be stayed.   A court thus is required either to stay the entire proceeding or determine whether the balance of the issues should be stayed based on whether they share common issues of fact or law with the arbitrable issues or are dependent on their outcome. In   line with this analysis, this   court should (i) stay the entire Adversary Proceeding or (ii) determine which non-arbitrable issues should be stayed because they share common issues of fact with the arbitrable issues or are dependent upon their outcome.

1.   All of the Issues Identified by AWI Should by Stayed by Sea-Pac's Appeal

AWI contends, incorrectly, that there a certain issues that will undeniably go forward and that Sea-Pac is not seeking to stay those issues.   While Sea-Pac agrees there may be certain issues that ultimately will have to be

- 15 -

resolved by the bankruptcy court, Sea-Pac maintains that all the issues AWI has identified as issues that will indisputably go forward in the bankruptcy court are either arbitrable or subject to stay pending resolution of Sea-Pac's FAA § 16 appeal because they share common issues of law and fact with the arbitrable issues, are dependent upon the resolution of arbitrable issues or would be mooted by a decision requiring arbitration of Sea-Pac's claims based on the Commercial and Residential Agreements.

A portion of Sea-Pac's Claim is based on the roughly five-month period between the expiration of the Commercial and Residential Agreements, on March 31, 2004 and the Interim Agreement that was effective August 27 to December 31, 2004, and which incorporates the terms of the Commercial and Residential Agreement. AWI claims that these claims are not arbitrable and should not be stayed. Assuming arguendo they are not covered by the arbitration clauses in the Commercial and Residential Agreements, they nonetheless share common issues of law and fact with the arbitrable claims, which requires that they be stayed. See *In re Hagerstown Fiber Ltd Partnership*, 277 B.R. at 199, 208 and 212. Moreover, the arbitrators will have to decide whether the parties intended that the Interim Agreement

- 16 -

would reinstate the parties' agreement covering the five-month period, and how to count Sea-Pac's lost sales during the period resulting from AWI's illegal appointment of a second distributor. For example, if the competing distributor received a sales order prior to March 31, but delivered the flooring during the following five month period, Sea-Pac believes that sale is part of its damages. Not staying the matter would also raise the possibility of two trials and inconsistent rulings involving the same issues, which the automatic divesture rule is designed to avoid. *See Ehleiter* 482 F.3d at 214 (automatic divesture rule intended to prevent the possibility of two trials); *Bradford-Scott*, 128 F.3d at 505 (continuation of proceedings in the trial court creates risk of inconsistent handling of the case by two tribunals). Contrary to AWI's contention, the case law indicates that Sea-Pac's claim during the roughly five-month period not covered by any agreement should be stayed.

AWI contends that the Motion to Vacate pending before the bankruptcy court would not be stayed. The Motion to Vacate involves the question of whether AWI should be able to amend its complaint to add certain

-17-

affirmative defenses to the Sea-Pac Claim.[6]   If this Court
determines that Sea-Pac's claims under the Residential and
Commercial Agreements are arbitrable, this will return the
parties to the status quo as of the date Sea-Pac requested
arbitration and all orders entered by the trial court on
the arbitrable claims would have to be vacated.   *See In re
Mintze*,   434   F.3d   222,   233   (3d   Cir.   2006)(vacating
bankruptcy   court's   summary   judgment   order   dismissing
debtor's TILA and HOPEA claims, and restoring parties to
the status quo as of the date of the motion to compel).
Whether AWI can amend its affirmative defenses should be
determined by the procedural rules of the arbitral forum.

AWI   also   contends   in   its   summary   judgment
argument   that   Sea-Pac   is   barred   from   asserting   a   pre-
petition claim under federal bankruptcy law because it
withdrew an earlier, unrelated claim with prejudice after
AWI paid Sea-Pac the full amount it claimed.   Its analysis
is driven by its faulty premise that only state law issues
may   be   arbitrated.   Arbitration   is   "presumptively   an
appropriate   and   competent   forum   of   federal   statutory
claims," including claims based on the Bankruptcy Code if

---

[6] Sea-Pac is seeking to vacate an order granting a AWI's Motion
for Leave to Amend it Supplemental Objection.   As is the case here with
Sea-Pac's Renewed Stay Motion, the bankruptcy court granted AWI's
motion before Sea-Pac's opposition was due, so that Sea-Pac was never
provided the opportunity to address the merits of the motion.

the are the subject of an enforceable arbitration provision. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2nd Cir. 2006)(citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 233 (1987)). The analysis of whether Sea-Pac's pre-petition claim is barred because it withdrew the claim after it had been paid in full turns on traditional claim preclusion principles. AWI does not suggest why, under the *McMahon* standard, the issue of whether Sea-Pac is barred from asserting its prepetition claim cannot be decided by an arbitrator.[7]

Under *Ehleiter*, Sea-Pac is entitled to stay all issues that were subject to an arbitration clause in the parties' written agreements and any other claim that has common issues of law or fact with the arbitrable issues or would be dependent on the outcome of the arbitration. All of the issues AWI contends are not arbitrable should be stayed pending resolution of Sea-Pac's § 16 appeal because they share common issues of law and fact with the

---

[7] The Supreme Court's *McMahon* standard, applies to all statutory claims subject to applicable arbitration clauses, including core bankruptcy proceedings. *Mintze*, 434 F.3d at 230-31. Under the *McMahon* standard, to overcome enforcement of arbitration,

> a party must establish congressional intent to create an exception to the FAA's mandate with respect to the party's statutory claims. Congressional intent can be discerned in one of three ways: (1) the statute's text, (2) the statute's legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes."

*Mintze*, 434 F.3d at 229 (quoting *McMahon*, 482 U.S. at 227.)

-19-

arbitrable issues, or would be mooted by a decision requiring arbitration of Sea-Pac's claims based on the Commercial and Residential Agreements. Accordingly, this Court should stay the Adversary Proceeding.

### 2. Discovery on the Arbitrable Issues is Stayed By Sea-Pac's Appeal

Under the automatic divesture rule, all proceedings involving the arbitrable claims, including discovery are stayed. See *Bradford-Scott Data*, 128 F.3d at 507. AWI is simply incorrect when it contends that automatic divesture does not stay discovery.

### C. Sea-Pac's Alleged Litigation Conduct is Irrelevant to the Stay Pending Appeal Issue.

The bankruptcy Court held that Sea-Pac waived its right to arbitrate by failing to demand arbitration in the time required by the parties written agreement. That is the issue presently on appeal. Even if the bankruptcy court's decision had been based on Sea-Pac's litigation conduct there would be no reason for the court to deny a stay pending appeal. The teaching of *Ehleiter* is that even if the trial court determines not to stay a proceeding pending arbitration based on litigation conduct, the party advocating arbitration is nonetheless entitled to a stay pending appeal if the appeal is not frivolous.

- 20 -

In *Ehleiter,* the appellant had actively litigated the case in court for approximately four years. *Id.* at 210. During that time both parties engaged in extensive discovery, submitted and responded to several sets of interrogatories and requests for production of documents, took numerous depositions and submitted several expert reports. *Id.* Appellant then sought and was granted a continuance of the trial date during which it filed a motion for summary judgment, a motion to implead a third party defendant, and a motion to amend his complaint to include a claim for punitive damages. *Id.* All three motions had been fully briefed and were pending decision by the superior court when, on the final day for filing motions under the court's scheduling order and only one day before the parties' joint final pretrial statement and proposed jury instructions were due, appellant filed a motion to stay the case pending arbitration pursuant to Section 3 of the FAA, 9 U.S.C. § 3 based on a contractual arbitration clause contained in a contract of a related party. *Id.* Notwithstanding these acts, the Third Circuit Court of Appeals found the appeal to be non-frivolous and granted a stay pending appeal.

In point of fact, Sea-Pac has not engaged in any litigation conduct that could possibly amount to waiver. The so-called litigation conduct AWI points to relates to Sea-Pac's having filed two proofs of claim in this proceeding. The case law uniformly holds that the act of filing of a proof of claim does not waive the creditor's right to invoke an otherwise valid right to arbitrate. *See In re Statewide Realty Co.*, 159 B.R. 719, 724 (Bankr. D.N.J. 1993); *In Re: Transport Associates, Inc.*, 263 B.R. 531, 536 (Bankr. W.D. Ky. 2001); *Mor-Ben Insurance Markets Corp., v. Trident General Ins. Co., Ltd.*, 73 B.R. 644, 645 (9th Cir. B.A.P. 1987).

After Sea-Pac filed its first proof of claim, AWI paid the amount claimed and Sea-Pac withdrew the claim. There was no dispute and consequently no need for arbitration or any other dispute resolution.[8]

On November 8, 2005, Sea-Pac filed its second proof of claim, which is the subject of this Adversary Proceeding. AWI did not take any action on the Sea-Pac Claim for more than seven months until July 20, 2006, when it filed the AWI Objection. Until the filing of the AWI Objection, the Sea-Pac Claim was deemed an allowed claim.

---

[8] Under § 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed until a party in interest objects to it.

- 22 -

See 11 U.S.C. § 502(a). Contemporaneously with its response to the AWI Objection, Sea-Pac filed its Arbitration Motion, which the bankruptcy court denied in the Stay Order and which Sea-Pac has appealed to this Court.

A party who files a proof of claim does not waive a right to arbitrate based on litigation conduct if it demands arbitration within a reasonable time after the filing of an objection to the claim. *In re Transport Associates*, 263 B.R. at 536. Sea-Pac filed its Arbitration Motion with its first substantive pleading after AWI objected to the Sea-Pac Claim. There is absolutely no basis for any argument that Sea-Pac waived its right to arbitrate by litigation conduct, when the very first action it took in the litigation was to demand arbitration.[9] It is ironic that AWI complains about delay since the delay it complains about is largely the result of its own making by waiting more than seven months after Sea-Pac filed its claim before taking any action with respect to it.

Not only was there no litigation waiver, *Ehleiter* suggests that the bankruptcy court's reasoning in denying

---

[9]   The other alleged litigation conduct relates to a period when there were no litigation issues joined between the parties, or to events that in the Adversary Proceeding subsequent to Sea-Pac filing its Arbitration Motion. Acts when there is no litigation and acts after arbitration is demanded cannot serve as a basis for litigation waiver.

- 23 -

B - 283

Sea-Pac's Motion to Arbitrate in the first instance is untenable. *Ehleiter* adopted the First Circuit's analysis in *Marie v. Allied Home Mortgage*, 402 F 3d 1 (1st Cir. 2005), recognizing two different kinds of waiver may arise in case involving a contractual arbitration clause. 482 F.3d at 218-219. One is based on waiver, delay or a like defense arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, (2002). *See Ehleiter*, 482 F.3d at 218-19. The other type of waiver is based on litigation conduct in a judicial forum that is inconsistent with, and waives, the right to arbitrate. *Id.* at 219.

Where an allegation of waiver, delay or a like defense based on non-compliance with contractual conditions precedent, "there is a presumption that the arbitrator should decide such the merits of these defenses." *Ehleiter*, 482 F.3d at 219 (citing *Howsam*, 537 U.S. at 84). The bankruptcy court's decision that Sea-Pac waived the arbitration provision was based on non-compliance with a contractual conditions precedent.

> It seems that the dispute arises as soon as
> Sea-Pac decides it has a claim and thinks
> Armstrong is in breach. . . [Y]our dispute
> [is] because you think that Armstrong has

- 24 -

> breached the contract because it appointed a
> second distributor is the date by which that
> 40-day period begins. . . . Sea-Pac didn't
> do that. I really don't think Sea-Pac has
> preserved the right to arbitrate. I think
> you had one at the outset. I mean, the
> contract clearly provides the parties with
> that 40-day window, but I don't think it was
> timely invoked in this instance.

Transcript of Hearing (October 23, 2006) at 19-20.
*Ehleiter* holds this type of waiver is for an arbitrator to
decide.

Where there is an alleged waiver based on
litigation conduct inconsistent with the right to
arbitrate, *Ehleiter* plainly holds that waivers of this type
are appropriately decided by the court. The bankruptcy
court's decision that Sea-Pac waived the right to arbitrate
was based solely on Sea-Pac's alleged failure to timely
invoke the arbitration clause in its contracts and not on
any litigation conduct.

As noted above, the bankruptcy court did not deny
Sea-Pac's Stay Motion based on litigation conduct but on
its supposed failure to timely invoke the arbitration
mechanism under the parties' written contracts. Moreover,
there is no basis to conclude that Sea-Pac waived its right
to arbitrate based on litigation conduct. However, it
makes no difference here — had the bankruptcy court waiver

- 25 -

ruling been based on litigation conduct, *Ehleiter* holds that the trial court is automatically divested of jurisdiction pending appeal of the arbitration. Sea-Pac is entitled to a stay pending appeal regardless of the basis of the bankruptcy court's waiver decision.

### IV. CONCLUSION

*Ehleiter* is binding precedent and requires, at a minimum, that this court stay the proceedings before the bankruptcy court pending the conclusion of Sea-Pac's appeal under § 16(a) of the FAA as they pertain to the arbitratable issues. AWI cites absolutely no authority to support its position that this court can ignore *Ehleiter*. When both arbitrable and non-arbitrable issues are present, the court is required to stay the arbitrable issues, including any discovery related to them, and determine whether the non-arbitrable issues share common issues of law or fact with the arbitrable issues or are dependent on their outcome to determine whether they can go forward or whether permitting them to go forward would possibly lead to inconsistent results. The bankruptcy court failed to engage in this or any other analysis, summarily determining that the requested stay should be denied and that the whole matter should go forward without permitting Sea-Pac to reply to AWI's unsupported legal position.

This court should (i) stay the entire Adversary Proceeding or (ii) determine which non-arbitrable issues should be stayed because they share common issues of fact with the arbitrable issues or are dependent upon their outcome.

Dated: July 19, 2007.

ECKERT SEAMANS CHERIN & MELLOTT, LLC

Karen Lee Turner (Bar No. 4332)
Michael G. Busenkell
   (Bar No. 3933)
300 Delaware Avenue, Suite 1360
Wilmington, Delaware 19801
(302) 425-0430 (Telephone)

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL
1201 Third Avenue, Suite 2900
Seattle, Washington 98102
(206) 223-1313

Al Van Kampen
ROHDE & VAN KAMPEN, PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154
(206) 386-7353

   *Attorneys for Creditor, Sea-Pac Sales Company*

- 27 -

**14**

.

.

LEXSEE



Analysis
As of: Jul 31, 2007

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff, v. INTE-
GRATED NETWORK CORP., et al., Defendants.**

**Civil No. 91-701 (AET)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**1992 U.S. Dist. LEXIS 22641**

**January 8, 1992, Decided
January 10, 1992, Filed, Entered on the Docket**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**DISPOSITION:** Defendants' motion for a stay of action
pending the outcome of the interlocutory appeal denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff telephone com-
pany filed suit in the trial court against defendants inven-
tors and corporation alleging that a certain patent was
conceived while the inventors were employees of the
telephone company. Defendants removed the action to
the court. The court denied the telephone company's mo-
tion to remand the action and for reconsideration. Defen-
dants filed a motion for a stay of proceedings pending
the outcome of an interlocutory appeal.

**OVERVIEW:** Weighing the competing interests of the
parties, the court used its discretion and denied defen-
dant's motion to stay proceedings. The court determined
that the telephone company would have faced a serious
risk of prejudice had the proceedings been stayed. The
court found that the telephone company could have been
harmed in licensing negotiations. Moreover, a delay in
the proceedings would have provided whomever con-
trolled the patent at issue with an additional opportunity
to irreparably damage the telephone company's rights
under the patent, were the telephone company to prevail
in its suit. The court found that defendants were not con-
vincing in their claims that they would have been injured
if a stay were not imposed.

**OUTCOME:** The court denied defendants' motion to
stay proceedings, pending the outcome of an interlocu-
tory appeal, in the telephone company's action alleging
that a certain patent had been conceived while the inven-
tors were employees of the telephone company.

**CORE TERMS:** patent, discovery, interlocutory appeal,
inventors, hardship, lawsuit, movant, breach of contract,
patent law, state law, misappropriation, proprietary, in-
equity, partial, prevail, misuse, discovery process, judi-
cial economy, action pending, convince, barrage

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Entry of Judgments >
Stays of Proceedings > General Overview*
[HN1] The court has broad discretion to decide whether
or not to stay proceedings as part of its inherent authority
to control the court's calendars. When making this de-
termination, the court should weigh the competing inter-
ests of all the parties. However, where there is even a fair
possibility that the stay will work damage to some one
else, the court should require the movant to make out a
clear case of hardship or inequity justifying imposition of
the stay.

**COUNSEL:** For AMERICAN TELEPHONE AND
TELEGRAPH CO., plaintiff: MARTIN STEPHN
LANDIS, RAYMOND R. & ANN W. TROMBADORE,
A PROFESSIONAL CORPORATION, SOMERVILLE,
NJ.

1992 U.S. Dist. LEXIS 22641, *

For INTEGRATED NETWORK CORPORATION, ROBERT R. HACKETT, GREGORY S. KENEPP, MICHAEL M. LUNIEWICZ, MARTIN L. SWIM, counterclaimants: WILLIAM J. BRENNAN, III, ESQ., SMITH, STRATTON, WISE, HEHER & BRENNAN, ESQS., PRINCETON, NJ.

For AMERICAN TELEPHONE AND TELEGRAPH CO., counter-defendant: MARTIN STEPHN LANDIS, RAYMOND R. & ANN W. TROMBADORE, A PROFESSIONAL CORPORATION, SOMERVILLE, NJ.

**JUDGES:** ANNE E. THOMPSON, U.S.D.J.

**OPINION BY:** ANNE E. THOMPSON

**OPINION:**

MEMORANDUM AND ORDER

THOMPSON, District Judge

Defendants come before this court on a motion for a stay of the proceedings pending the outcome of an interlocutory appeal currently before the Court of Appeals for the Federal Circuit.

The individual defendants ("the inventors") are all employees of defendant Integrated Network Corporation ("INC") and were all previously employed by plaintiff American Telephone and Telegraph Company ("AT&T"). The inventors applied [*2] for United States Letters Patent No. 4,849,972 ("the '972 patent") in July of 1987, approximately seventeen months after the last defendant left AT&T. The inventors assign the patent to INC. AT&T filed this action in state court, alleging that the '972 patent was conceived while the inventors were employed at AT&T. Plaintiff raises four claims, each of which is framed as an issue of state law: (1) breach of contract; (2) breach of fiduciary duty; (3) misuse and misappropriation of proprietary information; and (4) inducing breach of contract and misuse and misappropriation of proprietary information.

Defendants removed the action to federal court, arguing that plaintiff had brought a patent law claim, which is subject to exclusive federal jurisdiction under 28 U.S.C. § 1338. AT&T moved to remand on the basis that the complaint was not a patent law action and that this court therefore had no jurisdiction. We denied the remand motion, relying on Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988). AT&T v. INC, Civil No. 91-701, slip op. at 8 (D.N.J. May 3, 1991). On a motion for reconsideration we declined to alter our May [*3] 3rd decision but certified that the jurisdictional question was

suitable for interlocutory appeal. AT&T v. INC, 1991 U.S. Dist. LEXIS 21695, Civil No. 91-701, slip op. at 13 (D.N.J. June 27, 1991). The court further ordered that "any application for an appeal, however, shall not stay the proceedings in this court." Id. AT&T's petition for permission to file an interlocutory appeal was granted, AT&T v. INC, Misc. Docket No. 309 (Fed. Cir. August 1, 1991), and oral argument on the appeal should be heard within the next few months. Def. Brief at 8.

[HN1] This court has broad discretion to decide whether or not to stay the proceedings as part of our inherent authority to control the court's calendars. Gold v. Johns-Manville Corp., 723 F.2d 1068, 1077 (3d Cir. 1983); Cessna Aircraft Co. v. Fidelity & Casualty Co. of New York, 616 F. Supp. 671, 675 (D.N.J. 1985). When making this determination, we should weigh the competing interests of all the parties. Landis v. North American Co., 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936); Concerned Citizens of Bushkill Township v. Costle, 592 F.2d 164, 172 (1979). However, where there is "even a fair possibility that the stay . . . will work [*4] damage to some one else," the court should require the movant to "make out a clear case of hardship or inequity" justifying imposition of the stay. Landis at 255; Gold at 1075-76. n1

n1 The Third Circuit in Gold appears to require that the movant show hardship or inequity. However, the court cited Landis as authority for this proposition. 723 F.2d at 1075-76. The Supreme Court in Landis in turn explicitly states that it is only recommended that the trial court examine hardship to movant, and that this recommendation is not meant to limit the discretionary power of the district court. 299 U.S. at 255.

AT&T faces a distinct risk of prejudice should the current proceedings be stayed. While any straight monetary loss resulting from delayed enjoyment of the '972 patent can be rectified through money damages, AT&T, if it ultimately prevails, may be harmed in ongoing licensing negotiations. Further, while INC has assured the court that it will "take no action with respect to the '972 patent [*5] during the period that proceedings are stayed," AT&T has presented evidence suggesting that this is a hollow promise. Specifically, it appears that INC has already relinquished at least partial control over the '972 patent by assigning the patent on June 19, 1991, after the initiation of this lawsuit, to Technology Funding Secured Investors III as partial security for a loan. See Pl. Ex. H. This evidence has not been controverted by defendants. n2 Thus any delay in the final resolution of this lawsuit could increase the opportunity for whomever currently controls the patent to irreparably damage

AT&T's rights under the '972 patent if plaintiff should prevail.

> n2 INC merely notes that it "has ignored certain irrelevancies and collateral arguments raised by AT&T in its Memorandum . . . ." Def. Reply Brief at 8.

Defendants argue that judicial economy would be served by staying the proceeding pending a decision by the Federal Circuit. According to defendants, if the appeals court affirms this court's jurisdiction, [*6] the scope of discovery will be narrowed. However, they do not provide a single example of how discovery will be influenced by the circuit court's decision. A finding of federal patent law jurisdiction will not resolve plaintiff's pendent state law claims; the factual questions will remain fundamentally the same. If the matter is remanded, both parties have agreed that any discovery which has already taken place will be utilized in subsequent state court proceedings. Thus, this court will not be wasting its efforts by allowing discovery to go forward. Further, judicial economy will be best served by seeing that this lawsuit is resolved without any unnecessary delay.

Nor is the court convinced by defendants' arguments that they will be injured if a stay is not granted. They assert that AT&T will produce "an overwhelming barrage of discovery requests . . . which will subject INC to the serious disadvantage which is ever present when a multi-billion dollar corporation like AT&T is engaged in litigation with a small fledgling company like INC." Defendants suggest that this "barrage" will consist of requests which will be rendered moot by the appeals court decision. As we have already discussed, [*7] however, the scope of discovery should not be significantly affected. If defendants are suggesting that AT&T might use the discovery process in an unethical manner, a stay

would not be the appropriate manner to address such a turn of events; abuse of the discovery process by either side would subject that party to the risk of appropriate sanctions. Finally, while AT&T is undoubtedly a larger corporation than INC, the court has no reason to believe that defendants are unable to adequately defend themselves.

Defendants assert that AT&T should not be heard to argue against the stay, since plaintiff's appeal created the current uncertainty regarding this court's jurisdiction. However, it is equally arguable that any uncertainty has been caused by defendants' removal of the matter from state court. This court concludes that neither party is responsible for the current indefinite posture; there is an honest and fundamental dispute as to whether the action should be in state or federal court. Under the circumstances of this case, the equities are not clearly in favor of one party or the other as to any jurisdictional doubt.

Based on a weighing of the equities, this court concludes that [*8] the present action should proceed without imposition of a stay. Plaintiff has established that it may be prejudiced by a delay in the proceedings. Defendants, on the other hand, have failed to convince the court that they will be injured if a stay is not imposed. The court also notes that it has already explicitly stated that there will be no stay of the action pending the outcome of the interlocutory appeal. See June 27, 1991 slip op. at 13. Defendants have failed to convince us that this court should deviate from its original intention.

It is therefore on this 8th day of January, 1992

**ORDERED** that defendants' motion for a stay of this action pending the outcome of the interlocutory appeal currently before the Court of Appeals for the Federal Circuit be and hereby is **denied**.

ANNE E. THOMPSON, U.S.D.J.

LEXSEE



Analysis
As of: Jul 31, 2007

### RONALD F. BRATEK, et al. v. BEYOND JUICE, LLC, et al.

### CIVIL ACTION NO. 04-4491

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### 2005 U.S. Dist. LEXIS 33352

### December 15, 2005, Decided

**PRIOR HISTORY:** Bratek v. Beyond Juice, LLC, 2005 U.S. Dist. LEXIS 28137 (E.D. Pa., Nov. 14, 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant entities filed a motion for a stay of proceedings pending their appeal pursuant to § 16 of the Federal Arbitration Act, 9 U.S.C.S. § 16, of an order which denied their motion for a stay of plaintiffs individuals' action pending arbitration.

**OVERVIEW:** The court held that it had jurisdiction to proceed with discovery during the pendency of the appeal of the denial of arbitration, if only because an appeal from the denial of a stay of proceedings in a district court pending an interlocutory appeal did not divest the district court of jurisdiction. The court ordered that limited discovery should proceed because, whether the case proceeded to decision by way of arbitration before the Federal Arbitration Act or before a jury in the court, discovery would have been of assistance to the parties in preparing for either the arbitration or the trial, and also for determining the relative strengths and weaknesses of each other's positions, which should have been beneficial to settlement discussions. The court limited the number of depositions to three per side for a maximum of five hours each. At the conclusion of the exchange of interrogatories, document requests, and admissions, and after the three depositions had been taken, if either side wished to expand the discovery, the court would consider such a motion. However, the stay was granted to the extent of dispositive motions and/or a trial.

**OUTCOME:** The court granted the stay as to dispositive motions and/or a trial but denied the stay with respect to limited discovery pending appeal.

**CORE TERMS:** arbitration, discovery, stay of proceedings, depositions, pendency, Federal Arbitration Act, jurisdiction to proceed, arbitrability, evidentiary, oppose, normal course, interrogatories, dispositive, maximum

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration*
*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Appeals > Appellate Jurisdiction > Lower Court Jurisdiction*
[HN1]The United States Court of Appeals for the Second and Ninth Circuits have held that a district court has jurisdiction to proceed with a case absent a stay from the appeals court, while the United States Court of Appeals for the Seventh, Tenth, and Eleventh Circuits have required district courts to stay all proceedings during the pendency of the appeal.

*Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders*
*Civil Procedure > Appeals > Appellate Jurisdiction > Lower Court Jurisdiction*

2005 U.S. Dist. LEXIS 33352, *

[HN2]An appeal from the denial of a stay of proceedings in a district court pending an interlocutory appeal does not divest the district court of jurisdiction.

COUNSEL: [*1] For RONALD F. BRATEK, Plaintiff: JULIANNA BURDO, R. JAMES KRAVITZ, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, PHILA, PA.

For PHILLLY JUICE, LLC, Plaintiff: JULIANNA BURDO, R. JAMES KRAVITZ, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, PHILA, PA.

For BEYOND JUICE, LLC formerly known as BE-YOND JUICE, INC., Defendant: STEVEN KAPUSTIN, KAPLIN STEWART MELOFF REITER & STEIN, BLUE BELL, PA.

For O.L.D. INC., Defendant: STEVEN KAPUSTIN, KAPLIN STEWART MELOFF REITER & STEIN, BLUE BELL, PA.

For MORRIE FRIEDMAN, Defendant: STEVEN KA-PUSTIN, KAPLIN STEWART MELOFF REITER & STEIN, BLUE BELL, PA.

For SALLY KLINE, Defendant: STEVEN KAPUSTIN, KAPLIN STEWART MELOFF REITER & STEIN, BLUE BELL, PA.

JUDGES: Michael M. Baylson, U.S.D. J.

OPINION BY: Baylson

OPINION

*MEMORANDUM*

Baylson, J.

On November 14, 2005, following an evidentiary hearing, this Court denied Defendants' motion for a stay of all proceedings pending arbitration, which Defendants contended was appropriate under an arbitration agreement entered into between the parties in this case. Pursuant to § 16 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, the Defendants have filed a Notice of Appeal [*2] from that holding, and have also moved for a stay of the proceedings, pending resolution of the appeal. Plaintiffs oppose the stay.

In the absence of governing precedent by the Third Circuit, the undersigned has decided that an appropriate, and fair resolution of this issue, would be to grant the stay in part and deny it in part. The Court believes that discovery should proceed in this Court and believes it has the power and jurisdiction to require the parties to

engage in limited discovery, notwithstanding the pending appeal.

The reasons for this are quite evident. Whether the case proceeds to decision by way of arbitration before the Federal Arbitration Act or before a jury in this Court, discovery will be of assistance to the parties in preparing for either the arbitration or the trial, and also for determining the relative strengths and weaknesses of each other's positions, which should be beneficial to settlement discussions. Therefore, the Court will allow discovery to proceed in the normal course, but at this time will limit the number of depositions that may be taken to three (3) per side, for a maximum of five (5) hours each. At the conclusion of the exchange of interrogatories, [*3] document requests, and admissions, and after the three depositions have been taken, if either side wishes to expand the discovery and the appeal is still pending, the Court will consider such a motion. However, the stay will be granted to the extent of dispositive motions and/or a trial.

Plaintiffs, which oppose the stay, and Defendants, which want a total stay, are free of course to apply to the Court of Appeals for a modification of this Order. The Court also anticipates that the Plaintiffs will move in the Court of Appeals for an expedited disposition of the appeal and/or summary dismissal on the grounds that this Court's decision on the arbitration was embedded in findings of credibility following an evidentiary hearing.

In reviewing the precedents from other circuits on the question of whether a district court should stay proceedings in the district court pending an appeal from a decision on arbitration, many of the decisions seem to take an "either/or" position - but assuming that this Court does have the power to retain control over the case notwithstanding the pendency of appeal, as has been held by two circuits, this Court believes that a modified approach is appropriate, [*4] allowing some discovery to proceed.

There is currently a split in the Courts of Appeals as to the appropriate action of a district court upon appeal of a denial of arbitration. [HN1]The Second and Ninth Circuits have held that a district court has jurisdiction to proceed with a case absent a stay from the appeals court, *see Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004); *Britton v. Co-Op Banking Group*, 916 F.2d 1405 (9th Cir. 1990), while the Seventh, Tenth, and Eleventh Circuits have required district courts to stay all proceedings during the pendency of the appeal. *See McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158 (10th Cir. 2005); *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504 (7th Cir. 1997).

Page 2

2005 U.S. Dist. LEXIS 33352, *

Looking first at the *Motorola* decision, the Second Circuit, though specifically addressing an attempt to undo a trial that had already been conducted by the district court, adopted a broad holding refusing to require a stay of proceedings during the course of any appeal of an order [*5] denying arbitration. 388 F.3d at 54. In the *Britton* case, the Ninth Circuit concluded that the issue of arbitrability is distinct from the merits of the case and that a stay of proceedings during the course of an appeal on arbitrability was therefore unnecessary. 916 F.2d at 1412. Moreover, the *Britton* court argued that a stay of all proceedings was an invitation for delay, since certain litigants could use the opportunity for appeal provided by 9 U.S.C. § 16 as a stalling tactic. *Id.*

On the other hand, the Seventh Circuit in *Bradford-Scott* held that a stay was required, since "continuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." 128 F.3d at 505. The Seventh Circuit also attempted to distinguish the *Britton* decision, noting that any opportunities presented to an "obstinate or crafty litigant" by a stay of proceedings during the course of an appeal would be counterbalanced by the ability of the appellee to "ask the court of appeals to dismiss the appeal as frivolous or to affirm summarily." *Id.* at 506. [*6]

After an examination of the relevant case law, this Court is persuaded that it does have jurisdiction to proceed with discovery during the pendency of the appeal of the denial of arbitration, if only because [HN2]an appeal from the denial of a stay of proceedings in a district court pending an interlocutory appeal does not divest the district court of jurisdiction.

## ORDER

AND NOW, this 15th day of December, 2005, in consideration of the parties' letter briefs concerning the stay of district court proceedings, it is hereby ORDERED that discovery will proceed in the normal course, though the number of depositions that may be taken will be limited to three (3) per side, for a maximum of five (5) hours each. At the conclusion of the exchange of interrogatories, document requests, and admissions, and after the three depositions have been taken, if either side wishes to expand the discovery and the appeal is still pending, the Court will consider such a motion. Until further word from the Court of Appeals, the stay will be granted to the extent of dispositive motions and/or a trial.

BY THE COURT:

Michael M. Baylson, U.S.D.J.

LEXSEE



Analysis
As of: Jul 31, 2007

**In re: ANC RENTAL CORP., et al., Debtors. THE HERTZ CORPORATION, et al., Appellants, v. ANC RENTAL CORP., et al., Appellees.**

**Civil Action Nos. 02-154, 02-175, 02-288, 02-289, 02-290, 02-291, 02-292, 02-293, 02-294, 02-295, 02-296, 02-297, 02-298, 02-299, 02-360 and 02-364 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 9409**

**May 22, 2002, Decided**

**SUBSEQUENT HISTORY:**     [*1]  As Amended May 22, 2002.

**PRIOR HISTORY:**     Chapter 11, Bankruptcy Case No. 01-11220 (MFW) (Jointly Administered).

**DISPOSITION:**     Appellants' Motion for a Stay Pending Appeal DENIED. Hertz's Emergency Motion for a Stay Pending Appeal DENIED. Avis' Emergency Motion for a Stay Pending Appeal DENIED. None of the cases in this litigation stayed pending this appeal.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The United States Bankruptcy Court for the District of Delaware entered orders in debtor's Chapter 11 case allowing it to reject and renegotiate certain contracts. Appellant competitors appealed those orders and brought motions for a stay pending appeal pursuant to Fed. R. Bankr. P. 8005.

**OVERVIEW:** Debtor was the parent company of two car rental companies. The orders in question allowed debtor's companies to reject contracts at certain airports and allowed debtor to assume and renegotiate those contracts. The competitors argued that the effect of the orders was to permit debtor's companies to operate at the same rental booth at those airports, which was generally prohibited and which would reduce operations costs. The district court found that the competitors failed to show they would be subject to irreparable harm absent the stay as required under Rule 8005. The competitors argued

that debtor's companies would gain a competitive advantage under the reorganization scheme, but such an advantage did not amount to irreparable harm where (1) debtor's savings could be quantified, (2) the marketplace should eventually be able to correct any harm the competitors suffered, (3) any losses to the competitors were merely speculative, and (4) the orders involved only 11 airports. On the other hand, granting a stay would have had a substantial adverse effect on debtor's reorganization plan.

**OUTCOME:** The competitor's motions were denied.

**CORE TERMS:** airport, irreparable harm, stay pending appeal, reorganization, savings, branding, rental, dual, interested parties, irreparable, pending cases, failed to demonstrate, rental car, emergency, competitive advantage, speculative, quantified, concessionaire, implemented, nationwide, joined, booth, bid

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals*
*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Cause*
*Bankruptcy Law > Practice & Proceedings > Appeals > Procedures*
[HN1]Fed. R. Bankr. P. 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court. The court may grant such a stay when the party seeking

2002 U.S. Dist. LEXIS 9409, *

the stay can demonstrate that (1) it has a likelihood of success on the merits of the appeal, (2) it will be subject to irreparable harm if the stay is not granted, (3) the granting of the stay will not substantially harm other interested parties, and (4) the granting of the stay would serve the public interest. If the movant fails to make a showing on any one of these four factors, the court may deny the stay.

*Bankruptcy Law > Practice & Proceedings > Appeals > General Overview*
[HN2]For purposes of granting a stay pursuant to Fed. R. Bankr. P. 8005, even where there might be some intangible loss to reputation, if an injury is, at bottom, financial and can be calculated, there is no irreparable injury.

*Bankruptcy Law > Practice & Proceedings > Appeals > General Overview*
[HN3]For purposes of granting a stay pursuant to Fed. R. Bankr. P. 8005, where a business is threatened with serious financial harm (i.e. going out of business) as a result of a competitor's actions, irreparable harm may be present. However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because revenues and customers lost to competition which can be regained through competition are not irreparable.

*Bankruptcy Law > Practice & Proceedings > Appeals > General Overview*
[HN4]For purposes of granting a stay pursuant to Fed. R. Bankr. P. 8005, to constitute irreparable harm, an injury cannot be speculative; it must be certain, great, and actual.

COUNSEL: Bonnie Glantz Fatell, Blank Rome Comisky & McCauley LLP, Wilmington, DE, for ANC IT Collector Corporation, debtor.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINION BY: Sleet

OPINION

AMENDED MEMORANDUM AND ORDER

On February 27, 2002, the Hertz Corporation ("Hertz") and Avis Rent a Car System Inc. ("Avis") filed the first of several expedited appeals from the orders of the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware. Several

subsequent appeals were filed. (Case Nos. 02-175 and 02-288 though and including 02-299). In particular, the appellants sought review of the January 28, 2002 and March 20, 2002 orders of the bankruptcy court that permitted [*2] the debtor to reject certain of their concession contracts and subsequently negotiate more favorable contracts at seven national airports. On March 25, 2002, Hertz filed a motion for a stay pending the appeals (D.I. 18 - 02-154), and Avis joined in that motion. (D.I. 20 - 02-154). On May 3, 2002, the bankruptcy court entered another order that permitted the debtor to reject contracts at four more airports. An appeal of this order was filed on May 10, 2002. (D.I. 1 - 02-360 ) Hertz filed an emergency motion for a stay pending this appeal on May 13, 2002. (D.I. 2 - 02-360.) Avis also joined in this motion. ( D.I. 1 - 02-364.) The court finds that Hertz and Avis have failed to demonstrate the necessary irreparable harm. Moreover, the court finds that a stay will be harmful to the debtor. Therefore, both of the motions to stay will be denied.

The briefly stated facts of this case are as follows: The debtor, ANC Rental Corp ("ANC"), is the parent company of the Alamo Rent-A-Car and National Car Rental System companies. As the name makes obvious, Alamo and National are car rental companies. Hertz and Avis are also engaged in the car rental business.

The rental car industry is particularly [*3] active in the nation's airports. According to the parties, the normal procedure for operating at an airport requires that the rental car company first bid for a contract with the local airport authority. If the bid is acceptable, the airport authority will issue a contract to the winning bidder that will permit it to operate a rental car booth, or concession, at the local airport. The parties assert that the terms of such concession contracts usually include terms stating that the concessionaire must earn a certain profit each year. This is called the minimum annual guarantee ("MAG"). Additionally, the appellants contend that the contracts generally prohibit the practice of two concessionaires operating at the same concession booth. This practice is commonly known as "dual branding." The parties do not dispute that the contracts at issue contain MAG requirements, but the debtor disputes that the contracts contain prohibitions on dual branding. [1]

> 1 To the extent that the debtor disputes this contention, for the purposes of this motion only, the court will accept that the contracts contain terms and conditions that prohibit dual branding.

[*4] ANC, National, and Alamo filed for Chapter 11 bankruptcy on November 13, 2001. As part of their reorganization plan, National and Alamo sought to reject the concession contracts and have ANC, as the debtor-in-possession, assume the contracts pursuant to § 365 of the

Page 2

2002 U.S. Dist. LEXIS 9409, *

bankruptcy code. The bankruptcy court permitted this rejection and assumption in each of its three orders. The appellants assert that the effect of the orders is to permit Alamo and National to operate at the same concession, which effectively permits the dual branding that the appellants contend is prohibited by the concession contracts. The appellees further argue that when the contracts with the airport authorities were renegotiated with ANC, the MAG was also effectively reduced because only one of the companies at the concession would be subject to the MAG requirement. The orders of the bankruptcy court currently affect concession contracts at eleven airports nationwide.

[HN1]Federal Rule of Bankruptcy Procedure 8005 permits a party to seek a stay pending appeal of an order of the bankruptcy court. *See* FED. R. BANKR. P. 8005. The court may grant such a stay when the party seeking the stay can demonstrate that: (1) [*5] it has a likelihood of success on the merits of the appeal; (2) it will be subject to irreparable harm if the stay is not granted; (3) the granting of the stay will not substantially harm other interested parties; and (4) the granting of the stay would serve the public interest. *See In re Edwards*, 228 B.R. 573, 575 (Bankr. E.D. Pa.1999). If the movant fails to make a showing on any one of these four factors, the court may deny the stay. *See In re Blackwell*, 162 B.R. 117, 120 (E.D.Pa.1993).

Hertz and Avis both assert that they will suffer irreparable harm if the bankruptcy court's orders are not stayed and the debtor's reorganization plan is permitted to continue. The only argument the appellants present in support of this contention is that ANC, National, and Alamo will gain a "competitive advantage" if the reorganization scheme is permitted to continue because they will be able to operate at a lower cost than Hertz and Avis. The court is not persuaded by this argument. First, the amount of money the debtors will save during the consolidation process has been quantified. The fact that the savings can be quantified weighs against a finding of irreparable [*6] harm. *See In re Shelly's, Inc.*, 87 B.R.931, 935 (Bankr. S.D.Ohio1988) (indicating that [HN2]even where there might be some intangible loss to reputation, if injury is "at bottom, financial" and could be calculated, there was no irreparable injury).

Second, [HN3]where a business is threatened with serious financial harm (i.e. going out of business) as a result of a competitor's actions, irreparable harm may be present. *See Sprint Corp. v. Deangelo*, 12 F. Supp. 2d 1188, 1194 (D. Kan. 1998) (collecting cases). However, where the sole injury is loss of a competitive advantage, the argument for irreparable harm is less compelling because "revenues and customers lost to competition which can be regained through competition are not irreparable." *Central & Southern Motor Freight Tariff Ass'n v.*

*Household Goods Carrier's Bureau*, 244 U.S. App. D.C. 226, 757 F.2d 301, 309 (D.C. Cir. 1985). In other words, the marketplace should eventually be able to correct any harm suffered by Hertz and Avis.

Third, although Hertz and Avis claim that they will be irreparably harmed in the absence of a stay, they have failed to adduce evidence of the putative injury on the record [*7] before the court. [HN4]To constitute irreparable harm, however, an injury cannot be speculative, it must be certain, great, and actual." *Sprint*, 12 F. Supp. 2d at 1194 (citations and internal quotations omitted). Although the appellants have provided some evidence of the alleged advantage the ANC companies will receive, they have failed to make even a prima facie showing which demonstrates a tangible financial or other loss to Hertz or Avis. In the absence of such evidence, any loss to Hertz or Avis is merely speculative.

Finally, the bankruptcy court orders thus far will only affect ANC operations at eleven airports nationwide. In contrast, there are eighty-seven international airports and over 700 other commercial airports in this country. [2] Moreover, the majority of the eleven affected airports are relatively small. Given the small number of airports that are affected at this time versus the large number of airports in this nation, the court is not persuaded that allowing the ANC companies to consolidate operations threatens irreparable harm at present. Additionally, although there is a possibility that the plan may be implemented at many more airports, the court [*8] also notes that both the appellants and the appellees have access to markets outside of the nation's airports. For all of the above reasons, the court finds that the appellants have failed to demonstrate irreparable harm.

> 2    This information was obtained through telephone and electronic-mail communication with the Federal Aviation Administration ("FAA"). *See* E-mail from Ben Castalano, FAA, to Althea Brown, Judicial Administrator to the Honorable Gregory M. Sleet (May 21, 2002) (on file with chambers).

Turning to harm to other interested parties, it is clear that granting a stay would have a substantial and detrimental effect on the debtor's plan of reorganization. According to the debtors, once the plan is fully implemented, savings of $ 136,000,000 will be achieved. The appellants argue that any savings at present, prior to the national implementation of the plan, will only amount to $ 6,000,000. The court finds that even a savings of $ 6,000,000 is important to a bankrupt estate. Moreover, a one year delay [*9] in implementing the plan might well seriously jeopardize the plan. [3] Thus, the court concludes that the granting of the stay would produce substantial harm to other parties.

2002 U.S. Dist. LEXIS 9409, *

3   One year is the time the parties estimate for the appeal in the absence of a stay.

Since the appellants have failed to demonstrate irreparable harm or lack of substantial harm to other interested parties, the court will deny their motions for a stay of these proceedings. Therefore, none of the pending cases will be stayed on appeal. [4]

4   Although the motions to stay were only filed in case numbers 02-154, 02-360, and 02-364, it is clear that the motions are intended to affect all of the pending cases. Therefore, the denial of the stay means that none of the pending cases will be stayed. The parties should therefore not attempt, absent a showing of good cause, to file additional motions to stay in the remaining cases.

[*10]   For the aforementioned reasons, IT IS HEREBY ORDERED THAT:

1.   The appellants' Motion for a Stay Pending Appeal (D.I. 18 - 02-154) is DENIED.

2.   Hertz's Emergency Motion for a Stay Pending Appeal (D.I. 1 - 02-360) is DENIED.

3.   Avis' Emergency Motion for a Stay Pending Appeal (D.I. 1 - 02-364) is DENIED.

4.   None of the cases in this litigation [Case Nos. 02-154, 02-175, 02-288 through and including 02-299, 02-360, and 02-364] will be stayed pending this appeal.

Dated: May 22, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

LEXSEE



Analysis
As of: Jul 31, 2007

**In re: POLAROID CORPORATION, et al., Debtors. STEPHEN J. MORGAN, Appellant, v. POLAROID CORPORATION, et al., Appellees.**

**Civil Action No. 02-1353 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 1917**

**February 9, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Appeal dismissed by Morgan v. Polaroid Corp. (In re Polaroid Corp.), 2004 U.S. Dist. LEXIS 1879 (D. Del., Feb. 9, 2004)

**PRIOR HISTORY:**    [*1]  Bankruptcy Case No. 01-10864 PJW.

**DISPOSITION:**    Appellant's motion for stay pending appeal denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Before the court was appellant shareholder's motion for a stay pending appeal in a bankruptcy court in connection with the bankruptcy filing and plan of reorganization of appellee debtors.

**OVERVIEW:** The debtors filed a plan of reorganization, which the shareholder requested the court stay pending appeal. The shareholder claimed that the stay was necessary because the plan was not in the best interests of the shareholders of the debtors. The court denied the request because it concluded, under Fed. R. Bankr. P. 8005, that the shareholder did not establish a likelihood of success on the merits. The shareholder claimed that unanswered questions about value, once answered, would have favored the appeal. However, the shareholder did not identify for the court any order, decree, or judgment of the bankruptcy court that was erroneous. Thus, there was no basis for granting the shareholder's motion.

**OUTCOME:** The court denied the motion.

**CORE TERMS:** stay pending appeal, likelihood of success, prong, shareholder, emergency, unanswered questions, public interest, decree, movant, reasons discussed, reorganization, entitlement

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals*
*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Relief From Stays > Cause*
*Bankruptcy Law > Practice & Proceedings > Appeals > Procedures*
[HN1]Fed. R. Bankr. P. 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting Rule 8005 have established a four prong test for an appellant to obtain a stay: (1) a strong likelihood of success on the merits of the appeal; (2) the movant will suffer irreparable harm if the stay is denied; (3) substantial harm will not be suffered to non-moving parties if the stay is granted; and (4) issuance of the stay will not harm the public interest. If a party fails to establish one of the four prongs, a court may deny the requested stay. Likelihood of success on the merits means that a movant has a substantial case, or a strong case on appeal.

**COUNSEL:** Stephen J. Morgan, Pro Se Appellant.

Gregg M. Galardi, Esquire, Mark L. Desgrosseilliers, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware.

Of Counsel: Eric W. Kaup, Esquire of SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Chicago, Illinois. Attorneys for Debtors and Debtors-in-Possession, Appellees.

Joseph Malfitano, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware.

Of Counsel: Nava Hazan, Esquire of AKIN GUMP STRAUSS HAUER & FELD, LLP, New York, New York. Co-Counsel to the Plan Administrator.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSEPH J. FARNAN, JR.

**OPINION**

*MEMORANDUM OPINION*

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I. 31.) For the reasons discussed below, the Court will deny Appellant's request for a stay pending appeal.

**BACKGROUND**

The instant action is a bankruptcy appeal arising from the voluntary bankruptcy [*2] filing by Polaroid Corporation and certain of its subsidiaries and affiliates (collectively the "Debtors") in October of 2001. By his Motion, the Appellant requests the Court to stay the implementation of the Debtors' plan for reorganization. The Bankruptcy Court denied an identical request for a stay by Appellant on December 16, 2003.

**I. Parties' Contentions**

The Appellant contends that the Court should stay the implementation of the reorganization plan because it is not in the best interest of Polaroid shareholders. The Appellant alleges that the auction of Polaroid's assets was fraudulent and that the value of Polaroid's assets far exceeded their sale price. Further, the Appellant contends that his appeal is likely to be successful because there remain unanswered questions about value and damaged shareholder and bondholder interests. The Appellant

contends that if the Court denies his request for stay, he and other shareholders will be deprived of their right to appeal and their financial stakes in Polaroid. The Appellant also contends that a stay is in the public interest, because in light of recent corporate scandals, a resolution of the instant appeal is required.

[*3] In response, the Appellee contends that the Court should deny Appellant's request for an emergency stay because he has not satisfied the standards for entitlement to a stay pending appeal. Further, the Appellee contends that the Appellant's request is equitably moot. The Appellee also contends that Appellant failed to properly serve it and its counsel as required by the Federal Rules of Civil Procedure.

**DISCUSSION**

[HN1]Federal Bankruptcy Rule 8005 enables a reviewing court to issue a stay pending appeal from a judgment, order, or decree of a bankruptcy judge. Courts interpreting *Federal Bankruptcy Rule 8005* have established a four prong test for an appellant to obtain a stay: 1) a strong likelihood of success on the merits of the appeal; 2) the movant will suffer irreparable harm if the stay is denied; 3) substantial harm will not be suffered to non-moving parties if the stay is granted; and 4) issuance of the stay will not harm the public interest. *In re 421 Willow Corp.,* 2003 U.S. Dist. LEXIS 18029, 2003 WL 22318022 at *3 (E.D. Pa. Oct. 9, 2003). If a party fails to establish one of the four prongs, a court may deny the requested stay. [*4] *Hertz Corp. v. ANC Rental Corp.(In re ANC Rental Corp.),* 2002 U.S. Dist. LEXIS 9409, 2002 WL 1058196 at *2 (D. Del. May 22, 2002) (citing *In re Blackwell,* 162 B.R. 117, 120 (E.D. Pa. 1993)). Because the Court concludes that Appellant has not established a likelihood of success on the merits, the Court will deny the request for stay pending appeal.

Likelihood of success on the merits means that a movant has a "'substantial case,' or a strong case on appeal." *In re Columbia Gas Sys.,* 1992 U.S. Dist. LEXIS 3253 at *4 (D. Del. March 10, 1992) (quoting *In re Public Serv. Co. of N.H.,* 116 BR. 347, 349 (Bankr. D. N.H. 1990). Appellant contends that "unanswered questions about value ... once answered will favor the appeal." (D.I. 31 at 3.) However, in the instant motion the Appellant does not identify for the Court any order, decree, or judgment by the Bankruptcy Court that was erroneous, and thus, potentially reversible on appeal. Moreover, Appellant has not identified any potentially incorrect factual finding or legal conclusion reached by the Bankruptcy Court.

Absent specific challenges to actions taken by the Bankruptcy Court, the Court must conclude that Appellant has [*5] not demonstrated a strong likelihood of

success on the merits. The Court will not speculate as to what errors, if any, were committed by the Bankruptcy Court. Therefore, because the Court concludes that Appellant has failed to establish the first prong of the test for entitlement to a stay, the Court will deny Appellant's Motion.[1]

> 1  Based on this conclusion, the Court will not address Appellee's remaining bases for denial.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 9th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that the "Emergency" Motion For Stay Pending Appeal filed by Appellant Stephen J. Morgan (D.I. 31) is **DE-NIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

LEXSEE

⚠
Caution
As of: Jul 31, 2007

In re THE SINGER COMPANY N.V., et al., Debtors. JOSEPH A. PARDO, as Trustee for THE SINGER CREDITOR TRUST, Plaintiff-Appellee, -v- AKAI ELECTRIC COMPANY LIMITED, Defendant-Appellant.

No. 00 Civ. 6793 (LTS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 12902; 46 Collier Bankr. Cas. 2d (MB) 1195

August 24, 2001, Decided
August 27, 2001, Filed

**DISPOSITION:** [*1] Order of Bankruptcy Court reversed and matter remanded to Bankruptcy Court for further proceedings.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant in adversary proceeding-creditor appealed from an order of the United States Bankruptcy Court for the Southern District of New York that denied its motion to compel arbitration and for a stay of the adversary proceeding commenced by the debtor, pending arbitration of the pre-petition issues raised in the adversary proceeding.

**OVERVIEW:** Creditor and debtor operated in business together between the United States and Japan. When the debtor filed a petition in bankruptcy, the creditor filed a proof of claim as required by the Bankruptcy Code, and the debtor scheduled the claim, without filing an objection to it. The debtor then filed an adversary proceeding naming the creditor as defendant. The creditor moved to arbitrate the claims raised in the adversary proceeding pursuant to the underlying agreement of the parties, and to stay the adversary proceeding. The bankruptcy court exercised its discretion and denied the motion to arbitrate, essentially ruling that all the claims between the parties were core proceedings and should be tried together. On appeal, the district court reversed. There was insufficient reason to deny the right to arbitration of the claims raised in the adversary complaint. The claims were pre-petition, and would not affect other creditor's rights. Whether they were technically core issues and whether the creditor's claims would be arbitrated were insignificant.

**OUTCOME:** The order of the bankruptcy court was reversed and remanded. The core nature of the adversary proceeding, the relationship to issues raised in the creditor's proof of claim, and the benefit of centralizing a debtor's disputes were insufficient to give the bankruptcy court discretion to deny the creditor's motion to compel arbitration of pre-petition issues, where a reorganization plan had been approved.

**CORE TERMS:** arbitration, adversary proceeding, declaratory judgment, proof of claim, bankruptcy estate, pre-petition, confirmed, inherently, asserting, claimants, motion to compel arbitration, bankruptcy proceedings, compel arbitration, arbitration clause, Federal Arbitration Act, federal bankruptcy, stay arbitration, centralization, jeopardize, non-core, arbitral, premised, plan of reorganization, bankruptcy proceeding, bankruptcy case, purification, contractual, administrative function, arbitration provision, discretion to deny

**LexisNexis(R) Headnotes**

2001 U.S. Dist. LEXIS 12902, *; 46 Collier Bankr. Cas. 2d (MB) 1195

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Foreign Arbitral Awards*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*

[HN1] The Federal Arbitration Act (FAA), 9 U.S.C.S. § 1 et seq., provides that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract, thus establishing a federal policy favoring arbitration and requiring that federal courts rigorously enforce agreements to arbitrate. 9 U.S.C.S. §§ 2, 202. Like any statutory directive, the FAA's mandate may be overridden by a contrary congressional command.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Governments > Legislation > Interpretation*
*Governments > Legislation > Statutory Remedies & Rights*

[HN2] A party opposing arbitration carries the burden of showing that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. Such intent, if present, is to be deduced from the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*

[HN3] The core nature of a proceeding is not determinative of whether the bankruptcy court has discretion to refuse to compel arbitration pursuant to an otherwise valid agreement. Core proceedings implicate more pressing bankruptcy concerns than non-core matters, but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration. Certainly not all core bankruptcy proceedings are premised on provisions of the U.S. Bankruptcy Code that inherently conflict with the Federal Arbitration Act, 9 U.S.C.S. § 1 et seq., nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.

*Bankruptcy Law > Claims > Allowance*
*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings*

*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings*

[HN4] "Core" proceedings are matters arising under the U.S. Bankruptcy Code or arising in bankruptcy cases. 28 U.S.C.S. § 157(b). Such proceedings, in which the bankruptcy courts have jurisdiction to make substantive determinations, are defined to include, among other things, matters concerning bankruptcy estate administration and the allowance and disallowance of claims against the bankruptcy estate. With respect to non-core proceedings, which are merely related to bankruptcy cases, the bankruptcy courts are empowered to develop proposed findings of fact and conclusions of law in aid of entry of final orders and judgments by the district courts on substantive issues. 28 U.S.C.S. § 157(c)

*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*

[HN5] By not granting the bankruptcy court exclusive jurisdiction over non-core matters, it is clear that Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court. A bankruptcy court faced with a motion to compel arbitration in a core proceeding must first determine whether the proceeding involves provisions of the U.S. Bankruptcy Code that so inherently conflict with arbitral resolution that Congressional intent to grant the bankruptcy courts discretion to refuse arbitration can be gleaned from the applicable Bankruptcy Code provisions.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Exclusive Jurisdiction*

[HN6] A bankruptcy courts' jurisdiction of core proceedings is non-exclusive. The federal courts have original, but not exclusive, jurisdiction of all civil proceedings arising under the U.S. Bankruptcy Code, or arising in or related to bankruptcy cases. Exclusive jurisdiction is limited to the bankruptcy "case" itself. 28 U.S.C.S. § 1334.

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Appeals*
*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review*

*Civil Procedure > Alternative Dispute Resolution > General Overview*
[HN7] The question of whether a bankruptcy court has discretion to deny a stay pending arbitration is one of law, and is subject to de novo review on appeal.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN8] Nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, whether the proceeding derives exclusively from the provisions of the U.S. Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with purposes of the Code.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
[HN9] A determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration.

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
[HN10] On appeal, a district court reviews de novo the legal conclusion of a bankruptcy court as to the existence of discretion to refuse to compel arbitration.

*Bankruptcy Law > Practice & Proceedings > Contested Matters*
*Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings*
[HN11] Litigation regarding the allowance or disallowance of that claim constitutes a core proceeding. 28 U.S.C.S. § 157(b)(2)(B).

*Bankruptcy Law > Case Administration > Administrative Powers > Stays > Coverage > General Overview*
*Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview*

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*
[HN12] While a creditor must generally file a proof of claim to be eligible to receive payment, and the U.S. Bankruptcy Code imposes an automatic stay on creditors' collection efforts in non-bankruptcy fora, there is no Code requirement that all issues relating to a debtor's activities be adjudicated in a bankruptcy court. The risk of inconsistent adjudications is not unique to bankruptcy and does not frame an inherent conflict between Bankruptcy Code and policy under the Federal Arbitration Act, 9 U.S.C.S. § 1 et seq.

COUNSEL: For Plaintiff-Appellee: Glenn B. Rice, Esq., Anthony M. Piccione, Esq., John A. Bougiamas, Esq., OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C., New York, New York.

For Defendant-Appellant: Kelley A. Cornish, Esq., Robert W. Hirth, Esq., SIDLEY & AUSTIN, New York, New York.

JUDGES: LAURA TAYLOR SWAIN, United States District Judge.

OPINION BY: LAURA TAYLOR SWAIN

OPINION:

### OPINION AND ORDER

LAURA TAYLOR SWAIN, United States District Judge

Akai Electric Company Limited ("Akai") appeals from an August 10, 2000 order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court Order") denying, for reasons stated on the record of the bankruptcy proceeding, Akai's motion to compel arbitration and for a stay of an adversary proceeding commenced by the debtor, The Singer Company N.V., pending arbitration of the issues raised therein. n1 For the reasons stated below, the order of the Bankruptcy Court is reversed.

> n1 Consistent with an order entered in the underlying bankruptcy case on September 21, 2000, Joseph A. Pardo, as Trustee for the Singer Creditor Trust, has been substituted for Singer as Plaintiff-Appellee here. Under the confirmed plan of reorganization in the bankruptcy case, the Singer Creditor Trust succeeded to all of the debtor's rights in various assets, including this litigation. See infra note 3 and accompanying text. For con-

venience the Court will, however, refer to Appellee in this opinion as "Singer."

[*2]

This Court has jurisdiction of the instant appeal pursuant to section 158(a)(1) of Title 28 of the United States Code (West Supp. 2001) and Rule 8001 of the Federal Rules of Bankruptcy Procedure (West Supp. 2001)

BACKGROUND

The material facts are not in dispute. Singer and Akai, a Japanese corporation, entered into a written agreement in 1996 for the sale by Akai to Singer of certain assets and trademark rights relating to a water purifier business (the "Agreement"). The Agreement also provided for Singer's appointment of Akai as its exclusive distributor of certain water purification products in Japan, and for Singer's appointment of Akai as an "OEM" manufacturer of certain water purification products. Record on Appeal ("Rec.") Item 1, Exh. 1 (Amended Complaint); Brief of Appellant Akai Limited ("Akai" Br.") at 3. Section seven of the Agreement provided in pertinent part:

> This Agreement shall be governed by and construed in accordance with Japanese law. Any controversy or claim between the parties hereto, including those arising out of or relating to this Agreement or to the breach thereof or to the relationship between the parties, whether such claim is based on Japanese [*3] law, or the law of any other country, whether federal, state, regional or municipal and whether it is grounded in common law or statutory law, shall be settled exclusively by arbitration in Tokyo, Japan, in accordance with the rules of the Japanese Commercial Arbitration Association ('JCAA') and judgment upon the award rendered by the arbitrators shall be final and binding upon the parties and may be entered in any court having jurisdiction thereof, provided, however, that nothing contained in this Section 7 shall in any way limit the right of either party to prosecute, in any court having jurisdiction thereof, its rights under the law . . . to recover payment of any amount due from the other party pursuant to the terms of this Agreement . . .

Rec. Item 2, Exh. 1, Exh. 1, at § 7(a). n2

n2 Neither party disputes the contractual validity or applicability of the arbitration clause. The question here is whether it should be enforced in the context of the Singer bankruptcy proceedings.

Singer and certain [*4] of its affiliates commenced Chapter 11 reorganization proceedings pursuant to the federal Bankruptcy Code (11 U.S.C. § 101 et seq. (the "Bankruptcy Code")) in September 1999 and February 2000. On December 21, 1999, the Bankruptcy Court entered a "Bar Date Order" setting a deadline for persons holding pre-petition claims against the bankruptcy estate to file proofs asserting those claims in the proceeding. The bar date set for non-governmental creditors' claims was March 1, 2000. Supplement to Record on Appeal, Item 8 (Singer Objection to Claim). Akai, asserting that it had not been paid substantial sums for work performed pursuant to the Agreement, filed a proof of claim on March 1, 2000, seeking payment of such sums and asserting that the claim is secured by a right of setoff with respect to any and all claims of Singer against Akai. Rec. Item 2, Exh. 2, at Exh. A (Proof of Claim). Thereafter Singer, alleging that although it had paid the requisite basic consideration under the Agreement, Akai had failed to transfer the water purification-related assets in accordance with the Agreement and had improperly retained profits from post-transaction water purification [*5] sales, commenced an adversary proceeding in the Bankruptcy Court (the "Adversary Proceeding"). In the Adversary Proceeding, Singer seeks rescission of the Agreement and the return of the monies paid thereunder or, in the alternative, an award of damages in at least the amount Singer paid under the Agreement. Singer filed an Amended Complaint in the Adversary Proceeding on May 25, 2000. Rec. Item 2, Exh. 1.

Singer filed its proposed plan of reorganization (the "Plan") and disclosure statement on May 26, 2000; the Plan provided for transfer of Singer's rights in respect of certain litigation, including the adversary proceeding against Akai, to a "Singer Creditor Trust." Rec. Item 2, Exh. 3, at viii-ix. n3 Akai moved on June 19, 2000, to compel arbitration of the issues raised in the Adversary Proceeding and to stay the Adversary Proceeding pending such arbitration. Singer filed its opposition to Akai's motion on July 20, 2000, and, on July 21, 2000, filed an objection to Akai's proof of claim, thereby initiating litigation in the Bankruptcy Court as to Akai's right to payment thereunder. n4 The Bankruptcy Court heard oral argument on Akai's motion, and denied the motion in a decision [*6] rendered from the bench on August 10, 2000.

n3 The Plan was confirmed on August 24, 2000 Akai Br. at 5

n4 As noted below, a creditor whose proof of claim is not objected to is entitled to share in relevant dividends from the estate. 11 U.S.C.A. § 502(a) (West 1993); see infra note 11.

## DISCUSSION

[HN1] The Federal Arbitration Act (the "FAA") (9 U.S.C. § 1 et seq.) provides "that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,'" thus establishing "a 'federal policy favoring arbitration' . . . [and] requiring that . . . '[federal courts] rigorously enforce agreements to arbitrate.'" Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 96 L. Ed. 2d 185, 107 S. Ct. 2332, reh'g denied, 483 U.S. 1056, 97 L. Ed. 2d 819, 108 S. Ct. 31 (1987) (citations omitted); see also 9 U.S.C.A. §§ 2, [*7] 202 (West 1999). "Like any statutory directive, [however,] the Arbitration Act's mandate may be overridden by a contrary congressional command." McMahon, 482 U.S. at 226.

[HN2] The party opposing arbitration carries the burden of showing "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Such intent, if present, is to be deduced "from [the statute's] text or legislative history' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." Id. at 227 (citations omitted) (emphasis supplied).

In United States Lines, Inc. v. American S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631 (2d Cir. 1999), cert. denied, 529 U.S. 1038, 146 L. Ed. 2d 347, 120 S. Ct. 1532 (2000), the United States Court of Appeals for the Second Circuit weighed the question of the enforceability of arbitration clauses in the context of "core" bankruptcy proceedings. n5 The U.S. Lines court made it clear that [HN3] the core nature of a proceeding is not determinative of whether the bankruptcy court has discretion to refuse [*8] to compel arbitration pursuant to an otherwise valid agreement:

> Core proceedings implicate more pressing bankruptcy concerns [than non-core matters], but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay ar-

bitration 'Certainly not all core bankruptcy proceedings are premised on provisions of the Code that "inherently conflict" with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.' Insurance Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1067 (5th Cir. 1997).

197 F.3d at 640.

n5 [HN4] "Core" proceedings are matters "arising under" the Bankruptcy Code or "arising in" bankruptcy cases. 28 U.S.C.A. § 157(b) (West 1993) Such proceedings, in which the bankruptcy courts have jurisdiction to make substantive determinations, are defined to include, among other things, matters concerning bankruptcy estate administration and the allowance and disallowance of claims against the bankruptcy estate. Id. With respect to "non-core" proceedings, which are merely "related to" bankruptcy cases, the bankruptcy courts are empowered to develop proposed findings of fact and conclusions of law in aid of entry of final orders and judgments in the district courts on substantive issues. 28 U.S.C.A. § 157(c) (West 1993).

[*9]

Acknowledging that the centralization of disputes concerning debtors' property to facilitate efficient reorganization is a "core purpose" of bankruptcy, the U.S. Lines court nonetheless observed that, " [HN5] by not granting the bankruptcy court exclusive jurisdiction over non-core matters, 'it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court'" 197 F.3d at 640 (quoting Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1157 (3d Cir. 1989)). n6 A bankruptcy court faced with a motion to compel arbitration in a core proceeding thus must first determine whether the proceeding involves provisions of the Code that so inherently conflict with arbitral resolution that Congressional intent to grant the bankruptcy courts discretion to refuse arbitration can be gleaned from the applicable Bankruptcy Code provisions.

2001 U.S. Dist. LEXIS 12902, *; 46 Collier Bankr. Cas. 2d (MB) 1195

n6 [HN6] The bankruptcy courts' jurisdiction of core proceedings is non-exclusive as well. The federal courts have original, but not exclusive, jurisdiction of all civil proceedings arising under the Bankruptcy Code, or arising in or related to bankruptcy cases. Exclusive jurisdiction is limited to the bankruptcy "case" itself. 28 U.S.C.A. § 1334 (West 1993 & Supp. 2001).

[*10]

As the Fifth Circuit put it in National Gypsum, a decision relied upon by the Second Circuit in U.S. Lines:

> The discretion enjoyed by a bankruptcy court to refuse enforcement of an otherwise applicable arbitration provision depends upon a finding that the standard set forth in McMahon [for discerning congressional intent to permit refusal of arbitration of a federal statutory claim] has been met.

Insurance Co. of N. America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1066 (5th Cir. 1997). [HN7] The question of whether a bankruptcy court has discretion to deny a stay pending arbitration is one of law, and is subject to de novo review on appeal. Id. at 1064. n7

n7 U.S. Lines further teaches that, to the extent the bankruptcy court has such discretion, the central inquiry with respect to the exercise of that discretion is "'whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause' . . . . An arbitration clause should be enforced 'unless [doing so] would seriously jeopardize the objectives of the Code.'" U.S. Lines, 197 F.3d at 640 (citations omitted). This second-stage inquiry "constitutes a mixed question of law and fact with legal conclusions being reviewed de novo, and factual determinations being reviewed for clear error." Id. at 640-41 (citation omitted).

[*11]

In U.S. Lines, the Second Circuit upheld a bankruptcy court's decision to deny arbitration of a large number of related disputes involving the interpretation of insurance policies whose potential proceeds constituted the only funds available to cover a large class of tort claims against the debtor's estate. U.S. Lines, 197 F.3d at 635. Because certain provisions of the policies could in effect have reordered the debtor's payments to creditors in a manner inconsistent with the payment provisions of the Bankruptcy Code, a declaratory judgment proceeding relating to the interpretation of the policies "directly affected the bankruptcy court's core administrative function of asset allocation among creditors" and were therefore held to be core proceedings. Id. at 639. In light of the integral relationship between the issues raised in the declaratory judgment proceeding and the bankruptcy court's ability to preserve and equitably distribute estate assets, the complex factual situation there present, involving numerous claims and parties, and the general preference for the bankruptcy court as a forum for resolution of mass tort claims against an [*12] insolvent debtor, the Circuit confirmed that the bankruptcy court had possessed the discretion in that case to decline to refer the matter to arbitration and upheld the court's exercise of that discretion, holding that "the bankruptcy court was not clearly erroneous in finding that 'arbitration of the disputes raised in the [declaratory judgment] Complaint would prejudice the Trust's [established to pay creditors' claims] efforts to preserve the Trust as a means to compensate claimants [against the bankruptcy estate].'" Id. at 641 (citation omitted).

The Fifth Circuit's opinion in National Gypsum sheds further light on the circumstances under which a core matter may present so inherent a conflict as to establish a basis for bankruptcy court discretion to refuse to refer the matter to arbitration. The Fifth Circuit "refused to find such an inherent conflict based solely on the jurisdictional nature of a bankruptcy proceeding" and held that " [HN8] nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if [*13] so, whether arbitration of the proceeding would conflict with purposes of the Code." National Gypsum, 118 F.3d at 1067. "Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." Id. The Second Circuit quoted this element of the National Gypsum opinion in support of its conclusion that " [HN9] even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration." U.S. Lines, 197 F.3d at 640.

National Gypsum offers a structural framework for the analysis: does the underlying dispute concern non-Bankruptcy Code issues derivative of the debtor's prepetition business activities or does it concern rights cre-

ated by the Bankruptcy Code? See <u>National Gypsum, 118 F.3d at 1068-70.</u> National Gypsum holds that discretion is present in the latter situation and suggests that it would be lacking in the former, concluding that core issues centered on rights conferred by the Bankruptcy Code [*14] present sufficient tension to support discretion to determine whether arbitration of the issues would be consistent with the purpose of the Code:

> We think that, at least where the cause of action at issue is not derivative of the pre-petition legal or equitable rights possessed by a debtor but rather is derived entirely from the federal rights conferred by the Bankruptcy Code, a bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Code, including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

<u>National Gypsum, 118 F.3d at 1069.</u> "There can be little dispute that where a core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims [of the debtor], the importance of the federal bankruptcy forum provided by the [Bankruptcy] Code is at its zenith. . . . The adjudication of [those types of] actions outside the federal bankruptcy forum could in many instances [*15] present the type of conflict with the purpose and provisions of the Bankruptcy Code alluded to in McMahon." <u>Id. at 1068.</u>

U.S. Lines and National Gypsum thus set as the court's first task discernment as to whether the Adversary Proceeding commenced by Singer presents issues premised on provisions of the Bankruptcy Code whose purposes conflict inherently with the arbitration policy. Only if there is such a conflict does the bankruptcy court have discretion to determine whether to preclude arbitration of the matter. Cf. <u>U.S. Lines, 197 F.3d at 640.</u>

In the instant case, the Bankruptcy Court found that it had such discretion. The Bankruptcy Court first concluded that the Adversary Proceeding is "essentially a counterclaim to Akai Electric's Proof of Claim" and is therefore a core proceeding. Rec. Item 6 (Transcript of August 10, 2000 Bankruptcy Court proceeding ("Tr.")) at 49. n8 Turning to the question of the bankruptcy considerations at stake, the Bankruptcy Court stated that "the underlying purpose of the Bankruptcy Code is to 'provide for centralized jurisdiction and administration of the Debtor, its estates [sic] and its reorganization [*16] in the Bankruptcy Court.'" Tr. at 50 (citation omitted). Quoting U.S. Lines, the Bankruptcy Court concluded that "the 'declaratory judgment proceedings are integral to the Bankruptcy Court's ability to preserve and equitably distribute the trust's assets'" and held that it had discretion to refuse to refer the core proceedings to arbitration. Tr. at 52 (quoting <u>U.S. Lines, 197 F.3d at 640).</u>

> n8 Neither party to this appeal challenges the Bankruptcy Court's finding of core jurisdiction.

The Bankruptcy Court's determination that it had such discretion was apparently based on three factors: the core nature of the adversary proceeding, the interrelationship between issues in that proceeding and ones raised by Akai's proof of claim, and the overall tension between the Bankruptcy Code's policy of centralization of the resolution of disputes concerning the debtor and the decentralization inherent in the enforcement of dispute-specific arbitral agreements. [HN10] On appeal, this Court's review of the [*17] Bankruptcy Court's legal conclusion as to the existence of discretion to refuse to compel arbitration is de novo. See <u>National Gypsum, 118 F.3d at 1064.</u> The Court finds that the factors cited by the Bankruptcy Court are insufficient to support the existence of discretion to refuse arbitration of the issues raised in Singer's adversary proceeding.

As noted above, U.S. Lines and National Gypsum make it clear that not all core proceedings present inherent conflicts between the FAA and the Bankruptcy Code severe enough to support a finding under the McMahon standard that Congress intended to override the FAA's general policy of enforceability of arbitration agreements. See <u>U.S. Lines, 197 F.3d at 640;</u> <u>National Gypsum, 118 F.3d at 1067-68.</u> Such an inherent conflict was clearly present in U.S. Lines because, in the absence of a bankruptcy court declaration as to the debtor's indemnity rights, the trust servicing the debtor's obligations to claimants would have had to disburse assets in a manner inconsistent with the Bankruptcy Code's distribution provisions in order to establish a predicate for claims under the policies: [*18]

> Under the pay-first provisions of the . . . policies, th[e policy] proceeds will not be made available until the Trust has paid the claims. . . . If the Trust were initially to pay the claimants with assets earmarked for other creditors only to be informed af-

2001 U.S. Dist. LEXIS 12902, *; 46 Collier Bankr. Cas. 2d (MB) 1195

terward that the payments did not trigger the [insurers'] indemnification obligation, the result would be an inequitable distribution among the creditors. Therefore, in order to effectuate an equitable distribution of the bankruptcy estate, a comprehensive declaratory judgment is required to determine (1) whether a chosen payment plan will trigger the indemnification obligation and (2) the amounts payable under the insurance contracts. Thus, the declaratory proceedings brought by the Trust in this case directly affect the bankruptcy court's core administrative function of asset allocation among creditors. . . .

U.S. Lines, 197 F.3d at 638-39. In light of the "'conflict of near polar extremes'" of statutory objectives thus presented, the Second Circuit upheld the bankruptcy court's finding of discretion to stay arbitration. Id. at 640 (citation omitted). The declaratory judgment [*19] proceedings at issue in National Gypsum concerned construction of Bankruptcy Code section 524's discharge injunction and the confirmed reorganization plan in the underlying bankruptcy case. National Gypsum, 118 F.3d at 1070.

The issues in Singer's Adversary Proceeding center, by contrast, on pre-petition contractual rights, obligations and conduct. It is a core proceeding only because it is in effect a counterclaim to the claim Akai has asserted against the estate. Akai's claim, too, relates to pre-petition events. [HN11] Litigation regarding the allowance or disallowance of that claim constitutes a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993). Because the issues underlying the Adversary Proceeding -- the parties' rights under the Agreement and whether Akai performed its obligations under the Agreement -- do not arise from rights conferred or obligations imposed by the Bankruptcy Code, they do not, standing alone, present an inherent conflict between Code policy and the FAA's endorsement of the arbitral forum. Neither does the strong centralization policy of the Bankruptcy Code present such a conflict in this case. The resolution of [*20] the issues raised in the Adversary Proceeding will not affect the allocation of assets among creditors, nor is it essential to the debtor's ability to reorganize. Indeed, the plan of reorganization has already been confirmed. This case is thus quite different from U.S. Lines, where failure to centralize the disputes regarding insurance coverage and eligibility therefor would not only have affected the amount of money available for a significant class of claimants but might also have resulted in the misallocation of estate assets.

Nor is the interrelationship of the Adversary Proceeding and Akai's claim against the estate sufficient to frame a significant conflict between the Bankruptcy Code and the FAA. Bankruptcy court jurisdiction of core proceedings is non-exclusive. 28 U.S.C.A. § 1334(b) (West 1993). [HN12] While a creditor must generally file a proof of claim to be eligible to receive payment n9 and the Bankruptcy Code imposes an automatic stay on creditors' collection efforts in non-bankruptcy fora, n10 there is no Code requirement that all issues relating to a debtor's activities be adjudicated in the Bankruptcy Court. The risk of inconsistent adjudications [*21] is not unique to bankruptcy and does not frame an inherent conflict between Bankruptcy Code and FAA policy. n11

n9 See 11 U.S.C.A. §§ 501, 502 (West 1993 & Supp. 2001); Fed. R. Bankr. P. 3021 (West Supp. 2001); and Bar Date Order.

n10 11 U.S.C.A. § 362 (West 1993 & Supp. 2001).

n11 Singer argued strenuously in this Court that it is somehow disingenuous or unfair that Akai demanded arbitration only of the Adversary Proceeding, while asserting its claim against the estate in the bankruptcy forum. Assuming that Singer had not conceded the validity of Akai's claim by scheduling it as undisputed in its bankruptcy disclosures, Akai was required, as noted above, to file a proof of claim in the Bankruptcy Court to be eligible for any payment in respect of its claim. Absent objection, Akai's claim would have been allowed without litigation of the underlying contract performance issues. 11 U.S.C. § 502(a) (West 1993). Singer's Adversary Proceeding was commenced, and the demand for arbitration of that proceeding interposed, prior to the assertion of any objection to Akai's claim in the bankruptcy proceeding. Indeed, Singer's objection to Akai's claim was not filed until after Singer's opposition to the motion to compel arbitration was filed. Furthermore, the arbitration clause of the Agreement specifically permits "either party to prosecute, in any court having jurisdiction thereof, its rights under law . . . to recover payment of any amount due from the other party pursuant to the terms of this Agreement." Rec. Item 2, Exh. 1, Exh. 1, at § 7(a). Under these circumstances, Akai's failure to demand arbitration of its claim in the bankruptcy at the time it moved to compel arbitration of the Singer's Adversary Proceeding is not significant.

2001 U.S. Dist. LEXIS 12902, *; 46 Collier Bankr. Cas. 2d (MB) 1195

[*22]

This Court thus finds that the Bankruptcy Court lacked discretion to deny the motion to compel arbitration of the contract and performance issues raised in the declaratory judgment proceeding commenced by Singer. Akai's motion should therefore have been granted to the extent it sought arbitration of issues relating to the parties' respective rights, obligations and performance under the Agreement. The decision of the Bankruptcy Court is reversed and the matter is remanded to the Bankruptcy Court for further proceedings consistent with this decision.

SO ORDERED.

Dated: New York, New York

August 24, 2001

LAURA TAYLOR SWAIN

United States District Judge

## CERTIFICATE OF SERVICE

I, Jason M. Madron, hereby certify that on the 2nd day of August 2007, I caused a copy of the **Appendix to Armstrong World Industries, Inc.'s Memorandum of Law in Opposition to Sea-Pac Sales Company's Motion for Stay Pending Appeal of the Bankruptcy Court's Order Denying Arbitration** to be served on the parties listed below and in the manner so indicated:

### Via Hand Delivery and Electronic Mail

Karen Lee Turner
Michael G. Busenkell
ECKERT SEAMANS CHERIN & MELLOTT, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE  19801
E-mail:  kturner@eckertseamans.com
          mbusenkell@eckertseamans.com

### Via First Class Mail and Electronic Mail

Michael M. Feinberg
Diana K. Carey
KARR TUTTLE CAMPBELL, PSC
1201 Third Avenue, Suite 2900
Seattle, WA  98101
E-mail:  dcarey@karrtuttle.com
          mfeinberg@karrtuttle.com

Al Van Kampen
ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, WA  98154
E-mail:  avk@rohdelaw.com

Jason M. Madron (No. 4431)